# EXHIBIT 3

AMERICAN ARBITRATION ASSOCIATION
Commercial Arbitration
Under AAA Commercial Rules and Mediation Procedures
Amended and effective October 1, 2013

Case Number: 01-19-0002-7532

**Petruss Media group, LLC, f/k/a Take 5 Media Group , LLC (Take 5 LLC)**
**RJV Marketing Corp. (RJV)**
**Richard Gluck**
**Alexander Radetich, Claimants, Cross-Respondents, and Counter-Respondents (collectively Take 5)**

**Represented by Dennis Richard, Esq., Richard A. Roth, Esq., Melissa L. Mackiewicz, Esq., Kevin Shohat, Esq.,  and Lance Willoughby, Esq. through Interim Award. Represented by Lisa M. Richman, Esq., Lauren Evans, Esq., and McDermott Will & Emery, LLP post Interim Award.**

-vs-

**Advantage Sales & Marketing, LLC**
**Advantage Sales & Marketing, Inc.**
**Karman Intermediate Corp.**
**Advantage Solutions, Inc.**
**Karman Topco, L.P., Respondents, Cross-Claimants and Counter-Claimants (collectively Advantage)**

**Represented by Michael H. Strub, Jr., Esq., Desiree N. Murray, Esq., and Edward A. Danielyan, Esq.**

## MODIFIED FINAL AWARD

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties and dated March 15, 2018, and having been duly sworn, and having duly heard the proofs, and allegations of the Parties, and having previously rendered an interim award dated August 4, 2022, and have previously rendered a final award dated October 4, 2022, and Michael H. Strub on behalf of respondents having requested a modification by email dated October 4, 2022 and Lisa M. Richman on behalf of claimants having responded by letter dated October 14, 2022, do hereby render this modified Award as follows:

### BACKGROUND

On March 15, 2018, Advantage Sales & Marketing, LLC, Buyer, entered into an Asset Purchase Agreement (APA) with Take 5 Media Group, LLC, the operating business that owned

the assets being sold; Alexander Radetich, Richard Gluck, and RJV Marketing Corp, Beneficial Owners of the assets; and Seller Related Parties that were signators to the APA.[1] Advantage Sales & Marketing, LLC agreed to purchase the business of Take 5 Media Group, LLC, except for certain Excluded Assets.

Except when it is necessary to differentiate the parties, the Respondents and Counter-Claimants will be referred to as "Advantage" and the Claimants and Counter-Respondents will be referred to as "Take 5."

A dispute arose between the parties, and this arbitration proceeding ensued.

The Arbitrator issued an Interim Award dated August 4, 2022. The Interim Award is incorporated herein and made a part hereof.

In pertinent part, the Interim Award included the following findings and conclusions. Take 5 committed civil fraud in connection with the sale of the Take 5 business to Advantage based on a knowing misrepresentation of warranties and, before the acquisition, knowing misrepresentation of facts. Take 5 did not commit actionable RICO violations. *See* 18 U.S.C. §1962.

Advantage sought damages in the amount of the purchase price plus consequential damages. As explained in the Interim Award, Advantage was awarded the difference between the purchase price and the actual value, as found herein, at the time of the sale. The amount, after subtracting a credit, is $43,633,333.34. In addition, Advantage was awarded damages related to (1) due diligence in the amount of $788,954.00; (2) its investigation in the amount of $3,246,203.95; and (3) the termination of leases in the amount of $657,331.00.

The Interim Award concluded:

> 1. Respondents and Counter-Claimants are awarded $48,325,822.29 against Claimants and Counter-Respondents as damages on their claims.
>
> 2. Claimants' and Counter-Respondents' claim for damages is denied.
>
> 3. Therefore, the amount due to Respondents and Counter-Claimants is $48,325,822.29.
>
> 4. Pursuant to section 10.11(b) of the APA, "[t]he expenses of any litigation, including the Arbitrator and the arbitration and the reasonable out-of-pocket fees and expenses of the other Party, including fees of attorneys and experts, shall be paid by the non-

---

[1] The Seller Related Parties are not identified herein because they are not parties to this proceeding.

  prevailing Party, as determined by the Arbitrator, [except as provided in Section 1.3(a)(iv) and Section 1.5(c)]."

  5. Respondents and Counter-Claimants are the prevailing parties.

  6. Counsel are directed to consult and attempt to agree on a process and schedule to resolve the issues in paragraph 4 above and any claim of interest on the award. Counsel shall advise the Arbitrator of the status of those discussions on or before August 19, 2022. Failing agreement, a scheduling conference will be held to discuss the issues.

  7. Other than as set forth in the preceding paragraphs, this Award is in full settlement of all claims and counterclaims submitted to this Arbitration. All claims and counterclaims not expressly granted in this Award are denied. This Award may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall constitute together one and the same instrument.

  After issuance of the Interim Award, on August 19, 2022, Advantage filed a motion seeking an award of costs and fees recoverable under the APA, §10.11(b), plus interest. On September 16, 2022, Take 5 filed a response to the motion.

  Advantage's claim for fees and costs includes attorneys' fees, expert witness fees, internet related subscription fees to maintain access to electronic information, and court reporting services. Advantage claims both prejudgment and post-judgment interest through collection. Advantage seeks an express determination that it is entitled to fees and costs incurred in enforcing the Award.

  Specifically, Advantage claims prejudgment interest in the amount of $17,194,795.28; post-judgment interest through August 19, 2022 in the amount of $148,949.45; AAA fees in the amount of $99,110.00; FTI fees in the amount of $2,105,324.20; Greenberg Gross fees billed and paid in the amount of $6,777,739.58 and contingent fees in the amount of $9,552,061.76; Greenberg Gross expenses in the amount of $11,591.27; Latham &Watkins (L&W) fees in the amount of $325,818.11; Young Conaway Starlett & Taylor fees in the amount of $215,336.47; Kalat expert fees in the amount of $136,773.50; Kent expert fees in the amount of $69,663.00; court reporting fees in the amount of $215,664.42; Major Lindsey & Africa fees in the amount of $106,930.00; Bozorgi Law fees in the amount of $94,575.00; Schlam Stone & Dolan fees in the amount of $152,475.54; and internet related subscription fees in the amount of $558,575.98. The total amount claimed is the amount of the Interim Award, $48,325,822.29, plus the above which, according to Advantage, equals $86,090,205.85.

  Advantage supported its motion with exhibits and a Declaration by Michael H. Strub, Jr., Esq.

Take 5 presents several arguments supporting its position that the majority of the amounts claimed should be denied or substantially reduced in amount. Counsel for Take 5 also stated that they lacked sufficient time to review "in as much detail as would have been desired" the exhibits to Advantage's motion but the only specific limitation identified was lack of time to copy and attach exhibits referred to in Take 5's response. In addition, counsel stated that they did not have enough time to discuss Advantage's exhibits with Advantage's counsel. Nevertheless, the parties filed extensive memoranda and other information. The parties' positions are clear, and the record is complete. Moreover, I have been involved in this matter as the Arbitrator since its inception.

## Discussion

I will address the specific arguments, but preliminarily, I will comment on a few general issues.

As has been true throughout this proceeding, the parties primarily rely on Delaware and federal law. Because the parties agreed that the arbitration proceeding need not occur in Delaware, as contemplated by the APA, and agreed that the "situs" is D.C., Take 5 argues that the law of D.C. governs with respect to certain matters.

The APA, §10.12, provides that Delaware law governs and that the scope of and procedure for discovery is governed by the Federal Rules of Civil Procedure. Changing the location of the hearing did not change the express choice of law provision in the APA. Regardless, the issue is not dispositive. Generally, throughout this proceeding, issues have not turned on any dispute with respect to the choice of law. The current issues are no exception.

In support of its arguments, Take 5 observes that the APA contemplated a ninety-day arbitration proceeding. That is correct, but the parties modified that agreement by consent. Take 5 initiated the arbitration proceeding, and Advantage filed a counterclaim. All parties participated vigorously in pursuit of their claims and defenses. The original ninety-day provision is relevant but by no means determinative.

*Mandatory v. Discretionary*

Take 5 argues that, under §10.11(b) of the APA, the Arbitrator has discretion to award any costs and interest and, if awarded, discretion to determine the amount. Fee shifting provisions in contracts generally use either mandatory or discretionary language with respect to whether fee shifting applies at all. Here, the provision uses mandatory language, *i.e.*, "shall" as distinguished from "may." Nevertheless, the Arbitrator determines what is subject to fee shifting, and as Take 5 argues, the items must be proved by Advantage and are subject to a reasonableness analysis. *Gatore v U.S. Dep't of Hmeland Sec.*, 286 F. Supp. 3d 25, 32-33 (D.D.C. 2017); *Coalition to save Our Children v. State Bd. Of Ed. of State of Del.*, 901 F. Supp. 824, 829 (D.

Del. 1995); AAA Rule 47(d). As Take 5 observes, the fees and expenses must be "out-of-pocket."[2]

*Prevailing Party*

Take 5 requests reconsideration of the finding that Advantage is the prevailing party. It argues that Advantage did not prevail on all claims and recovered only 9.3% of the total damages claimed, including treble damages under RICO. Take 5 argues that the Arbitrator may find that neither party was the prevailing party. *See AHS N.M. Holdings, Inc. v. Healthsource, Inc.,* 2007 WL 431051 at *9 (Del. Ch. 2007) (finding neither party "prevailed"). I acknowledge that finding is possible when supported by the facts.

As stated many times in this proceeding, the gravamen of Advantage's claims was fraud. Fraud was found. Advantage claimed the amount of the purchase price as damages plus consequential damages. A substantial portion of the purchase price was awarded along with certain consequential damages. Although under federal law, generally the party in whose favor a judgment was entered is the prevailing party, under state law, the issue is often more nuanced. Here, in addition to prevailing on the claim of fraud, Advantage prevailed on a substantial portion of its claimed damages aside from its RICO claim. Based on a consideration of all relevant factors, I conclude that Advantage was the prevailing party. *See Comrie v. Enterasys Networks, Inc.*, 2004 WL 936505 at *1-*3 (Del. Ch. 2004); *Brandin v. Gottlieb*, 2000 WL 1005954 at *28 (Del. Ch. 2000) (predominance in the litigation).

*Prejudgment Interest*

Advantage argues that, in Delaware, prejudgment interest is awarded at 5% over the federal discount rate and, ordinarily, is compounded quarterly. *Polychain Cap. LP v. Pantera Venture Fund II LP,* 2022 WL 2467778 at *12 (Del. Ch. 2022). Advantage has applied an interest rate ranging from 5.25% to 7.75%, depending upon the date of liability of the Award components. Thus, Advantage computed interest on the purchase price and due diligence components from April 1, 2018, the date of closing of the sales transaction. It computed interest on the investigation component from August 1, 2019, the end of the period in which such costs were incurred, and on the lease termination component from July 30, 2020, the date of lease termination. It compounded interest quarterly.

Advantage argues that the award of prejudgment interest is a matter of right under Delaware law. *See Texstrom, Inc. v. Savla,* 2005 WL 3589401 at *1 (Del. Ct. Common Pleas 2005) (in fraud actions, the general rule is that prejudgment interest is calculated from the date of the alleged wrong). Advantage's assertion is a bit overstated in that there are exceptions, appropriate notice to the defendant is necessary, and general equitable principles may be applied. *See All Pro Maids, Inc. v. Layton,* 2005 WL 82689 (Del. Ch. 2005). Although many cases

---

[2] In addition, the fee shifting provision is subject to §1.3(a)(iv), addressing purchase price adjustment, and § 1.5(c), addressing a dispute over the Earn Out amount. These sections are not applicable.

involve breach of contract actions in which there was a date certain for payment or tort actions involving the failure to return or the destruction of property, *e.g., Jarrell v. Delchester Oil Co.*, 1993 WL 189495 (Del. Sup. Ct. 1993), prejudgment interest may be awarded in fraud actions. *Stephenson v. Capano Development Co.*, 1985 WL 636429 at *3 (Del. Super. 1985).

Take 5 counters that prejudgment interest should not be awarded because it is not referenced in §10.11(b) and was not claimed by Advantage prior to its filing of the pending motion. Take 5 also argues that the awarding of prejudgment interest is discretionary; the rate is discretionary; the Arbitrator should look to D.C. law for the rate; interest should not be compounded; and interest should be applied only to the purchase price portion of the Award.

"Damages," as defined in the APA, is a broad term. Prejudgment interest is an element of damages. *Tekstrom, supra*. The fact that §10.11(b) does not expressly reference interest as part of fee shifting is not determinative.

With respect to notice, Take 5 relies on *Bucheit v. Palestine Liberation Organization*, 388 F. 3d 346 (D.C. Cir. 2004). In that case, the district court denied a request for prejudgment interest on the ground that prejudgment interest was not mentioned during the proceeding and the rationale for awarding it was not mentioned prior to appeal. The Court held that the district court did not abuse its discretion in finding that the damages award was sufficient to fully compensate the plaintiff.

Based on my knowledge of the record since being appointed as Arbitrator, I conclude that the parties understood that Advantage was claiming interest as an element of damage. The parties also understood that prevailing party issues under §11.10(b), plus interest, would be handled after a hearing and decision on the merits. The prejudgment interest claim turns on questions of law and the exercise of discretion. Prior to the Interim Award, it was unnecessary for any party to introduce evidence specifically relating to interest. I find that Take 5 has not been unfairly prejudiced by the claim for interest.

The purpose of prejudgment interest is to make the plaintiff whole, not to punish the defendant. In the exercise of discretion, I award prejudgment interest but only on the purchase price component of the Award. The date of loss is fixed and Take 5 knew or shown have known that it was subject to a claim for reimbursement. The other components of the Award are not fixed as to date, the amounts were incapable of being determined until sometime after the closing, and with respect to most of the items included in the components, were incapable of being determined until well into this proceeding. In addition, the amounts were under the control of Advantage. *See E.M. Fleischmann Lumber Corp. v. Resources Corp. International*, 114 F. Supp. 843 (applying Del. Law) (D. Del. 1953).

An arbitrator has discretion whether to award simple or compound interest. *Gotham Partners, LP v. Hallwood Realty Partners, LP*, 817 A. 2d 160, 173 (Del. 2002). Based on equitable principles, the rate of interest may be varied. *Summa Corp. v. Trans World Airlines, Inc.*, 540 A. 2d 403, 409 (Del. 1988).

I conclude that simple interest should be awarded and that 7.25% is an appropriate rate. See 6 Del. C. §2301(a). Take 5 urges a lower rate, but I find no compelling reason why the Delaware legal rate should not be applied.

I decline to reduce the interest to 10% of the total, as urged by Take 5. Take 5 argues that it should be reduced to reflect the fact that the award was approximately 10% of the total damages claimed. In this matter, as stated above, the claims were based on fraud, including the contract claims because of limitation of liability clauses in the APA. There is nothing in §10.11(b) that would require allocation by claim. *See Comrie, supra*. Thus, I award prejudgment interest in the amount of $13,760,862.50 ($43,633,333.34 X .0725 X 4.35 years).

*Post-judgment Interest*

Advantage claims post-judgment interest beginning on August 4, 2022, the date of the Interim Award. I deny that request. The Interim Award was neither a final award not a final judgment. After this final Award is entered, a party will file a court action to convert the Final Award to a final judgment or to challenge it. Regardless, post-judgment interest is not within the scope of the arbitration agreement. The jurisdiction of the Arbitrator ends, with very limited exceptions, after the filing of the Final Award.

*Attorneys' Fees*

Greenberg Gross billed $6,777,739.58 based on hourly rates, and Advantage has paid that amount. Advantage explains that the hourly rate portion was based on a blended rate of $350/hour through June 30, 2020. Subsequently, the blended rate was reduced to $310.00. The billings were subject to a maximum of 10 hours per day per timekeeper. Advantage observes that the total sum billed reflects a reduction in the total hours spent.

Pursuant to the fee agreement between Advantage and Greenberg Gross dated as of September 19, 2019, the law firm is entitled to contingent fees in addition to the hourly fees. The contingent fees shall be 25% of the first $20 million of "Recovery" and 10% of "Recovery" in excess of $20 million. Recovery is defined to mean "the total of all monetary amounts received from any source in connection with this matter…." The fee agreement also provides that the contingent fees are earned "upon Clients' receipt of funds." As part of its motion, Advantage claims contingent fees in the amount of $9,552,061.76.

The fee agreement was produced in redacted form. Based on the language quoted, "Recovery" means amounts "received" by Advantage. I interpret that to mean awarded and collected. At this time, it is impossible to determine what amount will be "received."

There is nothing inherently unreasonable or unlawful about including contingent fees in fee shifting. See *Williams Companies, Inc. v. Energy Transfer LP*, 2021 WL 6136723 (Del. Ch. 2021). Moreover, the amount of the contingent fee in this case is not unreasonable and is an acceptable multiple of the lodestar (hours times rate). Nevertheless, §10.11(b) of the APA requires that fees be out-of-pocket. As stated, I interpret the fee agreement to mean that contingent fees are not determined and paid before collection. I interpret the APA to mean that

the costs must be out-of-pocket as of the time that the arbitration is concluded, not some undetermined time in the future. Moreover, applying the contingent fee to amounts as collected, without any ability to predict the result, and including a projected result in a current Award is simply unworkable. The efforts behind the dollar amounts sought would not be subject to a reasonableness review by the Arbitrator. The jurisdiction of the Arbitrator ends, with very limited exceptions, after the filing of the Final Award. I decline to award contingent fees.

With respect to the amount of attorneys' fees, if a party fails to prevail on a claim that is distinct from successful claims, the amount attributable to the unsuccessful claim should be excluded. As stated above, that is not the situation here. Nevertheless, not including the contingent fee in the Award is not unreasonable or inequitable when all factors are considered, including the level of success. *See Washington Nationals Stadium, LLC v. Arenas, Parks and Stadium Solutions, Inc.*, 192 A. 3d 581, 588 (D.C. Ct. App. 2018) and *Dreisbach v. Walton*, 2014 WL 5426868 at *5 (Del. 2014).

To be clear, I am not interfering with the fee agreement as between Advantage and its counsel. My only concern is fee shifting.

In addition to arguing that contingent fees should not be awarded, Take 5 challenges the reasonableness of the fixed fee, arguing that the blended rate was higher than the actual rate of some of the timekeepers, there was duplication of effort, some tasks were unrelated, and some were unnecessary. Based on a review of the exhibits, case law, my knowledge of these proceedings, and considering the factors in Delaware Rule of Professional Conduct 1.5, I conclude that the fees charged in the amount of $6,777,739.58 were fair, reasonable, and necessary. The rate was in line with rates charged others for similar services.

Advantage also claims fees paid to Young Conaway Stargett & Taylor, Delaware local counsel, in the amount of $215,336.47. Take 5 argues that the services were unnecessary and that the matter was overstaffed. Based on the factors identified above, I conclude that the fees were fair, reasonable, and necessary.

Advantage claims fees paid to Bozorgi Law, counsel for Peter Ward. Take 5 objects to the award of these fees. I decline to award those fees. Mr. Ward was a witness in these proceedings. Advantage's decision to pay his counsel fees was a business decision that should not be shifted to Take 5.

Advantage claims fees paid to Schlam Stone & Dolan LLP, counsel for Eva Hodgens. Take 5 objects to the award of these fees. I decline to award those fees. Ms. Hodgens was a witness in these proceedings. Advantage's decision to pay her counsel fees was a business decision that should not be shifted to Take 5.

Advantage claims fees paid to L&W in the amount of $325,818.00. Take 5 argues that it is impossible to tell if there is overlap with prior amounts that were included in the Interim Award and that there is duplication. The Interim Award included an amount paid to L&W. Based on my knowledge of the record, including testimony and exhibits reviewed in connection with

the preparation of the Interim Award, I conclude that the L&W cost is not duplicative and is fair, reasonable, and necessary.

*Expert Witnesses*

Advantage claims payments to Forensic Technologies Consulting, Inc. (FTI) in the amount of $2,105,324.20.

Based on a review of exhibits admitted on the merits and the exhibits filed in support of Advantage's motion, it appears that at least the bulk of the time reflected in this claim was incurred after the time period that formed the basis for the amount included in the Interim Award. Nevertheless, the amount of the claim is substantial and there is no detail for either the time or expenses in order to evaluate them. Based on my knowledge of the record, I am aware that Mr. Wei and Dr. Lasater engaged in an extensive analysis and testified as expert witnesses. Other than that, I have no knowledge as to what they did. Because of lack of detail, Advantage has failed to prove that the amounts currently claimed do not overlap in part the prior amounts awarded and that the total amount is fair, reasonable, and necessary. Based on my knowledge, I will award $350,000.00.

Advantage claims fees paid to BRG (Kalat) for expert witness services in the amount of $136,773.50. Take 5 argues that the invoices lack detail and there may have been overlap between timekeepers.

The invoices lack specificity and include many references to "data analytics" without further explanation. Nevertheless, I am familiar with the work that was done through documents and testimony. I conclude that the fees were fair, reasonable, and necessary and award $136,773.50.

Advantage claims fees paid to Peter Kent for expert witness services in the amount of $69,663.00. Take 5 argues that the invoices lack detail.

The invoices lack specificity. Nevertheless, I am familiar with the work that was done through documents and testimony. I conclude that the fees were fair, reasonable, and necessary and award $69,663.00.

*Subscription fees for access to platforms*

Advantage claims fees paid in the amount of $558,575.98. Take 5 argues that the fees are costs of doing business and are not sufficiently detailed.

These subscriptions and the parties' access to electronic information were the subject of several motions and rulings during the course of these proceedings. I ruled that the subscriptions had to be maintained and paid for in order to permit access to information. The costs were incurred because of this proceeding. This proceeding was initiated by Take 5, but there was a counterclaim and both parties needed access to the information. I award one-half of the costs in the amount of $279,287.99.

*Court Reporting Fees*

Advantage claims fees in the amount of $215,336.47. Take 5 argues that most of those fees were split, and the split should be maintained. I agree. Those costs remain as incurred.

*Other Costs*

Advantage claims costs in the amount of $106,930.00 paid to Major Lindsey & Africa for discovery assistance. Take 5 argues that there is insufficient detail. Based on all considerations identified above, I find the costs are fair, reasonable, and necessary. I award $106,930.00.

Advantage claims Greenberg Gross expenses in the amount of $11,591.27. Some of the expenses usually are included in overhead and reflected in the fee. Those costs were paid by Advantage, but I decline to include them in fee shifting. The Greenberg Gross billings consume several hundred pages. Given the small amount involved, it is not cost effective to review all pages to pick out specific charges. I reduce the expenses by approximately 15% and award $9,852.57.

*Declaratory Relief*

Advantage seeks an award of fees earned and paid in the future and for post-judgment interest through collection. I have already ruled on those items. I have determined that, under the APA, contractual fee shifting is determined as of the time of this Final Award. I am not addressing issues after entry of the Final Award. The jurisdiction of the Arbitrator ends, with very limited exceptions, with the filing of the Final Award. Again, this has no effect on the fee agreement between counsel and Advantage as between those parties and no effect on issues that are beyond the scope of the arbitration agreement and the jurisdiction of the Arbitrator.

Accordingly, I AWARD as follows:

1. Respondents and Counter-Claimants are awarded $48,325,822.29 against Claimants and Counter-Respondents as damages on their claims.

2. Claimants' and Counter-Respondents' claim for damages is denied.

3. Respondents and Counter-Claimants are the prevailing parties.

4. In addition to the above, Respondents and Counter-Claimants are awarded the following:

    (a) prejudgment interest in the total amount of $13,760,862.50;

    (b) attorneys' fees in the total amount of $7,318,894.05;

    (c) expert witness fees in the total amount of $556,436.50;

    (d) subscription fees in the total amount of $279,287.99; and

    (e) other costs in the total amount of $116,782.57.

      5. The court reporting fees totaling $215,336.47 shall be borne as incurred.

      6. Other than as set forth in the preceding paragraphs, this Award is in full settlement of all claims and counterclaims submitted to this Arbitration. All claims and counterclaims not expressly granted in this Award are denied. This Award may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall constitute together one and the same instrument. In all other respects, my final award dated October 4, 2022 is reaffirmed and remains in full force and effect.

      7. The administrative fees and expenses of the American Arbitration Association totaling $62,800.00 shall be borne $62,800.00 by Petruss Media Group, LLC f/k/a Take 5 Media Group, LLC, and the compensation and expenses of the arbitrator(s) totaling $170,720.00 shall be borne $170,720.00 by Petruss Media Group, LLC f/k/a Take 5 Media Group, LLC. Therefore, Petruss Media Group, LLC f/k/a Take 5 Media Group, LLC has to pay Advantage Sales & Marketing, LLC, an amount of $119,110.00.

I, Hon. James R. Eyler (Ret.), do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is my Modified Final Award.

October 19, 2022

                                                                                              */s/ James R. Eyler*
                                                                                             Judge James R. Eyler (Ret)
                                                                                                     Arbitrator