# EXHIBIT 11

**ORDER RULING ON ADVANGAGE'S MOTION TO DISMISS CETAIN COUNTS IN TAKE 5's AMENDED STATEMENT OF CLAIM**

Case Number: 01-19-0002-7532

**Petruss Media group, LLC**
**RJV Marketing Corp.**
**Richard Gluck**
**Alexander Radetich, Claimants, Cross-Respondents, and Counter-Respondent**
**(collectively the Take 5 Parties)**
**-vs-**
**Advantage Sales & Marketing, LLC**
**Advantage Sales & Marketing, Inc.**
**Karman Intermediate Corp.**
**Advantage Solutions, Inc.**
**Karman Topco, L.P., Respondents, Cross-Claimants and Counter-Claimants**
**(collectively the Advantage Parties)**

The claims in this case arise out of the sale of assets (the business) pursuant to an Asset Purchase Agreement (APA). Advantage Sales & Marketing, LLC purchased the assets of Take 5 Media Group, LLC. The parties to the APA consisted of Advantage Sales & Marketing, LLC, Take 5 Media Group, LLC, Alexander Radetich, Richard Gluck, and RJV Marketing Corp. The consideration for the assets was the payment of a certain amount of money at closing plus the payment of an earn-out amount at a later date. Subsequent to closing, the Advantage Parties shut down the business.

Petruss Media Group, LLC, f/k/a Take 5 Media Group, LLC, filed a demand for arbitration against Advantage Sales & Marketing, LLC. Advantage Sales & Marketing, LLC, Advantage Sales & Marketing, Inc., Karman Intermediate Corp., Advantage Solutions, Inc., and Karman Topco, L.P. filed counterclaims and cross claims against Petruss Media Group, LLC, Richard Gluck, Alexander Radetich, and RJV Marketing Corp.

The Advantage Parties filed a motion to amend their answer and counter/cross claims, which was granted. The Advantage parties denied many of the allegations in the statement of claim and raised several affirmative defenses. The counterclaim contains six counts against the Take 5 parties. Counts I and II allege breach of express provisions in the APA including those relating to indemnification, covenants, representations, and warranties. Count III alleges fraud in the inducement. Count IV alleges fraud post sale. Count V alleges a violation of RICO. Count VI alleges breach of the implied covenant of good faith and fair dealing.

Petruss Media Group, LLC filed a motion to amend its statement of claim, which was granted. In the amended statement of claim, Petruss Media Group, LLC, and Claimants Richard

1

Gluck, Alexander Radetich, and RJV Marketing Corp., "beneficial owners under the Asset purchase Agreement," brought claims against the Advantage Parties as Respondents.

In addition to adding parties, the amendments (1) added and deleted details that did not change the nature of the causes of action; (2) added and deleted allegations relating to the then recent disclosure by the Advantage Parties that an intended initial public offering (IPO) was not pursued but rather, in September 2020, agreed to proceed with a special-purpose acquisition company merger; (3) included new claims by Messrs. Gluck and Radetich for defamation based on statements to customers, employees, and other persons in the industry that they operated a fraudulent business; and (4) added new negligence claims by Messrs. Gluck and Radetich based on a failure to conduct an adequate investigation before shutting down the purchased business.

The amended statement of claim contains four counts. Count I is brought by the Take 5 Parties and alleges that the Advantage Parties breached an express provision in the APA, specifically, section 1.5(j). Count II is brought by the Take 5 Parties and alleges that the Advantage Parties breached the implied contractual covenant of good faith and fair dealing. Count III is brought by Messrs. Gluck and Radetich and alleges that the Advantage Parties defamed them by publishing false information accusing them of fraud. Count IV is brought by Messrs Gluck and Radetich and alleges that the Advantage Parties negligently conducted an investigation that led to their decision to shut down the business.

*Motion to Dismiss Counts III and IV*

The Advantage Parties filed a motion to dismiss Counts III and IV. With respect to defamation, the Advantage Parties contend that the claim is outside the scope of arbitration; is barred by limitations; and, because of lack of specifics, fails to state a cause of action.[1] With respect to the negligence claim, the Advantage Parties contend that they do not owe a duty to Messrs. Gluck and Radetich and, in addition, because of lack of specificity, the claim fails to state a cause of action.

The motion has been fully briefed. A hearing is unnecessary.

*Defamation-arbitrability*

Section 10.11 of the APA provides that "a dispute (a "Dispute") involving money damages **arising out of or relating to this Agreemen**t or any Ancillary Agreement, **or the Parties' respective rights and duties hereunder or thereunder** …." shall be resolved by arbitration. (Emphasis added.)

Section 10.12(a) of the APA provides:

---

[1] The Advantage Parties also allege that the Take 5 Parties lack standing to bring the defamation claim because the Advantage Parties bought and owned the business and thus they would not have any claims for injury to the business. The defamation claims are not brought by the Take 5 Parties, however. They are brought by Messrs Gluck and Radetich individually, seeking damages for harm to them.

> THIS AGREEMENT AND ANY DISPUTES ARISING OUT OF
> OR CONNECTED TO THIS AGREEMENT SHALL BE
> GOVERNED AND CONSTRUED IN ACCORDANCE WITH
> THE LAWS OF THE STATE OF DELAWARE, WITHOUT
> REGARD TO THE LAWS THAT MIGHT BE APPLICABLE
> UNDER CONFLICTS OF LAWS PRINCIPLES.

*Accord*: section 10.11(b) of the APA.

Because it involves interstate commerce, this matter is also governed by the Federal Arbitration Act (FAA), 9, U.S.C. §1, et seq. A question arises whether the choice of law provision in the APA is limited to Delaware substantive law or includes Delaware arbitration law, to the extent it is not inconsistent with the FAA. I need not decide that issue because, although the Delaware cases on arbitrability often use language that is somewhat different from language used by courts in other jurisdictions, ultimately, each case turns on its facts.

In analyzing a cause of action in the context of arbitrability, at least some of the Delaware cases emphasize the origin of the duty being violated or the right being exercised as distinguished from analyzing whether the underlying factual conduct is related to the arbitration agreement.

The relevant case law leads to the conclusion that the question of arbitrability in this proceeding is a close one. Despite the differences in the language used in the case law, however, I conclude that, on the facts alleged, the defamation claims are arbitrable.

In *Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 155 (Del. 2002), a stockholder of a corporation brought claims for breach of an underwriting agreement, for fraudulent inducement to enter into the agreement, and breach of fiduciary duties. The Supreme Court of Delaware held that that the arbitration clause did not encompass the breach of fiduciary duty claims.

To determine whether the breach of fiduciary duty claims was subject to arbitration, the Supreme Court of Delaware explained:

> When the arbitrability of a claim is disputed, the court is faced
> with two issues. First, the court must determine whether the
> arbitration clause is broad or narrow in scope. Second, the court
> must apply the relevant scope of the provision to the asserted legal
> claim to determine whether the claim falls within the scope of the
> contractual provisions that require arbitration. If the court is
> evaluating a narrow arbitration clause, it will ask if the cause of
> action pursued in court directly relates to a right in the contract. If
> the arbitration clause is broad in scope, the court will defer to
> arbitration on any issues that touch on contract rights or contract
> performance. This is a case of first impression in Delaware.

*   *   *

> By agreeing to submit to arbitration "any dispute, controversy, or claim arising out of or in connection with" the Underwriting Agreement, Xcelera, Mirror AB, and Plenteous have signaled an intent to arbitrate all possible claims that touch on the rights set forth in their contract. The issue is whether the arbitrable contract claims are connected to the fiduciary duty claims that are independently grounded on Delaware corporation law.

*Parfi*, at 155. Footnotes omitted.

> The issue is whether the fiduciary duty claims implicate any of the rights and obligations provided for in the Underwriting Agreement. Stated differently, do the fiduciary duty claims depend on the existence of the Underwriting Agreement?
>
> When parties to an agreement decide that they will submit their claims to arbitration, Delaware courts strive to honor the reasonable expectations of the parties and ordinarily resolve any doubt as to arbitrability in favor of arbitration. Nevertheless, arbitration is a mechanism of dispute resolution created by contract. An arbitration clause, no matter how broadly construed, can extend only so far as the series of obligations set forth in the underlying agreement. Thus, arbitration clauses should be applied only to claims that bear on the duties and obligations under the Agreement. The policy that favors alternate dispute resolution mechanisms, such as arbitration, does not trump basic principles of contract interpretation.
>
> When Xcelera, Mirror AB, and Plenteous agreed to the arbitration provision in the Underwriting Agreement they did not commit to bring into arbitration every possible breach of duty that could occur between the parties. The arbitration clause signals only an intent to arbitrate matters that touch on the rights and performance related to the contract. The term "arising out of or in connection with" must be considered in that light. The Court of Chancery should have concentrated on the similarity of the separate *rights* pursued by plaintiffs under both the contract and the independent fiduciary duties rather than the similarity of the *conduct* that led to potential claims for both the contract and fiduciary breaches of duty.
>
> Parfi can maintain an action based on the alleged breaches of the independent set of fiduciary duties that Xcelera owes Mirror Image stockholders even though the claims arise from some or all of the same facts that relate to the transactions that provided the basis for its contract claims. Xcelera's fiduciary duties to Mirror Image

4

>consist of a set of rights and obligations that are independent of any contract and need be submitted to arbitration only if the claims based on fiduciary duties touch on the obligations created in the Underwriting Agreement. If the Underwriting Agreement does not implicate Xcelera's fiduciary duties, the arbitration clause cannot bar Parfi from seeking the relief every other stockholder is entitled to under Delaware law.
>
>The Vice Chancellor painstakingly parsed the contractual language requiring that claims "arising out of or in connection with" the Underwriting Agreement must be submitted to arbitration. He properly held that the fiduciary duty claims do not "arise out of the" Agreement. But he concluded, we believe erroneously, that these claims are "in connection with" the Agreement. In our view, this latter conclusion gives a far too expansive a meaning to the word "connection." We conclude that the analysis must turn on the issue of whether the fiduciary duty claims would be assertable had there been no Underwriting Agreement. We hold that they would be independently and separately assertable in that situation and are therefore not "in connection with" the Agreement.

*Id* at 155-158. Footnotes omitted.

*See also 360 Campaign Consulting, LLC v. Diversity Communications, LLC,* 2020 WL 1320909, at *8 (Del. Ch. 2020) (interpreting language similar to that in the instant proceeding, court held that claims not directly related to a right in the contract are not arbitrable). *Feeley v. NHAOCG, LLC*, 62 A. 3d 649, 655-657 (Del. Ch. 2012) (A cause of action is independent of the contract if it could have been brought if the contract did not exist.)

     The following cases were decided in jurisdictions other than Delaware.

     In *Drews Distrib., Inc. v. Silicon Gaming, Inc*., 245 F. 3d 347, 351 (4th Cir. 2001), a case out of South Carolina, a claim for breach of an agreement that did not contain an arbitration clause was arbitrable because it expressly contemplated a later agreement that created obligations and did contain an arbitration clause.

     In *P&P Indus., Inc. v. Sutter Corp*, 179 F.3d 861, 971-872 (10th Cir. 1999), Sutter Corp., a manufacturer of medical devices, entered into an agreement with P&P Industries to represent Sutter products. The agreement contained a provision stating that any claim "arising out of or relating to" the agreement was subject to arbitration. When Sutter terminated the agreement, it contacted P&P's employees and other entities with whom P&P had a relationship. The district court ruled that Sutter's claims of tortious interference with P&P's employees and its relationships with third parties were arbitrable. On appeal, the 10th Circuit affirmed but discussed the factual conduct of Sutter, which was factually related to the agreement, not on the existence of rights or duties created by the contract.

In *Acevedo Maldonado v. PPG Industries, Inc.*, 514 F. 2d 614, 615-617 (1st Cir. 1975). residents of a town brought a claim against PPG for injuries sustained from gas escaping from a plant. PPG filed a third-party complaint against the entity that designed and built the plant. The agreement between PPG and that entity contained an arbitration clause. The court held that the third-party claim was arbitrable, observing that without the contract, there would have been no third-party claim. The court's emphasis was on the underlying factual conduct and whether the facts were related to the agreement in question.

In this proceeding, the Take 5 Parties have alleged that the APA closing took place on April 1, 2018; that on July 7, 2019, the Advantage Parties decided to shut down the business; and that "shortly thereafter," the Advantage Parties "launched a salvo of defamatory statements" against Messrs. Gluck and Radetich, which continued for some unspecified period-of-time. The Take 5 Parties further assert that the Advantage Parties perpetrated a scheme to shut down the business to avoid paying the earn-out to the Take 5 Parties, and the pretextual conclusion of fraud was a component of that scheme. The defamation is the publishing of the reasons for the shut-down.

This is not a typical defamation case involving a finite number, usually small, of defamatory utterances. Here, the alleged defamatory utterances were the reason given for shutting down the business, formed the basis for the alleged fraudulent inducement to enter into the APA and for breach of the APA, and necessarily were communicated on numerous occasions. The alleged fraudulent conduct cannot be separated from the contract issues. There are non-fraud issues, but focusing on that, if the Take 5 parties prevail on the issue of fraud, they likely will be successful on their contract claims. If they do not prevail on the issue of fraud, they likely will not prevail on their claims or defenses to the counterclaims. Although a defamation action would lie based on the tort duty not to defame, here, the defamation claims are intertwined with the contract claims both factually and in terms of contractual duties.

The facts that the Take 5 Parties allege were false and were published by the Advantage Parties were the Advantage Parties' stated basis for shutting down the business and thus a reason the Advantage Parties give to support their position that they did not breach the APA. Because the reason is part of the defense to the Take 5 parties' contract claims and a part of the Advantage Parties' counterclaims, the claims that flow from them are related to the APA. The claim of defamation and the contract claims are intertwined with respect to both factual conduct and duties under the APA, *i.e*, alleged fraud.

*Defamation-other issues*

The statute of limitations issue is fact dependent and will have to await resolution, either on a motion for summary disposition or after an evidentiary hearing.

The arbitration provision in the APA provides that discovery shall be governed by the Federal Rules of Civil Procedure but is silent with respect to pleading requirements. AAA Rule 4(e) provides that a statement of claim shall include "the nature of the claim including the relief sought and the amount involved."

With respect to the specificity of the allegations, as stated earlier, this is not a typical defamation action that turns on the dissemination of a specific defamatory utterance or utterances and the attendant circumstances. For reasons already stated, the claims and defenses in this matter are likely to succeed or fail based on the proof of facts with respect to the operation and shut-down of the business. At an appropriate point in time prior to the evidentiary hearing, pursuant to AAA Rule 22, to ensure fairness, I will order the parties to exchange information as necessary.

*Negligence*

The purpose of the APA was to document the agreement to sell the business. It contains typical representations and warranties and, in addition, indemnification provisions. Section 8.2 provides that Advantage Sales & Marketing, LLC, the buyer, will indemnify and hold harmless Take 5 Media Group, LLC and its equity holders, directors, officers, employees, and agents for damages for breach of any covenant or agreement in the APA or arising out of the ownership or operation of the purchased assets/business. The obligations are subject to certain limitations, including no liability for punitive damages. Section 8.2(f). The claims for breach of covenants expressly survive the closing. Section 8.1. In other words, the APA creates obligations of the parties and provides remedies and limitations on remedies.

As noted, Messrs. Gluck and Radetich allege that the Advantage Parties negligently conducted an investigation that led them to shut down the business. They argue that a tort duty to exercise reasonable care derives from the contractual duty in section 1.5(j) of the APA, which provides:

> Following the Closing, the Buyer shall have the right to operate the Business, Purchased Assets and Assumed Liabilities in its sole and absolute discretion, …and has no obligation to maintain or preserve any relationship with any client, customer, supplier, vendor, employee or contractor or the terms of any contract (including pricing). During the Earn-out Period, the Buyer shall maintain the Business as a separate business unit and shall not sell or transfer any material portion of the Purchased Assets to a third party that is not an affiliate of the Buyer, unless the acquiror of the purchased Assets expressly assumes and has the financial resources and wherewithal to fulfil the Buyer's obligations under this Section 1.5 with respect to any earn-out payments that are due or may become due to the Company. Notwithstanding the foregoing, during the Earn-out Period, the Buyer (i) will not take any action the purpose and intent of which is to circumvent the payment of the Initial Earn-out Amount or the Final Earn-out Amount and (ii) will maintain separate accounting records for the business.

Any obligation by the Advantage Parties' to conduct an investigation, if one exists, is contractual in nature. The APA provided for appropriate remedies agreed on by the parties. *See*

7

*Ellis v. Tri State Realty Assocs. LP,* 2015 WL 993438, at *7 (Del. Super. Ct. 2015). The negligence claims are for economic loss only. The alleged duty to investigate rests in contract, if at all. *See McKenna v. Terminex Int'l Co.,* 2006 WL 1229674, at *1–5 (Del. Super. Ct. 2006) (The economic loss doctrine precludes a party from bringing a negligence claim if the alleged damages are only economic losses.); *CB Lewes, LLC v. Brightfields, Inc.,* 2020 WL 6364521, at *1–4 (Del. Super. Ct. 2020).

To the extent there are exceptions, they do not apply. The APA is not a services contract. Compare *Restatement (Second) of Torts*, § 323:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.

The Advantage Parties' motion to dismiss the Count III (defamation) is denied. The Advantage Parties' motion to dismiss Count IV (negligence) is granted.

January 20, 2021

*James R Eyler*
Hon. James R. Eyler (Ret)
Arbitrator

8