**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PETRUSS MEDIA GROUP, LLC f/k/a TAKE 5 MEDIA GROUP, LLC, et al. <br><br>                 Petitioners, <br><br> v. <br><br> ADVANTAGE SALES & MARKETING LLC, et al., <br><br>                 Respondents. | Case No. 1:22-cv-3278 |

**MOTION TO DISMISS PETITION TO VACATE ARBITRATION AWARDS
DUE TO A SEPARATE PENDING ACTION TO CONFIRM AWARDS OR, IN THE
<u>ALTERNATIVE, TO STAY PETITION AND MOTION TO VACATE</u>**

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................................1

II.  SUMMARY OF FACTS AND PROCEDURAL HISTORY..............................2

    A.   Advantage discovers that Take 5's business is fraudulent.......................2

    B.   The arbitration and the arbitration awards .............................................4

    C.   The Advantage Parties' petition to confirm the Final Awards ...............6

III. ARGUMENT ......................................................................................................7

    A.   Venue is appropriate in Palm Beach County, Florida.............................7

    B.   Exceptional circumstances justify this Court's abstention from exercising jurisdiction over this matter ...................................................8

        1.   Factor 1:  Assumption of jurisdiction over property is neutral...................9

        2.   Factor 2:  Inconvenience of the federal forum weighs heavily in favor of abstention ...................................................9

        3.   Factor 3:  Avoidance of piecemeal litigation weighs heavily in favor of abstention ...................................................11

        4.   Factor 4:  The order in which the courts obtained jurisdiction favors abstention ...................................................13

        5.   Factor 5:  Source of law providing rule of decision on the merits weighs in favor of abstention...................................................14

        6.   Factor 6:  Adequacy of state proceedings to protect the parties' rights weighs in favor of abstention...................................................15

        7.   The contrived nature of this action weighs in favor of abstention............16

IV.  CONCLUSION..................................................................................................17

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AAR Int'l, Inc. v. Nimelias Enterprises S.A.*,
  250 F.3d 510 (7th Cir. 2001) ..................................................................9

*Adventure Outdoors, Inc. v. Bloomberg*,
  552 F.3d 1290 (11th Cir. 2008) .............................................................15

*Adweiss LLLP v. Daum*,
  208 So. 3d 760 (Fla. Dist. Ct. App. 2016) ............................................15

*Allied-Bruce Terminix Companies, Inc. v. Dobson*,
  513 U.S. 265 (1995) ..........................................................................14, 15

*Ambrosia Coal & Const. Co. v. Pages Morales*,
  368 F.3d 1320 (11th Cir. 2004) ..............................................................9

*Atkinson v. Grindstone Cap., LLC*,
  12 F. Supp. 3d 156 (D.D.C. 2014) ....................................................8, 12

*Bernstein v. Hosiery Mfg. Corp. of Morganton*,
  850 F. Supp. 176 (E.D.N.Y. 1994) ........................................................16

*Calvert Fire Ins. Co. v. Am. Mut. Reinsurance Co.*,
  600 F.2d 1228 (7th Cir. 1979) ...............................................................16

*Colorado River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976) ....................................................................... *passim*

*Columbia Plaza Corp. v. Sec. Nat'l Bank*,
  525 F.2d 620 (D.C. Cir. 1975) ...............................................................13

*Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.*,
  529 U.S. 193 (2000) ...........................................................................8, 10

*Delaney v. Capitol Hill Anesthesia Assocs., P.C.*,
  602 F. Supp. 1069 (D.D.C. 1985) ..........................................................12

*DePuy Synthes Sales, Inc. v. OrthoLA, Inc.*,
  953 F.3d 469 (7th Cir. 2020) .................................................................15

*Federated Rural Elec. Ins. Corp. v. Arkansas Elec. Cooperatives, Inc.*,
  48 F.3d 294 (8th Cir. 1995) ...................................................................12

*Foster-el v. Beretta U.S.A. Corp.*,
    163 F. Supp. 2d 67 (D.D.C. 2001) ............................................................9

*Groeneveld Transp. Efficiency v. Eisses*,
    297 F. App'x 508 (6th Cir. 2008) ...........................................................11

*Gullet v. Gullet*,
    188 F.2d 719 (5th Cir. 1951) ...................................................................11

*Handy v. Shaw, Bransford, Veilleux & Roth*,
    325 F.3d 346 (D.C. Cir. 2003) .................................................................13

*Hays v. Cave*,
    446 F.3d 712 (7th Cir. 2006) ...................................................................15

*Home Port Rentals, Inc. v. Int'l Yachting Grp., Inc.*,
    252 F.3d 399 (5th Cir. 2001) ...................................................................11

*Hurley v. Heilig*,
    28 F. Supp. 2d 33 (D.D.C. 1998) .......................................................12, 14

*Interstate Material Corp. v. City of Chicago*,
    847 F.2d 1285 (7th Cir. 1988) ..............................................................9, 16

*Johns v. Rozet*,
    770 F. Supp. 11 (D.D.C. 1991) ...............................................................16

*Jurisek v. Brooks*,
    No. 00 C 7215, 2001 WL 300588 (N.D. Ill. Mar. 23, 2001) ....................16

*Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.*,
    342 U.S. 180 (1952) ............................................................................8, 12

*LaDuke v. Burlington N.R. Co.*,
    879 F.2d 1556 (7th Cir. 1989) .................................................................11

*Legal Helpers Debt Resol., L.L.C. v. CDS Client Servs., Inc.*,
    No. 12 C 3055, 2012 WL 4174996 (N.D. Ill. Sept. 17, 2012).................14

*Mazuma Holding Corp. v. Bethke*,
    1 F. Supp. 3d 6 (E.D.N.Y. 2014) .............................................................16

*Mikulski v. Centerior Energy Corp.*,
    501 F.3d 555 (6th Cir.2007) ....................................................................15

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)...............................................................9, 12, 14, 16

*NitGen Co. v. SecuGen Corp.*,
    No. C 04-02912 JW (RS), 2004 WL 2303929 .......................................................12

*Nitro-Lift Techs., L.L.C. v. Howard*,
    568 U.S. 17 (2012)...............................................................................................14

*Quinn v. AVCO Corp.*,
    No. 1:15-CV-01005-RGA, 2017 WL 10056803 (D. Del. May 19, 2017).............................10

*Reiter v. Universal Marion Corp.*,
    173 F. Supp. 13 (D.D.C. 1959)................................................................................13

*Rio Grande Cmty. Health Ctr., Inc. v. Rullan*,
    397 F.3d 562 (1st Cir. 2005)...............................................................................9, 16

*Sheehan v. Koonz*,
    102 F. Supp. 2d 1 (D.D.C. 1999).........................................................................9, 11

*Starr v. Levin*,
    No. 02 C 2258, 2002 WL 1941375 (N.D. Ill. Aug. 21, 2002)................................................10

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
    538 U.S. 408 (2003)..............................................................................................15

*Travelers Indemnity Co. v. Madonna*,
    914 F.2d 1364 (9th Cir. 1990) ...............................................................................11

*Tyrer v. City of S. Beloit, Ill.*,
    456 F.3d 744 (7th Cir. 2006) ...........................................................................14, 16

*Vulcan Chem. Techs., Inc. v. Barker*,
    297 F.3d 332 (4th Cir. 2002) .................................................................................12

*Watermark Harvard Square, LLC v. Calvin*,
    No. 17-CV-00446-RM-KMT, 2018 WL 1166707 (D. Colo. Mar. 6, 2018) .........................15

**Statutes**

Federal Arbitration Act .................................................................................8, 14, 15

Fla. Stat. Ann. §§ 55.501-55.509 .....................................................................................11

Foreign Judgments Act ...............................................................................................11

## I.    **INTRODUCTION**

The Advantage Parties[1] hereby move this Court under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), to dismiss the Take 5 Parties'[2] petition to vacate arbitration awards entered against them in favor of an earlier filed proceeding in Florida that seeks to confirm the awards and raises identical issues (the "Florida Action").[3]  As discussed below, every one of the *Colorado River* factors favors dismissal or is neutral.  The petitioners here are all Florida residents, and no party is a resident of Washington, D.C.  The fraud underlying the arbitration awards was committed in Florida, and most of the fact witnesses live in Florida.  None live in Washington, D.C.  The only potential nexus to Washington, D.C. is that the arbitration was deemed to have taken place there per the parties' agreement, but it did not actually take place in Washington, D.C.  It took place virtually; the Take 5 Parties remained in Florida for the hearing, and the Take 5 Parties' counsel who participated in the arbitration did so from Florida.  The arbitrator, the Hon. James R. Eyler (Ret.), participated from Maryland.

Further, the Florida Action was initiated first, when the Advantage Parties filed a petition to confirm the awards, and although the Take 5 Parties took steps to try to give this Court jurisdiction first, they never served respondent Advantage Solutions Inc. and never served any of the Advantage Parties with an unredacted copy of the Petition to Vacate.  So the Florida court was the first to acquire jurisdiction over all the parties.

---

[1] Respondents Advantage Sales & Marketing LLC ("Advantage"), Advantage Sales & Marketing Inc., Karman Intermediate Corp., and Karman Topco L.P.

[2] Petitioners Petruss Media Group, LLC f/k/a Take 5 Media Group LLC ("Take 5"), RJV Marketing Corp., Richard Gluck, and Alexander Radetich.

[3] The Petition to Vacate or Set Aside Arbitration Awards, ECF No. 1, and the Motion to Vacate or Set Aside Arbitration Awards, ECF No. 3, are substantively identical and are defined collectively herein as the "Petition to Vacate."

1

The Take 5 Parties have filed a petition to vacate the awards in Florida, and the Advantage Parties intend to file a response to that petition in Florida. The Petition to Vacate filed here is simply a vexatious attempt to delay confirmation of the awards and is blatant forum shopping. Therefore, the Advantage Parties respectfully request that this Court exercise its discretion to decline jurisdiction and dismiss the Petition to Vacate or, in the alternative, to stay these proceedings, including the pending Motion to Vacate or Set Aside Arbitration Awards. (ECF No. 3.)

## II.    SUMMARY OF FACTS AND PROCEDURAL HISTORY

### A.    Advantage discovers that Take 5's business is fraudulent

In his 45-page single spaced Interim Award ("IA"), Declaration of Michael Strub ("Strub Decl.") Ex. B, and his subsequent Modified Final Award ("FA"), Strub Decl. Ex. C, Judge Eyler set forth in detail the bases for his decision.

"Take 5 LLC was founded in 2003 by Messrs. Radetich and Gluck." Strub Decl. Ex. B [IA] at 2. "Its principal office was in Florida." *Id.* Mr. Radetich and Mr. Gluck represented to Advantage that Take 5 primarily was an email marketing company that had 160 million double opt-in email addresses (*i.e.*, that the email owner twice had agreed to have the email address included in the database) and performed 100% of its email marketing in-house. *Id.* at 6. Advantage was interested in acquiring an "email marketing business because Advantage already provided other marketing services but did not have email marketing capability." *Id.* at 6; *see also id.* at 7. Thus, at the time of the acquisition, "Take 5 LLC primarily sold email marketing services," and Advantage "wanted email capability as represented by Take 5." *Id.* at 36.

On March 15, 2018, Advantage entered into an Asset Purchase Agreement ("APA") to acquire the assets of Take 5 from its owners, Alexander Radetich, Richard Gluck, and RJV

Marketing Corp, for approximately $77 million.  *See* Strub Decl. Ex. B [IA] at 1, 3, 22.  "The sale closed on April 1, 2018."  *Id.* at 2.

In the Spring of 2019, Advantage executives became concerned about the Take 5 business unit's reporting of services to customers and began an internal investigation.  That investigation revealed that Take 5 actually had only a small fraction of the email records that it claimed to have and that the quality of those records was poor.  Strub Decl. Ex. B [IA] at 8.  Rather than sending emails, Take 5 was hiring low cost, poor quality pay-per-click ("PPC") vendors to click on its clients' websites to try to mimic customers clicking on links from emails.  *Id.* at 8–9.  Take 5 also was generating artificial reports using algorithms to randomly report to clients how many emails it supposedly was deploying and how many emails had been successfully delivered to customers and how many had opened them.  *Id.*  These reports were completely made up based on the number of emails that the client had ordered.  *Id.*

Separately from its internal investigation, Advantage retained FTI Consulting to audit the accuracy and reliability of reports that Take 5 had sent to its customers.  Strub Decl. Ex. B [IA] at 10.  Based on its audit, FTI Consulting learned that the results in the reports were generated by algorithms that randomly calculated the supposed results of the email campaign – such as the number of emails customers had opened – by using an algorithm that would derive that number based on the number of clicks from the PPC vendors that Take 5 had ordered.  *Id.* at 11.

Advantage executives discussed the investigation and audit with Mr. Radetich, who claimed that the third-party vendors were sending the missing emails (notwithstanding the representation that all emails were sent in-house).  Strub Decl. Ex. B [IA] at 9.  Advantage investigated this assertion and determined that third-party vendors were not sending emails; they were generating clicks.  *See id.* at 8, 10.  For his part, Mr. Gluck "stated that clients did not care

about emails, that they really wanted clicks, and that they were aware of Take 5's business practices and were fine with them." *Id.* at 9.  This made no sense.  Why would a client simply want, and pay for, "clicks" on its website by a third-party vendor, rather than a potential customer?   Advantage nevertheless contacted clients and found that this assertion, unsurprisingly, was not true either.  *Id.*

> **B.**     <u>The arbitration and the arbitration awards</u>

"In early July 2019, Advantage management concluded that the business practices [of Take 5] were fraudulent.  On July 11, 2019, Advantage shut down the Take 5 business unit." Strub Decl. Ex. B [IA] at 2.  In September 2019, the Take 5 Parties filed a demand for arbitration, and the Advantage Parties filed a counterclaim for breach of the APA and fraud.  *Id.* The Take 5 Parties initially were represented in the arbitration by McDermott Will & Emery, the firm that filed the present Petition to Vacate, but they subsequently retained Richard Roth of The Roth Law Firm PLLC, which is in New York, and Dennis Richard of Richard and Richard, P.A., which is in Miami, Florida.  Strub Decl. ¶ 2.

"The parties engaged in extensive discovery and motions practice, leading to" a 15-day evidentiary hearing in January, February, and May 2022.  Strub Decl. Ex. B [IA] at 3.  "Many witnesses testified, including experts.  The parties introduced voluminous exhibits."  *Id.*  "On June 29, 2022, each party filed a post-hearing brief.  On July 5, 2022, counsel for the parties presented oral arguments."  *Id.*

On August 4, 2022, Judge Eyler entered the Interim Award in favor of the Advantage Parties holding, in part, that:

> [P]rior to the acquisition, Take 5, including Messrs. Gluck and Radetich, knowingly misrepresented <u>to Advantage</u> the following with the intent to induce its reliance: (1) the nature and quality of Take 5 LLC's database of email addresses, demographic overlay,

4

> and other data; (2) Take 5 LLC's in-house capability to send large numbers of targeted emails as part of advertising campaigns; and (3) that it had deployed/delivered emails for which it had billed clients and received payment when it had not done so.  I further find that Advantage justifiably relied on the misrepresentations and that Advantage was harmed.
>
> Messrs. Gluck and Radetich participated in the misrepresentations in part and had knowledge of other misrepresentations by representatives of Take 5 LLC.  The knowledge is revealed in testimony and, *inter alia*, many email communications.

Strub Decl. Ex. B [IA] at 36 (emphasis in original).

As demonstrated in the Advantage Parties' Post-Hearing Brief, Strub Decl. Ex. A, Judge Eyler's awards are supported by overwhelming evidence, including admissions by Take 5's former employees that the company was committing fraud and a forensic investigation of its in-house email delivery system and its data.  In fact, Take 5 sent fewer than 3% of the number of emails that its clients ordered.  Strub Decl. Ex. B [IA] at 12–13.

Judge Eyler found that the Take 5 Parties had fraudulently breached numerous representations and warranties in the APA, Strub Decl. Ex. B [IA] at 32–38, and awarded the Advantage Parties $48,325,822.29 in damages and also held that the Advantage Parties were entitled to recover attorney's fees and costs, *id.* at 43–44.  The Advantage Parties submitted their application for attorney's fees and costs, which the Take 5 Parties opposed.  On October 4, 2022, Judge Eyler issued his Final Award, which he modified on October 20, 2022, to address what both parties agreed was a clerical error.[4]  Strub Decl. Ex. C.  In his Modified Final Award, Judge Eyler repeated his finding that the Take 5 Parties committed fraud:  "As stated many times in this

---

[4] The parties agreed that in his initial Final Award, Judge Eyler made a clerical error in stating the total amount of damages.  *See* Strub Decl. Ex. D [10/14/2022 letter from L. Richman to M. Conger] at 2 ("The Take 5 Parties agree that this correction accurately reflects the damages awarded by the Arbitrator in the August 4, 2022 Interim Award.").

proceeding, the gravamen of Advantage's claims was fraud.  Fraud was found." *Id.* at 5.  Judge

Eyler awarded the Advantage Parties $48,325,822.29 in damages and an additional

$22,032,263.60 in costs.  *Id.* at 10–11.

**C.**    **The Advantage Parties' petition to confirm the Final Awards**

On October 20, 2022, the same day that Judge Eyler issued his Modified Final Award,

the Advantage Parties filed a Petition to Confirm Arbitration Awards and for Entry of Final

Judgment in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County,

Florida, Case No. 5-2022-CA-010374.  Strub Decl. Ex. E [Petition to Confirm].  Counsel for the

Advantage Parties sent an email to counsel for the Take 5 Parties on October 20 – including

counsel now representing them in connection with the present action – asking if they would

accept service of the Petition to Confirm.  *See* Strub Decl. Ex. F [10/20/2022 email thread from

Michael H. Strub, Jr. to Lisa Richman, *et al.*].  Counsel responded the following day saying that

she had been unable to speak with her clients to confirm whether she was authorized to accept

service.  *See id.*

On October 25, 2022, counsel for the Take 5 Parties notified counsel for the Advantage

Parties that she was not authorized to accept service of process.  *See* Strub Decl. Ex. G

[10/25/2022 email from Lisa Richman to Michael H. Strub, Jr., *et al.*].  The following day,

October 26, the Take 5 Parties filed the Petition to Vacate in this Court.  (ECF No. 1.)  Counsel

for the Take 5 Parties never contacted counsel for the Advantage Parties about the petition.  They

then attempted to serve redacted versions of the Petition to Vacate on the Advantage Parties.

Strub Decl. ¶ 16.  They did not.  According to the Affidavit of Service, a process server claims to

have "served Advantage Solutions Inc. c/o Prentice-Hall Corporation System, Registered Agent

at 1090 Vermont Avenue, NW, Suite 430, Washington, DC 20005" with the summons and

Petition to Vacate. (ECF No. 11.) The entity that was served is not the same entity that is the party to this case. Declaration of Bryce Robinson ("Robinson Decl.") ¶¶ 3–4. The party to the arbitration, Advantage Solutions Inc., does not do business in Washington, D.C., and does not have an agent for service of process there. Robinson Decl. ¶¶ 2–3. The registered agent for Advantage Solutions Inc. is CSC, and the Petition to Vacate was never served on CSC. Robinson Decl. ¶¶ 3–4.

Moreover, all the papers that the Take 5 Parties served were redacted. Strub Decl. ¶ 16. To date, none of the Advantage Parties has been served with a full, unredacted copy of the D.C. Petition to Vacate. Strub Decl. ¶ 16.

Although the Take 5 Parties' counsel refused to accept service of process, the Advantage Parties were able to serve all of them. Strub Decl. ¶¶ 18–19 & Exs. I, J. Thus, the Florida Action is at issue and Florida is the first court to acquire jurisdiction over all the parties.

On November 1, 2022, the Take 5 Parties filed in the Florida Action an opposition to the petition to confirm the arbitration awards and a motion to vacate the arbitration awards. Strub Decl. ¶ 17 & Ex. H [Florida Petition to Vacate]. The Take 5 Parties admitted that they are moving to vacate the awards in Florida "for the same reasons already set forth in the federal action" filed in this Court. Strub Decl. ¶ 17 & Ex. H [Florida Petition to Vacate] at 3. Thus, both proceedings clearly are parallel. The Advantage Parties intend to file a response to the Florida Petition to Vacate. Strub Decl. ¶ 20.

## III.    **ARGUMENT**

### A.    **Venue is appropriate in Palm Beach County, Florida**

As the Take 5 Parties admit in their D.C. Petition to Vacate, each of them resides in Boca Raton, Florida. Pet. to Vacate ¶¶ 1–4 (ECF No. 1). Boca Raton is a city in Palm Beach County,

Florida.  https://en.wikipedia.org/wiki/Boca_Raton,_Florida.  Palm Beach County is therefore an appropriate venue to enforce the arbitral awards.  *See Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.*, 529 U.S. 193, 202 (2000) (arbitration award under the Federal Arbitration Act ("FAA") can be enforced where defendants reside).

**B.**    **Exceptional circumstances justify this Court's abstention from exercising jurisdiction over this matter**

"The doctrine of abstention establishes a framework for when a federal district court that has jurisdiction over a matter may exercise its discretion and decline to hear the case."  *Atkinson v. Grindstone Cap., LLC*, 12 F. Supp. 3d 156, 160 (D.D.C. 2014).  Based on the principles set forth in *Colorado River*, 424 U.S. at 817, federal courts may exercise their discretion to dismiss or stay cases "involving the contemporaneous exercise of concurrent jurisdictions" by state and federal courts based "on considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'"  *See Colorado River*, 424 U.S. at 817 (quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.*, 342 U.S. 180, 183 (1952)).

The decision whether to abstain necessarily requires resolving the tension between the federal court's obligation to exercise jurisdiction and the "combination of factors counselling against that exercise."  *Colorado River*, 424 U.S. at 818.  The Supreme Court has identified six factors to guide the analysis for *Colorado River* abstention:  (1) whether the subject matter of the litigation involves property where the first court may assume jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights.

*Colorado River*, 424 U.S. at 818–19; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15–16 (1983); *Sheehan v. Koonz*, 102 F. Supp. 2d 1, 3 (D.D.C. 1999) (listing factors). Another factor that is often considered is the vexatious or contrived nature of the federal claim. *See, e.g. Rio Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 71–72 (1st Cir. 2005); *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288–89 (7th Cir. 1988) (affirming district court decision to grant stay where federal case "could be considered both vexatious and contrived"). Applying these factors and the caselaw interpreting them demonstrates overwhelmingly that the Court should dismiss the Petition to Vacate and permit the Florida Action to proceed.

### 1. Factor 1: Assumption of jurisdiction over property is neutral

The first factor entails determining whether the subject matter of the litigation involves property where the first court may assume jurisdiction to the exclusion of others. *Colorado River*, 424 U.S. at 818. Neither this action nor the Florida Action involves jurisdiction over property. Accordingly, this factor is inapplicable and therefore neutral. *See Foster-el v. Beretta U.S.A. Corp.*, 163 F. Supp. 2d 67, 71 (D.D.C. 2001) ("This case, however, does not involve jurisdiction over property. Accordingly, this first factor does not weigh in favor of or against abstention.").

### 2. Factor 2: Inconvenience of the federal forum weighs heavily in favor of abstention

Factor 2 examines "the relative inconvenience of the competing fora to the parties." *AAR Int'l, Inc. v. Nimelias Enterprises S.A.*, 250 F.3d 510, 522–23 (7th Cir. 2001). "This factor should focus primarily on the physical proximity of the federal forum to the evidence and witnesses." *Ambrosia Coal & Const. Co. v. Pages Morales*, 368 F.3d 1320, 1332 (11th Cir. 2004).

This factor strongly favors abstention. The Take 5 Parties all reside in Florida, which "is normally a defendant's most convenient forum." *Cortez*, 529 U.S. at 200. None of the parties or witnesses reside in Washington, D.C. (The Advantage Parties are California residents.) The only conceivable connection is that, per the agreement of the parties, the arbitration was "deemed" to have taken place in Washington, D.C., but this is an artificial designation, as nothing actually occurred there. The arbitration occurred virtually over Zoom.

Judge Eyler presided over the arbitration from his home office in Maryland. Strub Decl. ¶ 3. The Take 5 Parties and their counsel participated from Florida. Strub Decl. ¶ 6. Because Take 5's principal place of business was Boca Raton, Florida, most of the fact witnesses live in Florida and testified from there. *See* Strub Decl. ¶ 5. The Advantage Parties and counsel participated from California. Strub Decl. ¶ 4. Moreover, the Take 5 Parties committed the fraud out of their office in Boca Raton, Florida. *See* Strub Decl. Ex. B [IA] at 11. No one resided in Washington, D.C., nor testified from Washington, D.C. Strub Decl. ¶ 7. No event giving rise to the Arbitration occurred in Washington, D.C.

The same remains true for the present litigation and the Florida Action. No one resides in Washington, D.C. (except for D.C. counsel retained for this matter), and the Take 5 Parties and most of the fact witnesses continue to reside in Florida. *Id.*

For these reasons, the inconvenience of the federal forum weighs strongly in favor of staying this case. *See Quinn v. AVCO Corp.*, No. 1:15-CV-01005-RGA, 2017 WL 10056803, at *1 (D. Del. May 19, 2017) (holding that the inconvenience of the federal forum weighed in favor of staying Delaware proceedings in light of Wisconsin state proceedings because two of the plaintiffs resided in Wisconsin and "[n]o plaintiff resides in Delaware, nor did any event giving rise to the lawsuit occur in Delaware"); *Starr v. Levin*, No. 02 C 2258, 2002 WL 1941375, at *4

(N.D. Ill. Aug. 21, 2002) (holding that inconvenience of federal forum justified staying action in Illinois in favor of action in Florida where party resided in Michigan but was already litigating in Florida); *cf. Groeneveld Transp. Efficiency v. Eisses*, 297 F. App'x 508, 511 (6th Cir. 2008) (affirming decision to stay case in Ohio pending completion of litigation in Canada because Ohio was an inconvenient forum for plaintiff who lived in Canada).

Moreover, because all the Take 5 Parties reside in Florida, a substantial portion (if not all) of their assets is located in Florida as well. Once the awards are confirmed in Florida, the Advantage Parties can enforce the judgment. If the awards were confirmed in Washington, D.C., the Advantage Parties would need to register them as a foreign judgment before enforcing them in Florida. *See, e.g.*, *Home Port Rentals, Inc. v. Int'l Yachting Grp., Inc.*, 252 F.3d 399, 404 (5th Cir. 2001) (28 U.S.C. § 1963 provides for the "registration of one federal district court's money judgment in another federal district court as the precursor to enforcement of the original judgment in the latter court"); *Gullet v. Gullet*, 188 F.2d 719, 721 (5th Cir. 1951) (discussing registration of judgment from District of Columbia in Florida); Fla. Stat. Ann. §§ 55.501-55.509 (Florida Enforcement of Foreign Judgments Act).

### 3. Factor 3: Avoidance of piecemeal litigation weighs heavily in favor of abstention

The "predominant factor" – concern for piecemeal and potentially inconsistent judgments – also strongly favors abstention. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Sheehan*, 102 F. Supp. 2d at 3–4 (quoting *Travelers Indemnity Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990)); *LaDuke v. Burlington N.R. Co.*, 879 F.2d 1556, 1560 (7th Cir. 1989) (quotations omitted). Because the policies underlying the *Colorado River* abstention doctrine are considerations of wise judicial administration, courts have given the greatest weight to

considerations of avoiding piecemeal litigation. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 19 ("[T]he consideration that was paramount in *Colorado River* itself [was] the danger of piecemeal litigation"); *Federated Rural Elec. Ins. Corp. v. Arkansas Elec. Cooperatives, Inc.*, 48 F.3d 294, 297 (8th Cir. 1995) ("The Supreme Court cases make it clear that this is the ***predominant factor***.") (emphasis added).  An exception to a district court's exercise of jurisdiction permits abstention "in certain exceptional circumstances of parallel, duplicative litigation in the interest of sound 'judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Colorado River*, 424 U.S. at 817 (quoting *Kerotest Mfg. Co.*, 342 U.S. at 183).

Piecemeal litigation "could result in contradictory or, at a minimum, irreconcilable rulings," and an "'unseemly race to the finish line between the two actions [with] the winner seeking to impose the rules of res judicata in the other action.'" *Hurley v. Heilig*, 28 F. Supp. 2d 33, 35 (D.D.C. 1998) (citing *Delaney v. Capitol Hill Anesthesia Assocs., P.C.*, 602 F. Supp. 1069, 1070 (D.D.C. 1985)).  Instead, "it is highly desirable for one court to decide the identical issues presented by the respective [actions]." *Hurley*, 28 F. Supp. 2d at 35.

Applying the *Colorado River* doctrine, numerous courts have dismissed petitions to confirm or vacate an arbitration award in deference to parallel state proceedings.  *See, e.g.*, *Atkinson v. Grindstone Cap.*, LLC, 12 F. Supp. 3d 156 (D.D.C. 2014) (in deference to state court proceedings, court dismissed petition to confirm arbitration award); *NitGen Co. v. SecuGen Corp.*, No. C 04-02912 JW (RS), 2004 WL 2303929, at *6 (N.D. Cal. Oct. 12, 2004 (same); *Vulcan Chem. Techs., Inc. v. Barker*, 297 F.3d 332, 343 (4th Cir. 2002) (district court abused its discretion by not abstaining from deciding petition to vacate arbitration award where petition to confirm award had been filed in California).

The proceedings here and in the Florida Action are parallel since they involve the same parties litigating the exact same issues. The Florida Petition to Vacate is identical to the Petition to Vacate filed in this Court, and the Take 5 Parties admit they initiated this matter "for the same reasons" as stated in their Florida Petition. Strub Decl. Ex. H [Florida Petition to Vacate] at 3. If the parties are required to proceed in both fora, they and the Court would be forced to engage in entirely duplicative and wasteful efforts. *See, e.g., Reiter v. Universal Marion Corp.*, 173 F. Supp. 13, 15 (D.D.C. 1959) ("The Court has to consider not only the expense that would be caused to the parties involved by an unnecessary trial but also the unnecessary consumption of the time of this Court which could be accorded to other litigants."); *Handy v. Shaw, Bransford, Veilleux & Roth*, 325 F.3d 346, 349 (D.C. Cir. 2003) ("[S]eparate parallel proceedings have long been recognized as a judicial inconvenience." (citing *Columbia Plaza Corp. v. Sec. Nat'l Bank*, 525 F.2d 620, 626 (D.C. Cir. 1975)); *Columbia Plaza Corp.*, 525 F.2d at 626 ("Sound judicial administration counsels against separate proceedings, and the wasteful expenditure of energy and money incidental to separate litigation of identical issues should be avoided.") (footnotes omitted)).

Dismissing this case avoids piecemeal litigation; this factor weighs heavily in favor of abstention.

### 4.    Factor 4:  The order in which the courts obtained jurisdiction favors abstention

The next factor requires determining the order in which the courts obtained jurisdiction and the progress achieved in each action. As discussed above, the Florida Action was filed first and the Florida court was the first court to obtain jurisdiction over all the parties. The Take 5 Parties have never served Advantage Solutions Inc., and none of the Advantage Parties has been served with full and complete copies of the D.C. Petition to Vacate. Even if the Take 5 Parties

had succeeded in their effort to serve the Advantage Parties before the Advantage Parties served

them, that should be given no weight due to their efforts to delay service of the Florida Petition

to Vacate, as doing so would serve to "reward a strategic gamesmanship that has no place in a

dual system of federal and state courts." *See Tyrer v. City of S. Beloit, Ill.*, 456 F.3d 744, 756

(7th Cir. 2006) (affirming district court decision to abstain); *Legal Helpers Debt Resol., L.L.C. v.

CDS Client Servs., Inc.*, No. 12 C 3055, 2012 WL 4174996, at *3 (N.D. Ill. Sept. 17, 2012)

(same).

### 5.    Factor 5:  Source of law providing rule of decision on the merits weighs in favor of abstention

The FAA allows both state and federal courts to enforce arbitral awards.  *See, e.g., Allied-

Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265 (1995).  In fact, "[s]tate courts rather

than federal courts are most frequently called upon to apply the [FAA] including the Act's

national policy favoring arbitration."  *Nitro-Lift Techs., L.L.C. v. Howard*, 568 U.S. 17, 17

(2012).

However, although the FAA governs procedure, the substantive law in question is

entirely state-law based.  The Arbitrator based his awards solely on Delaware law, and the Take

5 Parties' challenges to the arbitration awards in their identical petitions to vacate are based

solely on Delaware law.  *Compare* Petition to Vacate (ECF No. 1) and Strub. Decl. Ex. H

[Florida Petition to Vacate]; *see also* APA, § 10.12, Declarations of Laura Evans (ECF Nos. 1-

13; 3-8) Ex. 5.  Federal law is not implicated.  This factor therefore weighs in favor of

abstention.

As there are no significant federal-law issues, this factor weighs in favor of abstention.

*Moses H. Cone Mem'l Hosp.*, 460 U.S. at 26; *Hurley*, 28 F. Supp. 2d at 35 (court abstained from

exercising jurisdiction in part because the case did "not involve a question of federal law").  The

14

mere fact that enforcement of the arbitration award is governed by the FAA is not sufficient to support abstention under this factor. *See DePuy Synthes Sales, Inc. v. OrthoLA, Inc.*, 953 F.3d 469, 478 (7th Cir. 2020) (where enforceability of agreement was governed by state law, and arbitrability was governed by the FAA, "the applicable law is at best a neutral factor"); *Watermark Harvard Square, LLC v. Calvin*, No. 17-CV-00446-RM-KMT, 2018 WL 1166707, at *6 (D. Colo. Mar. 6, 2018) (where state law governed substantive dispute and FAA governed arbitration agreement, "this factor neither favors nor disfavors abstention"), report and recommendation adopted, No. 17-CV-00446-RM-KMT, 2018 WL 1952587 (D. Colo. Mar. 29, 2018).

### 6.    Factor 6:  Adequacy of state proceedings to protect the parties' rights weighs in favor of abstention

The FAA allows state courts to confirm or vacate arbitral awards, *Allied-Bruce Terminix Companies, Inc.*, 513 U.S. at 265, and the Florida Court can adequately adjudicate the post-arbitration proceeding under Delaware law, *see, e.g., Adweiss LLLP v. Daum*, 208 So. 3d 760, 761 (Fla. Dist. Ct. App. 2016) (applying Delaware law).  "[S]tate courts are generally presumed competent to interpret and apply" the law.  *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 560 (6th Cir.2007); *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1301 (11th Cir. 2008); *Hays v. Cave*, 446 F.3d 712, 714 (7th Cir. 2006). ("[T]here is nothing unusual about a court having to decide issues that arise under the law of other jurisdictions.").

Moreover, Florida has a legitimate interest in punishing its own residents for conduct taking place within its borders, while Washington, D.C. has no similar interest.  *Cf. State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 421 (2003) ("Nor, as a general rule, does a State have a legitimate concern in imposing punitive damages to punish a defendant for unlawful acts committed outside of the State's jurisdiction.").

### 7.    The contrived nature of this action weighs in favor of abstention

In determining whether to abstain from exercising jurisdiction, federal courts may also consider the vexatious or contrived nature of the federal claim.  *See, e.g., Johns v. Rozet*, 770 F. Supp. 11, 14 (D.D.C. 1991) (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 17, 21, 23, 26, n. 20); *Rio Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 72 (1st Cir. 2005); *Tyrer*, 456 F.3d at 756 ("[A]llowing the two suits to proceed concurrently would waste the parties' resources, risk duplicative rulings and reward a strategic gamesmanship that has no place in a dual system of federal and state courts."); *Interstate Material Corp.*, 847 F.2d at 1289 (affirming denial of motion to dissolve stay of federal proceedings by application of vexatious factor to plaintiff who sought substantially the same relief from substantially the same parties in federal and state actions); *Calvert Fire Ins. Co. v. Am. Mut. Reinsurance Co.*, 600 F.2d 1228, 1234 (7th Cir. 1979) (affirming stay of proceedings based on district court's finding that the federal suit was vexatious); *Bernstein v. Hosiery Mfg. Corp. of Morganton*, 850 F. Supp. 176, 185 (E.D.N.Y. 1994) (dismissal of case warranted upon finding of exceptional circumstances in part due to the vexatious, reactive, and duplicative nature of proceeding).  "A frivolous or vexatious claim is one without reasonable or probable cause or excuse or lacking justification and intended to harass."  *Mazuma Holding Corp. v. Bethke*, 1 F. Supp. 3d 6, 21 (E.D.N.Y. 2014).  The mere fact that the Take 5 Parties had a right to file the Petition to Vacate in Washington, D.C., does not mean that it was not vexatious.  *See Jurisek v. Brooks*, No. 00 C 7215, 2001 WL 300588, at *4 (N.D. Ill. Mar. 23, 2001).

As discussed above, the Take 5 Parties had no legitimate reason to initiate these proceedings.  They filed this Petition to Vacate after they knew that the Advantage Parties already had filed a petition to confirm the awards in Florida.  They have Florida counsel and

could have challenged the awards in Florida – which they ultimately did.  The only reason that they filed this Petition to Vacate here, after knowing that the Petition to Confirm already had been filed, was to attempt to delay confirmation of the awards and to drive up costs.  This factor also weighs in favor of abstention.

## IV.    <u>CONCLUSION</u>

For all the foregoing reasons, the factors noted above weigh heavily in favor of abstention.  As such, the Advantage Parties respectfully request this Court to either dismiss the Petition to Vacate or stay this action pending resolution of the Florida Action proceedings.

November 14, 2022                              Respectfully submitted,


                                              _/s/ Sarah M. Gragert_____
                                              Sarah M. Gragert (No. 977097)
                                              Latham & Watkins LLP
                                              555 Eleventh Street, NW, Suite 1000
                                              Washington, D.C., 20004
                                              Tel.: 202-637-2200
                                              sarah.gragert@lw.com

                                              Michael H. Strub, Jr.
                                              (*Admitted pro hac vice*)
                                              Greenberg Gross LLP
                                              650 Town Center Drive, Suite 1700
                                              Costa Mesa, California 92626
                                              Tel.: 949-383-2770
                                              mstrub@ggtriallaw.com

                                              *Attorneys for Advantage Sales & Marketing*
                                              *LLC, Advantage Sales & Marketing Inc.,*
                                              *Karman Intermediate Corp., and Karman*
                                              *Topco L.P.*