**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PETRUSS MEDIA GROUP, LLC f/k/a TAKE 5 MEDIA GROUP, LLC, et al., <br><br> *Petitioners*, <br><br> v. <br><br> ADVANTAGE SALES & MARKETING LLC, et al., <br><br> *Respondents*. | Case No. 1:22-cv-3278-RC |

**PETITIONERS' OPPOSITION TO MOTION TO DISMISS OR STAY**
**<u>PETITION TO VACATE ARBITRATION AWARDS</u>**

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

Table of Authorities ................................................................................................... ii

Introduction ............................................................................................................... 1

Background ................................................................................................................ 2

    A.   Factual background ....................................................................................... 2

    B.   The underlying arbitration and Awards ........................................................ 4

    C.   Filing of the two actions.............................................................................. 5

    D.   Service of this action and the Florida action .............................................. 6

    E.   Proceedings in each court to date ................................................................ 7

Standard of Decision ................................................................................................. 8

Argument:
    This Court can and should exercise its jurisdiction to vacate the arbitration awards. ............. 9

    A.   This Court has jurisdiction and a "virtually unflagging obligation" to
          exercise it. ...................................................................................................9

    B.   None of the *Colorado River* factors present "exceptional
          circumstances" for declining jurisdiction................................................11

          1.   Real property is not at issue, favoring jurisdiction. .............................12

          2.   This federal forum is at the agreed situs of the arbitration, strongly
              favoring jurisdiction.............................................................................12

          3.   There is no piecemeal litigation, favoring jurisdiction. .......................15

          4.   This Court obtained jurisdiction first, strongly favoring
              jurisdiction. ..........................................................................................17

          5.   Federal law governs, strongly favoring jurisdiction. ...........................21

          6.   The state-court proceedings may not adequately protect
              petitioners' rights, favoring jurisdiction. ............................................23

          7.   Moving to vacate at the seat of the arbitration is not bad faith............................24

Conclusion ................................................................................................................ 27

# TABLE OF AUTHORITIES

**Cases**

*Ambrosia Coal & Constr. Co. v. Pagés Morales,*
    368 F.3d 1320 (11th Cir. 2004) .................................................................................15

*Atkinson v. Grindstone Cap., LLC,*
    12 F. Supp. 3d 156 (D.D.C. 2014) .............................................................................16

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas,*
    571 U.S. 49 (2013)..............................................................................................12, 13

*Bellantuono v. ICAP Secs. USA, LLC,*
    557 F. App'x 168 (3d Cir. 2014) ...........................................................................22, 23

*Bernstein v. Hosiery Mfg. Corp. of Morganton,*
    850 F. Supp. 176 (E.D.N.Y. 1994) ............................................................................25

*Calvert Fire Ins. Co. v. Am. Mut. Reinsurance Co.,*
    600 F.2d 1228 (7th Cir. 1979) ...................................................................................26

*Chem-Met Co. v. Metaland Int'l, Inc.,*
    1998 WL 35272368 (D.D.C. Mar. 25, 1998)..............................................................13

*\*Colo. River Water Conservation Dist. v. United States,*
    424 U.S. 800 (1976)..................................................................................... *passim*

*Com. & Indus. Ins. Co. v. S. Constr. Lab. Servs., LLC,*
    2017 WL 10058577 (M.D. Fla. July 26, 2017) ..........................................................19

*Commodities & Mins. Enter. Ltd. v. CVG Ferrominera Orinoco, C.A.,*
    49 F.4th 802 (2d Cir. 2022) .......................................................................................20

*Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.,*
    529 U.S. 193 (2000)...................................................................................................10

*Covey Run, LLC v. Washington Cap., LLC,*
    196 F. Supp. 3d 87 (D.D.C. 2016) .............................................................................17

*Dalzell Mgmt. Co. v. Bardonia Plaza, LLC,*
    923 F. Supp. 2d 590 (S.D.N.Y. 2013).......................................................................24

*\*Edge Inv., LLC v. District of Columbia,*
    927 F.3d 549 (D.C. Cir. 2019) ........................................................................ *passim*

*Groeneveld Transp. Efficiency v. Eisses,*
    297 F. App'x 508 (6th Cir. 2008) ..............................................................................14

*Hall St. Assocs., L.L.C. v. Mattel, Inc.,*
    552 U.S. 576 .............................................................................................................22

*Handy v. Shaw, Bransford, Veilleux & Roth,*
    325 F.3d 346 (D.C. Cir. 2003) .............................................................................8, 23

*Hoai v. Sun Ref. & Mktg. Co.,*
    866 F.2d 1515 (D.C. Cir. 1989) .................................................................................15

*I.A.M. Nat. Pension Fund, Ben. Plan A v. Wakefield Indus.,*
*Div. of Capehart Corp.,*
699 F.2d 1254 (D.C. Cir. 1983) ........................................................................21

*Interstate Material Corp. v. City of Chicago,*
847 F.2d 1285 (7th Cir. 1988) ..........................................................................25

*Johnston Lemon & Co. v. Smith,*
882 F. Supp. 4 (D.D.C. 1995) ...........................................................................26

*Legal Helpers Debt Resol., L.L.C. v. CDS Client Servs., Inc.,*
2012 WL 4174996 (N.D. Ill. Sept. 17, 2012) ...................................................17

*M&J Gen. Contractors, Inc. v. Symbiont Constr., Inc.,*
541 F. Supp. 3d 878 (E.D. Wis. 2021) ..........................................................25, 26

*\*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
460 U.S. 1 (1983) ..................................................................................... *passim*

*Nazario-Lugo v. Caribevision Holdings, Inc.,*
670 F.3d 109 (1st Cir. 2012) ............................................................................22

*OPKO Health, Inc. v. Lipsius,*
279 So. 3d 787 (Fla. 3d DCA 2019) .................................................................18

*Quinn v. AVCO Corp.,*
2017 WL 10056803 (D. Del. May 19, 2017) ....................................................14

*Regenery Pub., Inc. v. Miniter,*
368 F. App'x 148 (D.C. Cir. 2010) ...................................................................22

*Rio Grande Cmty. Health Ctr., Inc. v. Rullan,*
397 F.3d 56 (1st Cir. 2005) ..............................................................................25

*Shooster v. BT Orlando Ltd. P'ship,*
766 So. 2d 1114 (Fla. 5th DCA 2000) ..............................................................18

*SPX Corp. v. Garda USA, Inc.,*
94 A.3d 745 (Del. 2014) ...................................................................................22

*SS & T, LLC v. Am. Univ.,*
2020 WL 1170288 (D.D.C. Mar. 11, 2020) ...................................................1, 8

*Starr v. Levin,*
2002 WL 1941375 (N.D. Ill. Aug. 21, 2002) ...................................................14

*Tyrer v. City of S. Beloit,*
456 F.3d 744 (7th Cir. 2006) ............................................................................17

*United States v. $79,123.49 in U.S. Cash & Currency,*
830 F.2d 94 (7th Cir. 1987) ..............................................................................12

*Visiting Nurse Ass'n of Fla., Inc. v. Jupiter Med. Ctr., Inc.,*
154 So. 3d 1115 (Fla. 2014) .........................................................................22, 23

**Statutes**

9 U.S.C. § 10.............................................................................................. *passim*

9 U.S.C. § 10(a) ...................................................................................................2

9 U.S.C. § 12 ............................................................................................ *passim*

28 U.S.C. § 1332 ..................................................................................................9

28 U.S.C. § 1391 ................................................................................................10

28 U.S.C. § 1404 ................................................................................................12

Fla. Stat. ch. 682 .................................................................................................5

Fla. Stat. § 48.031 .........................................................................................7, 19

Fla. Stat. § 48.031(1)(a) ...............................................................................19, 20

Fla. Stat. § 48.062 ...........................................................................................6, 19

**Other Authorities**

Del. Sup. Ct. R. 41(a)(ii) ...................................................................................23

23 Tracy Bateman et al., *Florida Jurisprudence (2d) Evidence & Witnesses*
    (Nov. 2022 update) ........................................................................................23

U.S. Const. amend. V..........................................................................................1

## INTRODUCTION

As more fully set forth in the petition (ECF No. 1) and motion to vacate (ECF No. 3-1), this case asks this Court to vacate a set of arbitration awards (the Interim Award, Final Award, and Modified Final Award) that were only issued because of improprieties in the conduct of the arbitration. Those reasons include the sole arbitrator refusing to stay the arbitration or postpone the hearing in light of a pending, parallel criminal investigation that respondents instigated against petitioners Gluck and Radetich, knowing they would be forced to assert their Fifth Amendment rights; refusing to account for respondents' spoliation of critical evidence that would have proven petitioners' positions; and entering awards against a distinct entity (petitioner RJV Marketing Corp.) absent any evidence to support that determination. All of these caused petitioners' rights to be prejudiced and denied them access to a fair hearing. And all are grounds for this Court to vacate the awards as Congress empowered it to do under the Federal Arbitration Act, 9 U.S.C. § 10.

Respondents, however, have asked this Court to decline to exercise jurisdiction over the petition to vacate under the *Colorado River* doctrine in view of respondents' own petition to confirm the Modified Final Award that they filed in Florida state court a mere six days before petitioners filed this petition to vacate. *Mot. to Dismiss* (ECF No. 15). The rule, however, "is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *SS & T, LLC v. Am. Univ.*, 2020 WL 1170288, at *3 (D.D.C. Mar. 11, 2020) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). And only in "exceptional circumstances" can a federal court deviate from its otherwise "virtually unflagging obligation" to exercise its jurisdiction. *Colo. River*, 424 U.S. at 817-818.

As the D.C. Circuit recently observed, "the Supreme Court has found sufficient justification" for declining federal jurisdiction in favor of a parallel state proceeding "only in the circumstances described in *Colorado River* itself, while this court has never found such

circumstances." *Edge Inv., LLC v. District of Columbia*, 927 F.3d 549, 558 (D.C. Cir. 2019) (reversing *Colorado River* stay). And the D.C. Circuit undertook to provide district courts in this circuit with substantial detail on how to analyze *Colorado River* motions "in order to ensure that *Colorado River* is confined to its banks." *Id.* at 551.

Respondents ignore *Edge Investment* entirely—for good reason—because it thoroughly debunks their motion. There is nothing exceptional whatsoever about petitioners' filing of this petition to vacate the arbitration awards in this federal court for the district in which the awards were issued. 9 U.S.C. § 10(a). There is nothing inconvenient about this federal forum. This case is fully briefed on the merits and ripe for decision, while the Florida action is lagging behind. This case implicates questions of federal and Delaware law, and this action is, to date, the only one to have been properly served.

Respondents have not and cannot demonstrate that these circumstances are in any way "exceptional" such that this Court should decline jurisdiction in disregard of petitioners' right to ask this Court to vacate these improper Awards. The Court should deny respondents' motion to dismiss or stay under the *Colorado River* doctrine.

## BACKGROUND

### A.    Factual background

The facts of this case are set forth in the petition to vacate (ECF No. 1) and the motion to vacate (ECF No. 3-1). Petitioners disagree with the recitation of facts respondents provide in their motion to dismiss (*Mot. to Dismiss* (ECF No. 15) at 2-7)) and incorporate the extensive recitation set forth in the petition and motion to vacate in response.

Briefly, the Awards concern the systematic destruction by the Advantage Parties of a successful business built through the expertise and hard work and leadership of two individuals, petitioners Alexander Radetich and Richard Gluck. Over the course of the last three years, the

Advantage Parties have not just destroyed what it took Radetich and Gluck nearly twenty years to build, but they methodically attacked and sought to destroy Radetich's and Gluck's reputations in the process and to ruin their lives and those of their families to avoid paying the earn-out due under the agreement they signed.

Although the underlying facts are generally irrelevant to the determination whether this Court must exercise its jurisdiction to hear the petition to vacate, petitioners believe the following points warrant clarification.

*First,* Take 5 was not just an "email marketing company." *Contra Mot. to Dismiss* (ECF No. 15) at 2. It was a digital media company, which included (but was not limited to) e-mail marketing. *See, e.g.*, *Pet. Ex. 66* (ECF No. 1-74) at 14-17; *Pet. Ex. 55* (ECF No. 1-63) at 2133-2135; *see also Pet Ex. 1* (ECF No. 1-9) at 3, 7.

*Second*, respondents assert that the Awards "are supported by overwhelming evidence, including admissions by Take 5's former employees." *Mot. to Dismiss* (ECF No. 15) at 5. Respondents conspicuously omit that those "former employees" are the very ones that the Advantage Parties *paid* to testify. Respondents paid over **$120,000** to Mr. Boy in three years for mere hours of work per year. *Mot. to Vacate* (ECF No. 3-1) at 34-37; *Pet.* (ECF No. 1) ¶¶ 95-96. And they paid more than **$150,000** in legal fees for Ms. Hodgens's testimony and nearly **$95,000** in legal fees for Mr. Ward's testimony in less than a year. *Mot. to Vacate* (ECF No. 3-1) at 34-37. This is far more than a minor reimbursement for counsel to represent a witness at a deposition or at a single day of the hearing but instead constitutes coercion amounting to fraud, a violation of

legal ethics, and perhaps bribery or witness tampering in violation of law. Purchased witness testimony is not "overwhelming evidence."[1]

### B.    The underlying arbitration and Awards

Petitioners and respondents were parties to an arbitration administered by the American Arbitration Association captioned *In the Matter of the Arbitration 01-19-002-7532, Petruss Media Group, LLC, et al. v. Advantage Sales & Marketing, LLC, et al.* The Arbitration took place pursuant to Section 10.11 of an Asset Purchase Agreement (APA) executed on or about March 15, 2018. *See Pet. Ex. 5* (ECF No. 1-13)*.* The APA provided that the arbitration would be conducted in accordance with AAA Rules, that "the Law applicable to any controversy shall be the Law of the State of Delaware regardless of principles of conflicts of Laws," and that discovery would be governed by the Federal Rules of Civil Procedure. *Id.* § 10.11(b). By agreement of the parties the situs of the arbitration was moved to Washington, D.C. *See Pet. Ex. 64* (ECF No. 1-72) ¶ 1 ("Pursuant to ¶ 8 of the Parties' Joint Submission to the AAA on March 23, 2020, the evidentiary hearing shall be deemed to take place in Washington, DC"); *Pet. Ex. 65* (ECF No. 1-73) at 1 ("The situs of this proceeding is the District of Columbia").

---

[1]    There are other factual inaccuracies in respondents' motion. For instance, the parties have vastly different interpretations of FTI's "audit" and the response to the same by Messrs. Gluck and Radetich. For a thorough discussion of the flaws in FTI's "audit," see, for example, the extensive discussion of the limitations and how the "audit" proves that the Advantage Parties spoliated and improperly hid the critical Google Analytics data. *See Pet. Ex. 66* (ECF No. 1-74) at 2-24. Additionally, the Advantage Parties seem to place weight on the fact that the Delaware office of McDermott Will & Emery represented the Take 5 Parties at an early stage of the arbitration (*Mot. to Dismiss* (ECF No. 15) at 4) and withdrew before the arbitrator was appointed, perhaps to cast aspersions on the lawyers from McDermott Will & Emery's DC office who began working on this matter weeks after the Interim Award was issued. Although these and the other factual inaccuracies in respondents' motion exist, they are irrelevant to a determination of that motion, and petitioners therefore will not address each and every one of these inaccuracies in this opposition.

The arbitration proceedings involved substantial discovery and motions practice over nearly three years and the evidentiary hearing took place over the course of sixteen days between January 2022 and July 2022. The Arbitrator issued an Interim Award on August 4, 2022, making determinations concerning liability and damages but deferring rulings on costs and fees. *Pet. Ex. 1* (ECF No. 1-9).[2] The Arbitrator issued a Final Award on October 4, 2022, incorporating the Interim Award and awarding certain costs and fees (*Pet. Ex. 2* (ECF No. 1-10) at 10-11), and issued a Modified Final Award on October 20, 2022, correcting a typographical error in the Final Award (collectively, the Awards) (*Pet. Ex. 3* (ECF No. 1-11) at 10-11).

The AAA sent the Modified Final Award to counsel by email on October 20, 2022, at 2:49 PM. *Richman Decl. Ex. 80* (*Correspondence from AAA to parties* (Oct. 20, 2022)).

### C.    Filing of the two actions

Less than one hour later (at 3:37:11 PM) the same day (October 20), respondents here Advantage Sales & Marketing LLC, Advantage Sales & Marketing Inc., Karman Intermediate Corp., Advantage Solutions Inc. and Karman Topco L.P. (the Advantage Parties) initiated a state court action in Palm Beach County, Florida, by filing a petition to confirm the arbitration award. *Mot. Ex. E* (ECF No. 15-6). The Advantage Parties' Florida petition sought to confirm only the Modified Final Award under Chapter 682 of the Florida Statutes. *Id.* ¶ 3.

---

[2]    Petitioners moved for leave to file certain documents under seal because of a stipulated order in the arbitration governing highly confidential information. ECF No. 4. The parties filed a stipulation agreeing to the unsealing of all these documents (ECF No. 14), but the Court has yet to order it. Once the Court orders the stipulation, we will file these documents publicly. Although petitioners had access to the proposed sealed documents all along because they were part of the arbitration record, we also served unredacted copies on petitioners' counsel via email on November 22 while awaiting an order from the Court on sealing. *Richman Decl.* ¶ 8.

On October 26, 2022, petitioners here (the Take 5 Parties) initiated this action in this Court seeking to vacate the Interim Award, Final Award, and Modified Final Award pursuant to the FAA, 9 U.S.C. § 10. *See* ECF Nos. 1, 3.

###### D.    Service of this action and the Florida action

After this Court issued the summonses for each of the Advantage Parties on October 28 (ECF No. 6), petitioners served process in this D.C. action on Advantage Sales & Marketing, LLC and Advantage Solutions Inc. on October 28 through their registered agents. ECF No. 10 (Advantage Sales & Marketing, LLC); ECF No. 11 (Advantage Solutions Inc.). And the Take 5 Parties served the remaining Advantage Parties on the next business day, October 31, through their registered service agents. ECF No. 7 (Advantages Sales & Marketing Inc.); ECF No. 8 (Karman Topco L.P.); ECF No. 9 (Karman Intermediate Corp.). The proofs of service were filed with this Court on October 31, 2022. ECF Nos. 7-11.

On November 14, the Take 5 Parties learned through respondents' motion to dismiss or stay that Advantage Solutions Inc. intended to claim it was not served through its registered agent. *See Mot. to Dismiss* (ECF No. 15) at 1, 6-7; *Robinson Decl.* (ECF No. 15-12). As a precautionary measure, the Take 5 Parties promptly sought a re-issued summons from this Court and re-served Advantage Solutions Inc. on November 16, 2022, at its admitted and undisputed registered agent (ECF No. 21), promptly curing any arguable defect. All respondents have now engaged in substantive motions practice without taking issue with service. *See* ECF Nos. 15, 16, 22.

In the Florida action, the Advantage Parties have, to petitioners' knowledge, still not effected proper service on all parties. The Advantage Parties attempted to serve Petruss Media Group, LLC f/k/a Take 5 Media Group, LLC (Take 5) by serving Mr. Radetich's wife on October 28. *Richman Decl. Ex. 81* (*Florida certified return of service for Take 5*). Service of Take 5 through Ms. Radetich was not effective service under Fla. Stat. § 48.062 because she is not authorized to

accept such service. *R. Gluck Decl.* ¶ 6. Further, Mr. Radetich is not the registered agent of Take 5, and there are no circumstances that made it permissible to serve a limited liability company through the spouse of a former manager at his residence, the address of which is not listed for the company. *See Richman Decl. Ex. 82*; *R. Gluck Decl.* ¶¶ 5-9.

The Advantage Parties also attempted to serve Mr. Richard Gluck—the managing partner of Take 5—with a summons through his stepson on October 29 by throwing the summons over the gate in front of Mr. Gluck's house. *Richman Decl. Ex. 83* (*Florida certified return of service for Gluck*); *Crigler Decl.* ¶ 8; *R. Gluck Decl.* ¶ 12. Service of Mr. Gluck was not effective service under Fla. Stat. § 48.031 because Mr. Gluck's stepson does not reside at the residence at which service was attempted, because the attempted service by throwing a summons over a fence did not properly effectuate service under Florida law, and because the process server did not inform Mr. Gluck's stepson as to the contents of the documents. *See Richman Decl. Ex. 83* (*Florida certified return of service for Gluck*) (noting service not returned); *Crigler Decl.* ¶¶ 2-12.

As of this filing, to our knowledge, the Advantage Parties have not cured the service defects even though we have called those defects to their attention. *Richman Decl.* ¶ 5 & *Ex. 84* at 3-4.

### E.    Proceedings in each court to date

In this action, the Take 5 Parties' motion to vacate the Awards is now fully briefed. *See Mot. to Vacate* (ECF No. 3); *Opp. to Mot. to Vacate* (ECF No. 16); *Advantage Solutions Inc. Joinder* (ECF No. 22); *Reply in Support of Mot. to Vacate* (ECF No. 23). The Advantage Parties declined to substantively respond in this action and, instead, only sought to dismiss or stay this action under *Colorado River*. *Mot to Dismiss.* (ECF No. 15); *Joinder* (ECF No. 22).

In the Florida action, on November 1, 2022, the Take 5 Parties moved to stay the Florida action in favor of the action pending in this Court. *Richman Decl. Ex. 84*. The Take 5 Parties also moved to quash the improperly served summonses on Take 5 and Mr. Gluck and protectively

moved for an order vacating all three Awards. *Mot. to Dismiss Ex. H* (ECF No. 15-9) at 3-4, 5-67. On November 21, 2022, the Advantage parties sought leave to amend their petition to confirm in the Florida action, broadening the petition to encompass the Interim Award in addition to the Modified Final Award. *Richman Decl. Ex. 85*. The Take 5 Parties are in the process of amending their own motion to vacate in response to the amended petition, and the parties will need to complete further opposition and reply briefing (assuming the Florida court does not grant our motion to stay). *Richman Decl.* ¶ 7.

## STANDARD OF DECISION

"[A]s between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *SS & T, LLC v. Am. Univ.*, 2020 WL 1170288, at *3 n.2 (D.D.C. Mar. 11, 2020) (quoting *Colo. River*, 424 U.S. at 817). The Supreme Court has held that, only in "exceptional circumstances," a federal court can deviate from its otherwise "virtually unflagging obligation" to exercise its jurisdiction and to dismiss or stay proceedings in favor of a parallel state court proceeding. *Colo. River,* 424 U.S. at 813, 817-818.

"Only the clearest of justifications will warrant dismissal." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 16 (1983). Courts consider factors like (1) "which court first assum[ed] jurisdiction over property"; (2) "the inconvenience of the federal forum" (3) "the desirability of avoiding piecemeal litigation"; (4) "the order in which jurisdiction was obtained by the concurrent forums" (*Moses H. Cone*, 460 U.S. at 15); (5) "whether federal or state law controls" and (6) "whether the state forum will adequately protect the interests of the parties" (*Edge Inv.*, 927 F.3d at 553 (quoting *Handy v. Shaw, Bransford, Veilleux & Roth*, 325 F.3d 346, 352 (D.C. Cir. 2003))). "[D]eferral 'does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, *with the balance heavily weighted in favor of the*

*exercise of jurisdiction.*" *Edge Inv.*, 927 F.3d at 554 (emphasis in original) (quoting *Moses H.*

*Cone*, 460 U.S. at 16). As the D.C. Circuit recently observed, "as befits an exception so described,

the Supreme Court has found sufficient justification only in the circumstances described in

*Colorado River* itself, while this court has never found such circumstances." *Id.* at 553.[3]

## ARGUMENT:
## THIS COURT CAN AND SHOULD EXERCISE ITS JURISDICTION TO VACATE THE ARBITRATION AWARDS.

### A.     This Court has jurisdiction and a "virtually unflagging obligation" to exercise it.

This Court has Congressionally conferred jurisdiction over this case under 28 U.S.C.

§ 1332 because petitioners and respondents are citizens of different states, Florida (petitioners)

and Delaware and California (respondents), and the amount in controversy exceeds $75,000.00,

exclusive of interest, attorneys' fees, and costs, at least because the Modified Final Award awards

the Advantage parties $48,325,822.29 in damages, and the purchase price contemplated by the

APA was $77,000,000.00. *Pet.* (ECF No. 1) ¶¶ 1-9, 12. Respondents do not dispute this Court's

jurisdiction. *See generally Mot. to Dismiss* (ECF No. 15).

The strong presumption is that this Court must carry out its "virtually unflagging

obligation" to exercise its jurisdiction and to adjudicate the petition to vacate. *Colo. River,* 424

U.S. at 817-818. Indeed, "[a]ll of the subsequent Supreme Court and D.C. Circuit cases addressing

---

[3]     Although lower federal courts and commentators (and respondents) often loosely refer to the *Colorado River* doctrine as a variant of "abstention," the Supreme Court carefully distinguished abstention from the doctrine announced in *Colorado River*, 424 U.S. 800. "Abstention" represents application of "considerations of proper constitutional adjudication and regard for federal-state relations." *Id.* at 817. The *Colorado River* doctrine, on the other hand, reflects "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* (internal quotation marks omitted). "[T]he [exceptional] circumstances permitting the dismissal of a federal suit" based on *Colorado River* considerations are "considerably more limited than the circumstances appropriate for abstention." *Id.* at 818. *Accord Edge Inv.*, 927 F.3d at 554 n.5.

the *Colorado River* doctrine have stressed the unflagging obligation of the federal courts to exercise their jurisdiction, which only 'exceptional circumstances' can overcome." *Edge*, 927 F.3d at 552. Aside from *Colorado River* itself, neither the Supreme Court nor the D.C. Circuit has found "sufficient justification" to dismiss or stay a federal lawsuit under *Colorado River*'s exceptional-circumstances test. *Edge Inv.*, 927 F.3d at 553.

Even more compelling, this Court is the venue that Congress specifically envisioned for purposes of vacating an arbitration award, specially providing that "the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration … ." 9 U.S.C. § 10. All the parties agreed that the District of Columbia is where the award would be made and, thus, expressed agreement that the District of Columbia would be where a motion to vacate should be adjudicated. *See Pet. Ex. 64* (ECF No. 1-72) ¶ 1 ("Pursuant to ¶ 8 of the Parties' Joint Submission to the AAA on March 23, 2020, the evidentiary hearing shall be deemed to take place in Washington, DC"); *Pet. Ex. 65* (ECF No. 1-73) at 1 ("The situs of this proceeding is the District of Columbia").[4] Congress also specifically empowered a judge presented with a motion to vacate to "make an order to stay[] … the proceeding of the adverse party to enforce the award" in the same court. 9 U.S.C. § 12.

Putting all this together, this Court has jurisdiction and Congress specifically provided that the district court where an award was made can decide a motion to vacate and that a petition to confirm should yield to such a motion.

---

[4]    In *Cortez Byrd Chips, Inc. v. Bill Harbert Construction Co.*, the Supreme Court held that the FAA's venue provisions are permissive and that parties can also invoke the general venue statute of 28 U.S.C. § 1391 but observed that Congress included the FAA's venue provisions because, at the time in 1925, the general venue statute only allowed venue where the defendant resided. 529 U.S. 193, 198-204 (2000).

Respondents nonetheless argue that, because they filed a petition to confirm only one of the challenged awards in Florida state court six days before we filed the petition and motion to vacate in this Court, the Court should disregard everything that Congress, the Supreme Court, and the D.C. Circuit have said. The contention that such a circumstance is "exceptional" lacks merit. That neither the Supreme Court nor the D.C. Circuit has ever endorsed anything remotely close to it should end matters. *See Edge Inv.*, 927 F.3d at 554-555; *cf. Moses H. Cone*, 460 U.S. at 16 ("[b]y far the most important factor in [the] decision to approve the dismissal" in *Colorado River* was that a federal statute "represent[ed] Congress's judgment that the field of water rights is one peculiarly appropriate for comprehensive treatment in the forums having the greatest experience and expertise, assisted by state administrative officers acting under the state courts").

As such, the Court should summarily reject respondents' motion and exercise its jurisdiction.

**B.     None of the *Colorado River* factors present "exceptional circumstances" for declining jurisdiction.**

Even assuming the Court were to undertake a factor-by-factor discussion, *none* comes anywhere close to the "exceptional circumstances" necessary to justify respondents' requested relief. Indeed, respondents conspicuously ignore the D.C. Circuit's 2019 decision in *Edge Investment* in which the Court undertook to "explain [its] decision in some detail in order to ensure that *Colorado River* is confined to its banks.*"* 927 F.3d at 550. Respondents' arguments on the individual factors cannot be squared with the D.C. Circuit's instructions in *Edge Investment*, and none presents "exceptional circumstances" for surrendering jurisdiction.

In *Colorado River*, "[b]y far the most important factor in [the] decision to approve the dismissal there was the 'clear federal policy ... [of] avoidance of piecemeal adjudication of water rights in a river system,' as evinced in the McCarran Amendment," a statute that "represent[ed]

Congress's judgment that the field of water rights is one peculiarly appropriate for comprehensive treatment in the forums having the greatest experience and expertise, assisted by state administrative officers acting under the state courts." *Edge Inv.*, 927 F.3d at 554-555 (quoting *Moses H. Cone*, 460 U.S. at 16). There are no such Congressional judgments implicated here and, indeed, they point the opposite way—in favor of this Court's jurisdiction—as do all the other factors.

### 1.    *Real property is not at issue, favoring jurisdiction.*

The first *Colorado River* factor—jurisdiction over real property—is plainly not an exceptional circumstance because neither the state court nor the federal court is exercising *in rem* or *quasi in rem* jurisdiction. Although respondents label this factor "neutral" (*Mot. to Dismiss* (ECF No. 15) at 9), that, of course, really means that the factor favors the exercise of jurisdiction by this Court. Because this action does not present "[t]he logical and practical difficulty of two courts simultaneously vying for possession or control of the same property …, both cases may proceed side by side." *United States v. $79,123.49 in U.S. Cash & Currency*, 830 F.2d 94, 97 (7th Cir. 1987).

### 2.    *This federal forum is at the agreed situs of the arbitration, strongly favoring jurisdiction.*

The second *Colorado River* factor weighs the convenience of the respective forums. *See Colo. River*, 424 U.S. at 818. This factor strongly favors the exercise of jurisdiction by this Court because Washington, D.C. is the agreed seat of the arbitration.

In a related context—forum selection clauses and transfer under 28 U.S.C. § 1404—the Supreme Court has held that "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W.*

*Dist. of Texas*, 571 U.S. 49, 64 (2013). The same should follow here. Respondents give the parties'

voluntary selection of Washington, D.C., no weight, calling it "artificial." *See Mot. to Dismiss*

(ECF No. 15) at 10. But artificial or not, the parties *agreed* to Washington, D.C. By voluntarily

agreeing that the situs of the arbitration would be Washington, D.C. (*Pet Ex. 64* ¶ 1; *Pet. Ex. 65* at

1), and in view of the FAA's express authorization of venue where the award is issued (9 U.S.C.

§ 10), the Advantage Parties waived any right to challenge Washington, D.C., "as inconvenient or

less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Atl. Marine*,

571 U.S. at 64. That tips this factor decidedly in favor of the exercise of jurisdiction. This federal

forum is not inconvenient because the parties agreed it was not.

The convenience factor also weighs in favor of this Court handling the matter because this

is not full-blown litigation with discovery and trial. Although some limited additional proceedings

may be necessary, a motion to vacate often proceeds much like a petition for review of agency

action or a summary judgment proceeding, with a pre-set record and a legal determination as to

whether the award must be vacated. *E.g.*, *Chem-Met Co. v. Metaland Int'l, Inc.*, 1998 WL

35272368, at *4 (D.D.C. Mar. 25, 1998) (granting summary judgment vacating arbitration award

for failing to hear material evidence). Indeed, our motion to vacate is fully briefed and ripe for

decision. *Mot. to Vacate* (ECF No. 3), *Opp. to Mot. to Vacate* (ECF No. 16), *Reply on Mot. to

Vacate* (ECF No. 22), *Joinder* (ECF No. 23). The convenience of witnesses or the location of

parties matters little in such a proceeding.

Even if the Court were to analyze the location of witnesses and counsel, the Advantage

Parties' protracted discussion as to where the various parties and their counsel or witnesses reside,

engaged in activities, or participated in the arbitration only shows that no jurisdiction is particularly

geographically convenient—*not* that this federal forum at the situs of the arbitration is

*inconvenient. Mot. to Dismiss* (ECF No. 15) at 10. Indeed, it is hard to take seriously that this federal forum in Washington, D.C., is any more inconvenient than an action in Palm Beach County, Florida, for respondents—entities that are residents of Delaware (a short train ride to D.C.) and California (which requires a cross-country flight to either D.C. or Palm Beach County).[5] As for petitioners—who are Florida residents—they have chosen this forum as more convenient two times over, by setting D.C. as the situs of the arbitration and by filing their petition here.

The Advantage Parties' final argument concerns their desire to enforce a judgment confirming the arbitration awards in Florida. *Mot. to Dismiss* (ECF No. 15) at 12. To start, the argument assumes that respondents would succeed in having the Awards confirmed—which they should not for the reasons we have explained in our motion to vacate. But, regardless, this argument is irrelevant to geographic convenience under *Colorado River* because the petition in this case seeks to vacate the Awards. No one has asked this Court to confirm the Awards. This Court can decide whether to vacate the Awards separate and apart from any confirmation action. Indeed, the FAA expressly contemplates that a Court considering a motion to vacate would stay a separate confirmation motion pending a decision on the motion to vacate. 9 U.S.C. § 12. Respondents' desire to ease their enforcement burden after a confirmation proceeding is not probative as to whether this forum is convenient for deciding whether to vacate the Awards.

---

[5] The few out-of-circuit district court cases on which respondents rely are easily distinguishable. *See Quinn v. AVCO Corp.*, 2017 WL 10056803, at *1 (D. Del. May 19, 2017) (staying a Delaware federal action in favor of Wisconsin state court action because, among other things, plaintiffs resided in Wisconsin and Minnesota, and defendants resided in Wisconsin*); Starr v. Levin*, 2002 WL 1941375, at *4 (N.D. Ill. Aug. 21, 2002) (staying an Illinois federal action in favor of Florida state court action brought by same plaintiff, involving real property, and being actively litigated). As for *Groeneveld Transp. Efficiency v. Eisses*, respondents misrepresent the case. "[T]he basis for the stay was not the *Colorado River* doctrine, but the international abstention doctrine," and, as a result, the Sixth Circuit "lack[ed] jurisdiction to hear Plaintiff's appeal." 297 F. App'x 508, 512 (6th Cir. 2008).

In short, the convenience factor weighs heavily in favor of this Court exercising its jurisdiction.

### 3. There is no piecemeal litigation, favoring jurisdiction.

The third *Colorado River* factor—piecemeal litigation—favors exercising jurisdiction as well. "[T]he mere risk of duplicating efforts and different results is not what the Supreme Court meant by piecemeal litigation." *Edge Inv.*, 927 F.3d at 555. Nor does "the mere desire to resolve all issues involving related facts in one court … justify depriving [parties of a] federal forum." *Hoai v. Sun Ref. & Mktg. Co.*, 866 F.2d 1515, 1520 (D.C. Cir. 1989). Instead, "*Colorado River*'s factor concerning the avoidance of piecemeal litigation does not favor abstention unless the circumstances enveloping those cases will likely lead to piecemeal litigation that is abnormally excessive or deleterious." *Edge Inv.*, 927 F.3d at 556 (quoting *Ambrosia Coal & Constr. Co. v. Pagés Morales*, 368 F.3d 1320, 1333 (11th Cir. 2004)).

Respondents have not identified *any* "abnormally excessive or deleterious" piecemeal litigation. *Edge Inv.*, 927 F.3d at 556. All they have alleged is "mere duplication and potential inconsistency," with "the doctrines of res judicata and collateral estoppel [to] substantially mitigate the risk of conflicting results." *Id.*; *Ambrosia*, 368 F.3d at 1333 (reversing *Colorado River* stay despite parallel state action addressing validity of the same contract). If respondents' approach were accepted, "the third *Colorado River* factor would seemingly support abstention in every federal case that has a parallel state case," and "defendants could always escape federal courts simply by filing parallel state lawsuits." *Ambrosia*, 368 F.3d at 1333.

That is not how this factor works. There is no "abnormally excessive or deleterious" piecemeal litigation, like there would have been in *Colorado River* where the Supreme Court stayed the federal suit "against some 1,000 nonfederal water users" in deference to a "state-court

proceeding for the comprehensive adjudication and administration of all water rights within the river system." *Moses H. Cone*, 460 U.S. at 13-14.

Here, all respondents can identify is some duplication of efforts (assuming the Florida state court does not grant our motion to stay). But that type of duplication in mirror cases is in no way excessive or abnormal; it is "a garden-variety example of two lawsuits proceeding concurrently in two courts." *Edge Inv.*, 927 F.3d at 556. That circumstance is not grounds for surrendering jurisdiction.

Respondents' reliance on *Atkinson v. Grindstone Cap., LLC,* 12 F. Supp. 3d 156, 164 (D.D.C. 2014), is puzzling. To start, the D.C. Circuit's subsequent decision in *Edge Investment* expressed concern about the manner in which district courts had been surrendering jurisdiction (*see* 927 F.3d at 554) and, thus, provided a detailed explanation as to how this factor should be applied (*id.* at 554-556), which respondents ignore. Further, *Atkinson* held that "mirror" proceedings—a petition to confirm in this Court and a mirroring motion to vacate in Maryland state court—did *not* favor declining jurisdiction because "there is no risk that proceeding in both cases will result in piecemeal litigation." *Atkinson*, 12 F. Supp. 3d at 164. And, finally, the Court in *Atkinson* ultimately declined jurisdiction over a petition to confirm in favor of a subsequently filed motion to vacate. 12 F. Supp. 3d at 160, 166. The Advantage Parties here seek the opposite—declining jurisdiction over a petition to vacate in favor of their petition to confirm, despite Congress's clear vision that motions to vacate would proceed first and confirmation actions stayed. *See* 9 U.S.C. § 12.

In sum, respondents have not shown that there is any risk of "piecemeal" litigation within the meaning of this *Colorado River* factor, and it cannot support surrendering jurisdiction.

### *4.    This Court obtained jurisdiction first, strongly favoring jurisdiction.*

The fourth *Colorado River* factor considers the order in which the courts obtained jurisdiction. *Colo. River*, 424 U.S. at 818. Respondents contend that the Florida court obtained jurisdiction over all the parties first. But respondents misapply the Supreme Court's standard for this factor and, regardless, they are mistaken as a factual matter.

**1.**    As a legal matter, priority is not "measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone*, 460 U.S. at 21. In *Moses H. Cone*, the Supreme Court held that a nineteen-day head start of the state court action could not support surrendering jurisdiction. 460 U.S. at 22-23. In *Edge*, the D.C. Circuit concluded that "the bottom line, under any calculation, is that D.C. Water filed its Superior Court complaint just fifteen months before Edge filed its federal case, that Edge filed its third-party Superior Court complaint just six months before Edge filed its federal case" and held that "[t]hose relatively brief periods" could not support surrendering federal jurisdiction. *Edge Inv.*, 927 F.3d at 557.[6] If 19 days, six months, twelve months, and fifteen months cannot suffice, there is no possible way that six days between the filing of the Florida action and this action could possibly suffice to justify surrendering jurisdiction. *See also Covey Run, LLC v. Washington Cap., LLC*, 196 F. Supp. 3d 87, 102 (D.D.C. 2016) (refusing to decline jurisdiction in favor of a Florida state court action filed the day before the D.C. federal action).

---

[6]    The D.C. Circuit distinguished one of respondents' cases for us. *See Edge Inv.*, 927 F.3d at 557 (distinguishing *Tyrer v. City of S. Beloit*, 456 F.3d 744 (7th Cir. 2006)), where the state suit "had been ongoing for approximately four years" before the federal lawsuit was filed). As to *Legal Helpers Debt Resol., L.L.C. v. CDS Client Servs., Inc.*, 2012 WL 4174996, at *4 (N.D. Ill. Sept. 17, 2012), the court only considered which case was filed first, which is not the correct analysis as the Supreme Court held in *Moses H. Cone*.

What is more, respondents do not discuss the relative progress of these two actions at all. In this action, the motion to vacate all three Awards was fully briefed and ripe for decision by November 21, 2022. *See Motion to Vacate* (ECF No. 3); *Opp. to Mot. to Vacate* (ECF No. 16); *Advantage Solutions Inc. Joinder* (ECF No. 22); *Reply on Mot. to Vacate* (ECF No. 23). In Florida, by contrast, respondents filed an action only to confirm the Modified Final Award and moved to file an amended petition on November 21, 2022. *Richman Decl. Ex. 85*. Although petitioners filed a protective motion to vacate in the Florida action on November 1, that motion will now have to be amended in view of the amended petition. *Richman Decl.* ¶ 7. Thus, nothing is fully briefed nor ripe for decision in the Florida action, and the Florida court should stay that action in any event.[7]

2.    The Court's analysis should end there. But should the Court determine that it must resolve matters concerning the order of service of process, the facts establish that *this* Court obtained jurisdiction over all the parties first in any event. As of the filing of this motion, to our knowledge, the Advantage Parties have still not properly served Take 5 or Mr. Gluck with the Florida action, even though the Take 5 parties identified the defects in a motion to quash on November 1. *See Mot. to Dismiss Ex. H* (ECF No. 15-9) at 3-4. Indeed, the certified versions of the returns of service from the Florida court indicate "SERVICE RETURN-NOT SERVED" as to these two improperly served parties. *Richman Decl. Ex. 81, Ex. 83*.

---

[7]    The Florida court should stay the Florida action because, under Florida law, "[w]here a state and federal court have concurrent jurisdiction over the same parties or privies and the same subject matter, the tribunal where jurisdiction first attaches retains jurisdiction exclusively and will be left to determine the controversy and to fully perform and exhaust its jurisdiction and to decide every issue or question properly arising in the case." *Shooster v. BT Orlando Ltd. P'ship*, 766 So. 2d 1114, 1115 (Fla. 5th DCA 2000); *OPKO Health, Inc. v. Lipsius*, 279 So. 3d 787, 792-793 (Fla. 3d DCA 2019) (stating that a Delaware court had exercised jurisdiction before the Florida court because service was perfected in the Delaware action first and thus it was "clear" that "the ball [was] rolling" in Delaware before Florida.).

As to Take 5, Mr. Radetich's wife is not authorized to accept service on behalf of Take 5. *R. Gluck Decl.* ¶ 6; *see also* Fla. Stat. § 48.062. Further, Mr. Radetich is not the registered agent of Take 5. *Richman Decl. Ex. 82* (*Florida secretary of state entry*); *R. Gluck Decl.* ¶ 4. And there are no circumstances that made it permissible to serve a limited liability company through the spouse of a former manager at his residence, the address of which is not listed for the company. *See Richman Decl. Ex. 82* (noting service not returned); *see also, e.g.*, *Com. & Indus. Ins. Co. v. S. Constr. Lab. Servs., LLC*, 2017 WL 10058577, at *2 (M.D. Fla. July 26, 2017) (holding that service was not properly perfected by serving the wife of a manager of an LLC because the process server provided no evidence that the company lacked a registered agent or that service could not be made on the registered agent). The proof of service does not reveal any attempt to serve Take 5's agent (Mr. Richard Gluck) first. *Richman Decl. Ex. 81* (*Florida certified return of service for Take 5*); *Ex. 82 (Florida Secretary of State entry)*. Indeed, the (ineffective) service attempted on Mr. Gluck personally occurred *after* the Advantage Parties purportedly attempted to serve Ms. Radetich on behalf of Take 5. *Richman Decl. Ex. 83 (Florida certified return of service for Gluck)*; *Ex. 81 (Florida certified return of service for Take 5)*.

As to Mr. Gluck, the Take 5 Parties attempted to serve him with a summons through his stepson on October 29 by throwing the summons over the gate into Mr. Gluck's yard. *Richman Decl. Ex. 83 (Florida certified return of service for Gluck)*; *Gluck Decl.* ¶ 12; *Crigler Decl.* ¶ 8. Service of Mr. Gluck was not effective service pursuant to Fla. Stat. § 48.031 because Mr. Gluck's stepson does not reside at the residence at which service was attempted (*Crigler Decl.* ¶ 11), and service by throwing a summons over the fence of a property is improper (*see* Fla. Stat. § 48.031(1)(a) (requiring "leaving the copies at his or her usual place of abode *with any person residing therein* who is 15 years of age or older and informing the person of their contents"

(emphasis added)). And Mr. Gluck's stepson was not "inform[ed]" of "the[] contents" that were thrown over the gate. *Crigler Decl.* ¶ 9; Fla Stat. § 48.031(1)(a).

As for this D.C. action, every party was properly served on October 28 or 31 (*see* ECF Nos. 7-11). And out of an abundance of caution, Advantage Solutions Inc. was re-served on November 17. *See* ECF No. 21. In addition, copies of all the sealed filings were sent to counsel via email on November 22, even though the Advantage Parties already had all these documents from the arbitration itself. *Richman Decl.* ¶ 8. All respondents have now appeared and participated in substantive motions practice without raising any further service objections. With service perfected in this Court first, this factor undisputedly favors exercising jurisdiction.

It also bears noting that Advantage Solution Inc.'s allegation that it was not properly served on October 28 or 31 (*Mot. to Dismiss* (ECF No. 15) at 6-7) is wrong. Thus, to the extent it matters in the Court's analysis (though it should not), all respondents were served in this action by October 31. *First*, Prentice-Hall is an affiliate of Corporation Service Company; they perform services at the same address in D.C. (*compare* ECF No. 10, *with* ECF No. 11 (same address for CSC and Prentice-Hall)); and Destany McClellan, who signed purportedly on behalf of Prentice-Hall, is a *CSC* employee (ECF No. 10). Thus, tendering the petition to Prentice-Hall for Advantage Solutions Inc. did constitute serving registered agent CSC. *Second*, petitioners *also* served CSC in Delaware with the petition to vacate. *See* ECF Nos. 7, 8, 9. It is irrelevant that a summons for Advantage Solutions Inc. did not accompany that service because summonses are not required to properly serve a motion to vacate an arbitration award. *See* 9 U.S.C. § 12; *Commodities & Mins. Enter. Ltd. v. CVG Ferrominera Orinoco, C.A.*, 49 F.4th 802, 811 (2d Cir. 2022). Thus, Advantage Solutions Inc.'s admitted registered agent *was* served with the motion to vacate on October 31, contrary to Advantage Solution Inc.'s assertion (*Robinson Decl.* (ECF No. 15-12) ¶ 4). *Third*, the

petition to vacate was served on all other respondents, including the parent entity (Karman Topco L.P.) and subsidiaries of Advantage Solutions Inc. *See Pet.* (ECF No. 1) ¶¶ 5-9. Service on these entities also sufficed to provide notice of the petition to vacate to Advantage Solutions Inc. *I.A.M. Nat. Pension Fund, Ben. Plan A v. Wakefield Indus., Div. of Capehart Corp.*, 699 F.2d 1254, 1259 (D.C. Cir. 1983) ("where the two corporations are not really separate entities service on the parent will reach a foreign subsidiary.").

Because the Florida action still has not been properly served—and this action undisputedly *has* and is much farther along—this factor favors exercising jurisdiction.

### 5.    *Federal law governs, strongly favoring jurisdiction.*

The fifth *Colorado Factor* considers the source of law governing the action. "'[A]lthough in some rare circumstances the presence of state-law issues may weigh in favor of ... surrender, the presence of federal-law issues must always be a major consideration weighing against surrender'" of federal jurisdiction." *Edge Inv.*, 927 F.3d at 558 (ultimately quoting *Moses H. Cone*, 460 U.S. at 26). The petitioners' petition to vacate is governed by the FAA. And, as the Supreme Court held in *Moses H. Cone*, the presence of an FAA issue "must always be a major consideration weighing against surrender" of jurisdiction, notwithstanding state courts' concurrent jurisdiction. *Moses H. Cone*, 460 U.S. at 26.

Respondents strangely argue that "there are no significant federal-law issues" and "that the substantive law in question is entirely state-law based." *Mot. to Dismiss* (ECF No. 15) at 14-15. Not only is that wrong, but it is also unhelpful to respondents here.

*First*, there are indeed significant federal-law issues implicated by the petition to vacate. The grounds for vacating an arbitration award are dictated by a federal statute, the FAA. *See* 9 U.S.C. § 10. The crux of the motion to vacate is that petitioners have satisfied those federal standards and are therefore entitled to vacatur of the award. *See Mot. to Vacate* (ECF No. 3-1) at

15-45. In addition, the APA provided that the Arbitration would be conducted in accordance with AAA Rules and that discovery would be governed by the Federal Rules of Civil Procedure. *Pet. Ex 5* (ECF No. 1-13) § 10.11(b).

The federal law issues are particularly crucial for resolution in this Court because manifest disregard of the law is a permissible basis to seek vacatur under Third Circuit, District of Columbia, and Delaware precedent but does not appear to be available under Florida and Eleventh Circuit law. *Bellantuono v. ICAP Secs. USA, LLC*, 557 F. App'x 168, 174 n.3 (3d Cir. 2014) (acknowledging circuit split on issue); *Regenery Pub., Inc. v. Miniter*, 368 F. App'x 148, 149 (D.C. Cir. 2010) ("[a]ssuming without deciding that the 'manifest disregard of the law' standard survives *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 [] (2008)"); *SPX Corp. v. Garda USA, Inc.*, 94 A.3d 745, 750 (Del. 2014) ("Under the FAA, vacatur is authorized where the arbitrator acts in 'manifest disregard' of the law."); *Visiting Nurse Ass'n of Fla., Inc. v. Jupiter Med. Ctr., Inc.*, 154 So. 3d 1115, 1119 (Fla. 2014). Though our view is that the Florida state court would be duty-bound to apply Delaware law, were the Florida court decline to apply the manifest disregard standard available in this Court, the Third Circuit, and Delaware, proceeding in the Florida courts would prejudice the Take 5 Parties.

*Second*, to the extent there are state-law issues implicated, they are issues of *Delaware* law, which governs the APA, and *not* issues of Florida law. The APA provides that "the Law applicable to any controversy shall be the Law of the State of Delaware regardless of principles of conflicts of Laws." *Pet. Ex. 5* (ECF No. 1-13) § 10.11(b). The notion that this D.C. federal court is an exceptionally worse forum for analyzing issues of Delaware law than a state court in Florida is spurious. "[T]here is nothing extraordinary about federal courts being called upon to analyze the law of different jurisdictions." *Nazario-Lugo v. Caribevision Holdings, Inc.*, 670 F.3d 109, 118

(1st Cir. 2012). In addition, the Delaware Supreme Court authorizes federal district courts to certify questions of Delaware law directly to it but does *not* authorize trial courts of other states to do so. *See* Del. Sup. Ct. R. 41(a)(ii). Instead, certification from sister state courts is limited only to the state's highest court (*id.*), meaning that the Florida action would have to go all the way to discretionary review in the Florida Supreme Court should any complex questions of Delaware law arise. That should tip the balance decisively against surrendering jurisdiction. *Accord Edge Inv.*, 927 F.3d at 559 (finding the power to certify favored exercising jurisdiction). Further, the law of a state other than Florida, at least where it differs from Florida law, must generally be pleaded and proven as fact in a Florida action (23 Tracy Bateman et al., *Florida Jurisprudence (2d) Evidence & Witnesses* § 101 (Nov. 2022 update)), whereas this Court is readily equipped to make determinations of any state's law without that additional burden.

In sum, that federal and Delaware law govern this proceeding weighs strongly in favor of this Court exercising jurisdiction.

### 6.    The state-court proceedings may not adequately protect petitioners' rights, favoring jurisdiction.

The sixth factor considers "whether the state forum will adequately protect the interests of the parties." *Handy*, 325 F.3d at 352. Where there "[is], at a minimum, substantial room for doubt that [the federal plaintiff] could obtain from the state court" particular relief, this factor favors exercising jurisdiction. *Moses H. Cone*, 460 U.S. at 26.

This factor favors jurisdiction. As explained above (at 24), manifest disregard of the law is a permissible basis to seek vacatur under Third Circuit, District of Columbia, and Delaware precedent but does not appear to be available under Florida and Eleventh Circuit law. *See Bellantuono*, 557 F. App'x at 174 n.3; *Visiting Nurse Ass'n*, 154 So. 3d at 1119. Again, while our view would be the Florida state court must apply Delaware law in this circumstance, there is room

to doubt that it would given the state of the law in Florida. "[A]ny possible inadequacy of the state forum to protect the federal plaintiff's rights would provide a strong reason to exercise federal jurisdiction." *Dalzell Mgmt. Co. v. Bardonia Plaza, LLC*, 923 F. Supp. 2d 590, 602 (S.D.N.Y. 2013).

Setting that aside, this factor does not present an exceptional reason to decline jurisdiction in any event. Respondents vaguely suggest that Florida has an "interest" in punishing its own citizens. *Mot. to Dismiss* (ECF No. 15) at 15. That is absurd. The Florida action is a petition to confirm an arbitration award that imposed actual damages plus prevailing-party fees and costs. The action is not about punitive damages, as are the inapposite cases respondents cite. Worse, if respondents' view is that Florida's goal is to punish its own citizens for exercising their rights under the FAA by moving to vacate improper arbitration Awards, that is all the more reason this Court should hear the motion to vacate. Finally, as the situs in which these improper Awards were issued, D.C. courts indeed have a strong interest in hearing this case—an interest that Congress expressly incorporated into the FAA. *See* 9 U.S.C. § 10.

### 7. *Moving to vacate at the seat of the arbitration is not bad faith.*

Respondents' final argument (at 16-17) is that this action is "vexatious" and, thus, grounds for declining jurisdiction. To start, vexatiousness does not appear to be an independent factor under *Colorado River*. The Supreme Court mentioned it only in passing in a footnote in *Moses H. Cone* and appears to have viewed it as a relevant consideration in the priority or piecemeal-litigation analysis, not an independent factor that could alone justify declining jurisdiction. 460 U.S. at 17 n.20. That makes good sense because the D.C. Circuit did not mention this supposed factor at all in *Edge Investment.* Respondents' reliance on out-of-circuit case law for this proposition should counsel against treating vexatiousness as a factor.

Even so, there is nothing vexatious about petitioners bringing a petition to vacate the Awards in the district court for the district in which the arbitration took place, consistent with the FAA. What is more, the FAA's specific provision for staying a petition to confirm in favor of a petition to vacate confirms that Congress did not see anything vexatious about the order in which these types of actions are filed. 9 U.S.C. § 12.

Nor did petitioners do anything else to suggest that they acted in any way other than the utmost good faith in filing this action.

- Petitioners did not unilaterally choose D.C. as the seat of the arbitration—the parties did so jointly;

- Petitioners did not choose to file the Florida action—respondents did (presumably to preempt petitioners from exercising their rights to seek vacatur) (*but cf. Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1289 (7th Cir. 1988) (same plaintiff filing duplicative lawsuits); *Bernstein v. Hosiery Mfg. Corp. of Morganton*, 850 F. Supp. 176, 179 (E.D.N.Y. 1994) (same plaintiff proliferating lawsuits to enforce a judgment));

- Petitioners did not delay filing their action until they suffered a loss in state court nor did they file their action simply to try to harass or increase costs (*Rio Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 72 (1st Cir. 2005) ("the federal action was not filed or pursued as a reaction to an adverse state court action"); *M&J Gen. Contractors, Inc. v. Symbiont Constr., Inc.*, 541 F. Supp. 3d 878, 887 (E.D. Wis. 2021) ("gamesmanship" occurs when "a plaintiff brought a federal suit after its earlier-filed state suit appeared to be losing in state court");

- Petitioners are not using this action to delay or drive up costs; indeed, this case is already fully briefed and ripe for decision (*M&J Gen. Contractors*, 541 F. Supp. 3d at 887 ("A lawsuit is not vexatious or contrived merely because it is 'bothersome' and costly."); *cf. Calvert Fire Ins. Co. v. Am. Mut. Reinsurance Co.*, 600 F.2d 1228, 1234 n.14 (7th Cir. 1979) (federal plaintiff "sought to delay a final decision on its liability under the participation agreement, and … sought to employ the federal suit as part of its delaying strategy")).

None of the hallmarks of "vexatiousness" are remotely implicated in this action. Nothing required petitioners to accede to respondents' chosen forum; indeed, in the Florida action, respondents sought only to confirm the Modified Final Award, not bringing the Interim Award or Final Award into the proceedings until nearly a month after petitioners filed *this* action. Petitioners fairly and appropriately moved to vacate the Interim Award, Final Award, and Modified Final Award in the district court for the site of the arbitration, which they conservatively had to do within three months of the Interim Award, or no later than November 2, 2022. *See* 9 U.S.C. § 12.[8] And petitioners' motion is fully briefed and ripe for decision; it is well ahead of the Florida action. *Johnston Lemon & Co. v. Smith*, 882 F. Supp. 4, 5 (D.D.C. 1995) (retaining jurisdiction where "[t]he calendar of this Court permits an earlier hearing and decision of the merits"). There was no vexatiousness on petitioners' part that could possibly justify declining jurisdiction, even if that were an appropriate factor for the Court to consider (which it is not).

---

[8]    In order to protect their rights given the statutory timeframe (in the event this Court declined to exercise jurisdiction or otherwise), petitioners did have to file a protective motion to vacate in the Florida action that is materially similar to petitioners' motion to vacate in this action, and petitioners prudently sought a stay in the Florida action in favor of this petition to vacate.

\* \* \*

In sum, respondents have come nowhere close to demonstrating the type of "exceptional circumstances" that could justify dismissing or staying this case under *Colorado River*. Because this Court has a "virtually unflagging obligation" to exercise the jurisdiction given to it, it should do so and grant the motion to vacate.

## CONCLUSION

The Court should deny respondents' motion to dismiss or stay under the *Colorado River* doctrine.

Dated: November 28, 2022

Respectfully submitted,

/s/ *Lisa M. Richman*

Lisa M. Richman (No. 488693)
Lauren H. Evans (No. 156152)
MCDERMOTT WILL & EMERY LLP
500 North Capitol Street NW
Washington, DC 20001
(202) 756-8000
lrichman@mwe.com
levans@mwe.com

*Counsel for Petitioners Petruss Media Group, LLC f/k/a Take 5 Media Group, LLC, Alexander Radetich, Richard Gluck, and RJV Marketing Corp.*