**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

PETRUSS MEDIA GROUP, LLC f/k/a
TAKE 5 MEDIA GROUP, LLC, et al.

                    Petitioners,

v.

ADVANTAGE SALES & MARKETING
LLC, et al.,

                    Respondents.

Case No. 1:22-cv-3278

**RESPONDENTS' REPLY IN SUPPORT OF MOTION TO DISMISS PETITION TO
VACATE ARBITRATION AWARDS DUE TO A SEPARATE PENDING ACTION TO
CONFIRM AWARDS OR, IN THE ALTERNATIVE, TO STAY PETITION AND
<u>MOTION TO VACATE</u>**

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .................................................................................................1

II.    ARGUMENT .......................................................................................................3

    A.    The decision in *Edge Investment* does not prevent this Court from dismissing or staying this case ...........................................................3

    B.    The *Colorado River* factors justify dismissing or staying this case ........................7

        1.    Factor 1:  Assumption of jurisdiction over property is neutral ...................7

        2.    Factor 2:  Inconvenience of the federal forum weighs heavily in favor of abstention .................................................................8

        3.    Factor 3:  Avoidance of piecemeal litigation weighs in favor of dismissing or staying case........................................................10

        4.    Factor 4:  The order in which the courts obtained jurisdiction favors granting a stay or is irrelevant..........................................11

        5.    Factor 5:  Source of law providing rule of decision on the merits weighs in favor of abstention or is neutral.................................12

        6.    The Florida Action will protect the rights of its residents ........................16

        7.    The contrived nature of the District of Columbia Action weighs in favor of abstention ..................................................................18

III.   CONCLUSION...................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Affinity Fin. Corp. v. AARP Fin., Inc.*,
794 F. Supp. 2d 117 (D.D.C. 2011), *aff'd*, 468 F. App'x 4 (D.C. Cir. 2012)......................3, 12

*Agspring, LLC v. NGP X US Holdings, L.P.*,
No. CV 2019-1021-JRS, 2022 WL 170068 (Del. Ch. Jan. 19, 2022) ....................................14

*Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*,
789 F.2d 1 (D.C. Cir. 1986) ................................................................................................16

*Ambrosia Coal & Constr. Co. v. Morales*,
368 F. 3d 1320 (11th Cir. 2004) ...........................................................................................8

*Matter of Arb. Between Int'l Surplus Lines Ins. Co. & People's Ins. Co. of China*,
No. 94 C 2838, 1994 WL 502015 (N.D. Ill. Sept. 12, 1994)..................................................15

*Atkinson v. Grindstone Cap.*,
LLC, 12 F. Supp. 3d 156 (D.D.C. 2014) .....................................................................7, 10, 12

*CC/Devas (Mauritius) Ltd. v. Republic of India*,
No. 1:21-CV-106-RCL, 2022 WL 873620 (D.D.C. Mar. 24, 2022) .........................................7

*Chem-Met Co. v. Metaland Int'l, Inc.*,
No. CIV.A. 96-02548(TAF), 1998 WL 35272368 (D.D.C. Mar. 25, 1998) ............................9

*Colorado River Water Conservation District v. United States*,
424 U.S. 800 (1976)........................................................................................... *passim*

*Columbia Plaza Corp. v. Sec. Nat'l Bank*,
525 F.2d 620 (D.C. Cir. 1975) .............................................................................................10

*Coyne v. Hewlett-Packard Co.*,
308 F. Supp. 3d 207, 210 (D.D.C. 2018) ...............................................................................12

*Dalzell Mgmt. Co. v. Bardonia Plaza, LLC*,
923 F. Supp. 2d 590 (S.D.N.Y. 2013)....................................................................................17

*Dietz v. Bouldin*,
579 U.S. 40 (2016)..............................................................................................................7

*Driftless Area Land Conservancy v. Valcq*,
16 F.4th 508 (7th Cir. 2021) ....................................................................................6, 13, 18

*Duffy v. Godfread*,
No. 13-CV-1569, 2013 WL 4401390 (N.D. Ill. Aug. 14, 2013) ........................................18

*Edge Investment, LLC v. District of Columbia*,
927 F.3d 549 (D.C. Cir. 2019) ................................................................1, 2, 3, 12

*Evanston Ins. Co. v. Jimco, Inc.*,
844 F.2d 1185 (5th Cir. 1988) ...................................................................8

*FBR Cap. Markets & Co v. Hans*,
985 F. Supp. 2d 33 (D.D.C. 2013) .............................................................12

*G&G Closed Cir. Events, LLC v. 415 Trenton, L.L.C.*,
No. 7:21-CV-00436, 2022 WL 209280 (S.D. Tex. Jan. 24, 2022)........................................10

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20 (1991)....................................................................................14

*Gleason v. Firstrust Bank*,
538 F. Supp.3d 444 (E.D. Penn. 2021) .................................................................6, 8

*Groeneveld Transp. Efficiency v. Eisses*,
297 F. App'x 508 (6th Cir. 2008) .....................................................................8

*Hall St. Assocs., L.L.C. v. Mattel, Inc.*,
552 U.S. 576 (2008)....................................................................................12

*Howard Univ. v. Metro. Campus Police Officer's Union*,
512 F.3d 716 (D.C. Cir. 2008) .........................................................................16

*Iou Cent., Inc. v. Rosin*,
2020 U.S. Dist. LEXIS 251092 (N.D. Ga. November 20, 2020) ...................................6, 8, 11

*J.B. v. Woodard*,
997 F.3d 714 (7th Cir. 2021) ............................................................................13

*J.Y.C.C. v. Doe Run Res., Corp.*,
370 F. Supp. 3d 1031 (E.D. Mo. 2019)....................................................................18

*Kim-C1, LLC v. Valent Biosciences Corp.*,
756 F. Supp. 2d 1258 (E.D. Cal. 2010)....................................................................17

*Louisiana Power & Light Co. v. City of Thibodaux*,
360 U.S. 25 (1959)......................................................................................7

*Lumen Const., Inc. v. Brant Const. Co.*,
780 F.2d 691 (7th Cir. 1985) ..............................................................................6

*M&J Gen. Contractors, Inc. v. Symbiont Constr., Inc.*,
541 F. Supp. 3d 878 (E.D. Wis. 2021)......................................................................6

*Major League Baseball Players Ass'n v. Garvey*,
532 U.S. 504 (2001)..................................................................................................15

*Mala Geoscience AB v. Witten Techs., Inc.*,
No. CIVA 06-1343 RMC, 2007 WL 1576318 (D.D.C. May 30, 2007).................15

*Millennium Validation Servs., Inc. v. Thompson*,
No. CIV.A. 02-1430 (GMS), 2006 WL 3159821 (D. Del. Nov. 3, 2006), aff'd,
316 F. App'x 124 (3d Cir. 2008) .............................................................................14

*Nationstar Mortgage LLC v. Knox*,
351 F. App'x 844 (5th Cir. 2009) ..............................................................................7

*Newyorksocialdiary.com, LLC v. Palm Beach Social Diary LLC*,
2022 WL 970878 (S.D. Fla. 2022) ..........................................................................10

*NRI Acad. of Scis. v. Mukkamala*,
No. 12-CV-15333, 2017 WL 5749673 (E.D. Mich. Jan. 9, 2017) .........................14

*Off. & Pro. Emps. Int'l Union, Loc. 2 v. Washington Metro. Area Transit Auth.*,
724 F.2d 133 (D.C. Cir. 1983)...................................................................................4

*Paul Green Sch. Of Rock Music Franchising, LLC. v. Smith*,
389 F. App'x 172 (3d Cir. 2010) .............................................................................14

*Penn Gen. Cas. Co. v. Commonwealth of Pennsylvania ex rel. Schnader*,
294 U.S. 189 (1935)....................................................................................................7

*Pereira v. Cogan*,
52 F. App'x 536 (2d Cir. 2002) ...............................................................................10

*Quackenbush v. Allstate Ins. Co.*,
517 U.S. 706 (1996)....................................................................................................7

*Regnery Pub., Inc. v. Miniter*,
601 F. Supp. 2d 192 (D.D.C. 2009), *aff'd*, 368 F. App'x 148 (D.C. Cir. 2010)......13

*Robinson v. Ruiz*,
772 F. Supp. 212 (D. Del. 1991)..............................................................................10

*S. Mills, Inc. v. Nunes*,
586 F. App'x 702 (11th Cir. 2014) ......................................................................13, 17

*Seneca Nation of Indians v. New York*,
988 F.3d 618 (2d Cir. 2021)....................................................................................14

*SPX Corp. v. Garda USA, Inc.*,
　94 A.3d 745 (Del. 2014) ...........................................................................................14

*UtahAmerican Energy, Inc. v. Dep't of Lab.*,
　685 F.3d 1118 (D.C. Cir. 2012) ................................................................................10

*Weber v. PACT XPP Techs., AG*,
　811 F.3d 758 (5th Cir. 2016) ....................................................................................17

*Williams Fund Priv. Equity Grp., Inc. v. Engel*,
　519 F. Supp. 2d 100 (D.D.C. 2007) ..........................................................................16

## Statutes and Other Authorities

*Appropriateness of Federal Court Abstention Under Colorado River Water
　Conservation District v. United States, 424 U.S. 800, 96 S. Ct. 1236, 47 L. Ed.
　2d 483, Given the Existence of Concurrent Parallel Proceeding*,
　193 A.L.R. Fed. 291 (2004 & Supp. 2022)...................................................................3

*Bluebook Signals Explained\**, The Writing Center Georgetown University Law
　Center (2019), https://www.law.georgetown.edu/wp-
　content/uploads/2019/08/BLUEBOOK-SIGNALS-EXPLAINED.pdf ...................................8

Federal Arbitration Act ....................................................................................................13

John Hart Ely, *Choice of Law and the State's Interest in Protecting Its Own*,
　23 WM. & MARY L. REV. 173 (1981) ........................................................................17

Judiciary Act of 1789 ......................................................................................................16

Racketeer Influenced and Corrupt Organizations Act (RICO),
　18 U.S.C. § 1962(c) ................................................................................................4, 5

Scott R. Haiber, REMOVING THE BIAS AGAINST REMOVAL,
　53 Cath. U. L. Rev. 609, 614–15 (2004).....................................................................16

## I.    __INTRODUCTION__

If the non-prevailing parties in an arbitration all reside in Florida, they and their counsel participated in the arbitration from Florida, the primary witnesses live in Florida, the fraud giving rise to the arbitral award was committed in Florida, the prevailing parties filed a petition to confirm the award in Florida, the non-prevailing parties attempted to evade service of process in Florida to buy time to forum shop to initiate redundant proceedings in the District of Columbia, the judgment will need to be enforced in Florida, and the District of Columbia has no connection at all to any events in the actual arbitration, are these "exceptional circumstances" that justify this Court dismissing or staying the Petition to Vacate under the *Colorado River* doctrine?  Or is this Court compelled to assert jurisdiction and maintain an entirely duplicative action for no reason other than the fact that it has jurisdiction?  Common sense, prevailing law, and the facts of this particular case all militate for either dismissal or a stay in favor of the Florida Action.

The Take 5 Parties base their Opposition[1] on the decision in *Edge Investment, LLC v. District of Columbia*, 927 F.3d 549 (D.C. Cir. 2019), but they say nothing about the facts or the court's reasoning, other than to repeat the mantra that there is a heavy presumption in favor of jurisdiction.  They do this because the facts of *Edge Investment* were materially different than the facts of this case, and the court's approach to the question of whether to dismiss or stay a parallel proceeding is at odds with the one the Take 5 Parties ask this Court to take.  In *Edge Investment*, the parallel proceedings were both in the District of Columbia, and the dispute concerned the District of Columbia itself and property in the District of Columbia, so the only issue was

---

[1] The Opposition to Motion to Dismiss or Stay Petition to Vacate Arbitration Awards (ECF No. 24) will be referred to as the "Opposition" and cited as "Opp."

1

whether similar proceedings could occur in the same location but in two different jurisdictions simultaneously.

Moreover, the court eschewed a "toting up" of the *Colorado River* factors in favor of an approach that "balanc[es] . . . the important factors as they apply in a given case." *Edge Investment*, 927 F.3d at 554. Here, the balancing of "important factors" places jurisdiction most appropriately in Florida. Floridians, who were held to have defrauded the Advantage Parties after three years of litigation and a 16-day hearing that spanned 7 months, and who believed it was more convenient to physically remain in Florida for the actual arbitration, have ventured out to the District of Columbia to use this Court as another vehicle in their quest to make obtaining a judgment against them more cumbersome and expensive.

There are two general categories of presumptions: rebuttable and irrebuttable. The presumption that a court will retain jurisdiction falls into the former category, not the latter one.

Rather than address any of the factors that suggest that Florida is the proper venue to enforce the Award,[2] the Take 5 Parties proceed by misdirection. They say, for example, that "[t]his case is fully briefed on the merits and ripe for decision," Opp. at 2, when it is not. The Advantage Parties have asked this Court to defer their obligation to respond substantively to the Take 5 Parties' Petition to Vacate because they should not be required to substantively continue parallel proceedings when they filed this Motion to Dismiss[3] to avoid having to do this. (ECF No. 16.) The Advantage Parties have now filed a substantive response in Florida to the Florida

---

[2] Judge Eyler's August 4, 2022 Interim Award (ECF Nos. 1-9, 3-4) and his October 20, 2022 Modified Final Award (ECF Nos. 1-11, 3-6) will be referred to collectively as the "Award."

[3] The Motion to Dismiss Petition to Vacate Arbitration Awards Due to a Separate Pending Action to Confirm Awards or, in the Alternative, to Stay Petition and Motion to Vacate (ECF No. 15) will be referred to as the "Motion to Dismiss" and cited as "Mtn."

Petition to Vacate, a copy of which (without the voluminous exhibits), is attached as Exhibit A to the Declaration of Michael H. Strub, Jr. in support of this reply (the "Strub Reply Decl.").

The Take 5 Parties also go into extensive detail about the Advantage Parties' efforts to serve them in Florida, ignoring the fact that their counsel have appeared in Florida and have been served. Their reliance on these ministerial issues relating to service is moot and belied by the gestalt approach in *Edge Investment*.

At the end of the day, the Take 5 Parties are asking that the Court find that neither dismissal nor a stay are appropriate under *Colorado River* unless the case involves riparian rights. This runs counter to almost 50 years of caselaw, in which the doctrine has been invoked in a variety of contexts. *See generally Appropriateness of Federal Court Abstention Under Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S. Ct. 1236, 47 L. Ed. 2d 483, Given the Existence of Concurrent Parallel Proceeding*, 193 A.L.R. Fed. 291 (2004 & Supp. 2022). The Advantage Parties are not asking the Court to dismiss or stay the District of Columbia Action just because the Florida Action was filed first, or because service in the Florida case was completed first. It is because the case belongs in Florida, and the Take 5 Parties have no legitimate reason to pursue it in the District of Columbia.

## II.    ARGUMENT[4]

### A.    The decision in *Edge Investment* does not prevent this Court from dismissing or staying this case

The Take 5 Parties rely extensively on the D.C. Circuit's opinion in *Edge Investments* and the statement by that court that the balance should be heavily weighted in favor of

---

[4] The Take 5 Parties "disagree with the recitation of facts respondents provide in their motion to dismiss" and offer an alternative summary of the facts. Opp. at 2. In their Motion to Dismiss, the Advantage Parties relied exclusively on Judge Eyler's findings in his Award. The Take 5 Parties are not permitted to relitigate these factual determinations. *See Affinity Fin. Corp. v. AARP Fin., Inc.*, 794 F. Supp. 2d 117, 122 (D.D.C. 2011) (awarding attorney's fees where

jurisdiction. Opp. at 8–11. Based on *Edge Investments*, they ask that the Court ignore the significant Florida nexus with the arbitration and "summarily reject respondents' motion and exercise its jurisdiction." *Id.* at 11. The Take 5 Parties are cherry-picking quotes out of the opinion and ignoring the actual facts of the case.

The dispute in *Edge Investments* concerned events occurring entirely in the District of Columbia and involved two proceedings in D.C. Edge Investment, LLC (the "Developer") sought "to construct a three story building on an alleged undeveloped parcel of land in Washington, D.C." *Id.* at 550–51. The Developer alleged that it received clearances from D.C. and its regulatory agencies to develop the project but after completing the building, it learned that the building was constructed on top of a sewer. *Id.* at 551. Ultimately, the regulatory agencies ordered that the building be torn down, and they sued in the District of Columbia Superior Court to recover the demolition costs. *Id.* The Developer counter-claimed and also sued D.C. directly. *Id.*

The Developer subsequently commenced a federal case in the U.S. District Court for the District of Columbia alleging that the District of Columbia defendants had engaged in an unlawful conspiracy under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c). *Id.* That is, the Developer asserted a federal claim that had not been asserted in the state court proceeding. "The remaining causes of action substantially overlap[ed] [the Developer's] Superior Court counterclaims and third-party complaint." *Id.*

---

non-prevailing party sought to relitigate issues decided by the arbitrators), *aff'd*, 468 F. App'x 4 (D.C. Cir. 2012). "If parties to arbitration could freely relitigate their complaints in the courts, arbitration would cease to be a method to achieve prompt resolution of conflict, but would instead become a new layer of review, and a new cause for delay." *Off. & Pro. Emps. Int'l Union, Loc. 2 v. Washington Metro. Area Transit Auth.*, 724 F.2d 133, 137 (D.C. Cir. 1983). The Court should therefore ignore the Take 5 Parties' alternative factual background, which contradicts Judge Eyler's determinations.

Certain of the defendants moved to stay or dismiss the federal case in favor of the Superior Court case based on *Colorado River*. *Id.* The district court granted that motion, and the Developer appealed. *Id.* at 551–52. The D.C. Circuit ultimately concluded that the district court abused its discretion under the exceptional-circumstances test, and it reversed. *Id.* at 553.

The D.C. Circuit's primary concern was that the district court had simply added up the factors, finding that one was irrelevant, two were neutral, and three favored abstention. *See id.* at 553–54. The court noted that the "problem with this kind of toting up, however, is that it runs contrary to the Supreme Court's direction that deferral 'does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, *with the balance heavily weighted in favor of the exercise of jurisdiction.*" *Id.* at 554 (emphasis in original). The court held that the existence of the Superior Court action and the district court action was "a garden-variety example of two lawsuits proceeding concurrently in two courts." *Id.* at 556. And it was. Both actions were pending in D.C. The parties were all in D.C. The events took place in D.C. These were two proceedings in the same location, the only difference being the nature of the tribunal.

This case is not a "garden variety" case. While the balance may be heavily weighted in favor of jurisdiction, there is nothing on that side of the scale other than this presumption. The only connection between the District of Columbia and this arbitration is that it was deemed to take place in Washington, D.C. pursuant to the Parties' Joint Submission to the AAA. (*See* ECF Nos. 1-72, 3-67.) But this fact adds no weight to the scale; it is merely the opportunity that the Take 5 Parties are seeking to exploit to invoke this Court's jurisdiction. As the Advantage Parties pointed out in their Motion to Dismiss, nothing actually took place in Washington, D.C. Mtn. at 10. The Take 5 Parties do not dispute this. Moreover, there was no evidence that the

Developer in *Edge Investments* was engaged in gamesmanship or forum shopping in filing its federal lawsuit in the district court asserting a federal claim, but that is exactly what occurred here.

The Take 5 Parties do not cite a single case in which a court turned a blind eye to factors like these and asserted jurisdiction simply because jurisdiction existed. *See, e.g.*, *M&J Gen. Contractors, Inc. v. Symbiont Constr., Inc.*, 541 F. Supp. 3d 878, 885 (E.D. Wis. 2021) ("The legitimacy of the court system in the eyes of the public and fairness to the individual litigants also are endangered by duplicative suits that are the product of gamesmanship or that result in conflicting adjudications.") (quoting *Lumen Const., Inc. v. Brant Const. Co.*, 780 F.2d 691, 694 (7th Cir. 1985)). The Court is permitted to look behind the curtain that the Take 5 Parties are trying to close and examine whether it is necessary or appropriate for the District of Columbia Action to proceed. *See, e.g.*, *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 528 (7th Cir. 2021) (abstaining, *sua sponte*, and concluding that plaintiff's federal lawsuit—seeking substantially the same relief from the same parties—was contrived and had "no good reason to litigate identical [. . .] claims in state and federal court"); *see also Gleason v. Firstrust Bank*, 538 F. Supp.3d 444 (E.D. Penn. 2021) (abstaining where, *inter alia*, forum state of federal action had almost no connection to the case, unlike the forum state of state action); *Iou Cent., Inc. v. Rosin*, 2020 U.S. Dist. LEXIS 251092 at *1 (N.D. Ga. November 20, 2020) (abstaining where, among other things, Florida (state action forum) had far greater connection to the matter than Georgia (federal forum)). Should the Court be wary of declining to exercise its jurisdiction, then the Advantage Parties' alternative requested relief of a stay would resolve that concern.[5]

---

[5] The Take 5 Parties argue that the *Colorado River* doctrine is not an "abstention" doctrine. Opp. at 9 n.3. To be clear, if the Court declines to dismiss the Petition to Vacate altogether, the Advantage Parties have asked that the Court stay further proceedings. "Unlike the

B.    **The *Colorado River* factors justify dismissing or staying this case**

The court in *Edge Investments* elevated the substance of the *Colorado River* analysis over the numerical adding up of the factors identified in that decision, but consideration of those factors also favors dismissing or staying the District of Columbia Action in favor of the Florida Action.

1.    **Factor 1:  Assumption of jurisdiction over property is neutral**

The first *Colorado River* factor is whether one court seized property first.  *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976).  This factor is based on longstanding precedent that "if the two suits are in rem or quasi in rem, requiring that the court or its officer have possession or control of the property which is the subject of the suit in order to proceed with the cause and to grant the relief sought, the jurisdiction of one court must of necessity yield to that of the other."  *Penn Gen. Cas. Co. v. Commonwealth of Pennsylvania ex rel. Schnader*, 294 U.S. 189, 195 (1935).  The assertion by the Take 5 Parties that the factor "favors the exercise of jurisdiction," Opp. at 12, makes no sense.  This simply is not a case about jurisdiction over real property.  *See, e.g.*, *Atkinson v. Grindstone Cap.*, LLC, 12 F. Supp. 3d 156, 162–63 (D.D.C. 2014) (deeming inapplicable factor as "neutral" and not as favoring exercise of jurisdiction); *Nationstar Mortgage LLC v. Knox*, 351 F. App'x 844, 852 (5th Cir. 2009) (same).

---

outright dismissal or remand of a federal suit, we held, an order merely staying the action 'does not constitute abnegation of judicial duty.  On the contrary, it is a wise and productive discharge of it.  There is only postponement of decision for its best fruition.'"  *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 721 (1996) (quoting *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 29 (1959)).  This Court, of course, has the inherent power to stay proceedings "stemming from 'the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'"  *CC/Devas (Mauritius) Ltd. v. Republic of India*, No. 1:21-CV-106-RCL, 2022 WL 873620, at *4 (D.D.C. Mar. 24, 2022) (quoting *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016)).

2.    **Factor 2:  Inconvenience of the federal forum weighs heavily in favor of abstention**

The second *Colorado River* factor examines whether the federal forum is an inconvenient one.  *See Colorado River*, 424 U.S. at 818.  "These cases indicate that the inconvenience factor primarily involves the physical proximity of the federal forum to the evidence and witnesses." *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1191 (5th Cir. 1988); *see also Gleason v. Firstrust Bank*, 538 F. Supp.3d 444 (E.D. Penn. 2021) (abstaining where, *inter alia*, defendant was from Florida (forum of state action) and only connection to Pennsylvania (federal forum) was a forum selection clause); *Iou Cent., Inc. v. Rosin*, 2020 U.S. Dist. LEXIS 251092 at *1 (N.D. Ga. November 20, 2020) (abstaining where, among other things, state of state action had far greater connection to the matter than state of federal action); *cf. Ambrosia Coal & Constr. Co. v. Morales*, 368 F. 3d 1320, 1332–33 (11th Cir. 2004) (evaluating location of parties, evidence, and witnesses in determining that federal forum has significant connection to the case due to the location of evidence and witnesses).[6]  This case is all about conduct and witnesses in Florida.  The Take 5 Parties do not dispute this.

---

[6] The Take 5 Parties' attempt to distinguish the authority that the Advantage Parties cited, Opp. at 14 n. 5, is puzzling.  As the parentheticals indicate, the courts in each case stayed the action before it because of the location of witnesses or evidence.  The Advantage Parties did not "misrepresent" *Groeneveld Transp. Efficiency v. Eisses*, 297 F. App'x 508, 511 (6th Cir. 2008). Although that case involved international abstention, the court noted that "in theory, the international abstention doctrine may be modeled on the *Colorado River* doctrine." *Id.* at 512. And although the court held that it lacked jurisdiction, this was an alternate holding.  *Id.*  ("this Court also lacks jurisdiction to hear Plaintiff's appeal under the collateral order doctrine"). Finally, the Advantage Parties introduced the citation with "*cf.*," which "is used to introduce a source that supports a proposition that is different from the one it follows, but that is analogous enough to the proposition that it still indirectly supports your proposition."  *Bluebook Signals Explained\**, The Writing Center Georgetown University Law Center, 4 (2019), https://www.law.georgetown.edu/wp-content/uploads/2019/08/BLUEBOOK-SIGNALS-EXPLAINED.pdf (last accessed 12/05/2022).  *See* Mtn. at 11.

Instead, the Take 5 Parties depart completely from the *Colorado River* doctrine and meander into a discussion of forum selection clauses. Opp. at 12–13. Even if this authority—as opposed to cases interpreting the doctrine itself—were pertinent, the Take 5 Parties are ignoring the language of the APA. Section 10.11(b) of the APA provides that "judgment upon the award rendered by the Arbitrator may be entered in any court having jurisdiction thereof." (ECF Nos. 1-13, 3-8, at 80.) The Florida court has jurisdiction over the Take 5 Parties. *See* Mtn. at 7–8. The parties did not select the District of Columbia as the forum in which to enforce the Award.

The Take 5 Parties attempt to dismiss the Florida connection by arguing, in essence, that the District of Columbia will not be as inconvenient as it would be for a "full-blown litigation."[7] Opp. at 13. This is pure speculation. If the case is in Florida, the Take 5 Parties are in Florida, and their attorneys are in Florida. They will not have to travel to attend hearings. If the case is in the District of Columbia, scheduling hearings will require coordinating the schedules of all parties and their counsel, including travel schedules.

This issue is particularly problematic for the Advantage Parties, who are located in California and whose trial counsel is located in California. If both the Florida Action and the District of Columbia Action proceed, the Advantage Parties and their counsel will have to travel all the way across the country for hearings in both jurisdictions. This is both expensive and inconvenient. In any event, that the burden could be worse does not mean that this forum is not inconvenient.

---

[7] The Take 5 Parties misrepresent the decision in *Chem-Met Co. v. Metaland Int'l, Inc.*, No. CIV.A. 96-02548(TAF), 1998 WL 35272368 (D.D.C. Mar. 25, 1998). In that case, the court did not vacate the award for failing to hear material evidence, it vacated the award because the arbitrators did not hold a hearing at all in violation of AAA rules. *See id.* at *2–*4.

Finally, as the Advantage Parties pointed out, because the Take 5 Parties all reside in Florida, it will be easier to enforce a Florida judgment against them.  Mtn. at 11.  The Take 5 Parties do not dispute this; they argue only that "this argument is irrelevant to geographic convenience under *Colorado River*."  Opp. at 14.  They are wrong.  "[C]onvenience refers to ease of access to sources of proof, availability of compulsory process ***and enforceability of judgments***."  *Robinson v. Ruiz*, 772 F. Supp. 212, 215 (D. Del. 1991) (emphasis added); *G&G Closed Cir. Events, LLC v. 415 Trenton, L.L.C.*, No. 7:21-CV-00436, 2022 WL 209280, at *2 (S.D. Tex. Jan. 24, 2022) ("the enforceability of judgments rendered" is one of the factors to be considered in determining whether a forum is convenient (footnote omitted)).  This only makes sense.  The Advantage Parties have already spent years establishing the Take 5 Parties' fraud.  They have "an interest in a prompt enforceable judgment."  *See Pereira v. Cogan*, 52 F. App'x 536, 539 (2d Cir. 2002).

### 3.    Factor 3:  Avoidance of piecemeal litigation weighs in favor of dismissing or staying case

"'Sound judicial administration counsels against separate proceedings, and the wasteful expenditure of energy and money incidental to separate litigation of identical issues should be avoided.'"  *UtahAmerican Energy, Inc. v. Dep't of Lab.*, 685 F.3d 1118, 1124 (D.C. Cir. 2012) (quoting *Columbia Plaza Corp. v. Sec. Nat'l Bank*, 525 F.2d 620, 626 (D.C. Cir. 1975)).  There is no dispute that the Florida Action and the District of Columbia Action completely overlap.  "Although duplicative litigation alone is not enough to warrant a finding that this factor weighs in favor of abstention, it remains relevant to the Court's consideration and justifies a finding that the factor is at least neutral."  *Atkinson v. Grindstone Cap*., LLC, 12 F. Supp. 3d 156, 164 (D.D.C. 2014) (dismissing petition to enforce award in favor of state proceeding to vacate it); *see also Newyorksocialdiary.com, LLC v. Palm Beach Social Diary LLC*, 2022 WL 970878 at *5

(S.D. Fla. 2022) (abstaining where, among other things, the overlap in state and federal actions would result in "a deleterious waste of judicial resources"); *Iou Cent.,* 2020 U.S. Dist. LEXIS 251092 at *1 ("This case overlap poses a high risk of wasting judicial resources.").

The Advantage Parties have spent a substantial amount of time and money attempting to obtain a judgment, and there is no legitimate reason to permit the Take 5 Parties to exacerbate those costs by this duplicative proceeding in the District of Columbia, especially where there is *no reason whatsoever* for the Take 5 Parties to have initiated this action when the Florida Action was pending, other than to forum shop.

Finally, because of the circumstances of this case, there is no assurance that it will not result in piecemeal litigation. The Advantage Parties will likely need to take steps to enforce the judgment, which no doubt will involve further litigation against the Take 5 Parties. If both proceedings remain open and active concurrently, this litigation could very well splinter off in multiple directions.

### 4.    Factor 4:  The order in which the courts obtained jurisdiction favors granting a stay or is irrelevant

The Take 5 Parties devote a substantial portion of their Opposition to the factual dispute concerning which parties were served and when. Opp. at 6–7, 17–21. This is no doubt a sore subject, because they took steps to avoid service in Florida, causing process servers to serve Mr. Radetich's wife and Mr. Gluck's stepson. Opp. at 6–7. Indeed, Mr. Gluck has apparently left the country altogether, as he signed his declaration from Budapest, Hungary. (ECF 24-9 at 2). Regardless, these arguments are a red herring. The Take 5 Parties have indisputably now been served in Florida, so there is no dispute that the Florida court has jurisdiction over them. Strub Reply Decl. Ex. B. The Take 5 Parties have themselves argued that a few days should not "justify surrendering jurisdiction." Opp. at 17. The same can be said of service. *See Edge*

*Investments*, 927 F.3d at 557 (discussing insignificance of dates cases had been pending).  The

Take 5 Parties argue that its Motion to Vacate the Award, submitted in this matter, is fully

briefed, but this is not true, as the Advantage Parties have only filed an interim response to that

motion (ECF No. 16), pending a decision on the present Motion to Dismiss.  In contrast, the

Advantage 5 Parties have filed a substantive opposition to the Take 5 Parties' parallel opposition

to the petition to confirm the award filed in Florida.  Strub Reply Decl. Ex. A.

### 5.    Factor 5:  Source of law providing rule of decision on the merits weighs in favor of abstention or is neutral

The parties agree that this action is governed by Delaware law and that the only federal

law at issue is the FAA.  If the FAA is the main federal law in question, this does not weigh in

favor of abstention.  *See Atkinson v. Grindstone Cap.*, LLC, 12 F. Supp. 3d 156, 165 (D.D.C.

2014) ("[T]he presence of federal law [is] made less significant by the fact that states have

concurrent jurisdiction over FAA cases and must also enforce that law.").  As noted in the

Motion to Dismiss, state courts are called upon more frequently than federal courts to apply the

FAA.  Mtn. at 14.

The Take 5 Parties make two arguments.  First, they argue that Florida state law does not

recognize "manifest disregard of the law" as a basis to vacate an arbitral award under the FAA,

while District of Columbia federal law supposedly does.[8]  Opp. at 22.  This is all but an

---

[8] This district has *not* adopted the "manifest disregard" standard.  *See Coyne v. Hewlett-Packard Co.*, 308 F. Supp. 3d 207, 210 (D.D.C. 2018) ("this Court evaluated a 'manifest disregard' claim with considerable suspicion 'because the case law controlling this Court's reasoning has refused to revive 'manifest disregard' since its apparent death knell in" *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008)).  We are not aware of a single published decision in this district in which a court vacated an award on this basis, so courts seem to pretermit this issue.  *See, e.g., Affinity Fin. Corp. v. AARP Fin., Inc.*, 468 F. App'x 4, 5 (D.C. Cir. 2012) ("AARP Financial did not demonstrate (or even argue on appeal) that '(1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case.'"); *FBR Cap. Markets & Co v. Hans*, 985 F. Supp. 2d 33, 36 (D.D.C. 2013) (rejecting

admission that the Take 5 Parties forum shopped, selecting a location with what it hopes to have more favorable law.

Whether a jurisdiction will recognize "manifest disregard of the law" as a legitimate basis to attack the Award, though, is irrelevant, because a mere review of the memorandum of points and authorities in support of the motion to vacate (ECF No. 3-1) demonstrates that the Take 5 Parties' attempts to vacate the Award on this ground are simply a regurgitation of their other arguments with a different label. *Compare id.* Part IV with Parts I–III (using the same allegations to justify vacatur under different FAA sections). Thus, they intend to present the same arguments regardless of the availability of the "manifest disregard" doctrine.

Additionally, even assuming that a federal court were better positioned to interpret the FAA, the court in the Florida Action does not need to *interpret* the FAA—it need only apply it—because the law is clear that the Eleventh Circuit—like many circuits—does not recognize the manifest disregard doctrine. *S. Mills, Inc. v. Nunes*, 586 F. App'x 702, 704 (11th Cir. 2014) ("In this Circuit, manifest disregard of the law is no longer a valid basis for vacating an arbitration award."). Federal courts assume that state courts will properly apply federal law. *See Driftless Area Land Conservancy*, 16 F.4th 508 at 528 (abstaining in recognition that state courts are capable of addressing federal issues, concluding that "'exercising federal jurisdiction over this claim would reflect a lack of respect for the state's ability to resolve the issues properly before its courts.'" (alternations omitted) (quoting *J.B. v. Woodard*, 997 F.3d 714 (7th Cir. 2021))).

---

"manifest disregard" contention without deciding if it was still valid); *Regnery Pub., Inc. v. Miniter*, 601 F. Supp. 2d 192, 195 (D.D.C. 2009), *aff'd*, 368 F. App'x 148 (D.C. Cir. 2010) ("This Court need not decide that issue because Miniter's allegations do not rise to the level of a manifest disregard for the law").

Further, although a full discussion of the merits of the "manifest disregard" position is beyond the scope of the present memorandum, the Advantage Parties provide the following brief overview of the flaws in the position to demonstrate that the Take 5 Parties would not prevail on this argument even if they were legally allowed to advance it. "To succeed in challenging an award under the manifest disregard standard, a party must make 'a showing that the arbitrators knew of the relevant legal principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it.' In addition to this 'subjective component,' a finding of manifest disregard requires an objective determination that the disregarded legal principle was 'well defined, explicit, and clearly applicable.'" *Seneca Nation of Indians v. New York*, 988 F.3d 618, 626 (2d Cir. 2021). None of their objections to Judge Eyler's Award come close to meeting this standard. Notably, each of the cases on which the Take 5 Parties rely (ECF No. 3-1 at 50), rejected the argument that the arbitrators manifestly disregarded the law.[9]

The Take 5 Parties argue that Judge Eyler manifestly disregarded the law by failing to sanction the Advantage Parties for alleged discovery abuses. "The Court will rarely, if ever, question the arbitrator's discovery determinations." *NRI Acad. of Scis. v. Mukkamala*, No. 12-CV-15333, 2017 WL 5749673, at *6 (E.D. Mich. Jan. 9, 2017); *see also Gilmer v.*

---

[9] *See Paul Green Sch. Of Rock Music Franchising, LLC. v. Smith*, 389 F. App'x 172, 178 (3d Cir. 2010) (rejecting contention that arbitrator ignored defendant's counterclaims); *Millennium Validation Servs., Inc. v. Thompson*, No. CIV.A. 02-1430 (GMS), 2006 WL 3159821, at *9 (D. Del. Nov. 3, 2006) (denying motion to vacate or modify arbitration award), aff'd, 316 F. App'x 124 (3d Cir. 2008); *SPX Corp. v. Garda USA, Inc.*, 94 A.3d 745, 747 (Del. 2014) (reversing decision by lower court to vacate an arbitration award based on "manifest disregard of the law"); *Agspring, LLC v. NGP X US Holdings, L.P.*, No. CV 2019-1021-JRS, 2022 WL 170068, at *4 (Del. Ch. Jan. 19, 2022) ("the arbitration panel did not show manifest disregard for the law or act outside of its jurisdiction when it determined that the advancement claim was arbitrable").

*Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991) (arbitrator need not follow Federal Rules of Civil Procedure in connection with discovery); *Matter of Arb. Between Int'l Surplus Lines Ins. Co. & People's Ins. Co. of China*, No. 94 C 2838, 1994 WL 502015, at *4 (N.D. Ill. Sept. 12, 1994) ("arbitrators have the authority to decide discovery issues"). This is consistent with the AAA Commercial Rules, which provide that the arbitrator "shall manage any necessary exchange of information among the parties." R-23(a), available at adr.org/rules. The Take 5 Parties do not cite a single case to support their argument that the Court can vacate the award based on their allegation that Judge Eyler should have issued evidentiary sanctions.

The Take 5 Parties also argue that Judge Eyler disregarded the law in finding that RJV Marketing Corp. was liable for the damage award even though Judge Eyler correctly held that, "[w]ith respect to RJV Marketing, under Article VIII, section 8.2, it owes a duty to indemnify Advantage for Take 5 LLC's breach of warranties even if it did not commit fraud." (ECF Nos. 1-9, 3-4 at 37–38.) This was clearly the correct interpretation of the APA. (ECF Nos. 1-13, 3-8, at 65–66.) They also challenge Judge Eyler's assessments of witness credibility and determinations regarding sufficiency of the evidence, which they are not permitted to do. *See Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) ("Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement"); *Mala Geoscience AB v. Witten Techs., Inc.*, No. CIVA 06-1343 RMC, 2007 WL 1576318, at *7 (D.D.C. May 30, 2007) ("Even assuming that Mr. Shea's valuation was not worthy of the credence the Arbitrator gave it, the credibility of witnesses and the materiality of evidence are matters for the Arbitrator that may not be second-guessed by this Court.").

The Take 5 also Parties argue that the Delaware Supreme Court authorizes federal district courts to certify questions of Delaware law directly to it but does not authorize trial courts of other states to do so.  Opp. at 23.  We are not aware of any novel Delaware legal question at issue that could require Delaware's interpretation, and the Take 5 Parties identify none.  Indeed, any questions of Delaware law were questions that the arbitrator was capable of, and did, apply himself.  The Take 5 Parties "may not seek relief from the courts for an alleged mistake of law by the arbitrator."  *Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 789 F.2d 1, 6 (D.C. Cir. 1986); *see also Howard Univ. v. Metro. Campus Police Officer's Union*, 512 F.3d 716, 720 (D.C. Cir. 2008) ("[t]he parties 'have agreed to be bound by the arbitrator's interpretation without regard to whether a judge would reach the same result'"); *Williams Fund Priv. Equity Grp., Inc. v. Engel*, 519 F. Supp. 2d 100, 103 (D.D.C. 2007), as amended (Nov. 8, 2007) (arbitrator's error in application of law would not justify vacating the award).

### 6.    The Florida Action will protect the rights of its residents

The Take 5 Parties make the incredible assertion the Florida court will not protect the rights of its own citizens.  This is ridiculous.  The whole purpose of diversity and removal jurisdiction, which was codified almost 250 years ago in the Judiciary Act of 1789, is to protect citizens of other states from local prejudices.  *See* Scott R. Haiber, Removing the Bias Against Removal, 53 Cath. U. L. Rev. 609, 614–15 (2004).

The Take 5 Parties argue that they might be prejudiced because a court in Florida might not recognize "manifest disregard of the law" as a basis to vacate Judge Eyler's Award.  Opp. at 23–24.  Again, this proves blatant forum shopping.  And simply because they do not like the law—which is a product of a split in interpretation of *federal* law, not endemic to Florida

biases—does not mean that they are prejudiced.[10]  *See S. Mills*, 586 F. App'x at 706 (holding that the inability of a party to "avail itself of the ground of manifest disregard of the law as a basis for vacating the arbitration award in this Circuit [when it could in another circuit] did not constitute manifest injustice," and that a contrary ruling would "encourage unabashed forum shopping"). The Take 5 Parties cite no authority to support the proposition that the federal law of a particular jurisdiction is a factor that should be considered in determining whether the interests of a party are protected.  Indeed, their own authority rejected the argument that the state court would be unable to protect the plaintiff's rights.  *See* Opp. at 23 (citing *Dalzell Mgmt. Co. v. Bardonia Plaza, LLC*, 923 F. Supp. 590, 602 (S.D.N.Y. 2013) ("[T]here is no serious question that the state action can adequately protect Plaintiff's procedural and substantive rights and provide a fair forum that will promptly resolve the parties' claims.")).  Moreover, as noted above (*supra* n.8), no district court in the District of Columbia has ever vacated an arbitration award on this basis, and it is not clear that the doctrine still survives.

The Take 5 Parties argue that because no punitive damages were sought and awarded, the assertion that Florida has an interest in regulating the conduct of its own citizens is "absurd." Opp. at 24.  But punitive damages are merely one context in which this consideration arises.  In fact, this is a well-established legal principle that is the foundation for choice of law interest analysis in most jurisdictions.  *See generally* John Hart Ely, *Choice of Law and the State's Interest in Protecting Its Own*, 23 WM. & MARY L. REV. 173 (1981); *see also Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 776 (5th Cir. 2016) ("The interests of the United States and the

---

[10] The Take 5 Parties argue that "the Florida state court must apply Delaware law in this circumstance."  Opp. at 23–24.  Section 10.11(b) of the APA provides that Delaware law governs the arbitration itself, not proceedings to enforce the Award.  (ECF Nos. 1-13, 3-8 at 80.) "Federal law and the FAA govern whether to confirm or vacate the arbitration award in this case."  *Kim-C1, LLC v. Valent Biosciences Corp.*, 756 F. Supp. 2d 1258, 1263 (E.D. Cal. 2010).

17

states individually in protecting their own citizens are implicated in every case in which a U.S.

citizen attempts to resist enforcement of" a forum selection clause); *J.Y.C.C. v. Doe Run Res.,*

*Corp.*, 370 F. Supp. 3d 1031, 1042 (E.D. Mo. 2019) ("As the home forum state, Missouri has a

cognizable state interest in regulating the conduct of its citizens who are subject to the reach of

applicable state law"); *Duffy v. Godfread*, No. 13-CV-1569, 2013 WL 4401390, at *4 (N.D. Ill.

Aug. 14, 2013) ("States have strong interests in the application of their own anti-SLAPP laws to

their own citizens' speech").

      **7.**    **The contrived nature of the District of Columbia Action weighs in favor of abstention**

      As discussed in the Motion to Dismiss (Mtn. at 21–22), the Court also should consider

the contrived nature of this action in determining whether it should be dismissed or stayed. *See*

*Driftless Area Land Conservancy*, 16 F.4th 508 at 527 (abstaining where plaintiff had "no good

reason" for bringing a contrived federal lawsuit, seeking duplicative relief of state action). In

their Opposition, the Take 5 Parties do not offer one legitimate justification for initiating this

action in the District of Columbia. They cannot assert that Florida is inconvenient—it is their

home state. They do not challenge the ability of the Florida court to act promptly and efficiently.

They do not assert that Florida inhibits their legitimate ability to challenge the Award, and they

have filed in Florida an opposition to the Advantage Parties' petition to confirm the award,

making the same arguments that they make here. The Florida Action was also commenced first.

No legitimate reason exists for them to have initiated this action. The only argument they have

set forth is that they like the law better in the District of Columbia—but forum shopping is not a

justification for initiating an entirely duplicative and wasteful action.

III.   **CONCLUSION**

The Take 5 Parties ask the Court to ignore common sense and allow them to continue litigating an action in the District of Columbia, which has no genuine connection to them or this dispute.  The Advantage Parties respectfully request that this Court either dismiss the Petition to Vacate or stay the District of Columbia Action pending resolution of the Florida Action.

 December 5, 2022                                        Respectfully submitted,

                                                        Michael H. Strub, Jr.
                                                        (*Admitted pro hac vice*)
                                                        Greenberg Gross LLP
                                                        650 Town Center Drive, Suite 1700
                                                        Costa Mesa, California 92626
                                                        Tel.: 949-383-2770
                                                        mstrub@ggtriallaw.com

                                                        Sarah M. Gragert (No. 977097)
                                                        Latham & Watkins LLP
                                                        555 Eleventh Street, NW, Suite 1000
                                                        Washington, D.C., 20004
                                                        Tel.: 202-637-2200
                                                        sarah.gragert@lw.com

                                                        *Attorneys for Advantage Sales & Marketing
                                                        LLC, Advantage Sales & Marketing Inc.,
                                                        Karman Intermediate Corp., Advantage
                                                        Solutions Inc., and Karman Topco L.P.*