**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PETRUSS MEDIA GROUP, LLC f/k/a TAKE 5 MEDIA GROUP, LLC, et al. | |
| Petitioners, | |
| v. | Case No. 1:22-cv-3278 |
| ADVANTAGE SALES & MARKETING LLC, et al., | |
| Respondents. | |

**RESPONDENTS' MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR SANCTIONS UNDER RULE 11 OF THE FEDERAL
<u>RULES OF CIVIL PROCEDURE AND TO DISMISS ACTION</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   INTRODUCTION ................................................................................................1

II.  STATEMENT OF FACTS AND PROCEDURAL HISTORY.............................3

    A.   Advantage discovers that Take 5's business is fraudulent.........................4

    B.   The arbitration and the Award ..................................................................6

    C.   The Advantage Parties filed a petition to confirm the Award in Florida,
        counsel for the Take 5 Parties refused to accept service, and the Take 5
        Parties then filed the Petition to Vacate in the District of Columbia.....................9

III. ARGUMENT ...................................................................................................11

    A.   Rule 11 sanctions are appropriate against the Take 5 Parties and MWE .............11

        1.   The Court must impose sanctions if it finds that Rule 11 was
            violated....................................................................................11

        2.   Sanctions are frequently awarded against parties seeking to vacate
            an arbitral award against them ...............................................12

    B.   Judicial review of arbitral awards is extremely limited ...........................13

    C.   The Take 5 Parties' argument that Judge Eyler committed misconduct in
        refusing to postpone the hearing because Mr. Radetich and Mr. Gluck
        were under criminal investigation is not warranted by existing law or
        made in good faith ...................................................................................15

        1.   The Take 5 Parties were not prejudiced by Judge Eyler's decision
            to deny the stay .....................................................................15

        2.   Judge Eyler's decision to deny the stay was not an abuse of
            discretion...............................................................................16

             (a)   The parties had engaged in substantial discovery..........................18

             (b)   Mr. Radetich and Mr. Gluck had not been indicted......................18

             (c)   Under Delaware law, Judge Eyler was not permitted to
                  draw an adverse inference if a witness invokes the Fifth
                  Amendment...............................................................................19

             (d)   The interest of the public strongly favored denying the stay........19

    D.   The Take 5 Parties' argument that the Award should be vacated because
        Judge Eyler refused to hear certain evidence is not warranted by existing
        law or made in good faith ........................................................................20

    E.   The Take 5 Parties' argument that the Award was procured by corruption,
        fraud, or undue means is not warranted by existing law or made in good
        faith .........................................................................................................22

        1.   Introduction............................................................................22

i

2. The Advantage Parties did not engage in fraudulent conduct ...................23

3. The Advantage Parties disclosed the payments during the arbitration ..........................................................................................26

4. The payments to Schlam Stone and Bozorgi Law did not affect the outcome of the arbitration...............................................................27

F. The Take 5 Parties' argument that RJV is not liable because it was not mentioned frequently during the arbitration is not warranted by existing law or made in good faith ..........................................................27

G. The Take 5 Parties' argument that Judge Eyler exceeded his powers in awarding the Advantage Parties' damages is not warranted by existing law or made in good faith ............................................................29

H. The Take 5 Parties' argument that Judge Eyler erred in awarding the Advantage Parties prejudgment interest has no factual support, is not warranted by existing law, and is not made in good faith .....................31

I. The Take 5 Parties' argument that Judge Eyler manifestly disregarded the law is not warranted by existing law and is not made in good faith...................32

J. The Take 5 Parties and their counsel misrepresented facts to this Court .............35

IV. CONCLUSION...............................................................................................38

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A. Schulman, Inc. v. Citadel Plastic Holdings*,
   LLC, 2017 WL 5035497 (Del. Ch. Nov. 2, 2017) ................................................17, 18, 19, 20

*Affinity Fin. Corp. v. AARP Fin., Inc.*,
   794 F. Supp. 2d 117 (D.D.C. 2011), *aff'd*, 468 F. App'x 4 (D.C. Cir. 2012) ...................14, 33

*Agspring, LLC v. NGP X US Holdings, L.P.*,
   No. CV 2019-1021-JRS, 2022 WL 170068 (Del. Ch. Jan. 19, 2022) .....................................34

*Am. Life Ins. Co. v. Parra*,
   269 F. Supp. 2d 519 (D. Del. 2003), *order clarified*, No. CIV.A. 98-401
   (KAJ), 2003 WL 22999543 (D. Del. Dec. 22, 2003) ..............................................................32

*Am. Postal Workers Union v. USPS (APWU)*,
   789 F.2d 1 (D.C. Cir. 1986) ....................................................................................................28

*ARMA, S.R.O. v. BAE Sys. Overseas, Inc.*,
   961 F. Supp. 2d 245 (D.D.C. 2013) ........................................................................................23

*Aspic Eng'g & Constr. Co. v. ECC Centcom Constructors LLC*,
   913 F.3d 1162 (9th Cir. 2019) ................................................................................................30

*B.L. Harbert Int'l, LLC v. Hercules Steel Co.*,
   441 F.3d 905 (11th Cir. 2006) ................................................................................................12

*BAE Sys. Info. & Elec. Sys. Integration Inc. v. Lockheed Martin Corp.*,
   No. CIV.A. 3099-VCN, 2011 WL 3689007 (Del. Ch. Aug. 10, 2011) ...................................23

*Barbier v. Shearson Lehman Hutton Inc.*,
   948 F.2d 117 (2d Cir. 1991) ...................................................................................................31

*Baxter v. Palmigiano*,
   425 U.S. 308 (1976) ................................................................................................................17

*BEG Invs., LLC v. Alberti*,
   85 F. Supp. 3d 13 (D.D.C. 2015) ..............................................................................................9

*Bowles Fin. Grp., Inc. v. Stifel, Nicolaus & Co.*,
   22 F.3d 1010 (10th Cir. 1994) ................................................................................................21

*C.T. Shipping, Ltd. v. DMI (U.S.A.), Ltd.*,
   774 F. Supp. 146 (S.D.N.Y. 1991) .........................................................................................13

*Cadmus v. Checkr, Inc.*,
  No. CV 19-3459 (RC), 2021 WL 5411327 (D.D.C. Sept. 14, 2021)
  (Contreras, J.)....................................................................................................................3

*Carswell v. Air Line Pilots Ass'n, Int'l*,
  248 F.R.D. 325 (D.D.C. 2008)...........................................................................................11

*Cent'l Mgmt. Servs., Inc. v. Axa Re Vie*,
  193 F.R.D. 671 (D. Kan. 2000)..........................................................................................24

*Century Indemnity v. Underwriters, Lloyd's, London*,
  584 F.3d 513 (3rd Cir. 2009) .............................................................................................30

*Coburn Optical Indus., Inc. v. Cilco, Inc.*,
  610 F. Supp. 656 (M.D.N.C. 1985) ...................................................................................35

*Contech Const. Prod., Inc. v. Heierli*,
  764 F. Supp. 2d 96 (D.D.C. 2011)...............................................................................12, 31

*Cooter & Gell v. Hartmarx Corp.*,
  496 U.S. 384 (1990).............................................................................................................11

*Corp. Printing Co. v. New York Typographical Union No. 6*,
  886 F. Supp. 340 (S.D.N.Y. 1995) ....................................................................................13

*Coutee v. Barington Cap. Grp., L.P.*,
  336 F.3d 1128 (9th Cir. 2003) .............................................................................................4

*Coyne v. Hewlett-Packard Co.*,
  308 F. Supp. 3d 207 (D.D.C. 2018)....................................................................................33

*Cuna Mut. Ins. Soc. v. Off. & Pro. Emps. Int'l Union, Loc. 39*,
  443 F.3d 556 (7th Cir. 2006) ...............................................................................................3

*Dreis & Krump Mfg. Co. v. Int'l Ass'n of Machinists & Aerospace Workers, Dist.
  No. 8*,
  802 F.2d 247 (7th Cir. 1986) ..........................................................................................3, 13

*Equitas Disability Advocs., LLC v. Daley, Debofsky & Bryant, P.C.*,
  177 F. Supp. 3d 197 (D.D.C.), *aff'd sub nom. Equitas Disability Advocs., LLC
  v. Feigenbaum*, 672 F. App'x 13 (D.C. Cir. 2016) ...........................................................16

*Fairchild & Co. v. Richmond, F. & P. R. Co.*,
  516 F. Supp. 1305 (D.D.C. 1981) ......................................................................................16

*FBR Cap. Markets & Co v. Hans*,
  985 F. Supp. 2d 33 (D.D.C. 2013) .....................................................................................33

*Fid. Funding of California v. Reinhold*,
190 F.R.D. 45 (E.D.N.Y. 1997) ................................................................18

*Ford v. Telamon Corp.*,
No. CV K21C-02-005 NEP, 2021 WL 2550208 (Del. Super. Ct. June 17,
2021) ........................................................................................................17

*Ganton Techs., Inc. v. Int'l Union, United Auto., Aerospace & Agric. Implement
Workers of Am., U.A.W., Loc. 627*,
358 F.3d 459 (7th Cir. 2004) ...................................................................26

*Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n*,
865 F. Supp. 1516 (1994) ........................................................................25

*Hadges v. Yonkers Racing Corp.*,
48 F.3d 1320 (2d Cir. 1995)......................................................................11

*Hall St. Assocs. v. Mattel, Inc.*,
552 U.S. 576 (2008)..........................................................................12, 28

*Hoteles Condado Beach, La Concha & Convention Ctr. v. Union De Tronquistas
Loc. 901*,
763 F.2d 34 (1st Cir. 1985).......................................................................30

*Howard Univ. v. Metro. Campus Police Officer's Union*,
519 F. Supp. 2d 27 (D.D.C. 2007), *aff'd*, 512 F.3d 716 (D.C. Cir. 2008)...............20, 21, 28

*Independence Fed. Sav. Bank v. Bender*,
230 F.R.D. 11 (D.D.C. 2005)....................................................................11

*Int'l Bhd. of Firemen & Oilers, Loc. 261 v. Great N. Paper Co.*,
765 F.2d 295 (1st Cir. 1985)......................................................................27

*Int'l Bhd. of Pulp, Sulphite & Paper Mill Workers, Loc. Union No. 874 v. St.
Regis Paper Co.*,
362 F.2d 711 (5th Cir. 1966) ....................................................................27

*Int'l Bhd. of Teamsters Local 330 v. Elgin Eby-Brown Co.*,
670 F. Supp. 1393 (N.D. Ill. 1987) ..........................................................13

*Jardine Matheson & Co. v. Saita Shipping, Ltd.*,
712 F. Supp. 423 (S.D.N.Y. 1989) ..........................................................13

*Kane Gas Light & Heating Co. v. Int'l Bhd. of Firemen & Oilers, Loc. 112*,
687 F.2d 673 (3d Cir. 1982)......................................................................27

*Kanuth v. Prescott, Ball & Turben, Inc.*,
949 F.2d 1175 (D.C. Cir. 1991) ...............................................................13

*Keister v. PPL Corp.*,
    318 F.R.D. 247 (M.D. Pa. 2015)........................................................................35

*Levine v. F.D.I.C.*,
    2 F.3d 476 (2d Cir. 1993)................................................................................35

*Levy v. Citigroup Glob. Markets, Inc.*,
    No. 06-21802-CIV, 2006 WL 8432648 (S.D. Fla. Oct. 17, 2006) .........................13

*Lindsey v. Travelers Com. Ins. Co.*,
    No. 219CV01855KJMCKD, 2022 WL 12071302 (E.D. Cal. Oct. 20, 2022) ........................30

*Managed Care Advisory Grp., LLC v. CIGNA Healthcare, Inc.*,
    939 F.3d 1145, 1161 (11th Cir. 2019) .............................................................25, 37

*Mesa Power Grp., LLC v. Gov't of Canada*,
    255 F. Supp. 3d 175 (D.D.C. 2017) ..................................................................20

*Millennium Validation Servs., Inc. v. Thompson*,
    No. CIV.A. 02-1430 (GMS), 2006 WL 3159821 (D. Del. Nov. 3, 2006), *aff'd*,
    316 F. App'x 124 (3d Cir. 2008) ......................................................................34

*New England Mut. Life Ins. Co. v. Seager*,
    No. CIV. A. 92-2807(TAF), 1996 WL 537159 (D.D.C. Sept. 13, 1996).................................2

*Off. & Pro. Emps. Int'l Union, Loc. 2 v. Washington Metro. Area Transit Auth.*,
    724 F.2d 133 (D.C. Cir. 1983) .........................................................................14

*Optionsxpress, Inc. v. Hale*,
    No. 08C179, 2009 WL 4015556 (N.D. Ill. Nov. 19, 2009)....................................13

*Paul Green Sch. Of Rock Music Franchising, LLC. v. Smith*,
    389 F. App'x 172 (3d Cir. 2010) ......................................................................34

*Perpetual Sec., Inc. v. Tang*,
    No. 00 CIV. 9389 (RO), 2003 WL 1740456 (S.D.N.Y. Apr. 1, 2003)....................................11

*Perry v. Int'l Bhd. of Teamsters*,
    247 F. Supp. 3d 1 (D.D.C. 2017) ......................................................................12

*Quick & Reilly, Inc. v. Jacobson*,
    126 F.R.D. 24 (S.D.N.Y. 1989) ........................................................................13

*Rafferty v. NYNEX Corp.*,
    60 F.3d 844 (D.C. Cir. 1995) ...........................................................................11

*Regnery Pub., Inc. v. Miniter*,
    601 F. Supp. 2d 192 (D.D.C. 2009), *aff'd*, 368 F. App'x 148 (D.C. Cir. 2010)....................33

*Reynolds v. U.S. Capitol Police Bd.*,
   357 F. Supp. 2d 19 (D.D.C. 2004) ..................................................................11

*Ridge v. U.S. Postal Serv.*,
   154 F.R.D. 182 (N.D. Ill. 1992) .....................................................................13

*Samra v. PHH Mortg. Corp.*,
   408 F. Supp. 3d 3 (D. Mass. 2019) ................................................................35

*Schaden v. Bank of Am.*,
   N.A., No. 08-MC-21534-CIV, 2008 WL 11469260, at *13 (S.D. Fla. Aug. 20,
   2008 .................................................................................................................13

*Seneca Nation of Indians v. New York*,
   988 F.3d 618 (2d Cir. 2021) ...........................................................................33

*Silverman v. Ctr.*,
   603 F. Supp. 430 (E.D.N.Y. 1985) .................................................................35

*Silvers v. Verbata, Inc.*,
   No. 221CV05808VAPRAOX, 2021 WL 5911690 (C.D. Cal. Nov. 10, 2021),
   *appeal dismissed*, No. 21-56341, 2022 WL 2073088 (9th Cir. Mar. 14, 2022) .....................30

*SPX Corp. v. Garda USA, Inc.*,
   94 A.3d 745 (Del. 2014) .................................................................................34

*Sterling Nat. Bank v. A-1 Hotels Int'l, Inc.*,
   175 F. Supp. 2d 573 (S.D.N.Y. 2001) ......................................................19, 20

*Techcapital Corp. v. Amoco Corp.*,
   No. 99 CIV. 5093 (AGS), 2001 WL 267010 (S.D.N.Y. Mar. 19, 2001)...............26

*Tempo Shain Corp. v. Bertek, Inc.*,
   120 F.3d 16 (2d Cir. 1997)..............................................................................30

*Trial Pracs., Inc. v. Hahn Loeser & Parks, LLP*,
   260 So. 3d 167 (Fla. 2018)..............................................................................24

*Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech., Inc.*,
   886 F. Supp. 1134 (S.D.N.Y. 1995)................................................................18

*United Mine Workers of Am. v. Marrowbone Dev. Co.*,
   232 F.3d 383 (4th Cir. 2000) ..........................................................................21

*United Paperworkers Int'l Union v. Misco, Inc.*,
   484 U.S. 29 (1987)..........................................................................................13

*United States v. Agostino,*
  132 F.3d 1183 (7th Cir. 1997) ...................................................................25

*United States v. BCCI Holdings (Luxembourg), S.A.,*
  176 F.R.D. 1 (D.D.C. 1997)......................................................................9

*United States v. Eberhard,*
  No. 03 CR.562(RWS), 2004 WL 616122 (S.D.N.Y. Mar. 30, 2004).....................20

*United States v. Irwin,*
  354 F.2d 192 (2d Cir. 1965).....................................................................25

*United States v. Travelers Cas. & Sur. Co. of. Am.,*
  No. 6:12–cv–1228–Orl–37DAB, 2014 WL 3594306 (M.D. Fla. July 18,
  2014), *reconsideration denied,* 2014 WL 5285964 (M.D. Fla. Oct.15, 2014) .......13

*United Transp. Union v. Trailways, Inc.,*
  663 F. Supp. 1092 (D.D.C. 1987) ...............................................................21

*W.L. Gore & Assocs., Inc. v. Long,*
  No. CIV.A. 4387-VCP, 2011 WL 6935278 (Del. Ch. Dec. 28, 2011) ...................19

*Washington Bancorporation v. Said,*
  812 F. Supp. 1256 (D.D.C. 1993) ...............................................................11

*Westerbeke Corp. v. Daihatsu Motor Co.,*
  304 F.3d 200 (2d Cir. 2002).....................................................................4

**Statutes and Other Authorities**

9 U.S.C. § 10 .................................................................................14

18 U.S.C. § 201 ............................................................................24, 25

Fed. R. Civ. Proc. 10 .....................................................................22, 31

Fed. R. Civ.  Proc. 11 .................................................................. *passim*

Federal Arbitration Act, 9 U.S.C. § 1, et seq. ...................................... *passim*

Model Rule of Professional Conduct 3.4(b) .............................................24

U.S. Const. amend. V....................................................................15, 17, 19

## I.  <u>INTRODUCTION</u>

In October 2022, after three years of litigation, a 15-day evidentiary hearing during which 24 witnesses testified live, six witnesses testified by deposition, and hundreds of exhibits were admitted, and a lengthy closing argument on the sixteenth day, the Hon. James R. Eyler (Ret.), appointed as arbitrator by both parties under the Commercial Rules of the American Arbitration Association ("AAA"), found that the Take 5 Parties[1] were liable for having defrauded the Advantage Parties[2] in connection with the sale of Take 5's supposed e-mail marketing business, and awarded the Advantage Parties $48,325,822.29 in damages and an additional $22,032,263.60 in costs.[3]

After the Advantage Parties filed a petition to confirm the Award in Florida, where the Take 5 Parties reside and where the fraud was committed, the Take 5 Parties and their counsel, McDermott Will & Emery ("MWE"), filed a Petition to Vacate or Set Aside Arbitration Awards (ECF No. 1) (cited as "Pet."), a Motion to Vacate or Set Aside Arbitration Awards (ECF No. 3) (collectively, the "Petition to Vacate"), and a Memorandum of Points of Law and Authorities in Support of the Petition to Vacate (ECF No. 3-1) ("Memorandum," and cited as "Mem.") in this Court.[4]  The Award was made pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, et seq. (the

---

[1] Petitioners Petruss Media Group, LLC f/k/a Take 5 Media Group LLC ("Take 5"), RJV Marketing Corp., Richard Gluck, and Alexander Radetich.

[2] Respondents Advantage Sales & Marketing LLC ("Advantage"), Advantage Sales & Marketing Inc., Karman Intermediate Corp., Advantage Solutions Inc., and Karman Topco L.P.

[3] Judge Eyler made his Interim Award on August 4, 2022 ("IA"), Pet. Ex. 1, ECF No. 1-9, Mot. to Vacate Ex. 1, ECF No. 3-4, and his Modified Final Award issued on October 20, 2022 ("FA"), Pet. Ex. 3, ECF No. 1-11, Mot. to Vacate Ex. 3, ECF No. 3-6.  The Interim and Modified Final awards are referred to collectively as the "Award".

[4] The Take 5 Parties filed identical exhibits to the Declaration of Lauren H. Evans in Support of Take 5 Parties' Petition to Vacate or Set Aside Arbitration Awards (ECF No. 1-8) and Declaration of Lauren H. Evans in Support of Take 5 Parties' Motion to Vacate or Set Aside

"FAA"), and the Take 5 Parties have no valid legal grounds to attack it.  Each challenge is based on an evidentiary or procedural issue that the parties briefed and argued—often extensively—and on which Judge Eyler issued a written decision.  The Take 5 Parties do not cite a single case in which a federal court vacated such an award, so their claims are patently frivolous.

Moreover, to prop up their Petition to Vacate and Memorandum, the Take 5 Parties misrepresent the facts and proceedings.  For example, they represent to this Court that "***no evidence*** was presented during the hearing concerning the knowledge, state of mind, or intentions of Gluck and Radetich," Mem. at 20 (emphasis added), when the evidence presented at the hearing that Mr. Gluck and Mr. Radetich knew of the fraud was overwhelming.  They represent that "no [] evidence exists" to show that Mr. Radetich admitted lying to Take 5's clients, Mem. at 23–24, Pet. ¶ 81, but fail to disclose that one of the auditors, Chris Brown, testified that he heard Mr. Radetich say this.  They represent that the Advantage Parties admitted that they could not have proven that the Take 5 Parties engaged in fraud without the testimony of two witnesses who participated in the fraud, when what the Advantage Parties actually said was that it would have been more difficult to demonstrate to Judge Eyler ***how*** the fraudulent scheme worked without those witnesses' testimony.  Indeed, the factual summaries in their Petition to Vacate and Memorandum heavily rely on factual assertions that they made in their arbitration demand that were disproven at the hearing.

"Rule 11(b) requires litigants to 'stop and think' before making factual contentions, [and] also 'emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable[.]'"  *New England Mut. Life Ins. Co. v. Seager*, No.

---

Arbitration Awards (ECF No. 3-3).  To avoid parallel citations, the Advantage Parties cite to these identical exhibits as "Mem. Ex."

CIV. A. 92-2807(TAF), 1996 WL 537159, at *4 (D.D.C. Sept. 13, 1996); *see also Cadmus v. Checkr, Inc.*, No. CV 19-3459 (RC), 2021 WL 5411327, at *7 (D.D.C. Sept. 14, 2021) (referring to Rule 11(b)'s "duty of candor") (Contreras, J.).  Even if the Take  5 Parties' counsel acted in good faith when they initially filed the Petition to Vacate, their decision not to withdraw it once they learned that the factual assertions in the Petition and Memorandum are contradicted by the record is sanctionable.

The Advantage Parties do not bring this motion lightly and repeatedly asked counsel for the Take 5 Parties to reconsider their decision to pursue the Petition to Vacate.  We understand that a request for sanctions is serious, but "[t]he 'filing of meritless suits and appeals' in arbitration cases warrants Rule 11 sanctions."  *See Cuna Mut. Ins. Soc. v. Off. & Pro. Emps. Int'l Union, Loc. 39*, 443 F.3d 556, 561 (7th Cir. 2006) (quoting *Dreis & Krump Mfg. Co. v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 8*, 802 F.2d 247, 255 (7th Cir. 1986)).  Arbitration is supposed to achieve a fast, inexpensive, and final disposition of disputes.  Allowing frivolous challenges to an award without repercussions defeats the purpose of arbitration, deterring parties from pursuing arbitration.  The Advantage Parties therefore respectfully request that the Court dismiss the Petition and award attorney's fees to the Advantage Parties to deter and punish the Take 5 Parties and their counsel for pursuing the Petition to Vacate and the Memorandum as well as to send a message that deters similar misconduct by others in future cases.

## II.   <u>STATEMENT OF FACTS AND PROCEDURAL HISTORY</u>

Judge Eyler is a highly respected jurist, whom the parties jointly agreed would preside over the arbitration.  He was a judge on the Maryland Court of Special Appeals, the intermediate

appellate court for the state of Maryland, from 1996 through 2012.[5]  In his Award, he made the

following factual determinations, which are binding on the Take 5 Parties.  *See Coutee v.*

*Barington Cap. Grp., L.P.*, 336 F.3d 1128, 1134 (9th Cir. 2003) (under the FAA, if the arbitrator

considered a factual dispute and resolved it, a court has "no authority to re-weigh the evidence");

*Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 214 (2d Cir. 2002) ("The arbitrator's

factual findings and contractual interpretation are not subject to judicial challenge, particularly

on our limited review of whether the arbitrator manifestly disregarded the law.") (citing

authority).

### A.   Advantage discovers that Take 5's business is fraudulent

"Take 5 LLC was founded in 2003 by Messrs. Radetich and Gluck."  Mem. Ex. 1 (IA)

at 2, ECF No. 3-4.  "Its principal office was in Florida."  *Id.*  Mr. Radetich and Mr. Gluck

represented to Advantage that Take 5 primarily was an e-mail marketing company that had 160

million double opt-in e-mail addresses (*i.e.*, that the e-mail owner twice had agreed to have the e-

mail address included in the database) and performed 100% of its e-mail marketing in-house.  *Id.*

at 6.  Advantage was interested in acquiring an "email marketing business because Advantage

already provided other marketing services but did not have email marketing capability."  *Id.* at 6;

*see also id.* at 7.  Thus, at the time of the acquisition, "Take 5 LLC primarily sold email

marketing services," and Advantage "wanted email capability as represented by Take 5."  *Id.*

at 36.

On March 15, 2018, Advantage entered into an Asset Purchase Agreement ("APA") to

acquire the assets of Take 5 from its owners, M. Radetich, Mr. Gluck, and RJV Marketing Corp,

---

[5] *James Eyler*, Ballotpedia, https://ballotpedia.org/James_Eyler (last visited Nov. 30, 2022).

for approximately $77 million.  *See* Mem. Ex. 1 (IA) at 1, 3, 22, ECF No. 3-4.  "The sale closed on April 1, 2018."  *Id.* at 2.

In the Spring of 2019, Advantage executives became concerned about the Take 5 business unit's reporting of services to customers and began an internal investigation.  That investigation revealed that Take 5 actually had only a small fraction of the e-mail records that it claimed to have and that the quality of those records was poor.  Mem. Ex. 1 (IA) at 8, ECF No. 3-4.  Rather than sending e-mails, Take 5 was hiring low cost, poor quality pay-per-click ("PPC") vendors to click on its clients' websites to try to mimic customers clicking on links from e-mails.  *Id.* at 8–9.  Take 5 also was using algorithms to falsify reports to clients purporting to show how many e-mails it supposedly was deploying, how many e-mails had been successfully delivered to customers, and how many customers had opened them.  *Id.*

Separately from its internal investigation, Advantage retained FTI Consulting to audit the accuracy and reliability of reports that Take 5 had sent to its customers.  Mem. Ex. 1 (IA) at 10, ECF No. 3-4.  Based on its audit, FTI Consulting learned how the algorithms were used to generate the reports: they randomly calculated the supposed results of the e-mail campaign— such as the number of e-mails customers had opened—based on the number of clicks from the PPC vendors that Take 5 had ordered.  *Id.* at 11.

Advantage executives discussed the investigation and audit with Mr. Radetich, who claimed that the third-party vendors were sending the missing e-mails (notwithstanding the representation that all e-mails were sent in-house).  Mem. Ex. 1 (IA) at 9, ECF No. 3-4.  Advantage investigated this assertion and determined that third-party vendors were not sending e-mails; they were generating clicks.  *See id.* at 8, 10.  For his part, Mr. Gluck "stated that clients did not care about emails, that they really wanted clicks, and that they were aware of Take 5's

business practices and were fine with them." *Id.* at 9.  This made no sense.  Why would a client simply want, and pay for, "clicks" on its website by a third-party vendor, rather than a potential customer?  Advantage nevertheless contacted clients and found that this assertion, unsurprisingly, was not true either.  *Id.*

    **B.**    <u>**The arbitration and the Award**</u>

"In early July 2019, Advantage management concluded that the business practices [of Take 5] were fraudulent.  On July 11, 2019, Advantage shut down the Take 5 business unit." Mem. Ex. 1 (IA) at 2, ECF No. 3-4.  In September 2019, the Take 5 Parties filed a demand for arbitration, and the Advantage Parties filed an answer and counterclaim for breach of the APA and fraud.  *Id.*  The answer and counterclaim were attached to the AAA Arbitration Answering Statement and Counterclaim Or Joinder/Consolidation Request, and the relief sought included interest.



Declaration of Michael H. Strub, Jr. ("Strub Decl.") Ex. B.

"The parties engaged in extensive discovery and motions practice, leading to" a 15-day evidentiary hearing in January, February, and May 2022.  Mem. Ex. 1 (IA) at 3, ECF No. 3-4. "Many witnesses testified, including experts.  The parties introduced voluminous exhibits."  *Id.* "On June 29, 2022, each party filed a post-hearing brief.  On July 5, 2022, counsel for the parties presented oral arguments."  *Id.*

On August 4, 2022, Judge Eyler entered the Interim Award in favor of the Advantage Parties holding, in part, that:

> [P]rior to the acquisition, Take 5, including Messrs. Gluck and Radetich, knowingly misrepresented <u>to Advantage</u> the following with the intent to induce its reliance: (1) the nature and quality of Take 5 LLC's database of email addresses, demographic overlay, and other data; (2) Take 5 LLC's in-house capability to send large numbers of targeted emails as part of advertising campaigns; and (3) that it had deployed/delivered emails for which it had billed clients and received payment when it had not done so.  I further find that Advantage justifiably relied on the misrepresentations and that Advantage was harmed.

> Messrs. Gluck and Radetich participated in the misrepresentations in part and had knowledge of other misrepresentations by representatives of Take 5 LLC.  The knowledge is revealed in testimony and, *inter alia*, many email communications.

*Id.* at 36 (emphasis in original).  Judge Eyler found that the Take 5 Parties had fraudulently breached numerous representations and warranties in the APA, *id.* at 32–38, and he awarded the Advantage Parties $48,325,822.29 in damages and also held that the Advantage Parties were entitled to recover attorney's fees and costs, *id.* at 43–44.

On August 19, 2022, the Advantage Parties submitted their application for attorney's fees and costs.  *See* Mem. Ex. 69 (letter from M. Strub to Hon. James Eyler (Ret.), August 19, 2022), ECF No. 3-72.  In that application, the Advantage Parties sought to recover the fees that they had paid to Schlam Stone & Dolan LLP ("Schlam Stone"), counsel for Eva Hodgens, and the fees

paid to Bozorgi Law, counsel for Peter Ward[6] and disclosed the full amount of the fees that had

been reimbursed.  *See id.* at 2, 8.  The Advantage Parties previously had asked that the Take 5

Parties reimburse them for all associate time spent both before and after the acquisition in

connection with Take 5.  *See* Mem. Ex. 68 (Post-Hearing Brief) at 86–87, ECF No. 3-71; Mem.

Ex. 32 (Hr'g Ex. A-431A), ECF No. 3-35.

On September 16, 2022, the Take 5 Parties submitted a 58-page opposition to the

Advantage Parties' request for fees, costs, and interest.  Mem. Ex. 71 (Claimant's, Counter-

Respondent's and Cross-Respondents' Reply Submission on Costs and Interest September 16,

2022 ("Fee & Cost Opposition")), ECF No. 3-74.  In the Fee & Cost Opposition, the Take 5

Parties argued that Judge Eyler should not reimburse the Advantage Parties for the fees that they

paid to Schlam Stone and Bozorgi Law.  *See id.* ¶¶ 85–94.  Ultimately, Judge Eyler rejected the

Advantage Parties' request to tax these costs, finding that "Advantage's decision to pay [the]

counsel fees was a business decision that should not be shifted to Take 5."  Mem. Ex. 3 (FA)

at 8, ECF No. 3-6.  He also did not require the Take 5 Parties to reimburse the Advantage Parties

for the associate time.

In their Fee & Cost Opposition, the Take 5 Parties claimed that the Advantage Parties

should not be awarded prejudgment interest because they had not requested it—that is, the same

argument that they make in the Petition to Vacate and Memorandum.  *See* Mem. Ex. 71 (Fee &

Cost Opposition) ¶¶ 139–147, ECF No. 3-74.  Judge Eyler rejected that argument, although he

awarded the Advantage Parties simple interest instead of compound interest.  Mem. Ex. 3 (FA)

at 6–7, ECF No. 3-6.  In his Final Award, Judge Eyler repeated his finding that the Take 5

---

[6] Mr. Hodgens managed the department of Take 5 that fulfilled email advertising campaigns with PPC traffic, and Mr. Ward developed the software that generated the false reports to clients.  Mem. Ex. 1 (IA) at 18-19, ECF No. 3-4.

Parties committed fraud:  "As stated many times in this proceeding, the gravamen of

Advantage's claims was fraud.  Fraud was found."  *Id.* at 5.  Judge Eyler awarded the Advantage

Parties $48,325,822.29 in damages and an additional $22,032,263.60 in costs.  *Id.* at 10–11.

> **C.**      **The Advantage Parties filed a petition to confirm the Award in Florida, counsel for the Take 5 Parties refused to accept service, and the Take 5 Parties then filed the Petition to Vacate in the District of Columbia**

On October 20, 2022, the same day that Judge Eyler issued his Modified Final Award,

the Advantage Parties filed a petition to confirm the award in Florida state court in Palm Beach,

Florida, which is the judicial district in which the Take 5 Parties reside.  Strub Decl. Ex. C.  That

same day, counsel for the Advantage Parties asked counsel for the Take 5 Parties whether they

would accept service of the petition to confirm the Award.  Strub Decl. Ex. D.  On October 25,

2022, counsel for the Take 5 Parties notified counsel for the Advantage Parties that they would

not accept service.  Strub Decl. Ex. E.  The next day, on October 26, 2022, the Take 5 Parties

filed the Petition to Vacate and their Memorandum in this Court.

On November 7, 2022, the Advantage Parties sent the Take 5 Parties the Notice of

Motion and Motion for Sanctions under Rule 11 along with a detailed, 10-page, single-spaced,

"safe harbor letter" notifying the Take 5 Parties that they intended to file this motion if the

Take 5 Parties did not withdraw the Petition to Vacate.[7]  Strub Decl. Ex. F.  On November 9,

---

[7] A "safe harbor letter" meets the procedural requirements of the safe harbor provision of Rule 11(c)(2) as it is "a mechanism designed to allow parties to address situations like this without the need for the imposition of sanctions."  *See BEG Invs., LLC v. Alberti*, 85 F. Supp. 3d 13, 53 (D.D.C. 2015); *United States v. BCCI Holdings (Luxembourg), S.A.*, 176 F.R.D. 1, 2 (D.D.C. 1997) ("[h]ad the government's letter indicated an intention to file a motion for sanctions should the petitioners, through counsel, persist in maintaining their Fifth Round petition, this Court might have construed such a letter as the functional equivalent of the notice requirement of the 'safe harbor' provision.").  In their letter, the Advantage Parties specifically notified the Take 5 Parties that "[t]his letter and the accompanying Notice of Motion meet the procedural requirements of the safe harbor provision of Rule 11(c)(2)."  Strub Decl. Ex. F at 2.

2022, the Take 5 Parties sent a response stating that they disagreed with the Advantage Parties'
arguments, Strub Decl. Ex. Y, and on November 28, 2022, the Take 5 Parties informed the
Advantage Parties that they refused to withdraw the Petition to Vacate, Strub Decl. Ex. G.  In
their November 9 and November 28 letters, the Take 5 Parties did not refer to any facts or cite
any legal authority that was materially different than the facts and law to which they refer in the
Petition to Vacate and Memorandum.

On December 16, 2022, the Advantage Parties served the Take 5 Parties' counsel with a
copy of this memorandum and supporting documents and informed them through their counsel,
MWE, that they intended to file their motion for sanctions and supporting memorandum on
December 19, 2022, unless the Take 5 Parties withdrew the Petition to Vacate.  Strub Decl. ¶ 9.
On December 17, 2022, the Take 5 Parties' counsel asked for additional time to review the
Advantage Parties' Rule 11 memorandum and also asked for an opportunity to discuss the issues
raised by the motion before it was filed.  Strub Decl. Ex. Z.  The Advantage Parties' counsel
agreed, and the parties participated in a telephonic conference on December 21, 2022.  Strub
Decl. ¶ 29.  During that conference, the Take 5 Parties chose to double down on their positions,
and they declined the Advantage Parties' invitation for additional time to review the record and
reconsider their position.  Strub Decl. Ex. AA.  The Advantage Parties made a final attempt to
encourage them to reconsider, *id.*, but they refused, Strub Decl. Ex. BB.  The Advantage Parties
therefore bring this motion.[8]

---

[8] The Take 5 Parties' counsel argued that the Advantage Parties violated the Rule 11 safe
harbor provision, claiming that the Advantage Parties "presented" the motion under Rule 11
prior to the expiration of 21 days simply because the Advantage Parties had notified this Court
that they had sent a Rule 11 letter to the Take 5 Parties.  This is facially meritless.  The
Advantage Parties only now "present" a motion for consideration by the Court; merely notifying
the Court of an anticipated future intent to do so does not qualify.  In any event, it is irrelevant.
The purpose of Rule 11's procedural requirements is to afford parties a 21-day safe harbor period

III.   **ARGUMENT**

A.   **Rule 11 sanctions are appropriate against the Take 5 Parties and MWE**

1.   **The Court must impose sanctions if it finds that Rule 11 was violated**

The "central purpose of Rule 11 is to deter baseless filings in district court . . . ." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). Rule 11 provides for sanctions against a party filing any paper with the Court that:  (1) is "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;" (2) contains legal contentions that are unwarranted under existing law; or (3) alleges factual contentions unsupported by evidence. *See* Fed. R. Civ. Proc. 11(b).  "The test under Rule 11 is an objective one: that is, whether a reasonable inquiry would have revealed there was no basis in law or fact for the asserted claim." *Reynolds v. U.S. Capitol Police Bd.*, 357 F. Supp. 2d 19, 23–24 (D.D.C. 2004) (quoting *Washington Bancorporation v. Said*, 812 F. Supp. 1256, 1275 (D.D.C. 1993)).

Sanctions are generally appropriate if "a pleading is so 'frivolous' as to be 'groundless . . . with little chance of success.'" *Independence Fed. Sav. Bank v. Bender*, 230 F.R.D. 11, 16 (D.D.C. 2005) (citation omitted).  "[O]nce the district court finds that a pleading is not well grounded on fact, not warranted by existing law or a good faith argument for the extension, modification[,] or reversal of existing law, or is interposed for any improper purpose, Rule 11 *requires* that sanctions of some sort be imposed." *Carswell v. Air Line Pilots Ass'n, Int'l*, 248 F.R.D. 325, 328 (D.D.C. 2008) (quoting *Rafferty v. NYNEX Corp.*, 60 F.3d 844, 852 (D.C. Cir.

---

during which they can correct or withdraw frivolous claims. *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1327 (2d Cir. 1995).  The Advantage Parties have given the Take 5 Parties ample opportunity to withdraw the Petition to Vacate and Memorandum, and they repeatedly have refused.  Accordingly, the Advantage Parties submit the present motion in full; thus, there is no prejudice from the Court's being made aware of the Advantage Parties' intent to seek this relief because they do, in fact, seek the relief. *See Perpetual Sec., Inc. v. Tang*, No. 00 CIV. 9389 (RO), 2003 WL 1740456, at *1 (S.D.N.Y. Apr. 1, 2003).

1995)) (emphasis in original).  "Sanctions are not discretionary in this Circuit if a court finds an attorney has violated Rule 11."  *Perry v. Int'l Bhd. of Teamsters*, 247 F. Supp. 3d 1, 8 (D.D.C. 2017).

Sanctions can be imposed against the Take 5 Parties as well as their counsel, MWE.  *See* Fed. R. Civ. P. 11(c)(1) (sanctions can be imposed "on any attorney, law firm, or party that violated the rule or is responsible for the violation"); *id.* advisory committee's note to 1993 Amendments ("Absent exceptional circumstances, a law firm is to be held also responsible when, as a result of a motion under subdivision (c)(1)(A), one of its partners, associates, or employees is determined to have violated the rule.").  During discussions that preceded the filing of this motion, MWE emphasized that counsel of record was not involved in the arbitration itself but had spent considerable time reviewing the record and filed the Petition in good faith.  *See, e.g.*, Strub Decl. Ex. BB.  The Advantage Parties, however, have given MWE a significant amount of time to review the evidence and law that belies the arguments in the Petition and Memorandum, and they have refused to alter their positions.  *See* Strub Decl. ¶ 9 & Exs. F, AA.

2.      **Sanctions are frequently awarded against parties seeking to vacate an arbitral award against them**

"[T]he grounds for vacating an arbitration award are limited to 'extreme arbitral conduct' as defined in Sections 10 and 11 of the FAA."  *Contech Const. Prod., Inc. v. Heierli*, 764 F. Supp. 2d 96, 108 (D.D.C. 2011) (quoting *Hall St. Assocs. v. Mattel, Inc.*, 552 U.S. 576, 586 (2008)).  Courts "should insist that if a party on the short end of an arbitration award attacks that award in court without any real legal basis for doing so, that party should pay sanctions."  *B.L. Harbert Int'l, LLC v. Hercules Steel Co.*, 441 F.3d 905, 913 (11th Cir. 2006).  Because federal policy strongly embraces the finality of arbitrations, attorney's fees are awarded "more freely in

such cases than in other cases of groundless litigation," *Dreis & Krump*, 802 F.2d at 254–55, and

courts have routinely sanctioned parties who baselessly challenge such awards.[9]

### B.   Judicial review of arbitral awards is extremely limited

"[J]udicial review of arbitral awards is extremely limited."  *Kanuth v. Prescott, Ball &

Turben, Inc.*, 949 F.2d 1175, 1178 (D.C. Cir. 1991).  "Courts . . . do not sit to hear claims of

factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower

courts."  *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987).  The FAA

provides only four circumstances in which the Award can be vacated:

(1) where the award was procured by corruption, fraud, or undue means;

---

[9] *See, e.g.*, *United States v. Travelers Cas. & Sur. Co. of. Am.*, No. 6:12–cv–1228–Orl–
37DAB, 2014 WL 3594306, at *3 (M.D. Fla. July 18, 2014) (imposing sanctions on the plaintiff
and its counsel for bringing a baseless motion to vacate an arbitration award), *reconsideration
denied*, 2014 WL 5285964 (M.D. Fla. Oct.15, 2014); *Optionsxpress, Inc. v. Hale*, No. 08C179,
2009 WL 4015556, at *4 (N.D. Ill. Nov. 19, 2009) (imposing sanctions for meritless challenge to
arbitral award); *Schaden v. Bank of Am.*, N.A., No. 08-MC-21534-CIV, 2008 WL 11469260, at
*13 (S.D. Fla. Aug. 20, 2008) ("the imposition of sanctions reflecting the costs incurred by
Petitioners as a result of having to defend against Bank of America's motion to vacate and
protect the arbitration award is proper"); *Levy v. Citigroup Glob. Markets, Inc.*, No. 06-21802-
CIV, 2006 WL 8432648, at *9 (S.D. Fla. Oct. 17, 2006) ("The Court finds that in the instant
case, Petitioner's petition to vacate the arbitration award has no legal basis and the imposition of
sanctions against Petitioner is appropriate."); *Corp. Printing Co. v. New York Typographical
Union No. 6*, 886 F. Supp. 340, 345 (S.D.N.Y. 1995) ("Rule 11 sanctions are appropriate against
Mr. Braid because it was not reasonable for him to believe that under existing law there was a
chance of success for his arguments or that he had, on the facts of the dispute, a reasonable
argument to extend, modify or reverse the Award under the law as it stood."); *Ridge v. U.S.
Postal Serv.*, 154 F.R.D. 182, 185 (N.D. Ill. 1992) (imposing sanctions based on challenge to
award asserting that evidence was not introduced at the hearing); *C.T. Shipping, Ltd. v. DMI
(U.S.A.), Ltd.*, 774 F. Supp. 146, 154–155 (S.D.N.Y. 1991) (sanctioning plaintiffs for seeking to
set aside arbitrator's award); *Quick & Reilly, Inc. v. Jacobson*, 126 F.R.D. 24, 26–28 (S.D.N.Y.
1989) (sanctions against plaintiff who had sought to prevent enforcement of arbitration award);
*Jardine Matheson & Co. v. Saita Shipping, Ltd.*, 712 F. Supp. 423, 428–29 (S.D.N.Y. 1989)
(sanctions against defendant who had tried to prevent enforcement of arbitration award on
frivolous ground of arbitrator bias); *Int'l Bhd. of Teamsters Local 330 v. Elgin Eby-Brown Co.*,
670 F. Supp. 1393, 1399–1400 (N.D. Ill. 1987) (granting plaintiff's motion for summary
judgment and affirming arbitration award, as well as awarding sanctions to plaintiff").

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

The Take 5 Parties also argue that the award should be vacated on the non-statutory ground that it was entered in "manifest disregard of the law."

The Take 5 Parties have not made an objectively colorable argument that the Court should vacate the Award on any of these grounds.  Rather, regardless of the labels the Take 5 Parties apply, each of their arguments, as discussed more fully below, is effectively a request that this Court reconsider factual and legal questions that Judge Eyler already considered and rejected.  This is precisely the type of Monday-morning quarterbacking that the law prohibits courts from undertaking.  *See Affinity Fin. Corp. v. AARP Fin., Inc.*, 794 F. Supp. 2d 117, 122 (D.D.C. 2011) (awarding attorney's fees where non-prevailing party sought to relitigate issues decided by the arbitrators), *aff'd*, 468 F. App'x 4 (D.C. Cir. 2012); *Off. & Pro. Emps. Int'l Union, Loc. 2 v. Washington Metro. Area Transit Auth.*, 724 F.2d 133, 137 (D.C. Cir. 1983) ("If parties to arbitration could freely relitigate their complaints in the courts, arbitration would cease to be a method to achieve prompt resolution of conflict, but would instead become a new layer of review, and a new cause for delay.").

C.     **The Take 5 Parties' argument that Judge Eyler committed misconduct in refusing to postpone the hearing because Mr. Radetich and Mr. Gluck were under criminal investigation is not warranted by existing law or made in good faith**

1.     **The Take 5 Parties were not prejudiced by Judge Eyler's decision to deny the stay**

The Take 5 Parties' primary argument is that Judge Eyler refused to postpone the arbitration hearing for six months because Mr. Radetich and Mr. Gluck were under criminal investigation and were required to assert their Fifth Amendment right against self-incrimination. *See* Mem. at 5–7, 15–26; Pet. ¶¶ 42–61, 109.  Under section 10(a)(3) of the FAA a court "may make an order vacating the award . . . where the arbitrators were guilty of misconduct in refusing to postpone the hearing . . . [and] ***the rights of any party have been prejudiced***."  (Emphasis added.)  Mr. Radetich and Mr. Gluck do not have a colorable argument that they were prejudiced.  Even if Judge Eyler had granted the stay motion, Mr. Radetich and Mr. Gluck would still have had to plead the Fifth.

The Take 5 Parties sought "to stay the arbitration proceeding for six months or until the criminal investigation was concluded, whichever was *earlier.*"  Mem. at 6, 16, 18; Pet. ¶ 52 (emphasis in original).  The Arbitrator denied the motion to stay on June 29, 2021, after an hour-and-a-half hearing.  Mem. Ex. 27 (Stay Order), ECF No. 3-30; Strub Decl. Ex. A (Hr'g Tr., June 29, 2021).  The first day of the arbitration was January 25, 2022, almost ***seven*** months after the Arbitrator denied the motion, and it did not conclude until July 2022, a year after the Arbitrator denied the motion.  *See* Mem. Exs. 48–63, ECF Nos. 3-51–3-66.  The criminal investigation remains active today and has not concluded.  Therefore, Judge Eyler's decision not to stay the proceedings is completely and indisputably irrelevant.  Mr. Radetich and Mr. Gluck still would have had to plead the Fifth Amendment during the arbitration hearing or in a deposition taken the

day after the their requested stay expired.  Thus, the decision on the motion to stay did not—and

could not—prejudice Mr. Radetich and Mr. Gluck in any way.

Indeed, the Take 5 Parties emphasized during the arbitration hearing that their requested

stay was short.  When the Advantage Parties expressed concern during the hearing that their six-

month request would inevitably morph into a request for additional time—thus constituting an

indefinite stay—the Take 5 Parties assured Judge Eyler that was not the case unless Mr. Radetich

and Mr. Gluck were indicted.[10]  Mr. Radetich and Mr. Gluck were not prejudiced by Judge

Eyler's denial of the relief that they were seeking.

### 2.      Judge Eyler's decision to deny the stay was not an abuse of discretion

Further, the Take 5 Parties have no basis to overturn Judge Eyler's decision.  Judge Eyler

gave careful consideration to the Take 5 Parties' request for a stay.  The issue was thoroughly

briefed, *see* Mem. Exs. 20, 24, 26, ECF Nos. 3-23, 3-27, 3-29, and he heard an hour-and-a-half

of argument, *see* Strub Decl. Ex. A (Hr'g Tr., June 29, 2021).  Courts are to give great deference

to an arbitrator's decision whether to stay a proceeding.  "The question, accordingly, is not

whether this Court might have exercised its discretion to grant a postponement under the relevant

circumstances, but whether the arbitrator's decision to deny the continuance was unreasonable or

an abuse of discretion."  *Equitas Disability Advocs., LLC v. Daley, Debofsky & Bryant, P.C.*, 177

F. Supp. 3d 197, 215 (D.D.C.), *aff'd sub nom. Equitas Disability Advocs., LLC v. Feigenbaum*,

672 F. App'x 13 (D.C. Cir. 2016).  The Court may vacate an award for failure to postpone a

proceeding only if that decision was "arbitrary."  *See Fairchild & Co. v. Richmond, F. & P. R.

Co.*, 516 F. Supp. 1305, 1313 (D.D.C. 1981).

---

[10] Strub Decl. Ex. A (Hr'g Tr., June 29, 2021) at 42:17–22; 18:23–19:21 (Take 5 Parties
asserting that an indictment "was imminent"); *see also id.* at 36:23–37:1 ("I don't think a six-
month delay, even a four-month, three-month delay is that big of a harm.").

The Take 5 Parties have cited no legal authority that would support the proposition that Judge Eyler acted arbitrarily in refusing to stay the proceedings.  A stay of proceedings based on a party's fear of self-incrimination is an "extraordinary remedy" that is rarely granted.  *Ford v. Telamon Corp.*, No. CV K21C-02-005 NEP, 2021 WL 2550208, at *3 (Del. Super. Ct. June 17, 2021).  The Supreme Court held long ago that it is not unconstitutional to force a party to choose between invoking his or her Fifth Amendment right and losing a civil case.  *See Baxter v. Palmigiano*, 425 U.S. 308, 318–19 (1976).

The factors that Judge Eyler considered in deciding whether to grant the stay are set forth in *A. Schulman, Inc. v. Citadel Plastic Holdings*, LLC, 2017 WL 5035497, at *1–2 (Del. Ch. Nov. 2, 2017), a case on which "Take 5 relie[d]."  *See* Mem. Ex. 27 (Stay Order) at 2, ECF No. 3-30.  Those factors are:

- The parties had engaged in substantial discovery, *Schulman*, 2017 WL 5035497, at *1;

- The defendants had not been indicted, *id*. at *2, 3;

- "The Delaware Rules of Evidence do not permit the court to draw an adverse inference from the invocation of a Fifth Amendment right," *id*. at *3;

- The government did not ask for a stay, *id*. at *3; and

- "The public has a vital interest in rooting out the fraud that the plaintiffs alleged, as well as an interest in ensuring that the aggrieved parties . . . are made whole in a timely fashion," *id*. at *4.

Judge Eyler did not reference the fourth factor in his order, but it supported Judge Eyler's decision to deny the stay because the government did not request a stay in favor of the criminal investigation.  Judge Eyler did consider the other four factors and held that they supported denying the request for a stay.

17

(a)      **The parties had engaged in substantial discovery**

The first factor under *Schulman* is whether the parties engaged in substantial discovery.

"Take 5 knew about the criminal investigation no later than September 19, 2019."  Mem. Ex. 27

(Stay Order) at 3, ECF No. 3-30.  "Despite that, substantial discovery . . . occurred" in

connection with the arbitration, including the depositions of 14 witnesses.  *Id*.  The Take 5

Parties contend that they did not learn of the seriousness of the investigation until April 19, 2021,

when an FBI agent visited Mr. Radetich's home.  Mem. at 5, 19.  But, as Judge Eyler noted, the

Take 5 Parties continued to take discovery of the Advantage Parties' witnesses even after this

date while delaying the depositions of their own witnesses and ultimately seeking the stay.

Mem. Ex. 27 (Stay Order) at 3, ECF No. 3-30.

(b)      **Mr. Radetich and Mr. Gluck had not been indicted**

Mr. Radetich and Mr. Gluck had not been indicted when they requested a stay.  As Judge

Eyler held, "[g]enerally, stays are not granted absent indictments."  *Id.* at 4.  Counsel for the

Take 5 Parties admitted this during the hearing.[11]  This is consistent with *Schulman*, which held

that the fact that "the defendants have not yet been indicted" was one of the significant factors in

denying the request for a stay.  *See Schulman*, 2017 WL 5035497, at *3; *see also Fid. Funding of

California v. Reinhold*, 190 F.R.D. 45, 53 (E.D.N.Y. 1997) ("[A]s the court explained in denying

a previous motion for a stay of this action, a stay is generally appropriate 'only after the criminal

investigation of the defendant seeking the stay has ripened into an indictment.'" (quoting court's

prior order)); *Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech., Inc.*,

886 F. Supp. 1134, 1139 (S.D.N.Y. 1995) ("[S]tays will generally not be granted before an

---

[11] Strub Decl. Ex. A (Hr'g Tr., June 29, 2021) at 32:8–11 ("the most important criteria is
whether there is an indictment or it's imminent").

18

indictment is issued.").  An indictment affects not only the prejudice to the potential criminal

defendant but also the prejudice to the adverse party in the litigation because the delay imposed

before a defendant is indicted is "potentially indefinite."  *Sterling Nat. Bank v. A-1 Hotels Int'l,*

*Inc.*, 175 F. Supp. 2d 573, 577 (S.D.N.Y. 2001).  This proceeding bears that out.  Mr. Radetich

and Mr. Gluck still have not been indicted.

> ### (c)   Under Delaware law, Judge Eyler was not permitted to draw an adverse inference if a witness invokes the Fifth Amendment

Delaware law does not permit a finder of fact to draw an adverse inference from the

invocation of the Fifth Amendment privilege.  *See W.L. Gore & Assocs., Inc. v. Long,* No.

CIV.A. 4387-VCP, 2011 WL 6935278, at *4 n.31 (Del. Ch. Dec. 28, 2011).  Thus, Judge Eyler

expressly considered this factor and held that whether any of the witnesses—including

Mr. Radetich and Mr. Gluck—would invoke their Fifth Amendment rights was speculative, as

was the effect of them doing so.  *See* Mem. Ex. 27 (Stay Order) at 3–4, ECF No. 3-30.  Because

Mr. Radetich and Mr. Gluck claimed that they had no knowledge of the fraud, "if they choose

not to testify, because of their absence of knowledge, at this point it is speculative to conclude

that they will be prejudiced."  *Id.* at 4.

> ### (d)   The interest of the public strongly favored denying the stay

"The fifth factor instructs the court to consider whether a stay is in the public interest."

*Schulman*, 2017 WL 5035497, at *4.  On this factor, the teaching of *Schulman* was squarely on

point:

> Ensuring that aggrieved parties are made whole as rapidly as possible" serves the
> public interest.  Although "there are times in which the public's interest in the
> integrity of the criminal case takes precedence over the interests of the civil
> litigant," not all civil cases have the effect of undermining a criminal
> investigation.  The public also has a "vital stake in rooting out fraud."
>
> The public interest calls for having this litigation go forward.  The public has a
> vital interest in rooting out the fraud that the plaintiffs alleged, as well as an

interest in ensuring that the aggrieved parties (should they prove their case) are made whole in a timely fashion. This case was filed over a year ago. The well-pleaded complaint stated claims for breach of contract and fraud. The parties have invested substantial efforts in discovery and are proceeding toward a trial in March 2018.

By contrast, the criminal investigation remains at a nascent stage. No one knows when or if indictments will be brought . . . . [Derailing this case] . . . would reward individuals who engaged in more serious wrongdoing by enabling them to use a threatened (but not yet commenced) criminal proceeding as a shield against a longstanding civil case.

*Schulman*, 2017 WL 5035497, at *4 (footnotes omitted; bracketed text and ellipses added); *see also* Mem. Ex. 27 (Stay Order) at 3 (public interests "favor denying a stay"), ECF No. 3-30. The public had an interest in having the civil case against the Take 5 Parties resolved quickly and not stayed before they were indicted. "'Ultimately, what [was] at risk [was] not [Mr. Radetich's and Mr. Gluck's] constitutional rights . . . but their strategic position in the civil case.'" *United States v. Eberhard*, No. 03 CR.562(RWS), 2004 WL 616122, at *4 (S.D.N.Y. Mar. 30, 2004) (quoting *Sterling,* 175 F. Supp. at 578 n.4) (bracketed text added). Judge Eyler properly denied their motion.

D.   **The Take 5 Parties' argument that the Award should be vacated because Judge Eyler refused to hear certain evidence is not warranted by existing law or made in good faith**

The Take 5 Parties argue that "[t]he Arbitrator's failure to respond to the Advantage Parties' bad-faith spoliation of evidence concerning the Google Analytics data resulted in the Take 5 Parties being deprived of a fundamentally fair hearing" under section 10(a)(3) of the FAA. Mem. at 26. This argument, like the others, has no basis in law. As with all of the grounds for vacating an award, "[t]he scope of review under § 10(a)(3) is similarly narrow." *Mesa Power Grp., LLC v. Gov't of Canada*, 255 F. Supp. 3d 175, 184 (D.D.C. 2017). "[A] federal court may vacate an arbitrator's award only if the arbitrator's refusal to hear pertinent and material evidence deprives a party of a 'fundamentally fair hearing.'" *Howard Univ. v. Metro.*

*Campus Police Officer's Union*, 519 F. Supp. 2d 27, 39 (D.D.C. 2007), *aff'd*, 512 F.3d 716 (D.C. Cir. 2008) (quoting *United Mine Workers of Am. v. Marrowbone Dev. Co.*, 232 F.3d 383, 385 (4th Cir. 2000)).  "[A] fundamentally fair hearing requires only notice, opportunity to be heard and to present relevant and material evidence and argument before the decision makers, and that the decision makers are not infected with bias."  *Id*. (quoting *Bowles Fin. Grp., Inc. v. Stifel, Nicolaus & Co.*, 22 F.3d 1010, 1013 (10th Cir. 1994)).

Judge Eyler gave the Take 5 Parties a full opportunity to be heard on this issue and to present evidence ***multiple times***.  The parties briefed the issue, in part during (i) summary judgment motions, (ii) separate briefing specifically related to spoliation, and (iii) in post-hearing submissions.[12]  Judge Eyler also heard argument on the issue of Google Analytics during both the summary judgment hearing and the arbitration hearing.[13]  Ultimately, Judge Eyler rejected the Take 5 Parties' argument that they were prejudiced because they could not access Take 5's Google Analytics account.  *See* Mem. Ex. 1 (IA) at 4–5, ECF No. 3-4.  As described in detail in his Award, he found "that the Take 5 LLC Google Analytics data did not contain information that would materially impact the issues in this case."  *Id.* at 5.  The Take 5 Parties cannot identify any evidence that Judge Eyler refused to consider.  They simply disagree with his conclusion, which is not a basis to challenge the Award.  *See United Transp. Union v. Trailways, Inc.*, 663 F. Supp. 1092, 1094 (D.D.C. 1987) ("It is settled that courts must be deferential to arbitral awards,

---

[12] *See* Mem. Exs. 13–18 (briefing on motions for summary judgment), ECF Nos. 3-16–3-21; Mem. Ex. 43 (Take 5 Parties' Memorandum of Law in Support of Their Motion for an Adverse Inference and Sanctions for Spoliation of Evidence ("Spoliation Motion")), ECF No. 46; Strub Decl. Ex. H (Advantage Parties' opposition to the Take 5 Parties' Spoliation Motion; Strub Decl. Ex. I (Take 5 Parties' reply in support of Spoliation Motion); Mem Exs. 66–68 (post-hearing briefs), ECF Nos. 3-69–3-71.

[13] Strub Decl. Ex. J (Summary Judgment Hr'g Tr., December 20, 2021); Mem. Ex. 63, ECF No. 3-66.

and that in particular that they may not weigh the merits of a grievance or consider whether there is equity in a particular claim.").

In short, this is a run-of-the-mill evidentiary determination by Judge Eyler.  If an argument like this could be used to vacate an arbitrator's award, then it would open the floodgates for challenges to any arbitration awards.

### E.   The Take 5 Parties' argument that the Award was procured by corruption, fraud, or undue means is not warranted by existing law or made in good faith

#### 1.   Introduction

The Take 5 Parties egregiously assert that the Award was procured by corruption or fraud because the Advantage Parties did not terminate the employment of Mr. Boy—who previously had been an employee of Take 5—and sought his assistance during the arbitration.  They also assert that the Advantage Parties should not have paid the attorney's fees charged by Schlam Stone and Bozorgi Law for their representation of Ms. Hodgens and Mr. Ward, respectively.  To prove that an award was procured by corruption, fraud, or undue means, a petitioner must make three showings:

> First, the party seeking vacatur must demonstrate by clear and convincing evidence that its opponent actually engaged in *fraudulent conduct or used undue means* during the course of the arbitration.  Under this first requirement, ordinary misconduct will not suffice; the alleged fraudulent acts must have been so prejudicial that they effectively denied the opposing party a "fundamentally fair hearing."  At least one circuit has determined that "fraud" under § 10(a)(1) demands a greater level of impropriety than required to meet the common-law standard.  The "undue means" component of § 10(a)(1) sets a similarly high bar, requiring "nefarious intent or bad faith," or conduct that is "immoral, if not illegal."

> As a second condition, the movant must show that *the fraud could not have been discovered before or during the arbitration* through the exercise of reasonable diligence.  If the misconduct came to light at some point during the course of the arbitral proceedings, but the movant nevertheless failed to raise its concerns in a timely fashion, it may be deemed to have waived its right to seek vacatur under § 10(a)(1).  Were it otherwise, parties would have an incentive to hold claims of

22

fraud in reserve and engage in "sandbagging" strategies inimical to the very goals of the FAA.

As a third and final condition, the alleged misconduct must ***"materially relate[ ] to an issue in the arbitration."*** The movant must demonstrate a causal connection between its opponent's conduct and the outcome of the arbitration. Courts in this District have also demanded proof that the misconduct or fraud had some bearing on the arbitrator's final decision.

*ARMA, S.R.O. v. BAE Sys. Overseas, Inc.*, 961 F. Supp. 2d 245, 254–55 (D.D.C. 2013) (internal citations omitted, emphasis added). There is absolutely nothing unusual or nefarious in retaining Mr. Boy as an employee or reimbursing Mr. Ward and Ms. Hodgens for their attorney's fees, and the Take 5 Parties have no good faith basis to assert otherwise. Ms. Hodgens testified that the Take 5 Parties themselves offered to pay her attorney's fees, but she declined.[14]

### 2. The Advantage Parties did not engage in fraudulent conduct

First, the Advantage Parties did not engage in inappropriate conduct—let alone fraudulent conduct—in retaining Mr. Boy as an employee and paying the Schlam Stone and Bozorgi Law fees. As the Court surely is aware, it is not unusual at all to cover witnesses' attorney's fees and the costs to attend the trial. *See, e.g.*, *BAE Sys. Info. & Elec. Sys. Integration Inc. v. Lockheed Martin Corp.*, No. CIV.A. 3099-VCN, 2011 WL 3689007, at *3 n.17 (Del. Ch. Aug. 10, 2011) (a witness "may be reimbursed for his out of pocket expenses" (quoting Delaware State Bar Association's Committee on Professional Ethics (Del. Ethics Op. 2003–3))). The Advantage Parties openly disclosed that they were doing this and, in fact, sought ***reimbursement*** for these costs. The argument that it was inappropriate for the Advantage Parties to reimburse attorney's fees is completely made up.

---

[14] Mem. Ex. 55 (Hodgens Hr'g Testimony) at 2113:23–2115:14 (the Take 5 Parties "reached out and offered to pay my attorney fees as well, if I spoke to them"), ECF No. 3-58.

The Take 5 Parties do not cite a single case in support of the proposition that the Advantage Parties were prohibited from reimbursing witnesses for the fees of their criminal defense attorneys, let alone that the Award can be overturned on this basis.  Every opinion on which the Take 5 Parties rely involves a payment made directly to witnesses in exchange for favorable testimony.[15]  That did not happen here.  Ms. Hodgens testified that she was not being personally compensated for the time she spent in connection with the case or that she was spending testifying;[16] that she was not a consultant for Advantage;[17] and that reimbursement of her attorney's fees was not in any way dependent on her testimony or the outcome of the case.[18] Mr. Ward also testified that the Advantage Parties had not paid or reimbursed him for expenses other than his attorney's fees.[19]

---

[15] The cases on which the Take 5 Parties rely, Mem. at 35–36, involved payments directly to fact witnesses in exchange for their testimony (which the Advantage Parties did not do), but even then, this is not improper.  *See Cent'l Mgmt. Servs., Inc. v. Axa Re Vie,* 193 F.R.D. 671, 679 (D. Kan. 2000) (direct payment to witness did not violate Model Rule of Professional Conduct 3.4(b) or the Anti-Gratuity Statute, 18 U.S.C. § 201(c)(2)); *Trial Pracs., Inc. v. Hahn Loeser & Parks, LLP,* 260 So. 3d 167, 173 (Fla. 2018) ("[R]ule 4-3.4(b) of the Rules Regulating the Florida Bar permits a party to pay a fact witness for the witness's assistance with case and discovery preparation that is directly related to the witness preparing for, attending, or testifying at proceedings.").

[16] Mem. Ex. 54 (Hodgens Hr'g Testimony) at 2011:13–20 ("Q. Are you being personally compensated for the time you've spent in connection with this case?  A. No, I am not.  Q. Are you being compensated for the time that you're spending testifying here today?  A. No, I am not."), ECF No 3-57.

[17] *Id.* at 2011:21–22 ("Q. Are you a consultant or advisor to Advantage?  A. No, I am not.").

[18] *Id.* at 2011:23–2012:3 ("Q. Is Advantage's payment or reimbursement, I should say, of your attorney's fees, in any way dependent on your testimony today or the outcome of this case? A. No, it is not.").

[19] Mem. Ex. 55 (Ward Hr'g Testimony) at 2258:24–2259:4 ("Q. And has Advantage paid or reimbursed you for any of your expenses, legal or otherwise?  A. For my legal expenses, but not other than that, no."), ECF No. 3-58.

The suggestion that reimbursing these fees constituted a bribe prohibited by 18 U.S.C. § 201, which prohibits "Bribery of public officials and witnesses," is facially frivolous. To support this argument, the Take 5 Parties would need clear and convincing evidence that the Advantage Parties intended to influence Ms. Hodgens's and Mr. Ward's testimony by reimbursing them for their attorney's fees. *See United States v. Agostino*, 132 F.3d 1183, 1195 (7th Cir. 1997) (defining bribe); *United States v. Irwin*, 354 F.2d 192, 196 (2d Cir. 1965) (same); *Golden Door*, 865 F. Supp. at 1523–24 (payments to witnesses on the condition that the testimony be helpful did not violate this statute). The Advantage Parties paid Schlam Stone and Bozorgi Law—and fully disclosed that fact. They did not pay the witnesses. Under Eleventh Circuit law, Judge Eyler could not subpoena these non-party witnesses to testify, *see Managed Care Advisory Grp., LLC v. CIGNA Healthcare, Inc.*, 939 F.3d 1145, 1161 (11th Cir. 2019), and most of Take 5's former employees refused to do so. No one could reasonably expect a third-party witness to pay thousands of dollars for the "privilege" of testifying in a proceeding in which their testimony cannot be compelled. The allegation that the Advantage Parties bribed these witnesses is offensive and frivolous.

The Take 5 Parties argue that even if they and Judge Eyler were aware of the financial arrangements, they did not know how much the Advantage Parties had paid to the witnesses' attorneys until the Advantage Parties served their letter seeking reimbursement for those costs. Mem. at 13. This is completely irrelevant because none of the money went to the witnesses themselves. And, in any event, had they inquired at the time (which they did not), the Advantage Parties would have told them.

### 3. The Advantage Parties disclosed the payments during the arbitration

The second factor under *ARMA*, 961 F. Supp. 2d at 254, is whether the conduct alleged to be fraudulent was discovered during the arbitration, because if it was and not raised, the argument is waived. As discussed above, both Judge Eyler and the Take 5 Parties were aware of Mr. Boy's employment status[20] and that the Advantage Parties had agreed to pay the Schlam Stone and Bozorgi Law fees.[21]

***The Take 5 Parties never argued that the payments to Schlam Stone and Bozorgi Law were inappropriate during the arbitration hearing itself***. When the Take 5 Parties opposed the Advantage Parties' request that the Take 5 Parties reimburse the Advantage Parties for the fees paid to Schlam Stone and Bozorgi Law, they asserted that the Advantage Parties had not explained why the fees were proper but did not argue that they ***were*** improper. Mem. Ex. 71 (Fee & Cost Opposition), ECF No. 3-74. "The failure to pose an available argument to the arbitrator waives that argument in collateral proceedings to enforce or vacate the arbitration award." *Ganton Techs., Inc. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., U.A.W., Loc. 627*, 358 F.3d 459, 462 (7th Cir. 2004); *see also ARMA*, 961 F. Supp. 2d at 254 (fraud argument is waived if not raised); *Techcapital Corp. v. Amoco Corp.*, No. 99 CIV. 5093 (AGS), 2001 WL 267010, at *14 (S.D.N.Y. Mar. 19, 2001) ("a party waives an argument when it could have raised the argument before the arbitrators but did not").

---

[20] *See* Strub Decl. Ex. K (Boy Deposition Testimony, May 18, 2021) at 9:16–12:2; Mem. Ex. 53 (Boy Hr'g Testimony) at 1650:20–1653:11, ECF No. 3-56.

[21] Mem. Ex. 54 (Hodgens Hr'g Testimony) at 2011:6–12 ("Q. You're represented today by your own counsel, Mr. Wurtzel and Mr. Grover; am I correct? A. Yes, correct. Q. Who's paying your counsel's fees, to your understanding? A. Advantage is."), ECF No. 3-57; Mem. Ex. 55 (Ward Hr'g Testimony) at 2260:15–2260:18 ("Q. So you do know -- you do know that Advantage is paying the fees of your lawyers, correct? A. Yes, I do."), ECF No. 3-58.

Regardless, either the Take 5 Parties raised the argument and Judge Eyler rejected it, or the Take 5 Parties did not raise the argument and waived it.  In either situation, there is no good faith basis to vacate the Award.

### 4. The payments to Schlam Stone and Bozorgi Law did not affect the outcome of the arbitration

Finally, the fact that the Advantage Parties reimbursed Ms. Hodgens and Mr. Ward did not relate in any way to the outcome of the arbitration.  After Judge Eyler became aware of the total amount of the fees that were paid—because the Advantage Parties asked him to tax these costs to the Take 5 Parties—he did not change his view as to the witnesses' credibility and, indeed, reemphasized his finding that the Take 5 Parties committed fraud.  Mem. Ex. 3 (FA) at 5 ("Fraud was found."), ECF No. 3-6.  Moreover, "courts are precluded from interfering with arbitration awards for mere errors in assessing the credibility of witnesses." *Int'l Bhd. of Firemen & Oilers, Loc. 261 v. Great N. Paper Co.*, 765 F.2d 295, 296 (1st Cir. 1985); *see also Int'l Bhd. of Pulp, Sulphite & Paper Mill Workers, Loc. Union No. 874 v. St. Regis Paper Co.*, 362 F.2d 711, 714 (5th Cir. 1966) (court may not review arbitral award based on "the credibility of witnesses [or] the weight to be given their testimony"); *Kane Gas Light & Heating Co. v. Int'l Bhd. of Firemen & Oilers, Loc. 112*, 687 F.2d 673, 678 (3d Cir. 1982) ("[A] court is precluded from overturning an award for (the arbitrator's) errors in assessing the credibility of witnesses, in the weight accorded their testimony, or in the determination of factual issues.").

### F. <u>The Take 5 Parties' argument that RJV is not liable because it was not mentioned frequently during the arbitration is not warranted by existing law or made in good faith</u>

The Take 5 Parties argue that Judge Eyler exceeded his powers in entering the Award against RJV because RJV was not mentioned extensively during the hearing.  Mem. at 29–30. Again, the Take 5 Parties lack a good faith basis to make this facially meritless argument.

27

As Judge Eyler correctly held, as a matter of law, RJV is liable for the Award because

RJV assumed that liability under the APA:

> Article VIII, section 8.2 provides that Take 5 LLC and the "Beneficial Owners"
> shall indemnify Advantage from all Damages, inter alia, arising out of any breach
> of representations and warranties in Article II; breach of any covenant or
> agreement contained in the APA by Take 5 LLC or the Beneficial Owners; and
> breach of any covenant or agreement contained in the APA by the Beneficial
> Owners Representative, defined as Mr. Radetich. "Beneficial Owners" are
> identified as RJV Marketing Corporation and Messrs. Gluck and Radetich.
>
> ***
>
> With respect to RJV Marketing, under Article VIII, section 8.2, it owes a duty to
> indemnify Advantage for Take 5 LLC's breach of warranties even if it did not
> commit fraud. There is no limitation on damages because of the finding of fraud.

Mem. Ex. 1 (IA) at 35, 37–38, ECF No. 3-4.[22]

Thus, the issue of RJV's liability was raised, briefed, and decided, and the Take 5 Parties

cannot challenge it. *See Hall St. Assocs.*, 552 U.S. at 585 (holding that courts may not review an

arbitrator's alleged "legal errors"); *Howard Univ.*, 512 F.3d at 720 ("That the arbitrator may

have made a 'mistake of law' does not affect the standard of review: The parties 'have agreed to

be bound by the arbitrator's interpretation without regard to whether a judge would reach the

same result . . . .'" (quoting *Am. Postal Workers Union v. USPS (APWU)*, 789 F.2d 1, 6–7 (D.C.

Cir. 1986))).

Moreover, Judge Eyler's decision was correct. Section 8.2(a)(1) of the APA provides as

follows:

> Subject to the limitations and exceptions provided in this Article VIII, from and
> after the Closing, ***the Company and the Beneficial Owners, shall indemnify,
> defend and hold harmless the Buyer and the other Buyer Indemnified Parties
> from and against all Damages incurred or suffered by any Buyer Indemnified
> Party*** as a result of, or arising out of any: (i) ***inaccuracy or breach of any***

---

[22] *See* Mem. Ex. 1 (IA) at 37 ("I conclude that they, along with RJV Marketing, breached Article II, §§ 2.5 (a) and (b), §2.10(a), and 2.11(b) and Article VIII, § 8.2").

> ***representation and warranty made by the Company or the Beneficial Owners in***
> ***Article II*** or Article III ***of this Agreement*** or in any certificate contemplated by
> this Agreement . . . .

Mem. Ex. 5 (APA), ECF No. 3-8 (emphasis added).  The "Beneficial Owners" are Mr. Radetich,

Mr. Gluck, and RJV Marketing Corp.[23]  RJV is liable for the Award.

In their response to the Advantage Parties' Rule 11 letter, the Take 5 Parties do not

dispute any of these points but reiterate that references to Section 8.2 of the APA and RJV during

the hearing "are sparse."  Strub Decl. Ex. G. at 10.  Simply because RJV's indemnity obligations

were not a focal point of the arbitration does not mean that the decision—based on a plain

reading of the APA—was not correct or that the Take 5 Parties can challenge the arbitrator's

holding in court.  Nor do the Take 5 Parties cite any authority to say otherwise.

### G.   The Take 5 Parties' argument that Judge Eyler exceeded his powers in awarding the Advantage Parties' damages is not warranted by existing law or made in good faith

The Take 5 Parties argue that insufficient evidence supported the Arbitrator's award of

certain damages and that, therefore, the Arbitrator exceeded his powers.  They made this same

argument to Judge Eyler, and he rejected it.  *See* Mem. Ex. 63 (post-hearing closing arguments)

at 3998:9–24, 4087:2–4088:6, ECF No. 3-66; Mem. Ex. 1 (IA) at 3–4, ECF No. 3-4.  Moreover,

Judge Eyler refused to award the Advantage Parties damages if he found that there was

insufficient evidence to support the damages.[24]  Judge Eyler also refused to award the Advantage

Parties the full amount of the damages that they requested.  For example, he did not award the

---

[23] Mem. Ex. 5 (APA) caption page (defining "Beneficial Owners"), ECF No. 3-8; *id*. at 1 ("Alexander Radetich ('Radetich'), Richard Gluck ('Gluck'), RJV Marketing Corp., a Florida corporation ('RJV', collectively with Radetich and Gluck the 'Beneficial Owners' and each a 'Beneficial Owner')"), A-2 (defining "Beneficial Owner").

[24] *See* Mem. Ex. 1 (IA) at 42–43 (refusing to award damages to compensate the Advantage Parties for associate time who were involved with Take 5 "[d]ue to lack of supporting detail"), ECF No. 3-4.

Advantage Parties the amount of $23,897,890 that they had requested for refunds paid to clients who received e-mail services from Take 5 after the acquisition.  *Id.* at 43.

Moreover, a court cannot vacate an arbitration award based on a claim that the evidence was not sufficient to support it.  *See Silvers v. Verbata, Inc.*, No. 221CV05808VAPRAOX, 2021 WL 5911690, at *3 (C.D. Cal. Nov. 10, 2021) ("Although Respondents argue there was insufficient evidence to increase the damages, and they contend the Arbitrator's reasoning was contradictory, these are not grounds to vacate the Award."), *appeal dismissed*, No. 21-56341, 2022 WL 2073088 (9th Cir. Mar. 14, 2022); *Aspic Eng'g & Constr. Co. v. ECC Centcom Constructors LLC*, 913 F.3d 1162, 1166 (9th Cir. 2019) ("Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award under the FAA.").  The Take 5 Parties rely solely on the Federal Rules of Evidence in making the argument that the evidence was insufficient to support an award of damages, but the very authority on which they rely states that "it is clear that 'in making evidentiary determinations, an arbitrator need not follow all the niceties observed by the federal courts.'"  *Century Indem.*, 584 F.3d at 557.  The Take 5 Parties' argument therefore is not supported by the law.[25]

---

[25] In their response to the Advantage Parties' Rule 11 letter, the Take 5 Parties rely on a line of cases in which the arbitrators refused to receive evidence and then granted an award based on the absence of the very evidence that was sought to be admitted.  *See* Strub Decl. Ex. G at 11 (11/28/2022 letter from L. Richman to M. Strub) (citing *Lindsey v. Travelers Com. Ins. Co.*, No. 219CV01855KJMCKD, 2022 WL 12071302, at *3 (E.D. Cal. Oct. 20, 2022) (granting summary judgment for employer in pay discrimination case after refusing to compel employer to provide information about how much comparable employees were paid); *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 21 (2d Cir. 1997) (refusing to hold record open to allow testimony of "the only person who could have testified in rebuttal of [party's] fraudulent inducement claim, and in support of [party's own] fraudulent inducement claim"); *Hoteles Condado Beach, La Concha & Convention Ctr. v. Union De Tronquistas Loc. 901*, 763 F.2d 34, 40 (1st Cir. 1985) (witness refused to testify and arbitrator received prior transcript into evidence but gave it no weight, which "effectively denied the Company an opportunity to present any evidence in the arbitration proceeding")).  None of these cases remotely support the proposition that a court is permitted to weigh the sufficiency of evidence supporting an arbitrator's decision, and each of the foregoing

**H.     The Take 5 Parties' argument that Judge Eyler erred in awarding the Advantage Parties prejudgment interest has no factual support, is not warranted by existing law, and is not made in good faith**

The Take 5 Parties argue that Judge Eyler should not have awarded the Advantage Parties prejudgment interest because they did not request it.  Mem. at 43-45.  "Interest is awarded in Delaware as a matter of right and not of judicial discretion."  *Contech*, 764 F. Supp. at 116.  Therefore, this argument fails as a matter of law.

In addition, Rule 10(b)(3) provides that a litigant may not present a motion that lacks "evidentiary support."  As discussed above in Part II.B, *supra*, despite the Take 5 Parties' mischaracterizations to the contrary, the Advantage Parties *did* request prejudgment interest.  The request for interest was in a form required by the AAA:



_____

cases expressly reject that proposition.  Additionally, in *Barbier v. Shearson Lehman Hutton Inc.*, 948 F.2d 117, 122 (2d Cir. 1991), another case that the Take 5 Parties' counsel cites, the arbitrators awarded punitive damages even though they were not entitled to do so under the arbitration agreement.  Again, this has no relevance whatsoever to Judge Eyler's computation of damages.

Strub Decl. Ex. B.  In their response to the Advantage Parties' Rule 11 letter, the Take 5 Parties

contend that pleading was "superseded" when the Advantage Parties amended their initial

answering statement.  Strub Decl. Ex. G at 12.  Of course, they cite no legal or factual support

for this argument.  The Advantage Parties never filed a subsequent form that "superseded" the

initial form, nor were they required to file a subsequent form with the amended answering

statement.

Finally, once again, this is an argument that the Take 5 Parties already presented to Judge

Eyler and that he rejected.  The Take 5 Parties argued in the arbitration that the Advantage

Parties should not have been awarded prejudgment interest for exactly the same reasons that they

challenge the award of prejudgment interest here, including the assertion that the Advantage

Parties had not requested it.[26]  Judge Eyler rejected those arguments and, for the reasons set forth

above, the Take 5 Parties are not permitted to relitigate this issue.  *See Am. Life Ins. Co. v. Parra*,

269 F. Supp. 2d 519, 526 (D. Del. 2003) (failure to include prejudgment interest is not grounds

for vacating an arbitration award), *order clarified*, No. CIV.A. 98-401 (KAJ), 2003 WL

22999543 (D. Del. Dec. 22, 2003).

I.      **The Take 5 Parties' argument that Judge Eyler manifestly disregarded the**
        **law is not warranted by existing law and is not made in good faith**

In their argument that Judge Eyler manifestly disregarded the law, the Take 5 Parties do

nothing more than repackage the arguments they make above and give them a different label.

Mem. at 39–45.  The Take 5 Parties argue that Judge Eyler disregarded the law in finding that

RJV was liable for the damage award, Mem. at 40; in finding the testimony of Mr. Boy,

Ms. Hodgens, and Mr. Ward to be credible, Mem. at 42; and by awarding the Advantage Parties

---

[26] Mem. Ex. 71 (Claimant's, Counter-Respondent's and Cross-Respondents' Reply
Submission on Costs and Interest September 16, 2022) ¶¶ 139–147, ECF No. 3-74.

damages, including prejudgment interest, Mem. at 43.  The Advantage Parties addressed these

arguments in Parts III.E–H of this response, *supra*.

Moreover, this legal theory likely does not even apply in D.C.  *See Coyne v. Hewlett-*

*Packard Co.*, 308 F. Supp. 3d 207, 210 (D.D.C. 2018) ("[T]his Court evaluated a 'manifest

disregard' claim with considerable suspicion 'because the case law controlling this Court's

reasoning has refused to revive 'manifest disregard' since its apparent death knell in" *Hall St.*

*Assocs.*, 552 U.S. at 584.).[27]  And even if it does, the Court should impose sanctions because the

Take 5 Parties' challenges to the award fall well short of the high bar set by this standard.

"To succeed in challenging an award under the manifest disregard standard, a party must

make 'a showing that the arbitrators knew of the relevant legal principle, appreciated that this

principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the

governing law by refusing to apply it.'  In addition to this 'subjective component,' a finding of

manifest disregard requires an objective determination that the disregarded legal principle was

'well defined, explicit, and clearly applicable.'"  *Seneca Nation of Indians v. New York*, 988 F.3d

618, 626 (2d Cir. 2021).  On each of the issues that Judge Eyler decided, he did not "willfully

flout" any governing law.  He asked the parties to brief it, he heard oral argument on it, and he

issued a written decision.  In addition, his application of the law was correct.

---

[27] We are not aware of a single published decision in this district in which a court vacated
an award on the grounds that the arbitrator manifestly disregarded the law, so courts seem to
pretermit the issue whether doing so would be permissible.  *See, e.g.*, *Affinity Fin. Corp.*, 468 F.
App'x at 5 ("AARP Financial did not demonstrate (or even argue on appeal) that '(1) the
arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether and
(2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the
case.'"); *FBR Cap. Markets & Co v. Hans*, 985 F. Supp. 2d 33, 36 (D.D.C. 2013) (rejecting
"manifest disregard" contention without deciding if it was still valid); *Regnery Pub., Inc. v.
Miniter*, 601 F. Supp. 2d 192, 195 (D.D.C. 2009), *aff'd*, 368 F. App'x 148 (D.C. Cir. 2010)
("This Court need not decide that issue because Miniter's allegations do not rise to the level of a
manifest disregard for the law").

The Take 5 Parties do not cite a single case in which a court vacated an award on this basis, as each of the cases on which the Take 5 Parties rely, Mem. at 50, rejected the argument that the arbitrators manifestly disregarded the law.[28]

The Take 5 Parties also devote a significant portion of their papers to a discovery dispute over the production of notes of witness interviews in June and July 2019 by FTI and Latham & Watkins taken during their audit of Take 5.  Mem. at 7–9, 40–42.  It is not clear why the Take 5 Parties believe this is pertinent, because Judge Eyler ruled in their favor on this issue.

Initially, the Advantage Parties withheld the notes as work-product, but Judge Eyler granted the Take 5 Parties' motion to compel the Advantage Parties to produce them.[29]  The Take 5 Parties argued that the Advantage Parties did not fully comply with Judge Eyler's discovery orders, and Judge Eyler ultimately refused to receive the notes as evidence.[30]  This was the relief that they sought and received.  The Take 5 Parties' assertion that the Court should vacate the Award based on alleged discovery misconduct by the Advantage Parties where Judge Eyler excluded the evidence at issue is frivolous.

---

[28] *See Paul Green Sch. Of Rock Music Franchising, LLC. v. Smith*, 389 F. App'x 172, 178 (3d Cir. 2010) (rejecting contention that arbitrator ignored defendant's counterclaims); *Millennium Validation Servs., Inc. v. Thompson*, No. CIV.A. 02-1430 (GMS), 2006 WL 3159821, at *9 (D. Del. Nov. 3, 2006) (denying motion to vacate or modify arbitration award), *aff'd*, 316 F. App'x 124 (3d Cir. 2008); *SPX Corp. v. Garda USA, Inc.*, 94 A.3d 745, 747 (Del. 2014) (reversing decision by lower court to vacate an arbitration award based on "manifest disregard of the law"); *Agspring, LLC v. NGP X US Holdings, L.P.*, No. CV 2019-1021-JRS, 2022 WL 170068, at *4 (Del. Ch. Jan. 19, 2022) ([T]he arbitration panel did not show manifest disregard for the law or act outside of its jurisdiction when it determined that the advancement claim was arbitrable.").

[29] *See* Mem. Ex. 41 (Order Relating to Notes of Interviews by FTI and Latham & Watkins), ECF No. 3-44.

[30] *See* Mem. Ex. 57 at 2596:3–2597:25, ECF No. 3-60.

**J.      The Take 5 Parties and their counsel misrepresented facts to this Court**

Sanctions are independently warranted here due to the Take 5 Parties' and their counsel's lack of candor with the Court.  Sanctions must be awarded if a party files documents that are "not grounded in fact."  *See Levine v. F.D.I.C.*, 2 F.3d 476, 479 (2d Cir. 1993) (awarding sanctions where allegations were contradicted by deposition testimony).  "To persist in claims or defenses beyond a point where they can no longer be considered well grounded [sic] violates Rule 11." *Coburn Optical Indus., Inc. v. Cilco, Inc.*, 610 F. Supp. 656, 660 (M.D.N.C. 1985); *see Samra v. PHH Mortg. Corp.*, 408 F. Supp. 3d 3, 4 (D. Mass. 2019) (awarding sanctions based on "[c]omplaint containing unsupported factual allegations"); *Keister v. PPL Corp.*, 318 F.R.D. 247, 260 (M.D. Pa. 2015) (awarding sanctions based on assertions in pleading that "turned out to be patently untrue"); *Silverman v. Ctr.*, 603 F. Supp. 430, 432 (E.D.N.Y. 1985) (awarding sanctions based on "counsel's complete lack of candor in presenting the circumstances and legal proceedings leading to the arbitration").

The Take 5 Parties make a number of assertions in their Petition to Vacate and Memorandum that they now know are patently untrue.  *First*, in asserting that Judge Eyler should have stayed the case, the Take 5 Parties argue that "no evidence was presented during the hearing concerning the knowledge, state of mind, or intentions of Gluck and Radetich . . . ." Mem. at 20.  They cannot downplay this as a mere exaggeration or zealous representation; it is the lynchpin of their stay argument.

The assertion that there was "no evidence" of Mr. Radetich's and Mr. Gluck's state of mind is false.  As Judge Eyler explained:

> Messrs. Gluck and Radetich were very much involved in the operations of Take 5 LLC, Mr. Gluck primarily in sales, and Mr. Radetich primarily with the database, both before and during the acquisition.  They were not hands off investors.  The evidence supports a finding that they knew how the campaigns were sold, fulfilled, and reported.  The

evidence demonstrates that they had actual knowledge of Take 5 LLC's business practices generally and the details of many campaigns.

Mem. Ex. 1 (IA) at 37, ECF No. 3-4.  Judge Eyler's findings are supported by abundant evidence

in the record that included witness testimony and Mr. Radetich's and Mr. Gluck's own e-mails.[31]

_____

[31] *See, e.g.*, Mem. Ex. 53 (Boy Hr'g Testimony) at 1628:20–1629:3 (Mr. Radetich maintained the relationship with Hygenics and was responsible for acquiring Take 5's data), 1617:3–1619:5 (explaining why Mr. Radetich and Mr. Gluck knew that e-mail campaigns were being fulfilled with PPC traffic), 1629:4–1630:15 (Mr. Boy discussed poor quality of the data with Mr. Radetich), 1630:22–1633:4 (Mr. Boy told Mr. Radetich and Mr. Gluck that Take 5 was making false representations about its data and needed to stop sending clients false tracking reports), ECF No. 3-56;  Mem. Ex. 49 (Colen Hr'g Testimony) at 371:6–16 ("[Mr. Radetich] was accountable for the data."), ECF No. 3-52; Mem. Ex. 54 (McGavran Hr'g Testimony) at 1786:18–20 (Mr. Radetich controlled the relationship with Hygenics), ECF No. 3-57; Mem. Ex. 55 (Hodgens Hr'g Testimony) at 2101:10–24 (Mr. Radetich and Mr. Gluck were aware of algorithmic reporting), 2103:18–2104:5 (Mr. Radetich and Mr. Gluck worked closely with Ms. Jenkins), ECF No. 3-58; Mem. Ex. 57 (Morris Hr'g Testimony) at 2802:2–15 (Mr. Radetich was the architect of the database and was the primary one who obtained and sourced the data); Strub Decl. Ex. L (Hr'g Ex. A-99) (4/29/15 e-mail communication between A. Radetich and D. Johnson, *et al.*) (Mr. Radetich stating "truth is elusive" in response to Mr. Johnson informing him of bad data); Strub Decl. Ex. M (Hr'g Ex. A-56) (7/5/17 e-mail communication from E. Hodgens to Mr. Radetich, *et al.*) ("If we can eliminate our [sic] in our reporting the word opens to reach or impressions would be more realistic to what is happening . . . ."); Strub Decl. Ex. N (Hr'g Ex. A-15) (3/31/19 text message thread between M. Benjoseph and A. Radetich) (Ms. Benjoseph states that she was trained by Mr. Gluck and Mr. Radetich and speaks specifically about count formulas); Strub Decl. Ex. O (Hr'g Ex. A-743) (5/2/16 e-mail communication between A. Radetich and T. Finger) (Mr. Radetich confirming Ms. Finger's random e-mail count for Medicx); Strub Decl. Ex. P (Hr'g Ex. A-184) (6/5/19 e-mail communication between A. Radetich and T. Coker, *et al.*) ("We need to load this boat people"); Strub Decl. Ex. Q (Hr'g Ex. A-185) (11/14/14 e-mail communication between A. Radetich and J. Cloyes) ("We need to load the boat as much as possible"); Strub Decl. Ex. R (Hr'g Ex. A-186) (3/6/15 e-mail communication between A. Radetich and M. Angelis) ("We are going to load the boat"), Strub Decl. Ex. S (Hr'g Ex. A-187) (4/3/15 e-mail communication between A. Radetich and S. Albert, *et al.*) ("[W]e will load the boat"); Strub Decl. Ex. T (Hr'g Ex. A-188) (4/8/15 e-mail communication between A. Radetich and H. Speizman, *et al.*) ("I need them to load the boat."); Strub Decl. Ex. U (Hr'g Ex. A-189) (4/21/15 e-mail communication between A. Radetich, R. Gluck and T. Finger) ("We need to load the boat"); Strub Decl. Ex. V (Hr'g Ex. A-190) (11/9/15 e-mail communication between A. Radetich and J. Gluck) ("Load the boat sunshine."); Strub Decl. Ex. X (Benjoseph Deposition Testimony, April 26 and 27, 2021) at 192:5–22 ("I believe they knew for sure" that formulas were being used to falsify e-mail counts);

*Second*, the Take 5 Parties represent that "no [] evidence exists" to show that during his interview with Latham & Watkins, Mr. Radetich admitted to lying to Take 5's clients about Take 5's results to maintain clients.  Mem. at 23–24, Pet. ¶ 81.  This, too, is false.  Christopher Brown, one of the FTI employees who attended the interview, testified that during the Latham & Watkins interview of Mr. Radetich, "the question was asked as to whether or not [Mr. Radetich] felt like the company needed to lie about results in order to maintain clients, and he had said yes, which [Mr. Brown] remember[ed] being surprised that he would say that."[32]

*Third*, in connection with their challenge to the Advantage Parties' reimbursement of attorney's fees, the Take 5 Parties assert that "the Advantage Parties admitted in their September 20, 2022 response that in the absence of them paying witnesses to provide testimony . . . the Advantage Parties would not have been able to prove fraud."  Pet. ¶ 119; *see* Mem. at 39 ("Further, had the testimony of Hodgens and Ward been discounted, there would have been insufficient evidence in the record to find Take 5, Gluck, and Radetich liable for breach of contract, as the Advantage Parties themselves admitted.").  The Advantage Parties made no such admission.  They simply stated that, because the Advantage Parties could not compel them to testify, *see Managed Care Advisory Grp.*, 939 F.3d at 1161, without their voluntary cooperation, "it would have been much more difficult" (not that it was not possible) to prove one specific argument:  "that the Take 5 Parties were fulfilling email advertising campaigns with low-cost

---

[32] Strub Decl. Ex. W (Brown Deposition Testimony, June 23, 2021) at 92:2–6; *see id.* at 93:18–94:22 ("I don't recall the specific words. I just recall being surprised that he would say he felt they needed to lie to clients to keep business."); *id.* at 95:20–97:23 ("I recall being surprised that he would admit that he was aware that they were not sending emails and they were lying to customers.").  Mr. Brown's testimony was designated and admitted during the hearing without objection.  *See id.* at 1.

pay-per-click traffic."[33]  That is because Ms. Hodgens managed Take 5's fulfillment department and was able to explain how the email marketing campaigns clients purchased actually were fulfilled, and Mr. Ward built the system that Take 5 used to falsify its reports to clients.

## IV.   CONCLUSION

The Advantage Parties recognize that sanctions are appropriate only in egregious circumstances.  Those circumstances exist here.  The Petition to Vacate and Memorandum are not the product of mere zealous advocacy or hyperbole.  They are the product of blatant disregard of the law and facts.  The Take 5 Parties filed the Petition to Vacate and Memorandum not because they expect to win, but just because they can benefit from delay.  Allowing them to do this with impunity is not only grossly unfair to the Advantage Parties who have spent years seeking justice for the fraud perpetrated against them but also sends the wrong message to other non-prevailing parties who can use similar tactics to avoid enforcement of a contractual arbitration award.

The Advantage Parties therefore respectfully request this Court dismiss the Petition and impose appropriate sanctions, including an order to pay the Advantage Parties their reasonable expenses, including attorney's fees, incurred in defending this action.

---

[33] Mem. Ex. 73 (Advantage Parties' September 20, 2022 Response Brief) at 7, ECF No. 3-76.

December 27, 2022                           Respectfully submitted,

                                            Michael H. Strub, Jr.
                                            (*Admitted pro hac vice*)
                                            Greenberg Gross LLP
                                            650 Town Center Drive, Suite 1700
                                            Costa Mesa, California 92626
                                            Tel.: 949-383-2770
                                            mstrub@ggtriallaw.com

                                            Sarah M. Gragert (No. 977097)
                                            Latham & Watkins LLP
                                            555 Eleventh Street, NW, Suite 1000
                                            Washington, D.C., 20004
                                            Tel.: 202-637-2200
                                            sarah.gragert@lw.com

                                            *Attorneys for Advantage Sales & Marketing LLC,*
                                            *Advantage Sales & Marketing Inc., Karman*
                                            *Intermediate Corp., Advantage Solutions Inc.,*
                                            *and Karman Topco L.P.*