Case No. 1:22-cv-3278

# EXHIBIT A

Page 1

```
 1           AMERICAN ARBITRATION ASSOCIATION
 2              CASE NO. 01-19-0002-7532
 3   PETRUSS MEDIA GROUP, LLC,
     f/k/a TAKE 5 MEDIA GROUP, LLC, et al.,
 4
         Claimants,
 5
     ADVANTAGE SALES & MARKETING LLC, et al.,
 6
         Respondents.
 7   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _/
 8   ADVANTAGE SALES & MARKETING, LLC, et al.,
 9        Counter-Claimant and Cross-Claimants,
10   vs.
11   PETRUSS MEDIA GROUP, LLC,
     f/k/a TAKE 5 MEDIA GROUP, LLC, et al.,
12
         Counter-Respondent and Cross-Respondents.
13
     _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _/
14
15
16                    Via Zoom
                      Tuesday, June 29, 2021
17                    4:02 p.m. - 5:21 p.m.
18
19
20
21
22
23        This cause came on for hearing before the
24   Honorable James Eyler, Arbitrator, pursuant to notice.
25
```

Page 2

1 APPEARANCES:
2 On behalf of Petruss Media Group LLC f/k/a Take 5 Media
    Group, Richard Gluck, RJV Marketing Group:
3 DENNIS RICHARD, ESQ.
    MELISSA MACKIEWICZ, ESQ.
4 Richard and Richard, P.A.
    825 Brickell Bay Drive, Suite 1748
5 Miami, Florida  33131
    dennis@richardandrichard.com
6 melissa@richardandrichard.com
7 On behalf of Alexander Radetich:
    RICHARD ROTH, ESQ.
8 SCOTT KATZ, ESQ.
    The Roth Law Firm, PLLC
9 295 Madison Avenue, 22nd Floor
    New York, NY  10017
10 rich@rrothlaw.com
    scott@rrothlaw.com
11
    EDWARD SWANSON, ESQ.
12 Swanson & McNamara LLP
    300 Montgomery Street, Suite 110
13 San Francisco, CA  94104
    ed@smllp.com
14
    MILES EHRLICH, ESQ.
15 Ramsey & Ehrlich LLP
    800 Hearst Avenue
16 Berkeley, CA  94701
    miles@ramsey-ehrlich.com
17
    On behalf of Advantage:
18 MICHAEL H. STRUB, JR., ESQ.
    WAYNE GROSS, ESQ.
19 Greenberg Traurig LLP
    650 Town Center Drive
20 Suite 1700
    Costa Mesa, CA  92626
21 MStrub@GGTrialLaw.com
    wgross@ggtriallaw.com
22
23
24
25

Page 3

1 TAMMY MERCER, ESQ.
    WILLIAM JOHNSTON, ESQ.
2 PETER J. ARTESE, ESQ.
    Young Conaway Stargatt & Taylor, LLC
3 Rodney Square, 1000 North King Street
    Wilmington, DE  19801
4 tmercer@ycst.com
    wjohnston@ycst.com
5 partese@ycst.com
6
    Also present:  George Libbares, Concierge
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 4

1       THE COURT:  Good.  So why don't we
2 begin with Take 5, the movant.
3       MR. ROTH:  Thank you, Your Honor.
4 Your Honor, it's not -- it's a tough
5 motion to make because we have clients who
6 very recently are in the middle of what has
7 become a very serious issue.
8       I'm not going to spend time, Your
9 Honor, on arguing the facts.  If you notice,
10 Mr. Strub -- in his, whatever, four days
11 that he had to prepare -- gave you an
12 837-page document, which consisted of all
13 types of transcripts.
14       I'm more than happy to argue the
15 facts, Your Honor.  I thought it best not
16 to, because I don't think they are relevant
17 for the purpose of this motion.
18       But let me just say that there are a
19 lot of facts that are contained in the
20 papers by Advantage, which are just
21 inaccurate.  I had 24 hours to essentially
22 do this, and I don't think they relate.
23       Your Honor --
24       THE COURT:  Well, let me just say,
25 first of all, I've read all the papers that

Page 5

1 have been filed, and I've looked at most of
2 the cases.
3       We're not trying, right now, whether
4 there was fraud or no fraud.  The only facts
5 I'm only interested in are those that are
6 relevant to the stay motion.
7       MR. ROTH:  That's right, Your Honor,
8 and that's what we've tried to focus on.
9 Let's go right -- cut right to the chase.
10       Well, on the one hand, Advantage is
11 arguing -- I'm curious to see what they are
12 going to say now.  It's premature, because
13 there's no indictment, but it's too late
14 because Take 5 knew all along.
15       I think, Your Honor, the point is that
16 there is a time -- there is a moment in
17 time in any litigation where it appears very
18 likely there will be a criminal indictment
19 if this motion is made.
20       It's not premature.  We didn't know
21 about it until very recently.  It's not
22 too -- I'm sorry.  It's not premature
23 because there's no indictment, and it's not
24 too late.  We didn't know about this until
25 very recently.

2 (Pages 2 - 5)

Page 6

1    The fact that they went to the FBI is
2 totally irrelevant for the purpose of this
3 argument.  The real issues before the Court
4 are two-fold:
5    One, is whether or not Mr. Radetich
6 faces a real possibility of indictment.
7    And, two, is whether the two matters
8 overlap.
9    There are other matters dealing with
10 equities and dealing with prejudice, which
11 we can get to, but the main issues are
12 whether Mr. Radetich is facing indictment.
13    You met Mr. Ehrlich before I started
14 my presentation.  He is here, Your Honor.
15 He's here to answer questions, if you have
16 them.
17    We'd ask that it be done in-camera
18 because of the sensitivity of the criminal
19 issues, and they don't relate in any way to
20 Advantage, but he is here for those
21 answers.
22    Let's talk about whether or not this
23 is the right time.
24    THE COURT:  Well, with respect to --
25 with respect to the question not of scope,

Page 7

1 but the question of imminence of an
2 indictment, why is that privileged?
3    MR. ROTH:  Why is that what?
4    THE COURT:  Why is that privileged?
5 Why can't Mr. Ehrlich come --
6    MR. ROTH:  I think he can.  I think he
7 can.  I think the only issues that I would
8 rather have him not talk about in front of
9 Advantage is the overlapping of the two
10 matters, which is very clear to me they're
11 not overlapping.  They're identical.
12    But I'd rather him just speak to what
13 he knows on that issue, which I don't think
14 really has anything to do with Advantage.
15    Mr. Ehrlich did submit a declaration.
16 That's a start.  You can certainly ask him
17 whatever questions you want.  I would ask it
18 to be in-camera because it doesn't relate to
19 the merits of this case.  It relates to --
20    Mr. Ehrlich has nothing to do with
21 this case.  He's not arguing.  He's
22 literally a fact witness that would tell you
23 only what he knows about the criminal
24 proceeding, so I would ask it be all
25 in-camera.

Page 8

1    But certainly if you want to ask him
2 in front of Advantage the status of the
3 criminal investigation, I certainly -- he
4 certainly can do that.
5    That issue, Your Honor, is really the
6 most important issue.  What Advantage harps
7 on is the Schulman [ph] case.  In fact, they
8 cite Schulman, Schulman, Schulman in their
9 cases.
10    Just so we're clear, in the Schulman
11 case, there were five document subpoenas
12 issued.  There was not a discussion with
13 U.S. Attorney's Office.
14    They didn't know who the subject
15 matters were.  They didn't know who the
16 targets were.  They knew nothing about the
17 investigation.
18    It's a far cry from that to where we
19 are here.  Mr. Ehrlich will tell you -- he
20 did already enact a declaration -- that he
21 actually already sat down with U.S.
22 Attorney's Office.
23    He actually has met with them, and
24 they have informed him that they do intend
25 on indicting Alex Radetich.  This would not

Page 9

1 have been made but for the meetings
2 Mr. Ehrlich had.  And, Your Honor, as I
3 said, he's available if you want to ask
4 whatever questions you want to ask.
5    That is the most important issue to
6 consider.  There need not be a criminal case
7 pending.  There need -- need be a serious
8 potential for a criminal case.
9    When U.S. Attorney's Office tells the
10 lawyer that and meets with the lawyer and
11 explains to the lawyer what it explained to
12 Mr. Ehrlich, we are at that point.  We were
13 never at that point until that meeting
14 occurred.  So that is the -- that is
15 essentially the precipice upon which this
16 motion is made.
17    Whether Advantage set forth their
18 papers a year ago to go to the FBI is
19 totally irrelevant.  It's a very different
20 animal reporting to the FBI and having the
21 FBI and the U.S. Attorney's Office coming to
22 you and telling you what they intend on
23 doing.  Very, very different animal, Your
24 Honor.
25    So the argument that it's too late, I

3 (Pages 6 - 9)

1  think, is just not a solid argument.  But he
2  is certainly here to answer any questions,
3  Your Honor, on that issue.
4      On the second issue --
5      THE COURT:  Well, let me ask you:  The
6  ultimate reason for why courts grant the
7  stay sometimes is to avoid prejudice to the
8  party under investigation with the view in
9  mind of forcing the party to choose between
10  a Fifth-Amendment privilege or giving up and
11  testifying or not.
12      Isn't the ultimate goal the question
13  of whether the party will be prejudiced?  Do
14  you agree that's the ultimate?
15      MR. ROTH:  I think that is -- I think
16  that is -- yes, I think that that is the
17  ultimate goal.  I think it is the most
18  important ultimate goal.  I think that --
19      THE COURT:  So let me follow up on
20  that because in connection with the recent
21  motion to compel, Mr. Radetich and Mr. Gluck
22  or counsel on their behalf had said
23  basically they don't have any knowledge of
24  the alleged fraud.
25      So what difference does it make if

1  they take the Fifth Amendment?
2      MR. ROTH:  Well, the difference is
3  plentiful.  Number 1 is there are several
4  areas --
5      The motion to compel only dealt with
6  the one area.  There are essentially five
7  frauds that Advantage is claiming.
8      I will list them.
9      Fraud Number 1.  They are claiming
10  that the data that was housed by Take 5 --
11  it's in the their pleading.  The data housed
12  by Take 5 is not real data.  There was a
13  misrepresentation, a fraud when the business
14  was bought with regard to the quality of
15  that data.
16      Fraud Number 2.  They are alleging
17  that Mr. Radetich -- it's in their papers --
18  and Mr. Gluck, for that matter,
19  intentionally misrepresented to customers
20  the information to be obtained from that
21  data.
22      We call it the bump-it-up e-mails
23  where they claim that Radetich and Gluck
24  made false representations to customers as
25  to what was in the data.

1      Fraud Number 3.  It's been alleged in
2  the pleading that the customers believe they
3  were getting e-mails when they were getting
4  more than e-mails.
5      Now, we're not agreeing with any of
6  this, but that's the three frauds.
7      Fraud Number 4 is that the tracking
8  reports were false.
9      Fraud Number 5 is that the match-back
10  reports were false.
11      Now, the motion to compel does not
12  deal with all five of those issues.
13      And so --
14      THE COURT:  I'm sorry.  I couldn't --
15  I missed Number 5.
16      MR. ROTH:  I'm sorry.
17      Number 4 -- I don't know which one I
18  did -- match-back reports is Number 5.
19      Four is the tracking reports, which
20  essentially was a report from the client
21  after the campaign to show how it tracked.
22      Five is match-back reports, which is a
23  report to match back the people that
24  actually go into the campaign.
25      THE COURT:  Okay.

1      MR. ROTH:  Those are the five frauds
2  that are being alleged.
3      The motion to compel really does not
4  deal with all five of them.  Quite frankly,
5  if Mr. Radetich and Mr. Gluck -- even
6  assuming that the Fifth-Amendment privilege,
7  that there's no negative inference drawn in
8  a civil litigation, which Advantage said in
9  their papers, if Mr. Radetich or Mr. Gluck
10  cannot testify on those issues -- and
11  criminal counsel -- I mean, they're here and
12  you can ask them, I think they're going to
13  tell them to take the Fifth on anything
14  until they know exactly what, certainly,
15  Mr. Radetich is going to be indicted for.
16      Then it significantly prejudices
17  Advantage's ability to both put on a defense
18  to Advantage -- I'm sorry, Take 5's ability
19  to put on a defense to Take 5 to Advantage's
20  fraud claims, and to put on an offense to
21  Take 5's breach of contract claims because,
22  quite frankly, there are not a lot of people
23  that know these answers.
24      Not only are Mr. Radetich and
25  Mr. Gluck going to have to take the Fifth,

1    but, as we said in our papers, two other
2    people, Tanya Coker, a nonparty; and Frank
3    Jenkins is a nonparty, they also have --
4         THE COURT:  Well, let me ask you about
5    that, because the papers were not that
6    definite.
7         Do you know that those two intend to
8    do that?
9         MR. ROTH:  So, well, I have spoken to
10   their criminal counsel, and, yes, they have
11   told me that those two will take the Fifth.
12        I will tell you that they are just
13   learning the case.  They just got involved,
14   I think, in the last week or two because
15   once --
16        Let me just dispose of a simple issue.
17   It's an argument that the representation to
18   counsel has been sort of -- I don't know
19   what word they used -- subterfuge.
20        Just so Your Honor is aware, once I
21   realized that I represent Alex Radetich,
22   Rich Gluck, Tanya Coker, for depositions --
23   when I say "I," myself and Melissa's firm,
24   Richard and Richard -- Beth Jenkins for
25   deposition, and that all of them are subject

1    to potential criminal prosecution, I had
2    took it upon me to say, I can't represent
3    all of you, because I don't know how that's
4    going to go down.
5         So I had to withdraw from Ms. Jenkins,
6    from Ms. Coker.  I withdrew from Mr. Gluck,
7    and I withdrew from Take 5 because I can't
8    represent one party if there's another party
9    that's going to be indicted.
10        So there was no mystery on what
11   happened here.  So, yes, the answer is, I
12   have spoken to Coker's lawyer, not a party
13   but a nonparty, and I have spoken to
14   Beth Jenkins'.
15        They told me that they are going to --
16   I can give you 100-percent assurance, but
17   they believe they're going to, most likely,
18   take the Fifth Amendment because they don't
19   know if -- because the U.S. Attorney's
20   Office has made it clear that they are going
21   to indict at least one or more than one
22   people.  Those two people are on a lot of
23   e-mails.
24        The reason why we're prejudiced, Your
25   Honor, is that those four people,

1    particularly, Mr. Radetich, Ms. Coker, and
2    Ms. Jenkins, are going to have to take the
3    Fifth Amendment on all these frauds that
4    Advantage is alleging.
5         Quite frankly, I mean, the evidence
6    thus far is -- we can disagree to disagree.
7    I think it's okay -- it's good for Take 5,
8    but there are pieces you won't hear.
9         THE COURT:  Well, let me ask you --
10   and if I ask you something that you can't
11   share, you will tell me that.
12        But has anybody other than
13   Mr. Radetich been told he or she is a
14   guardian?
15        MR. ROTH:  Well, I think the answer to
16   that should probably -- since Mr. Ehrlich is
17   the one that had the conversations from the
18   U.S. Attorney's Office, I think he can
19   answer that question.
20        Miles, can you answer that?
21        MR. EHRLICH:  So, yes.  Your Honor,
22   there have been references by the prosecutor
23   to others who are also culpable.  That's the
24   word the prosecutor uses.
25        But the only one that she has

1    identified as a target is Alex Radetich.
2    But I will say it's very common for federal
3    prosecutors not to describe others as
4    targets if they are talking just to counsel
5    for an individual.
6         So I can't say that she regard others
7    as targets, but there is no question that
8    she has described others who have not been
9    named as being culpable in the alleged
10   frauds.
11        THE COURT:  So while you have the
12   podium, so to speak, or the screen --
13        MR. EHRLICH:  Yes.
14        THE COURT:  -- I guess, with respect
15   to timing were imminence, can you share --
16        MR. EHRLICH:  Yeah.
17        THE COURT:  -- without feeling that
18   you have compromised any of their rights,
19   can you share what your understanding is as
20   to whether and when indictments will come
21   down?
22        MR. EHRLICH:  Absolutely.  Your Honor,
23   I would say it's a bit of an art.  It's not
24   a science.  I'm going to describe to you
25   what, you know, was communicated to me by

Page 18

1  AUSA Jennifer Ware, and there was in some
2  areas it's resting on my informed
3  interpretation but not -- you know, not a
4  verbatim recall.
5     She communicated on that first call,
6  substantive call, that she believed there
7  was powerful -- I think she used the word
8  "overwhelming" -- evidence of fraud that she
9  thinks was committed by my client, and that,
10  though she would be open to hearing
11  otherwise, she believes there is sufficient
12  evidence to warrant indictment, criminal
13  charges, and she intends to bring those
14  charges.
15     She did say that it would be coming
16  fairly soon, unless Mr. Radetich wishes to
17  enter into a pre-indictment resolution,
18  which is another way of saying a guilty
19  plea.
20     So that was in the initial
21  conversation, and there has been no
22  background --
23     THE COURT:  Did you have an impression
24  as to whether she was saying this
25  investigation is completed, and that it was

Page 19

1  imminent, or did she not say anything about
2  the timing?
3     MR. EHRLICH:  So, the first part of
4  Your Honor's question, my impression was
5  that it was imminent based on the confidence
6  with which she was -- with which she was
7  describing her view of the evidence, and
8  based on the offer, which she made, and then
9  we took her up on the offer to do what's
10  known as a reverse-proffer where she laid
11  out at least some of her cards about what
12  the theories were and the evidence.
13     Imminence is hard for me.  Many people
14  can have different definitions, I think, of
15  what imminent is.
16     In my view, it was imminent; these
17  charges are coming unless we can go in and
18  stop it.  But I can't say whether we're
19  talking a month, three months, six months
20  because I don't -- she didn't disclose the
21  other aspects of her investigation to me.
22     THE COURT:  Okay.  Well, just to voice
23  some of the thoughts that I have -- and what
24  I think we need to consider is, this case
25  has been pending a couple of years, and the

Page 20

1  criminal investigation presumably has been
2  pending a couple of years because all the
3  way back to 2019, it was clear that
4  Advantage had gotten involved with law
5  enforcement authorities.
6     It's clear from some of the discovery
7  that has occurred in '20 and '21, that it
8  was some type of ongoing cooperation with
9  law enforcement authorities.
10     So, on one hand, there's nothing new
11  about the facts.  That investigation is out
12  there.  So that's one of the reasons I'm
13  focusing on why is today different from
14  yesterday and the month before.
15     I understand what your opinion is on
16  that.
17     Let's go back.  I think we interrupted
18  Mr. Roth.
19     MR. ROTH:  Well, Your Honor, let's go
20  to that issue, Your Honor.  Listen, we've
21  all been involved in thousands of
22  litigation, and in many of them conduct is
23  reported to the FBI, conduct is reported to
24  the U.S. Attorney's Office, and conduct is
25  reported to the police.  It happens every

Page 21

1  day.
2     It's a very different animal, knowing
3  that it was reported than getting a knock on
4  the door.  And that's what led to this.
5  This would never -- it could very well have
6  been reported and gone by the wayside.
7     We had no idea that this was serious
8  until in April of 2021, Mr. Radetich
9  literally received a knock on the door from
10  the FBI saying, we want to talk to you.
11     So it may have been pending for that
12  long, but, certainly, I couldn't have, in
13  good conscious, gone to you and said, well,
14  let they stay it because they made a claim.
15     So what has happened -- all we know is
16  the following, what has happened since 2019
17  is:
18     One, they made a claim to the FBI.  It
19  doesn't really do much for me.  99 percent
20  of the times they're not picked up on.
21     Two, Mr. Radetich got a knock on the
22  door in April of 2019.
23     Three, Mr. Ehrlich has a conversation
24  with U.S. Attorney's Office, which -- and,
25  believe me, Your Honor, it's not an easy

1  thing to tell your client, which we informed
2  the client that this is no longer civil.
3  You will most likely be indicted.
4       This is in May of 2021. So even
5  though it's been two years, we didn't know
6  that.
7       Then, to make it more serious, there
8  is a reverse-proffer meeting, which
9  Mr. Ehrlich mentioned a couple of weeks ago
10 where they basically lay out what they
11 believe their case is against Mr. Radetich.
12      So I understand, Your Honor, that it
13 has been two years. But the situation we're
14 in today, June 29 -- June 30th, 2021, versus
15 March 2021, is an entirely different
16 situation.
17      We didn't think that this was ever --
18 I still maintain it doesn't -- it shouldn't
19 rise to the level of criminality.
20      But the U.S. Attorney's Office, which
21 is essentially the deciding force on whether
22 they indict, nothing else but whether they
23 indict, said it does.
24      So I agree with you that it's been two
25 years. But it very well -- what we had

1  expected was we would keep going, going,
2  going. They'd report it to the FBI two
3  years ago. Great. The FBI wasn't
4  interested.
5       Many times, as the Court is aware, the
6  criminal prosecutors aren't interested if
7  there's a civil litigation pending. So it's
8  a very big difference today.
9       MS. MACKIEWICZ: Your Honor --
10      THE COURT: Let me switch gears for a
11 moment.
12      MS. MACKIEWICZ: Oh, sorry.
13      Your Honor, if I may just add this.
14 This is Melissa Mackiewicz on behalf of
15 Mr. Gluck.
16      I'd just add one additional thing we
17 learned in June of this year related to Your
18 Honor's question.
19      The FBI asked Mr. Colon, an Advantage
20 employee, who was the boss of Mr. Gluck and
21 Mr. Radetich, in early July of 2019, to wear
22 a wire to attempt to surreptitiously have
23 Gluck and Radetich incriminate themselves.
24      We, Your Honor, can't know if anybody
25 else has attempted to wear a wire. We were

1  also informed by Mr. Colon in his deposition
2  that although he was unable to wear a wire,
3  the FBI did listen in on a phone call he had
4  with Mr. Radetich in July of 2019.
5       All of that is brand-new information
6  to us.
7       MR. ROTH: One more thing --
8       THE COURT: That was in your --
9       MR. ROTH: One more thing we just
10 learned, Your Honor. It's not in the paper.
11 I forgot to put this in the papers.
12      One more thing that we just learned
13 last week was that Michael Wei -- Michael, I
14 think his first name is, who is the head
15 person of FTI, which was the company doing
16 their audit of Take 5 also -- we just
17 learned it last week -- also had a
18 conversation with the FBI and the
19 U.S. Attorney's Office sometime in the last
20 six months.
21      So none of this was known to us. And
22 when it was known, the first thing we did
23 was we had to make sure our representation
24 was proper. We had conflicts.
25      Then we immediately made a

1  determination based upon our conversations
2  with Mr. Ehrlich and his conversation with
3  U.S. Attorney's Office to decide whether or
4  not this thing should warrant a stay.
5  That's why we've made this motion.
6       THE COURT: Okay. So I apologize for
7  interrupting. We'll get back to whatever
8  else you want to say.
9       But just to switch gears for a moment.
10 I have not dealt with this issue in an
11 arbitration context, and, of course, the
12 cases cited are court cases.
13      Arbitration carries with it as a
14 starting point much greater and -- much
15 greater -- much greater confidentiality than
16 does a court proceeding. It's not subject
17 to the open courtroom type of law.
18      Bearing in mind that prejudice is an
19 issue, does anybody have any thoughts or
20 opinions on what happens if I were to seal
21 the proceedings in this arbitration
22 proceeding?
23      MR. ROTH: Your Honor, we actually --
24 we've thought about that. Quite frankly, if
25 the U.S. government wants a testimony

7 (Pages 22 - 25)

1 transcript, they're going to get it. I'm
2 going to get it. I don't know how. We
3 actually researched that recently.
4       For sealing a record, you need really
5 good cause. A good cause is it involves a
6 child, you know, it involves a minor. It
7 involves Social Security numbers or
8 something.
9       The concern we have is notwithstanding
10 the fact that this is confidential. There
11 will be a transcript of testimony that you
12 can bet your sweet bippy the U.S. Attorney's
13 Office is going to get, no matter how hard
14 we try to seal this, because we have no
15 control over this.
16       THE COURT: So would your answer be
17 the same if it's sealed in order to protect
18 the privilege against self-incrimination, if
19 that's the reason for ceiling it?
20       MR. ROTH: I think --
21       THE COURT: The government would be
22 arguing, I assume, some kind of waiver?
23       MR. ROTH: So, Your Honor, I think the
24 answer is, yes, it would be the same because
25 good cause under the federal rules is a

1 very, very high standard.
2       Litigants every day want to try to
3 seal their matters, and it's a very tough
4 thing to seal. It has to be some kind of a
5 secret trademark or a child or some process,
6 anything --
7       We're not going to be successful in
8 sealing this record to preserve the Fifth
9 Amendment privilege or not preserve it. I
10 don't think that -- I think the burden --
11 the standard is very high.
12       I think the U.S. Attorney's Office
13 will be able to go to court and get that
14 record no matter how hard we try to seal it.
15       THE COURT: Okay. So let's get back
16 to where you were in your argument.
17       MR. ROTH: So, Your Honor, those are
18 the two issues.
19       The second issue is overlap -- is
20 whether they overlap. I certainly -- if the
21 Court wants to know, I mentioned what I call
22 the five frauds. Some would say four.
23 Maybe it's 4 A and B.
24       But Mr. Ehrlich -- excuse me,
25 certainly is available in-camera to tell you

1 how identical, not even similar, how
2 identical the U.S. Attorney's Office case
3 is.
4       And in Schulman, the Court said in its
5 decision -- it asks Defendant's counsel how
6 identical the cases were, and Defendant's
7 counsel's answer was, I don't know. Talk to
8 Plaintiff's counsel.
9       I can represent to the Court that
10 Mr. Ehrlich knows. He sat down in the
11 U.S. Attorney's Office for, I don't know, an
12 hour or two hours and did this reverse
13 proffer.
14       He can tell you -- I will represent to
15 the Court, if you want to hear it from
16 Mr. Ehrlich, I would ask you do it
17 in-camera.
18       I have had many conversation with Mr.
19 Ehrlich, and I will represent to you that
20 those five frauds are precisely what the
21 U.S. Attorney's Office is going after.
22       We're not talking overlap. We're
23 talking carbon copy. When we were younger
24 we, used to have a carbon copy. It's
25 identical. It's the same fraud.

1       Not only that, but I have reason to
2 believe that the documents the
3 U.S. Attorney's Office has came from
4 Advantage. They came out of the pleadings.
5 So the overlap issue, Your Honor, is a very
6 different animal, that Schulman.
7       The other factors, balancing of
8 interest, are also important. What we're
9 balancing here, Your Honor, is a very
10 serious criminal exposure, which is, like
11 Mr. Ehrlich says, imminent to one may not be
12 imminent to another, but it's real versus a
13 short delay in a proceeding, which is just a
14 delay. A delay does not amount to
15 prejudice.
16       I understand the arbitration has been
17 going on for a while, and I understand why
18 the Court would have sort of a hesitancy to
19 put it off longer. But this is real. This
20 is going to happen.
21       THE COURT: So, hypothetically, if I
22 stay it for 180 days, 180 days expires,
23 there's no indictment, do you then ask for
24 another stay?
25       MR. ROTH: So, what we would do, we

Page 30

1   would report -- I would suggest that we
2   report back to the Court on where we are
3   with 180 days. Let's not forget the current
4   status right now is there has been a reverse
5   proffer.
6       Mr. Ehrlich said just now when he
7   stated -- he said in his declaration that
8   they're expecting to hear from him in the
9   near future.
10      My guess, since I've been down this
11  road before, is that within 180 days we're
12  going to know. We're going to know if he's
13  indicted, if they go to somebody else to
14  indict them. I don't think 180 days is -- I
15  think it's sufficient.
16      Miles, you popped up.
17      MR. EHRLICH: Just in case I'm needed
18  to just address that point, because I don't
19  think I covered it.
20      Judge, though the prosecutor was very
21  direct about her intention to charge
22  Mr. Radetich and possibly others, she did
23  several times invite a dialogue, which is
24  also very common and always something that I
25  try to take up on behalf of a client.

Page 31

1       So, this week, my intention is to
2   schedule a meeting where I can go in, in a
3   substantive way, and address, you know, the
4   allegations and the evidence I was presented
5   with in the reverse proffer.
6       Of course, on behalf of Mr. Radetich,
7   my hope is that through this back and forth,
8   addressing the allegations and presenting
9   Mr. Radetich perspective, we can stop the
10  case from being charged.
11      But, again, I think the best we can do
12  is work in earnest to engage, try to talk
13  the government out of it. I would
14  anticipate, certainly, within six months
15  that we would have a very clear
16  understanding of what's going to happen or
17  not, if that's helpful.
18      THE COURT: And if -- looking ahead,
19  if indictments come down, one or more, and
20  there's no resolution, a quick resolution of
21  those, I assume, you would then want to stay
22  pending the completion of the criminal
23  proceedings?
24      MR. EHRLICH: I can't speak to that.
25      MR. ROTH: I didn't hear that

Page 32

1   question. You anticipate what, Your Honor?
2       THE COURT: If one or more indictments
3   are issued sometime in the near future, and
4   there's no quick resolution with respect to
5   those indictments, would you then want a
6   stay of the proceedings pending a resolution
7   of the criminal proceedings?
8       MR. ROTH: The answer, Your Honor, is
9   yes, because the most important criteria is
10  whether there is an indictment or it's
11  imminent.
12      If an indictment -- if Mr. Radetich is
13  facing incarceration, then I would ask, yes,
14  that this be stayed because he has gotten
15  much bigger problems than this case.
16      Not only that, Your Honor, I suspect
17  from talking to Mr. Ehrlich that there will
18  be others, if the U.S. Attorney's Office
19  does indict, that will be -- that will be in
20  that unfortunate situation.
21      So I would say, yes, I would ask that
22  it be stayed during the pendency of the
23  indictment if it happens. But we're going
24  to know within six months, we believe,
25  according to what Mr. Ehrlich said, because

Page 33

1   this is sort of on a fast broader.
2       He has to get back to them this week.
3   They're going to set up a meeting in the
4   next few weeks. He intends on going back in
5   and explaining to the U.S. Attorney's Office
6   why they shouldn't indict.
7       I mean, my experience, unfortunately,
8   is that they don't really listen to you.
9   They indict anyway, but we don't know.
10      I mean, there are a lot of moving
11  parts in this, so I'm cautiously optimistic
12  that Mr. Ehrlich can successfully explain to
13  the U.S. Attorney's Office that this is a
14  civil dispute. This is Advantage's case.
15  There's no crime committed here.
16      So that is going to happen, Your
17  Honor, within the next several weeks.
18      THE COURT: So let me turn around
19  something you said earlier, and ask you to
20  respond to it. Because basically you
21  indicated we don't know for sure what's
22  going to happen, but let's stay it because
23  something will happen or not in the near
24  future.
25      Let's turn it around. Suppose I deny

9 (Pages 30 - 33)

Page 34

1  the stay.  These four individuals presumably
2  invoke the Fifth Amendment or their
3  depositions aren't noticed, one or the
4  other.
5      A few weeks from now, assuming that
6  that has happened, you may have more
7  information as to what's going to happen
8  with respect to these indictments.
9      What's wrong with that approach?
10     MR. ROTH:  Well, I think what's wrong
11  with that approach, Your Honor, is that if a
12  few weeks from now -- I guess, if a few
13  weeks from now we know that they are not
14  going to indict, and they now understand the
15  allegation made by Advantage, then it will
16  free our way to be able to defend this
17  lawsuit and prosecute -- and go on the
18  affirmative -- the offense as well.
19     Right now, unfortunately, our hands
20  are behind our backs.  If there's no
21  indictment after these conversations, and we
22  are hopeful -- again, like I said, it's the
23  government -- we're hopeful that we can
24  convince them that there shouldn't be an
25  indictment, then at least we'll be able

Page 35

1  to -- both sides will be armed and ready to
2  try this case in front of the Court.
3      Right now, we're going to have our
4  hands tied behind our back and be able to do
5  it.  Melissa wanted to add to that.
6      MS. MACKIEWICZ:  Your Honor --
7      THE COURT:  Before you do that, I'm
8  just trying to understand.
9      The only thing that's occurring in the
10  short run, I think, from a public
11  standpoint, would be any supplemental
12  responses to Interrogatories and
13  depositions, correct?
14     MR. ROTH:  Yes.  But that's -- yes,
15  but there are a lot of depositions.
16     MS. MACKIEWICZ:  But --
17     THE COURT:  So let's assume that you
18  invoke -- or not you, but the individuals
19  invoke the Fifth Amendment, that doesn't
20  mean -- even if they do that, that doesn't
21  mean that if a month or two from now there
22  is no Fifth Amendment issue that they can't
23  then testify, does it?
24     MR. ROTH:  I guess we can start the
25  whole process over, and have them all

Page 36

1  testify again in September, but the problem
2  is -- or August, September, but the problem
3  is we have a hearing in October.
4      MS. MACKIEWICZ:  And --
5      MR. ROTH:  So we have a whole schedule
6  with experts that are going to be presented
7  by both sides.
8      So I think it does -- I think it
9  seriously hinders our ability.  Even if they
10  were to take the Fifth today and be able to
11  testify in September, well, I think
12  Advantage is going to cry foul and say, wait
13  a minute.  You can't -- we gave you our
14  expert.  We gave you our evidence, and now
15  you're changing the whole theory of the
16  case.  That's not fair to us.
17     It isn't.  And it isn't fair to our
18  side either because we're handcuffed by not
19  being able to present our case until
20  September with a hearing in October, which
21  will turn the whole case on its head.
22  That's the concern I have.
23     That's why I don't think a three- -- I
24  don't think a six-month delay, even a
25  four-month, three-month delay is that big of

Page 37

1  a harm.  The harm is so minimal, compared to
2  the harm by granting a stay.  That's just my
3  interpretation of it.
4      But Ms. Mackiewicz wanted to add
5  something, Your Honor.
6      THE COURT:  Certainly.
7      MS. MACKIEWICZ:  He stole my thunder a
8  little bit there at the end of what he just
9  said to Your Honor.
10     But that was going to be my position
11  is, yes, Your Honor, we have depositions
12  scheduled over the next two to three weeks,
13  and then fact discovery is supposed to be
14  closed.
15     Then we're supposed to move on to
16  expert discovery.  But if we come back, as
17  Mr. Roth said, in August or September and
18  say, we need to reopen fact discovery
19  because these individuals are now capable of
20  testifying in a deposition, then it throws
21  the experts' reports.
22     They're going to have to be redone,
23  and they're going to have to be
24  re-supplemented.  It will all change.  And
25  all those resources that were just expended

10 (Pages 34 - 37)

Page 38

1  over these months, including, I would
2  suspect, on both sides, if Advantage hears
3  something from our clients that had they
4  known before they deposed this other
5  third-party witness, they may be asking, in
6  fairness, I need to go back and ask that
7  third-party witness a few more questions.
8      And then it's just going to keep
9  rolling and rolling and rolling into a
10  bigger and bigger snowball where as Mr. Roth
11  said, if we take a pause and let this all
12  play out in the short term, none of that may
13  need to happen.
14      Then they can testify if they're out
15  of the cross hairs of the federal
16  government, and the case can proceed
17  forward.
18      THE COURT:  Okay.
19      MR. ROTH:  Your Honor, that's all I
20  have.  I will turn it --
21      THE COURT:  Does anybody else have
22  anything else before we go to Advantage?
23      MR. ROTH:  Well, the only thing I was
24  going to say, Your Honor, is that I look at
25  this as, I think, the courts have -- all the

Page 39

1  cases have been cited as a common sense --
2  and I think the Court has -- at least your
3  attention thus far, very commonsensical,
4  which we on both sides appreciate.  This is
5  a commonsense issue.
6      We are dealing with a delay of an
7  arbitration for money damages for a short
8  time to enable the parties to determine
9  whether they're going to be indicted and
10  possibly face losing their liberty.
11      To me, the commonsense answer is to
12  put it off, see what happens.  We report
13  back to the Court.  If Advantage, which just
14  did an IPO for, I don't know, 4 billion,
15  whatever the number was --
16      Melissa, I can't even count that high.
17      If there's a delay for Advantage where
18  they just went public to -- I don't know,
19  the numbers are too big for me to write
20  down, what is the harm?  What is the real
21  harm here?
22      In light of the fact that Mr. Radetich
23  and others could be facing -- are facing
24  some very, very serious criminal
25  ramifications.

Page 40

1      MS. MACKIEWICZ:  Your Honor, this is
2  Ms. Mackiewicz again.
3      I would just point Your Honor to
4  Mr. Swanson's declaration on behalf of
5  Mr. Gluck.
6      If he is able to wrap his arms around
7  the facts of the case, and what is learned
8  through the U.S. Attorney's Office, he may
9  be in a position in a month or two to say,
10  I'm not going to advise Mr. Gluck to take
11  the Fifth anymore.
12      And then instead of having two hands
13  tied behind our backs on behalf of Take 5
14  and Mr. Gluck, we'll only have one hand tied
15  behind our backs, but we would at least have
16  some way to go forward with the parties to
17  this case.
18      MR. SWANSON:  Your Honor, if I could
19  just add to that that clarify.
20      Mr. Gluck's deposition is scheduled
21  for tomorrow.  We are in this case less than
22  two weeks, and we came in as a result of
23  learning that there had been an effort by
24  the FBI to have our client tape-recorded
25  surreptitiously to see if he would make

Page 41

1  incriminating statements.
2      That's obviously a matter of grave
3  concern for us in light of everything
4  Mr. Ehrlich has learned, so we need to do
5  some work.
6      I think to your suggestion of having
7  depositions take place now, in which people
8  take the Fifth and maybe later don't, I can
9  assure the Court right now if this
10  deposition were to go ahead tomorrow, we
11  would have to take the Fifth because I
12  simply am not in a place where I can advise
13  my client to answer these questions.
14      We're working fast to try to get on
15  top of these facts, and we hope to be able
16  to actually give substantive testimony down
17  the road.
18      It can't happen now, and I think
19  that's really unfortunate, but it is a
20  result of some very late-breaking news as it
21  relates to Mr. Gluck, namely, that
22  revelation in Mr. Colon's deposition of just
23  a few days ago.
24      So that is the reason that we think
25  that the relatively brief stay here would

11 (Pages 38 - 41)

Page 42

1   help us get on top of things, and ideally
2   help everyone get more information from our
3   client.
4        THE COURT:  All right.  Let's go to
5   Advantage.  Who's speaking?
6        MR. STRUB:  Michael Strub, Your Honor,
7   speaking on behalf of the Advantage parties.
8        Good afternoon, Your Honor.  It's a
9   pleasure to meet you now.
10       THE COURT:  Yes.  Albeit remotely.
11       MR. STRUB:  Albeit remotely.
12       Your Honor, this stay request is
13  complete gamesmanship.  Your Honor has
14  identified two of the points that we pointed
15  out in our brief that illustrates what's
16  going on here is not genuine or legitimate.
17       The first one, as Your Honor pointed
18  out, is that they come to you and say, oh,
19  all we want is six-month stay.  It's finite.
20  What's the harm?
21       No.  As Your Honor pointed out, this
22  is a request for an indefinite stay.
23       Now, we go to, well, Your Honor, we
24  come back for a status conference.  That's
25  exactly the type of shenanigans that the

Page 43

1   Court in Sterling said you can't do.
2        This is an indefinite stay.  And these
3   two defendants have not yet been indicted.
4        There is not a single case that has
5   been brought to Your Honor's attention.
6   Applying Schullman factors, which Mr. Roth
7   says, Schulman, Schulman, Schulman.
8        Schulman controls here.  Both sides
9   agree.  There is not a single case applying
10  those factors to a pre-indicted defendant
11  that is granted a stay other than one, which
12  is an opinion in Welch where the government
13  came in and wanted a stay.
14       That hasn't happened here.  The
15  government has known about this.
16       Your Honor asked about the
17  arbitration.  Well, that may be one of the
18  reasons why the government isn't that
19  interested.  It's a private arbitration.
20  It's not a public court hearing.  It's not
21  as if somehow witnesses are going to learn
22  information from things that are in the
23  public docket and public records.
24       No.  This is a private arbitration.
25       I want to turn to a second point that

Page 44

1   Your Honor made, which is, this case has
2   been going on for almost two years.  They
3   have known for almost two years that this
4   investigation was going on.
5        Why now?  Well, the record is very
6   clear why now.  Again, this has all been a
7   ploy.  They were lying in wait, waiting to
8   complete discovery until they spring this on
9   us.
10       So let's go back and see exactly what
11  happened.
12       In September of 2019, they know about
13  this investigation.  It's in our
14  counterclaim.
15       In August of 2020, they learn not only
16  about the investigation, but they learn that
17  Jennifer Ware, the U.S. Attorney had been
18  investigating this since January of 2020.
19       How do they know that?  Because we
20  produced a letter signed by her to them in
21  August 2020, that is attached as Exhibit 30
22  to our papers.
23       So by August 2020, they know that a
24  U.S. Attorney is assigned to this and
25  working on it.

Page 45

1        Okay.  Now, what happens next?
2        Mr. Roth says, we didn't realize the
3   seriousness of this until April 19 --
4   April 19 and 20 of 2021 when FBI agent
5   knocked on Mr. Radetich's door.
6        Baloney.  This is what happened after
7   that.  So now they suddenly realize, oh,
8   this is a serious matter:  An FBI knocking
9   on their door.  No idea of the seriousness
10  until this occurred.
11       So what happens then?  They say, hmm,
12  we know this is serious.  I think you might
13  want a stay?  No.  They don't do that.
14       They proceed to negotiate an amended
15  scheduling order that Your Honor signed.
16  They didn't mention the possibility of a
17  stay to Your Honor or to us.
18       Now, a key piece of evidence, here,
19  was actually supplied by Mr. Ehrlich.
20       Look at paragraph 7 of his
21  declaration.  This is what he says and
22  testifies.
23       He said:  "Holding continued
24  depositions in the arbitration matter would
25  adversely affect the criminal case.  That

12 (Pages 42 - 45)

Page 46

1   danger is particularly acute with respect to
2   sworn testimony from Take 5 or Advantage
3   employees who are recipient witnesses to the
4   conduct now under investigation by the
5   U.S. Attorney's Office."
6       That's in Mr. Ehrlich's declaration.
7       But if that were true, in May --
8   April, May, and June, they voluntarily
9   exposed themselves to this acute danger.
10      After April, after this knock on the
11  door, after they realized it was serious,
12  after they realized there was an acute
13  danger, and that that acute danger was
14  implicated not just by Take 5 employees but
15  by Advantage employees, they took the
16  deposition of every Advantage employee who
17  was a recipient witness to the conduct now
18  under investigation by the U.S. Attorney's
19  Office.
20      They also took the deposition of
21  Take 5 employees, who are recipient
22  witnesses to the conduct now under
23  investigation by the U.S. Attorney's Office.
24      Mr. Radetich and Mr. Gluck's lawyers
25  let them testify.  They never advised them

Page 47

1   of a possibility of a Fifth Amendment
2   privilege.  They didn't step in and warn
3   them of this acute danger.
4       And they did not try to stop the
5   proceedings because of what they now call an
6   acute danger.
7       So if Mr. Ehrlich genuinely perceives
8   that these depositions raise an acute
9   danger, his clients would have asked for a
10  stay months ago.
11      By the way, Mr. Roth's firm does
12  criminal litigation, so it's not as if they
13  were at sea when it comes to criminal versus
14  civil litigation.
15      They literally filed this motion for a
16  stay on the night after they completed the
17  last deposition of the Advantage recipient
18  witness who was an FBI investigator.
19      They completed that deposition, and
20  then I get a phone call saying they're going
21  to file a stay motion and they file it
22  literally that night.  Now, on the eve of
23  their depositions, they want suddenly to
24  stop the proceedings.
25      Again, Schulman is controlling the

Page 48

1   facts that a party uses a stay request to
2   get an undue advantage to --
3       THE COURT:  Let me interrupt for a
4   second.  I apologize for interrupting.
5       Let's assume that the depositions go
6   forward.  I'm assuming that when I'm told
7   that the Fifth Amendment privilege will be
8   invoked, presumably a lot -- I don't know
9   what the questions are going to be, but I am
10  interpreting the comments as being the
11  privilege will be invoked with respect to
12  most, if not all, substantive questions.
13      So if we do that, where does that get
14  you down the road?  I'm assuming that I just
15  want you to tell me.
16      I'm assuming your position would be
17  when we got to the hearing, that even though
18  I can't draw any adverse inference from
19  invoking the 5th, that you would argue that
20  the absence of any evidence from those
21  witnesses is something I could consider,
22  right?
23      MR. STRUB:  Yes, Your Honor, in this
24  respect.  So --
25      THE COURT:  Why wouldn't that unfairly

Page 49

1   prejudice them?
2       MR. STRUB:  Would it prejudice them?
3   Perhaps.  But is it unfair?  No.  Because
4   they have that choice.  They have that
5   choice to testify or not to testify.
6       It's not as if they're the only source
7   of evidence in this case.  There are
8   numerous Take 5 employees who have been
9   deposed.
10      Now, the testimony, unfortunately, for
11  them doesn't help them.  But there is not --
12  that colloquy that you're talking about
13  doesn't exist to justify granting a stay.
14      And Courts have uniformly said this,
15  that as to Schulman, by granting a stay
16  simply to avoid liability in a civil
17  litigation would reward individuals who
18  engaged in more serious wrongdoing by
19  enabling them to use a threatened but not
20  yet commenced civil proceeding as a shield
21  against a longstanding civil case.
22      In other words, what they're saying
23  here is, our behavior -- our conduct was so
24  bad that federal authorities are involved.
25  That's why we need a stay.

13 (Pages 46 - 49)

Page 50

1    THE COURT: So if indictments are
2  filed tomorrow, do you know what your
3  position would be on the stay?
4    MR. STRUB: Your Honor, I believe if
5  indictments were filed tomorrow, we'd take
6  the same position for the reasons that I've
7  said, that the Schulman factors would not
8  warrant a stay because of all the other
9  issues that are involved; the unfair
10  prejudice to Advantage --
11    First of all, Advantage was defrauded
12  here. The Take 5 parties sold Advantage
13  the assets of an e-mail marketing firm that
14  couldn't send e-mail.
15    Advantage paid $77 million for that.
16  Moreover, Advantage is a defendant in a
17  defamation case.
18    So they're not only asking that
19  Advantage not recover its own money, they
20  are asking that they get a stay on their own
21  claims against Advantage.
22    As we all know, time does not make
23  civil cases better. Memories fade.
24  Evidence disappears. It's expensive. And
25  Advantage has spent, by the way, a lot of

Page 51

1  money getting to this point.
2    We are at the terminus of this case.
3  We have a few depositions left. Then we're
4  ready to roll into expert reports and the
5  arbitration -- if it gets to that point,
6  because based on the evidence we have now we
7  may move for summary judgment.
8    But that sort of prejudice, that a
9  witness cannot get up and assist in their
10  defense, is not literally -- that is not
11  something that courts recognize as a valid
12  justification for a stay.
13    There are two other points here.
14    One is that a stay continuing this
15  case increases the possibility that there
16  will be additional spoliation.
17    We just learned -- this was in a
18  June 21, letter to Your Honor from the
19  Take 5 parties, that the Take 5 parties did
20  not preserve their e-mail communications
21  after they initiated this litigation. They
22  didn't do anything to preserve them.
23    That is spoliation. And we have, as
24  Your Honor knows, been fighting, fighting,
25  fighting, to get some discovery from the

Page 52

1  Take 5 parties.
2    That discovery -- those documents, to
3  the extent that they exist, might just
4  disappear. We also don't know, for example,
5  what are Mr. Gluck and Mr. Radetich going to
6  do with these assets they have. It just
7  gives them additional time for mischief.
8    By the way, Your Honor, Your Honor
9  made the point at the beginning that is spot
10  on about the prejudice to Mr. Radetich and
11  Mr. Gluck.
12    In their discovery dispute they said,
13  we had no idea this fraud was going on.
14    Mr. Roth says, well, that's really a
15  very narrow issue.
16    It isn't. It isn't.
17    Fundamental to this case is the
18  allegation, that's now supported by the
19  evidence, that what the Take 5 parties did
20  was sold clients an e-mail marketing
21  campaign promising to send e-mail, and then
22  they went to some mysterious -- they went to
23  some vendors, some pay-per-click vendors and
24  got them to click on the client's website in
25  order to fool the clients into thinking that

Page 53

1  the e-mails had been sent and that the
2  campaign had been effected.
3    What the Take 5 parties said was, oh,
4  no, no, no. We have these mysterious
5  vendors who were sending e-mails for us.
6    We said to Mr. Radetich and Mr. Gluck
7  in this discovery, tell us who they are.
8    They said, we don't know.
9    We said to them, tell us all the times
10  you disclosed to Advantage what you were
11  doing, how these e-mails were being sent,
12  the PVC vendors were being used.
13    They said, we don't know.
14    So the discovery that is at issue is
15  broad discovery. They said they don't know.
16    Now, they said it in a letter from
17  their counsel. They haven't said it in a
18  formal pleading. But if they had served a
19  discovery response with those, "I don't
20  knows" in them, they would have been just as
21  precluded as they will be if they're deposed
22  and taking the Fifth.
23    That's why Your Honor was absolutely
24  right about why taking the Fifth doesn't
25  prejudice them here beyond the position that

14 (Pages 50 - 53)

Page 54

1  they've already taken in the correspondence
2  with Your Honor.
3      So, in sum, there is really nothing
4  new since August of 2020, when they knew
5  that Ms. Ware was investigating them. They
6  knew that Ms. Ware had been investigating
7  them since January 2020.
8      They did nothing about it, other than
9  proceed to take the deposition of all of
10  Advantage's witnesses, and all the
11  third-party witnesses who didn't
12  misrepresent.
13      And then at the last minute saying,
14  oh, wait. We now have a sudden emergency.
15  We need to stop.
16      THE COURT: Counsel, you indicate that
17  there's nothing new. So I assume that you
18  don't challenge the assertion that the
19  issues at the very least substantially
20  overlap, correct?
21      MR. STRUB: Well, we don't know that,
22  Your Honor, and here's why.
23      We just learned in the last couple of
24  weeks that when Mr. Radetich and Mr. Gluck
25  left -- or left, exited Take 5, they started

Page 55

1  a new e-mail marketing company called
2  Agilant [ph].
3      It appears from some of the documents
4  we have -- and we don't have very many of
5  them yet, that that business is engaged in
6  the same type of fraud that Take 5 was
7  engaged in.
8      If that's the case, the government may
9  very well be interested in the more recent
10  fraudulent conduct than in the fraudulent
11  conduct from before. We don't know that
12  yet.
13      But what I will concede is that,
14  certainly, the impetus of the government's
15  investigation was the disclosure by the
16  Advantage parties of their own discovery of
17  fraudulent conduct.
18      This sort of -- this does tie back to
19  one question about the imminence of
20  indictment. The government has been doing
21  this investigation for a long time. It's
22  known about it for almost two years.
23      Ms. Ware's letter is dated
24  January 2020. We don't know when that
25  investigation is going to wrap up. We don't

Page 56

1  have any evidence at all to support that.
2  It's pure speculation.
3      Certainly, because they believe it
4  helps them, Take 5's counsel are going to
5  argue, oh, we believe it's imminent. We
6  believe it's imminent.
7      Why? I mean, by their own admission
8  they have further meetings coming up. They
9  are hoping to persuade them not to indict.
10      So there's no evidentiary basis beyond
11  lawyer argument for Your Honor to conclude
12  that an indictment is imminent or going to
13  happen quickly.
14      And, again, at the end of the day,
15  they got the $77 million. They don't want
16  to have to return it. And that is the only
17  basis that they are seeking this stay.
18      They believe that it's going to put
19  them in a bad spot because of how they have
20  to testify.
21      But the Supreme Court recognized long
22  ago -- and this has been reaffirmed over and
23  over again by federal courts, as well as
24  Schulman, the Delaware court in Schulman,
25  that there is nothing unconstitutional or

Page 57

1  unfair about putting a party to the choice
2  of testifying in support of their case.
3      THE COURT: Well, no, those are two
4  different things. The Supreme Court has
5  said that it's not only constitutional, but
6  unfairness is a question of weighing the
7  factors and arriving at a discretionary
8  decision.
9      So I don't think the Supreme Court
10  went quite that far.
11      MR. STRUB: Fair point, Your Honor.
12      But there are numerous opinions,
13  including Schulman and Sterling, that we
14  cite in our brief and others that do say
15  explicitly that there's nothing unfair about
16  having a defendant make this choice.
17      THE COURT: I understand that. My
18  point is, though, that pretty much a
19  case-by-case analysis as to whether it's
20  unfair or not unfair.
21      MR. STRUB: Your Honor, I agree with
22  that, that it is -- it is a case-by-case
23  analysis as to whether the stay should
24  apply.
25      The only point that I would take issue

Page 58

1   with, Your Honor, is that the policy of
2   fairness of having to testify, that, I don't
3   think exists in this Fifth Amendment case
4   law, and the reason for that is that there
5   are a lot of federal and state, for that
6   matter, civil and criminal laws that
7   overlap.  It happens all the time.
8   Everything from antitrust to RICO.
9        So there are going to be many, many,
10  many cases in which a party to a litigation,
11  if there are genuine allegations there, is
12  going to be put to this choice.
13       That's why this is not a novel
14  situation for a party to be in, which is you
15  have to make a choice.
16       There are hundreds of cases talking
17  about the application of the stay law.  In
18  those cases, most of them -- well, first of
19  all, virtually all of them denies stay
20  pre-indictment.
21       I don't think there's a single one
22  that we've seen that was pre-indictment, and
23  without the government asking for a stay.
24  So that's number one.
25       Even post-indictment, most Courts will

Page 59

1   deny the request for a stay because the
2   issue is to support an overall stay of the
3   proceedings, the parties seeking the stay
4   has the burden to show not just that maybe,
5   perhaps, they will be -- they will have to
6   assert their Fifth Amendment right, but that
7   they can't -- this can't be cured with a
8   selective assertion of the Fifth Amendment
9   right.
10       I will give you an example.  Again,
11  this goes back to Your Honor's example.  If
12  they don't know about how e-mails were sent,
13  if they don't know how PPC vendors were
14  used, if they don't know that the algorithm
15  that was incorporated into Take 5's business
16  software was generating these false tracking
17  reports, if they don't know any of that,
18  then there's no harm to them from asserting
19  the Fifth Amendment.
20       So they have the burden -- even if
21  there was an indictment.  Let's take a step
22  back and put ourselves in a different
23  situation.
24       Let's say there had been an
25  indictment.  That's a necessary condition

Page 60

1   under the law, but it's not sufficient
2   because even post-indictment, then what they
3   have the burden of showing is that selection
4   assertion of the Fifth Amendment will
5   prejudice them.
6        It won't cure this, and they will
7   still be prejudiced even by selective
8   assertion of the Fifth Amendment.
9        That's because, again, case after
10  case, including Schullman, says this is an
11  extraordinary remedy.
12       In their papers they say, well, civil
13  cases get continued all the time.
14       No, they don't, not in this situation.
15       It is extraordinary for a plaintiff or
16  defendant to come forward, particularly a
17  plaintiff, as they are in this case, to come
18  forward and say, we're at the end of
19  discovery.  Everything needs to stop.
20       Why?
21       Because of my own self-interest.
22  Because I really want to testify, and I'm
23  afraid I can't.
24       That doesn't happen in any other
25  context, and it doesn't happen in Fifth

Page 61

1   Amendment cases either.  There has to be
2   something else.  That just doesn't exist
3   here.
4        So I think that one of the --
5   something that gets lost here a little bit
6   in focusing on Mr. Radetich individually is
7   Advantage prejudicing his case, third-party
8   witnesses possibly disappearing, not being
9   able to recover.
10       And then the seventh factor in the
11  Schullman case, which is public interest.
12  Schullman noted that the public has an
13  interest in rooting out fraud, and the
14  public has an interest in allowing a party
15  who believes it was defrauded to seek relief
16  expeditiously.
17       Of course, we put the entire section
18  of that decision at the end of our papers,
19  but it's really, really important.
20       That is what this Fifth Amendment
21  jurisprudence says, is that that public
22  interest weighs against an individual who is
23  disadvantaged by the fact that their conduct
24  was so bad that criminal authorities are
25  involved.  That's of paramount concern.

16 (Pages 58 - 61)

Page 62

1    So, Your Honor, this is just not a
2 close case, to my mind. There's literally
3 no authority to support what they're asking
4 for. It's not supported by the equities.
5    They voluntarily participated in
6 discovery up to this point. They allowed
7 Advantage to voluntarily participate in
8 discovery up to this point, and just laid in
9 wait with this trap, got the very last
10 Advantage witness and then, boom.
11    We're going to get a stay. We're
12 going to seek a stay.
13    So our witnesses won't be deposed.
14    This is gamesmanship, Your Honor. The
15 gamesmanship is transparent. And so we
16 would just ask them to deny the stay relief,
17 ask that you deny the stay relief.
18    THE COURT: All right. Thank you.
19    So does anybody else have anything
20 they need to say that is not duplicative?
21    MR. ROTH: I do, Your Honor.
22    I think in light of the fact that it's
23 my motion, I think I'd like to say a few
24 words, and I think that Mr. Strub has made a
25 lot of misstatements, and I want to correct

Page 63

1 it.
2    It's funny, before I started, the
3 first thing I said is, I don't know if he's
4 going to argue that this is pre-indictment,
5 that it's premature because it's
6 pre-indictment, or it's too late because
7 they should have known about it.
8    And he argued both.
9    So, in Mr. Strub's world, there is no
10 time you can make this motion. He
11 ignores -- and he said, why? What is the
12 imminency.
13    He ignores the declaration by criminal
14 counsel who said he had a meeting with
15 U.S. Attorney's Office who said that they
16 are going to indict Mr. Radetich.
17    He literally ignored that. Okay?
18    But more importantly, he calls it
19 gamesmanship. He calls it not genuine. He
20 calls it not legitimate. He called it
21 shenanigans.
22    I have never met Mr. Swanson before in
23 my life. In fact, this is the first time
24 I've ever seen his life. This man is
25 legitimate as the day is long.

Page 64

1    I met Mr. Ehrlich by Zoom, I don't
2 know, not many times. He's a very serious
3 criminal defense lawyer.
4    Ms. Mackiewicz is a very serious -- to
5 say this is gamesmanship is just nonsense.
6 It's not -- the gamesmanship is actually
7 coming from the other side.
8    But, Your Honor, I need to deal with
9 this issue. I think it's very important.
10    Mr. Strub's main argument is that
11 Radetich and Gluck and Take 5 should have
12 known in August of 2020, when they got a
13 copy of the letter to or from the
14 U.S. Attorney's Office.
15    Let's rewind this case, Your Honor,
16 because just to refresh your memory, we got
17 that letter and we asked for any discovery
18 involving any potential criminality.
19    And Advantage said no.
20    We had a meet and confer. They said
21 no. We made a motion, Your Honor. We made
22 a motion in front of you. They stood behind
23 the prosecutorial defense privilege, I think
24 they called it.
25    And the Court did not -- and I'm not

Page 65

1 protesting that decision. But the Court at
2 that time, Your Honor, said -- I mean, I
3 would have liked it to have gone the other
4 way, but I'm not protesting it today --
5 said, I'm not giving you -- Mr. Roth, I'm
6 agreeing with Advantage. I'm not giving you
7 the information you want to understand
8 what's going on criminally.
9    So we have had nothing. We don't know
10 if Advantage speaks to them daily. We don't
11 know what documents Advantage gave them.
12 All we have is this letter saying, we're
13 going to give you information, and you
14 have to -- so we didn't know.
15    Advantage basically uses that argument
16 as a shield and a sword.
17    The shield is, I'm not going to tell
18 you anything going on in the criminal world.
19    Then we get a knock on the door in
20 April. We have a meeting in May, literally
21 a month ago, where the U.S. Attorney's
22 Office says they're going to indict.
23    If we had gotten that information,
24 maybe we would be in a different position.
25 But we never had it. We had a letter, and

17 (Pages 62 - 65)

1 that was it. They stood behind it, and they
2 were shielded by it. Now they want to use
3 it as a sword.
4 Your Honor, the fact that they say
5 that -- so the fact that they say nothing
6 has happened since August of 2020, ignores
7 the evidence.
8 I mean, Mr. Schullman is a brilliant
9 orator, but he ignored the fact what
10 happened in May, which led to all these
11 lawyers getting on the phone.
12 More importantly, when you ask him a
13 very correct question, what about the
14 overlap, I submit to you, Your Honor, and
15 I'll put Mr. Ehrlich on again if we need to.
16 I'd rather do it in-camera.
17 This is identical. The fraud being
18 alleged is identical to the fraud that the
19 U.S. Attorney's Office is looking at. In
20 fact, it's the same document. It's the
21 identical document that they are looking at.
22 So the overlap here -- I guess, he did
23 dispute it, notwithstanding the fact that he
24 couldn't.
25 To say that we waited so long is just

1 a nonstarter. We did it on the eve of
2 deposing the Advantage CEO, the Advantage
3 CFO, other members of the board of
4 Advantage.
5 We wanted that testimony. We couldn't
6 take it because of the severity of the
7 situation.
8 So Mr. Strub says, yeah, they got all
9 the discovery. We didn't get ours.
10 That's nonsense. There are a dozen
11 depositions or so that are left.
12 We didn't even get the person who
13 apparently made this algorithm. So I just
14 don't understand it.
15 But I need to address one issue, which
16 is very bothersome to me.
17 Mr. Strub maintains that one very
18 important element is the fraud that must
19 be -- that the fraud must come out here.
20 It's very important for the Court to
21 realize that the company was purchased on
22 April 1, 2018. They ran the company from
23 April 1, 2018, to July 11, 2019. That's 16
24 months.
25 Never during that 16 months, until

1 maybe late June, early July, did they say
2 there was a fraud.
3 Understand something. They are
4 running a company bringing in million
5 dollars of revenues and never once said, oh
6 my goodness, it's a problem.
7 It gets even better Your Honor.
8 As they say in their papers, they
9 brought in Ryan MacGavran. They brought in
10 a new CEO on January 1, 2019.
11 Mr. MacGavran testified -- and I
12 didn't have time to put it in my papers --
13 that every day he met with everyone, and,
14 weekly, he met with the heads of every
15 department every single week from January 1,
16 until July -- until July.
17 So if this fraud is so pervasive and
18 so dominant and so -- I think the word used
19 was "massive" by Mr. Strub, why is it that
20 after buying the company, for 17 months
21 there was no allegation -- there was no
22 finding of fraud?
23 But more importantly, when they bring
24 a new CEO in to run the company who meets
25 with everyone daily, and I asked him these

1 questions and Mr. MacGavran, who met with
2 the Fulfillment Department weekly, never
3 found any fraud, and the witnesses have
4 testified there was no fraud.
5 So to say that there's a massive fraud
6 here, I didn't have time to go into it, and
7 I don't want to get into it here because it
8 gets into the merits of the case.
9 Let me just say we have very strong
10 evidence to support a defense of fraud.
11 The handcuff that we're going to have,
12 Your Honor, is that if Mr. Radetich and
13 Mr. Gluck didn't know about it.
14 You heard Mr. Swanson. They're still
15 going to be forced to take the Fifth
16 Amendment.
17 Mr. Swanson, to his credit, is saying,
18 I'm not going to have Mr. Gluck testify
19 about any issue, if I don't have my hands
20 around it tomorrow. Mr. Ehrlich is saying
21 the same thing.
22 So what they are doing is handcuffing
23 us, because I can't even get Mr. Radetich to
24 testify, what are you talking about
25 algorithm? What are you talking about

18 (Pages 66 - 69)

Page 70

1  fraud?  What are you talking about -- I
2  think they call it "mysterious and nefarious
3  vendors" when they bought the business.
4      Not only do they have 16 months of
5  running the business, Your Honor, but they
6  hired Ernst & Young.  They hired Jones Day.
7  They did 8 months of due diligence.
8      Where's the massive fraud, if there
9  was one?  I don't want to go down there.
10     But when Mr. Strub says, there is a
11  massive fraud that must be uncovered, I say,
12  nonsense.  It's gamesmanship.
13     But I can't defend that fraud because
14  Mr. Radetich and Mr. Gluck are going to be
15  precluded to testify at all.
16     So, your Honor, let me end with the
17  following -- and I'll even go to the --
18  their case is no prejudice.
19     And Your Honor, on the one hand,
20  Mr. Strub said that there was an indictment;
21  therefore, the law is on his side, which is
22  untrue.  There are a lot of pre-indictment
23  cases, and we submitted some in our papers,
24  in which there was a stay.  And yet we
25  waited too long.

Page 71

1      Your Honor, we are in an arbitration.
2  In an arbitration, we're talking about
3  fairness.  Fairness prevails in an
4  arbitration.  And the parties decided when
5  they entered into the asset purchase
6  agreement not to go to court, but to go to
7  arbitration.
8      I submit to Your Honor that the fairer
9  thing to do is not to force Mr. Gluck,
10  Mr. Radetich, Ms. Coker, Ms. Jenkins, who
11  are all going to take the Fifth Amendment,
12  and even the Advantage witnesses who will
13  testify, let this take its course.
14     There is no prejudice.  If there are
15  any documents they wanted, they have them.
16  If there are any witnesses they wanted, they
17  have them.  There are a dozen witnesses
18  left.
19     Fairness rules here.  And fairness
20  would dictate that we put this on hold so
21  that we can then figure out what's going on
22  with them.  That's essentially what we're
23  asking for.
24     We think that there's tremendous
25  prejudice against our side when Advantage is

Page 72

1  a 40-billion company, whatever, just has to
2  wait a few months to get their quote, "day
3  in court" or "day in arbitration."  Thank
4  you.
5      I don't know if Ms. Mackiewicz has
6  anything.  That's all I wanted.
7      THE COURT:  All right. I think that we
8  will end the argument, unless somebody has
9  something brand-new to throw into the pot.
10     (No response.)
11     THE COURT:  Arguments were very
12  helpful, Counsel.  Thank you so much for
13  that.
14     I do not know at the moment, because I
15  have done some work on this, but I want to
16  reflect on some of the points that were
17  made, and so I'm not sure what I'm going to
18  do.
19     So this is what I'm going to do.  I'm
20  going to -- I'm going to orally stay it one
21  day.  I will do that as a practical matter.
22     Well, first of all, I accept -- I
23  accept the representation by counsel that
24  with respect to Mr. Gluck and Mr. Radetich,
25  if their depositions go forward tomorrow,

Page 73

1  they will invoke the Fifth Amendment
2  selectively, I assume, but I'm pretty sure
3  based on what I've heard, that that means
4  pretty much the entire deposition.
5      So I'm not sure, as a practical
6  matter, that anything is going to happen
7  tomorrow, whether that is stayed or not
8  stayed.
9      MR. ROTH:  I'm sorry to interrupt you.
10  Just so you know, Your Honor, just so you
11  know the schedule, Mr. Gluck is scheduled
12  tomorrow.  Mr. Radetich is scheduled
13  Thursday.
14     THE COURT:  Okay.  Well, let me finish
15  my thought and then come back to that.
16     MR. ROTH:  Okay.
17     THE COURT:  My thought is going to be,
18  I'm going to get an order out to you as soon
19  as I am comfortable with it.  I don't know
20  if that will be this evening or tomorrow.
21  That is why I was making the statements that
22  I was making.
23     I'm not going to promise you it this
24  evening, because I don't want to issue
25  something until I'm comfortable with doing

Page 74

1  that.
2      So, I mean, to me, it probably -- it
3  probably does not make a lot of practical
4  sense to take their deposition tomorrow when
5  you don't know what's happening.
6      I'm willing to listen to any comments
7  about that, just in case I don't get you
8  something until tomorrow.
9      MR. STRUB:  Your Honor, that's fine.
10  We agree with you with, Your Honor, so we
11  will voluntarily agree.
12      THE COURT:  Then if it goes forward,
13  we will adjust the schedule as necessary to
14  deal with it.
15      MR. STRUB:  Yes, Your Honor.
16      THE COURT:  Okay?  All right.
17      Thank you all so much.  I appreciate
18  it.
19      MR. ROTH:  Your Honor, thank you.
20  It's good that Mr. Strub has had to finally
21  put a face behind the name.
22      THE COURT:  That's one of the benefits
23  of using remote technology.  It's always
24  helpful, especially when you're engaging in
25  a lengthy proceeding.  I think it's helpful.

Page 75

1      MS. MACKIEWICZ:  Thank you, Your
2  Honor.
3      MR. ROTH:  Thank you.
4      (Arbitration proceeding concluded at
5  5:21 p.m.)
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 76

1
2      HEARING CERTIFICATE
3      I, Carol Hill, FPR, RMR, CRR, CMRS, CRI, CPE,
4  certify that I was authorized and did stenographically
5  report the foregoing proceedings and that this
6  transcript is a true record of the proceedings before
7  the Court.
8      I further certify that I am not a relative,
9  employee, attorney, or counsel for any of the parties
10  nor am I a relative or employee of any of the parties'
11  attorney or counsel connected with the action, nor am I
12  financially interested in the action.
13
14
15      Dated this October 12, 2021.
16
17
        Carol Hill Weng, FPR, RMR, CRR
18
19
20
21
22
23
24
25

**[& - amended]**  Page 77

| & | | |
| --- | --- | --- |
| **&** 1:5,8 2:12,15 3:2 70:6 | | |

| **0** | | |
| --- | --- | --- |
| **01-19-0002-7532** 1:2 | | |

| **1** | | |
| --- | --- | --- |
| **1** 11:3,9 67:22,23 68:10,15 | | |
| **100** 15:16 | | |
| **1000** 3:3 | | |
| **10017** 2:9 | | |
| **11** 67:23 | | |
| **110** 2:12 | | |
| **12** 76:15 | | |
| **16** 67:23,25 70:4 | | |
| **17** 68:20 | | |
| **1700** 2:20 | | |
| **1748** 2:4 | | |
| **180** 29:22,22 30:3 30:11,14 | | |
| **19** 45:3,4 | | |
| **19801** 3:3 | | |

| **2** | | |
| --- | --- | --- |
| **2** 11:16 | | |
| **20** 20:7 45:4 | | |
| **2018** 67:22,23 | | |
| **2019** 20:3 21:16,22 23:21 24:4 44:12 67:23 68:10 | | |
| **2020** 44:15,18,21 44:23 54:4,7 55:24 64:12 66:6 | | |
| **2021** 1:16 21:8 22:4 22:14,15 45:4 76:15 | | |
| **21** 20:7 51:18 | | |
| **22nd** 2:9 | | |
| **24** 4:21 | | |

| **29** 1:16 22:14 | | |
| --- | --- | --- |
| **295** 2:9 | | |

| **3** | | |
| --- | --- | --- |
| **3** 12:1 | | |
| **30** 44:21 | | |
| **300** 2:12 | | |
| **30th** 22:14 | | |
| **33131** 2:5 | | |
| **3591** 76:17 | | |

| **4** | | |
| --- | --- | --- |
| **4** 12:7,17 27:23 39:14 | | |
| **40** 72:1 | | |
| **4:02** 1:17 | | |

| **5** | | |
| --- | --- | --- |
| **5** 1:3,11 2:2 4:2 5:14 11:10,12 12:9 12:15,18 13:19 15:7 16:7 24:16 40:13 46:2,14,21 49:8 50:12 51:19 51:19 52:1,19 53:3 54:25 55:6 64:11 | | |
| **5's** 13:18,21 56:4 59:15 | | |
| **5:21** 1:17 75:5 | | |
| **5th** 48:19 | | |

| **6** | | |
| --- | --- | --- |
| **650** 2:19 | | |

| **7** | | |
| --- | --- | --- |
| **7** 45:20 | | |
| **77** 50:15 56:15 | | |

| **8** | | |
| --- | --- | --- |
| **8** 70:7 | | |
| **800** 2:15 | | |
| **825** 2:4 | | |
| **837** 4:12 | | |

| **9** | | |
| --- | --- | --- |
| **92626** 2:20 | | |
| **94104** 2:13 | | |
| **94701** 2:16 | | |
| **99** 21:19 | | |

| **a** | | |
| --- | --- | --- |
| **ability** 13:17,18 36:9 | | |
| **able** 27:13 34:16,25 35:4 36:10,19 40:6 41:15 61:9 | | |
| **absence** 48:20 | | |
| **absolutely** 17:22 53:23 | | |
| **accept** 72:22,23 | | |
| **action** 76:11,12 | | |
| **acute** 46:1,9,12,13 47:3,6,8 | | |
| **add** 23:13,16 35:5 37:4 40:19 | | |
| **additional** 23:16 51:16 52:7 | | |
| **address** 30:18 31:3 67:15 | | |
| **addressing** 31:8 | | |
| **adjust** 74:13 | | |
| **admission** 56:7 | | |
| **advantage** 1:5,8 2:17 4:20 5:10 6:20 7:9,14 8:2,6 9:17 11:7 13:8,18 16:4 20:4 23:19 29:4 34:15 36:12 38:2 38:22 39:13,17 42:5,7 46:2,15,16 47:17 48:2 50:10 50:11,12,15,16,19 50:21,25 53:10 55:16 61:7 62:7,10 64:19 65:6,10,11 | | |

| 65:15 67:2,2,4 71:12,25 | | |
| --- | --- | --- |
| **advantage's** 13:17 13:19 33:14 54:10 | | |
| **adverse** 48:18 | | |
| **adversely** 45:25 | | |
| **advise** 40:10 41:12 | | |
| **advised** 46:25 | | |
| **affect** 45:25 | | |
| **affirmative** 34:18 | | |
| **afraid** 60:23 | | |
| **afternoon** 42:8 | | |
| **agent** 45:4 | | |
| **agilant** 55:2 | | |
| **ago** 9:18 22:9 23:3 41:23 47:10 56:22 65:21 | | |
| **agree** 10:14 22:24 43:9 57:21 74:10 74:11 | | |
| **agreeing** 12:5 65:6 | | |
| **agreement** 71:6 | | |
| **ahead** 31:18 41:10 | | |
| **al** 1:3,5,8,11 | | |
| **albeit** 42:10,11 | | |
| **alex** 8:25 14:21 17:1 | | |
| **alexander** 2:7 | | |
| **algorithm** 59:14 67:13 69:25 | | |
| **allegation** 34:15 52:18 68:21 | | |
| **allegations** 31:4,8 58:11 | | |
| **alleged** 10:24 12:1 13:2 17:9 66:18 | | |
| **alleging** 11:16 16:4 | | |
| **allowed** 62:6 | | |
| **allowing** 61:14 | | |
| **amended** 45:14 | | |

**amendment** 10:10
11:1 13:6 15:18
16:3 27:9 34:2
35:19,22 47:1 48:7
58:3 59:6,8,19 60:4
60:8 61:1,20 69:16
71:11 73:1
**american** 1:1
**amount** 29:14
**analysis** 57:19,23
**animal** 9:20,23
21:2 29:6
**answer** 6:15 10:2
15:11 16:15,19,20
26:16,24 28:7 32:8
39:11 41:13
**answers** 6:21 13:23
**anticipate** 31:14
32:1
**antitrust** 58:8
**anybody** 16:12
23:24 25:19 38:21
62:19
**anymore** 40:11
**anyway** 33:9
**apologize** 25:6 48:4
**apparently** 67:13
**appearances** 2:1
**appears** 5:17 55:3
**application** 58:17
**apply** 57:24
**applying** 43:6,9
**appreciate** 39:4
74:17
**approach** 34:9,11
**april** 21:8,22 45:3,4
46:8,10 65:20
67:22,23
**arbitration** 1:1
25:11,13,21 29:16
39:7 43:17,19,24

45:24 51:5 71:1,2,4
71:7 72:3 75:4
**arbitrator** 1:24
**area** 11:6
**areas** 11:4 18:2
**argue** 4:14 48:19
56:5 63:4
**argued** 63:8
**arguing** 4:9 5:11
7:21 26:22
**argument** 6:3 9:25
10:1 14:17 27:16
56:11 64:10 65:15
72:8
**arguments** 72:11
**armed** 35:1
**arms** 40:6
**arriving** 57:7
**art** 17:23
**artese** 3:2
**asked** 23:19 43:16
47:9 64:17 68:25
**asking** 38:5 50:18
50:20 58:23 62:3
71:23
**asks** 28:5
**aspects** 19:21
**assert** 59:6
**asserting** 59:18
**assertion** 54:18
59:8 60:4,8
**asset** 71:5
**assets** 50:13 52:6
**assigned** 44:24
**assist** 51:9
**association** 1:1
**assume** 26:22 31:21
35:17 48:5 54:17
73:2
**assuming** 13:6 34:5
48:6,14,16

**assurance** 15:16
**assure** 41:9
**attached** 44:21
**attempt** 23:22
**attempted** 23:25
**attention** 39:3 43:5
**attorney** 44:17,24
76:9,11
**attorney's** 8:13,22
9:9,21 15:19 16:18
20:24 21:24 22:20
24:19 25:3 26:12
27:12 28:2,11,21
29:3 32:18 33:5,13
40:8 46:5,18,23
63:15 64:14 65:21
66:19
**audit** 24:16
**august** 36:2 37:17
44:15,21,23 54:4
64:12 66:6
**ausa** 18:1
**authorities** 20:5,9
49:24 61:24
**authority** 62:3
**authorized** 76:4
**available** 9:3 27:25
**avenue** 2:9,15
**avoid** 10:7 49:16
**aware** 14:20 23:5

**b**

**b** 27:23
**back** 12:9,18,22,23
20:3,17 25:7 27:15
30:2 31:7 33:2,4
35:4 37:16 38:6
39:13 42:24 44:10
55:18 59:11,22
73:15
**background** 18:22

**backs** 34:20 40:13
40:15
**bad** 49:24 56:19
61:24
**balancing** 29:7,9
**baloney** 45:6
**based** 19:5,8 25:1
51:6 73:3
**basically** 10:23
22:10 33:20 65:15
**basis** 56:10,17
**bay** 2:4
**bearing** 25:18
**beginning** 52:9
**behalf** 2:2,7,17
10:22 23:14 30:25
31:6 40:4,13 42:7
**behavior** 49:23
**believe** 12:2 15:17
21:25 22:11 29:2
32:24 50:4 56:3,5,6
56:18
**believed** 18:6
**believes** 18:11
61:15
**benefits** 74:22
**berkeley** 2:16
**best** 4:15 31:11
**bet** 26:12
**beth** 14:24 15:14
**better** 50:23 68:7
**beyond** 53:25
56:10
**big** 23:8 36:25
39:19
**bigger** 32:15 38:10
38:10
**billion** 39:14 72:1
**bippy** 26:12
**bit** 17:23 37:8 61:5

**board** 67:3
**boom** 62:10
**boss** 23:20
**bothersome** 67:16
**bought** 11:14 70:3
**brand** 24:5 72:9
**breach** 13:21
**breaking** 41:20
**brickell** 2:4
**brief** 41:25 42:15
57:14
**brilliant** 66:8
**bring** 18:13 68:23
**bringing** 68:4
**broad** 53:15
**broader** 33:1
**brought** 43:5 68:9
68:9
**bump** 11:22
**burden** 27:10 59:4
59:20 60:3
**business** 11:13 55:5
59:15 70:3,5
**buying** 68:20

**c**

**ca** 2:13,16,20
**call** 11:22 18:5,6
24:3 27:21 47:5,20
70:2
**called** 55:1 63:20
64:24
**calls** 63:18,19,20
**camera** 6:17 7:18
7:25 27:25 28:17
66:16
**campaign** 12:21,24
52:21 53:2
**capable** 37:19
**carbon** 28:23,24
**cards** 19:11

**carol** 76:3,17
**carries** 25:13
**case** 1:2 7:19,21 8:7
8:11 9:6,8 14:13
19:24 22:11 28:2
30:17 31:10 32:15
33:14 35:2 36:16
36:19,21 38:16
40:7,17,21 43:4,9
44:1 45:25 49:7,21
50:17 51:2,15
52:17 55:8 57:2,19
57:19,22,22 58:3
60:9,10,17 61:7,11
62:9 64:15 69:8
70:18 74:7
**cases** 5:2 8:9 25:12
25:12 28:6 39:1
50:23 58:10,16,18
60:13 61:1 70:23
**cause** 1:23 26:5,5
26:25
**cautiously** 33:11
**ceiling** 26:19
**center** 2:19
**ceo** 67:2 68:10,24
**certainly** 7:16 8:1,3
8:4 10:2 13:14
21:12 27:20,25
31:14 37:6 55:14
56:3
**certificate** 76:2
**certify** 76:4,8
**cfo** 67:3
**challenge** 54:18
**change** 37:24
**changing** 36:15
**charge** 30:21
**charged** 31:10
**charges** 18:13,14
19:17

**chase** 5:9
**child** 26:6 27:5
**choice** 49:4,5 57:1
57:16 58:12,15
**choose** 10:9
**cite** 8:8 57:14
**cited** 25:12 39:1
**civil** 13:8 22:2 23:7
33:14 47:14 49:16
49:20,21 50:23
58:6 60:12
**claim** 11:23 21:14
21:18
**claimant** 1:9
**claimants** 1:4,9
**claiming** 11:7,9
**claims** 13:20,21
50:21
**clarify** 40:19
**clear** 7:10 8:10
15:20 20:3,6 31:15
44:6
**click** 52:23,24
**client** 12:20 18:9
22:1,2 30:25 40:24
41:13 42:3
**client's** 52:24
**clients** 4:5 38:3
47:9 52:20,25
**close** 62:2
**closed** 37:14
**cmrs** 76:3
**coker** 14:2,22 15:6
16:1 71:10
**coker's** 15:12
**colloquy** 49:12
**colon** 23:19 24:1
**colon's** 41:22
**come** 7:5 17:20
31:19 37:16 42:18
42:24 60:16,17

67:19 73:15
**comes** 47:13
**comfortable** 73:19
73:25
**coming** 9:21 18:15
19:17 56:8 64:7
**commenced** 49:20
**comments** 48:10
74:6
**committed** 18:9
33:15
**common** 17:2
30:24 39:1
**commonsense** 39:5
39:11
**commonsensical**
39:3
**communicated**
17:25 18:5
**communications**
51:20
**company** 24:15
55:1 67:21,22 68:4
68:20,24 72:1
**compared** 37:1
**compel** 10:21 11:5
12:11 13:3
**complete** 42:13
44:8
**completed** 18:25
47:16,19
**completion** 31:22
**compromised**
17:18
**conaway** 3:2
**concede** 55:13
**concern** 26:9 36:22
41:3 61:25
**concierge** 3:6
**conclude** 56:11

**concluded**  75:4
**condition**  59:25
**conduct**  20:22,23
  20:24 46:4,17,22
  49:23 55:10,11,17
  61:23
**confer**  64:20
**conference**  42:24
**confidence**  19:5
**confidential**  26:10
**confidentiality**
  25:15
**conflicts**  24:24
**connected**  76:11
**connection**  10:20
**conscious**  21:13
**consider**  9:6 19:24
  48:21
**consisted**  4:12
**constitutional**  57:5
**contained**  4:19
**context**  25:11
  60:25
**continued**  45:23
  60:13
**continuing**  51:14
**contract**  13:21
**control**  26:15
**controlling**  47:25
**controls**  43:8
**conversation**  18:21
  21:23 24:18 25:2
  28:18
**conversations**
  16:17 25:1 34:21
**convince**  34:24
**cooperation**  20:8
**copy**  28:23,24
  64:13
**correct**  35:13 54:20
  62:25 66:13

**correspondence**
  54:1
**costa**  2:20
**counsel**  10:22
  13:11 14:10,18
  17:4 28:5,8 53:17
  54:16 56:4 63:14
  72:12,23 76:9,11
**counsel's**  28:7
**count**  39:16
**counter**  1:9,12
**counterclaim**  44:14
**couple**  19:25 20:2
  22:9 54:23
**course**  25:11 31:6
  61:17 71:13
**court**  4:1,24 6:3,24
  7:4 10:5,19 12:14
  12:25 14:4 16:9
  17:11,14,17 18:23
  19:22 23:5,10 24:8
  25:6,12,16 26:16
  26:21 27:13,15,21
  28:4,9,15 29:18,21
  30:2 31:18 32:2
  33:18 35:2,7,17
  37:6 38:18,21 39:2
  39:13 41:9 42:4,10
  43:1,20 48:3,25
  50:1 54:16 56:21
  56:24 57:3,4,9,17
  62:18 64:25 65:1
  67:20 71:6 72:3,7
  72:11 73:14,17
  74:12,16,22 76:7
**courtroom**  25:17
**courts**  10:6 38:25
  49:14 51:11 56:23
  58:25
**covered**  30:19

**cpe**  76:3
**credit**  69:17
**cri**  76:3
**crime**  33:15
**criminal**  5:18 6:18
  7:23 8:3 9:6,8
  13:11 14:10 15:1
  18:12 20:1 23:6
  29:10 31:22 32:7
  39:24 45:25 47:12
  47:13 58:6 61:24
  63:13 64:3 65:18
**criminality**  22:19
  64:18
**criminally**  65:8
**criteria**  32:9
**cross**  1:9,12 38:15
**crr**  76:3,17
**cry**  8:18 36:12
**culpable**  16:23
  17:9
**cure**  60:6
**cured**  59:7
**curious**  5:11
**current**  30:3
**customers**  11:19,24
  12:2
**cut**  5:9

### d

**daily**  65:10 68:25
**damages**  39:7
**danger**  46:1,9,13
  46:13 47:3,6,9
**data**  11:10,11,12
  11:15,21,25
**dated**  55:23 76:15
**day**  21:1 27:2 56:14
  63:25 68:13 70:6
  72:2,3,21
**days**  4:10 29:22,22
  30:3,11,14 41:23

**de**  3:3
**deal**  12:12 13:4
  64:8 74:14
**dealing**  6:9,10 39:6
**dealt**  11:5 25:10
**decide**  25:3
**decided**  71:4
**deciding**  22:21
**decision**  28:5 57:8
  61:18 65:1
**declaration**  7:15
  8:20 30:7 40:4
  45:21 46:6 63:13
**defamation**  50:17
**defend**  34:16 70:13
**defendant**  43:10
  50:16 57:16 60:16
**defendant's**  28:5,6
**defendants**  43:3
**defense**  13:17,19
  51:10 64:3,23
  69:10
**definite**  14:6
**definitions**  19:14
**defrauded**  50:11
  61:15
**delaware**  56:24
**delay**  29:13,14,14
  36:24,25 39:6,17
**denies**  58:19
**dennis**  2:3,5
**deny**  33:25 59:1
  62:16,17
**department**  68:15
  69:2
**deposed**  38:4 49:9
  53:21 62:13
**deposing**  67:2
**deposition**  14:25
  24:1 37:20 40:20
  41:10,22 46:16,20

47:17,19 54:9 73:4
74:4
**depositions**  14:22
34:3 35:13,15
37:11 41:7 45:24
47:8,23 48:5 51:3
67:11 72:25
**describe**  17:3,24
**described**  17:8
**describing**  19:7
**determination**  25:1
**determine**  39:8
**dialogue**  30:23
**dictate**  71:20
**difference**  10:25
11:2 23:8
**different**  9:19,23
19:14 20:13 21:2
22:15 29:6 57:4
59:22 65:24
**diligence**  70:7
**direct**  30:21
**disadvantaged**
61:23
**disagree**  16:6,6
**disappear**  52:4
**disappearing**  61:8
**disappears**  50:24
**disclose**  19:20
**disclosed**  53:10
**disclosure**  55:15
**discovery**  20:6
37:13,16,18 44:8
51:25 52:2,12 53:7
53:14,15,19 55:16
60:19 62:6,8 64:17
67:9
**discretionary**  57:7
**discussion**  8:12
**dispose**  14:16

**dispute**  33:14
52:12 66:23
**docket**  43:23
**document**  4:12
8:11 66:20,21
**documents**  29:2
52:2 55:3 65:11
71:15
**doing**  9:23 24:15
53:11 55:20 69:22
73:25
**dollars**  68:5
**dominant**  68:18
**door**  21:4,9,22 45:5
45:9 46:11 65:19
**dozen**  67:10 71:17
**draw**  48:18
**drawn**  13:7
**drive**  2:4,19
**due**  70:7
**duplicative**  62:20

**e**

**e**  11:22 12:3,4
15:23 50:13,14
51:20 52:20,21
53:1,5,11 55:1
59:12
**earlier**  33:19
**early**  23:21 68:1
**earnest**  31:12
**easy**  21:25
**ed**  2:13
**edward**  2:11
**effected**  53:2
**effort**  40:23
**ehrlich**  2:14,15
6:13 7:5,15,20 8:19
9:2,12 16:16,21
17:13,16,22 19:3
21:23 22:9 25:2
27:24 28:10,16,19

29:11 30:6,17
31:24 32:17,25
33:12 41:4 45:19
47:7 64:1 66:15
69:20
**ehrlich's**  46:6
**ehrlich.com**  2:16
**either**  36:18 61:1
**element**  67:18
**emergency**  54:14
**employee**  23:20
46:16 76:9,10
**employees**  46:3,14
46:15,21 49:8
**enable**  39:8
**enabling**  49:19
**enact**  8:20
**enforcement**  20:5,9
**engage**  31:12
**engaged**  49:18 55:5
55:7
**engaging**  74:24
**enter**  18:17
**entered**  71:5
**entire**  61:17 73:4
**entirely**  22:15
**equities**  6:10 62:4
**ernst**  70:6
**especially**  74:24
**esq**  2:3,3,7,8,11,14
2:18,18 3:1,1,2
**essentially**  4:21
9:15 11:6 12:20
22:21 71:22
**et**  1:3,5,8,11
**eve**  47:22 67:1
**evening**  73:20,24
**evidence**  16:5 18:8
18:12 19:7,12 31:4
36:14 45:18 48:20
49:7 50:24 51:6

52:19 56:1 66:7
69:10
**evidentiary**  56:10
**exactly**  13:14 42:25
44:10
**example**  52:4 59:10
59:11
**excuse**  27:24
**exhibit**  44:21
**exist**  49:13 52:3
61:2
**exists**  58:3
**exited**  54:25
**expected**  23:1
**expecting**  30:8
**expeditiously**  61:16
**expended**  37:25
**expensive**  50:24
**experience**  33:7
**expert**  36:14 37:16
51:4
**experts**  36:6 37:21
**expires**  29:22
**explain**  33:12
**explained**  9:11
**explaining**  33:5
**explains**  9:11
**explicitly**  57:15
**exposed**  46:9
**exposure**  29:10
**extent**  52:3
**extraordinary**
60:11,15
**eyler**  1:24

**f**

**f**  1:3,11 2:2
**face**  39:10 74:21
**faces**  6:6
**facing**  6:12 32:13
39:23,23

**fact** 6:1 7:22 8:7
26:10 37:13,18
39:22 61:23 62:22
63:23 66:4,5,9,20
66:23
**factor** 61:10
**factors** 29:7 43:6
43:10 50:7 57:7
**facts** 4:9,15,19 5:4
20:11 40:7 41:15
48:1
**fade** 50:23
**fair** 36:16,17 57:11
**fairer** 71:8
**fairly** 18:16
**fairness** 38:6 58:2
71:3,3,19,19
**false** 11:24 12:8,10
59:16
**far** 8:18 16:6 39:3
57:10
**fast** 33:1 41:14
**fbi** 6:1 9:18,20,21
20:23 21:10,18
23:2,3,19 24:3,18
40:24 45:4,8 47:18
**federal** 17:2 26:25
38:15 49:24 56:23
58:5
**feeling** 17:17
**fifth** 10:10 11:1
13:6,13,25 14:11
15:18 16:3 27:8
34:2 35:19,22
36:10 40:11 41:8
41:11 47:1 48:7
53:22,24 58:3 59:6
59:8,19 60:4,8,25
61:20 69:15 71:11
73:1

**fighting** 51:24,24
51:25
**figure** 71:21
**file** 47:21,21
**filed** 5:1 47:15 50:2
50:5
**finally** 74:20
**financially** 76:12
**finding** 68:22
**fine** 74:9
**finish** 73:14
**finite** 42:19
**firm** 2:8 14:23
47:11 50:13
**first** 4:25 18:5 19:3
24:14,22 42:17
50:11 58:18 63:3
63:23 72:22
**five** 8:11 11:6 12:12
12:22 13:1,4 27:22
28:20
**floor** 2:9
**florida** 2:5
**focus** 5:8
**focusing** 20:13 61:6
**fold** 6:4
**follow** 10:19
**following** 21:16
70:17
**fool** 52:25
**force** 22:21 71:9
**forced** 69:15
**forcing** 10:9
**foregoing** 76:5
**forget** 30:3
**forgot** 24:11
**formal** 53:18
**forth** 9:17 31:7
**forward** 38:17
40:16 48:6 60:16
60:18 72:25 74:12

**foul** 36:12
**found** 69:3
**four** 4:10 12:19
15:25 27:22 34:1
36:25
**fpr** 76:3,17
**francisco** 2:13
**frank** 14:2
**frankly** 13:4,22
16:5 25:24
**fraud** 5:4,4 10:24
11:9,13,16 12:1,7,9
13:20 18:8 28:25
52:13 55:6 61:13
66:17,18 67:18,19
68:2,17,22 69:3,4,5
69:10 70:1,8,11,13
**frauds** 11:7 12:6
13:1 16:3 17:10
27:22 28:20
**fraudulent** 55:10
55:10,17
**free** 34:16
**front** 7:8 8:2 35:2
64:22
**fti** 24:15
**fulfillment** 69:2
**fundamental** 52:17
**funny** 63:2
**further** 56:8 76:8
**future** 30:9 32:3
33:24

**g**

**gamesmanship**
42:13 62:14,15
63:19 64:5,6 70:12
**gears** 23:10 25:9
**generating** 59:16
**genuine** 42:16
58:11 63:19

**genuinely** 47:7
**george** 3:6
**getting** 12:3,3 21:3
51:1 66:11
**ggtriallaw.com**
2:21,21
**give** 15:16 41:16
59:10 65:13
**gives** 52:7
**giving** 10:10 65:5,6
**gluck** 2:2 10:21
11:18,23 13:5,9,25
14:22 15:6 23:15
23:20,23 40:5,10
40:14 41:21 52:5
52:11 53:6 54:24
64:11 69:13,18
70:14 71:9 72:24
73:11
**gluck's** 40:20 46:24
**go** 5:9 9:18 12:24
15:4 19:17 20:17
20:19 27:13 30:13
31:2 34:17 38:6,22
40:16 41:10 42:4
42:23 44:10 48:5
69:6 70:9,17 71:6,6
72:25
**goal** 10:12,17,18
**goes** 59:11 74:12
**going** 4:8 5:12
13:12,15,25 15:4,9
15:15,17,20 16:2
17:24 23:1,1,2 26:1
26:2,13 27:7 28:21
29:17,20 30:12,12
31:16 32:23 33:3,4
33:16,22 34:7,14
35:3 36:6,12 37:10
37:22,23 38:8,24
39:9 40:10 42:16

43:21 44:2,4 47:20
48:9 52:5,13 55:25
56:4,12,18 58:9,12
62:11,12 63:4,16
65:8,13,17,18,22
69:11,15,18 70:14
71:11,21 72:17,19
72:20,20 73:6,17
73:18,23
**good** 4:1 16:7 21:13
26:5,5,25 42:8
74:20
**goodness** 68:6
**gotten** 20:4 32:14
65:23
**government** 25:25
26:21 31:13 34:23
38:16 43:12,15,18
55:8,20 58:23
**government's**
55:14
**grant** 10:6
**granted** 43:11
**granting** 37:2
49:13,15
**grave** 41:2
**great** 23:3
**greater** 25:14,15,15
**greenberg** 2:19
**gross** 2:18
**group** 1:3,3,11,11
2:2,2,2
**guardian** 16:14
**guess** 17:14 30:10
34:12 35:24 66:22
**guilty** 18:18

**h**

**h** 2:18
**hairs** 38:15
**hand** 5:10 20:10
40:14 70:19

**handcuff** 69:11
**handcuffed** 36:18
**handcuffing** 69:22
**hands** 34:19 35:4
40:12 69:19
**happen** 29:20
31:16 33:16,22,23
34:7 38:13 41:18
56:13 60:24,25
73:6
**happened** 15:11
21:15,16 34:6
43:14 44:11 45:6
66:6,10
**happening** 74:5
**happens** 20:25
25:20 32:23 39:12
45:1,11 58:7
**happy** 4:14
**hard** 19:13 26:13
27:14
**harm** 37:1,1,2
39:20,21 42:20
59:18
**harps** 8:6
**head** 24:14 36:21
**heads** 68:14
**hear** 16:8 28:15
30:8 31:25
**heard** 69:14 73:3
**hearing** 1:23 18:10
36:3,20 43:20
48:17 76:2
**hears** 38:2
**hearst** 2:15
**help** 42:1,2 49:11
**helpful** 31:17 72:12
74:24,25
**helps** 56:4
**hesitancy** 29:18

**high** 27:1,11 39:16
**hill** 76:3,17
**hinders** 36:9
**hired** 70:6,6
**hmm** 45:11
**hold** 71:20
**holding** 45:23
**honor** 4:3,4,9,15,23
5:7,15 6:14 8:5 9:2
9:24 10:3 14:20
15:25 16:21 17:22
20:19,20 21:25
22:12 23:9,13,24
24:10 25:23 26:23
27:17 29:5,9 32:1,8
32:16 33:17 34:11
35:6 37:5,9,11
38:19,24 40:1,3,18
42:6,8,12,13,17,21
42:23 43:16 44:1
45:15,17 48:23
50:4 51:18,24 52:8
52:8 53:23 54:2,22
56:11 57:11,21
58:1 62:1,14,21
64:8,15,21 65:2
66:4,14 68:7 69:12
70:5,16,19 71:1,8
73:10 74:9,10,15
74:19 75:2
**honor's** 19:4 23:18
43:5 59:11
**honorable** 1:24
**hope** 31:7 41:15
**hopeful** 34:22,23
**hoping** 56:9
**hour** 28:12
**hours** 4:21 28:12
**housed** 11:10,11
**hundreds** 58:16

**hypothetically**
29:21

**i**

**idea** 21:7 45:9
52:13
**ideally** 42:1
**identical** 7:11 28:1
28:2,6,25 66:17,18
66:21
**identified** 17:1
42:14
**ignored** 63:17 66:9
**ignores** 63:11,13
66:6
**illustrates** 42:15
**immediately** 24:25
**imminence** 7:1
17:15 19:13 55:19
**imminency** 63:12
**imminent** 19:1,5,15
19:16 29:11,12
32:11 56:5,6,12
**impetus** 55:14
**implicated** 46:14
**important** 8:6 9:5
10:18 29:8 32:9
61:19 64:9 67:18
67:20
**importantly** 63:18
66:12 68:23
**impression** 18:23
19:4
**inaccurate** 4:21
**incarceration**
32:13
**including** 38:1
57:13 60:10
**incorporated** 59:15
**increases** 51:15
**incriminate** 23:23

**incriminating** 41:1
**incrimination** 26:18
**indefinite** 42:22 43:2
**indicate** 54:16
**indicated** 33:21
**indict** 15:21 22:22 22:23 30:14 32:19 33:6,9 34:14 56:9 63:16 65:22
**indicted** 13:15 15:9 22:3 30:13 39:9 43:3,10
**indicting** 8:25
**indictment** 5:13,18 5:23 6:6,12 7:2 18:12,17 29:23 32:10,12,23 34:21 34:25 55:20 56:12 58:20,22,25 59:21 59:25 60:2 63:4,6 70:20,22
**indictments** 17:20 31:19 32:2,5 34:8 50:1,5
**individual** 17:5 61:22
**individually** 61:6
**individuals** 34:1 35:18 37:19 49:17
**inference** 13:7 48:18
**information** 11:20 24:5 34:7 42:2 43:22 65:7,13,23
**informed** 8:24 18:2 22:1 24:1
**initial** 18:20
**initiated** 51:21

**intend** 8:24 9:22 14:7
**intends** 18:13 33:4
**intention** 30:21 31:1
**intentionally** 11:19
**interest** 29:8 60:21 61:11,13,14,22
**interested** 5:5 23:4 23:6 43:19 55:9 76:12
**interpretation** 18:3 37:3
**interpreting** 48:10
**interrogatories** 35:12
**interrupt** 48:3 73:9
**interrupted** 20:17
**interrupting** 25:7 48:4
**investigating** 44:18 54:5,6
**investigation** 8:3 8:17 10:8 18:25 19:21 20:1,11 44:4 44:13,16 46:4,18 46:23 55:15,21,25
**investigator** 47:18
**invite** 30:23
**invoke** 34:2 35:18 35:19 73:1
**invoked** 48:8,11
**invoking** 48:19
**involved** 14:13 20:4,21 49:24 50:9 61:25
**involves** 26:5,6,7
**involving** 64:18
**ipo** 39:14
**irrelevant** 6:2 9:19

**issue** 4:7 7:13 8:5,6 9:5 10:3,4 14:16 20:20 25:10,19 27:19 29:5 35:22 39:5 52:15 53:14 57:25 59:2 64:9 67:15 69:19 73:24
**issued** 8:12 32:3
**issues** 6:3,11,19 7:7 12:12 13:10 27:18 50:9 54:19

### j

**j** 3:2
**james** 1:24
**january** 44:18 54:7 55:24 68:10,15
**jenkins** 14:3,24 15:5,14 16:2 71:10
**jennifer** 18:1 44:17
**johnston** 3:1
**jones** 70:6
**jr** 2:18
**judge** 30:20
**judgment** 51:7
**july** 23:21 24:4 67:23 68:1,16,16
**june** 1:16 22:14,14 23:17 46:8 51:18 68:1
**jurisprudence** 61:21
**justification** 51:12
**justify** 49:13

### k

**k** 1:3,11 2:2
**katz** 2:8
**keep** 23:1 38:8
**key** 45:18
**kind** 26:22 27:4

**king** 3:3
**knew** 5:14 8:16 54:4,6
**knock** 21:3,9,21 46:10 65:19
**knocked** 45:5
**knocking** 45:8
**know** 5:20,24 8:14 8:15 12:17 13:14 13:23 14:7,18 15:3 15:19 17:25 18:3 21:15 22:5 23:24 26:2,6 27:21 28:7 28:11 30:12,12 31:3 32:24 33:9,21 34:13 39:14,18 44:12,19,23 45:12 48:8 50:2,22 52:4 53:8,13,15 54:21 55:11,24 59:12,13 59:14,17 63:3 64:2 65:9,11,14 69:13 72:5,14 73:10,11 73:19 74:5
**knowing** 21:2
**knowledge** 10:23
**known** 19:10 24:21 24:22 38:4 43:15 44:3 55:22 63:7 64:12
**knows** 7:13,23 28:10 51:24 53:20

### l

**laid** 19:10 62:8
**late** 5:13,24 9:25 41:20 63:6 68:1
**law** 2:8 20:4,9 25:17 58:4,17 60:1 70:21
**laws** 58:6

**lawsuit** 34:17
**lawyer** 9:10,10,11
  15:12 56:11 64:3
**lawyers** 46:24
  66:11
**lay** 22:10
**learn** 43:21 44:15
  44:16
**learned** 23:17
  24:10,12,17 40:7
  41:4 51:17 54:23
**learning** 14:13
  40:23
**led** 21:4 66:10
**left** 51:3 54:25,25
  67:11 71:18
**legitimate** 42:16
  63:20,25
**lengthy** 74:25
**letter** 44:20 51:18
  53:16 55:23 64:13
  64:17 65:12,25
**level** 22:19
**liability** 49:16
**libbares** 3:6
**liberty** 39:10
**life** 63:23,24
**light** 39:22 41:3
  62:22
**liked** 65:3
**list** 11:8
**listen** 20:20 24:3
  33:8 74:6
**literally** 7:22 21:9
  47:15,22 51:10
  62:2 63:17 65:20
**litigants** 27:2
**litigation** 5:17 13:8
  20:22 23:7 47:12
  47:14 49:17 51:21
  58:10

**little** 37:8 61:5
**llc** 1:3,3,5,8,11,11
  2:2 3:2
**llp** 2:12,15,19
**long** 21:12 55:21
  56:21 63:25 66:25
  70:25
**longer** 22:2 29:19
**longstanding** 49:21
**look** 38:24 45:20
**looked** 5:1
**looking** 31:18
  66:19,21
**losing** 39:10
**lost** 61:5
**lot** 4:19 13:22
  15:22 33:10 35:15
  48:8 50:25 58:5
  62:25 70:22 74:3
**lying** 44:7

**m**

**macgavran** 68:9,11
  69:1
**mackiewicz** 2:3
  23:9,12,14 35:6,16
  36:4 37:4,7 40:1,2
  64:4 72:5 75:1
**madison** 2:9
**mail** 50:13,14
  51:20 52:20,21
  55:1
**mails** 11:22 12:3,4
  15:23 53:1,5,11
  59:12
**main** 6:11 64:10
**maintain** 22:18
**maintains** 67:17
**making** 73:21,22
**man** 63:24
**march** 22:15

**marketing** 1:5,8
  2:2 50:13 52:20
  55:1
**massive** 68:19 69:5
  70:8,11
**match** 12:9,18,22
  12:23
**matter** 11:18 26:13
  27:14 41:2 45:8,24
  58:6 72:21 73:6
**matters** 6:7,9 7:10
  8:15 27:3
**mcnamara** 2:12
**mean** 13:11 16:5
  33:7,10 35:20,21
  56:7 65:2 66:8 74:2
**means** 73:3
**media** 1:3,3,11,11
  2:2,2
**meet** 42:9 64:20
**meeting** 9:13 22:8
  31:2 33:3 63:14
  65:20
**meetings** 9:1 56:8
**meets** 9:10 68:24
**melissa** 2:3,6 23:14
  35:5 39:16
**melissa's** 14:23
**members** 67:3
**memories** 50:23
**memory** 64:16
**mention** 45:16
**mentioned** 22:9
  27:21
**mercer** 3:1
**merits** 7:19 69:8
**mesa** 2:20
**met** 6:13 8:23
  63:22 64:1 68:13
  68:14 69:1

**miami** 2:5
**michael** 2:18 24:13
  24:13 42:6
**middle** 4:6
**miles** 2:14,16 16:20
  30:16
**million** 50:15 56:15
  68:4
**mind** 10:9 25:18
  62:2
**minimal** 37:1
**minor** 26:6
**minute** 36:13 54:13
**mischief** 52:7
**misrepresent** 54:12
**misrepresentation**
  11:13
**misrepresented**
  11:19
**missed** 12:15
**misstatements**
  62:25
**moment** 5:16 23:11
  25:9 72:14
**money** 39:7 50:19
  51:1
**montgomery** 2:12
**month** 19:19 20:14
  35:21 36:24,25,25
  40:9 42:19 65:21
**months** 19:19,19
  24:20 31:14 32:24
  38:1 47:10 67:24
  67:25 68:20 70:4,7
  72:2
**motion** 4:5,17 5:6
  5:19 9:16 10:21
  11:5 12:11 13:3
  25:5 47:15,21
  62:23 63:10 64:21
  64:22

**movant** 4:2
**move** 37:15 51:7
**moving** 33:10
**mstrub** 2:21
**mysterious** 52:22
53:4 70:2
**mystery** 15:10

### n

**name** 24:14 74:21
**named** 17:9
**narrow** 52:15
**near** 30:9 32:3
33:23
**necessary** 59:25
74:13
**need** 9:6,7,7 19:24
26:4 37:18 38:6,13
41:4 49:25 54:15
62:20 64:8 66:15
67:15
**needed** 30:17
**needs** 60:19
**nefarious** 70:2
**negative** 13:7
**negotiate** 45:14
**never** 9:13 21:5
46:25 63:22 65:25
67:25 68:5 69:2
**new** 2:9 20:10 24:5
54:4,17 55:1 68:10
68:24 72:9
**news** 41:20
**night** 47:16,22
**nonparty** 14:2,3
15:13
**nonsense** 64:5
67:10 70:12
**nonstarter** 67:1
**north** 3:3
**noted** 61:12

**notice** 1:24 4:9
**noticed** 34:3
**notwithstanding**
26:9 66:23
**novel** 58:13
**number** 11:3,9,16
12:1,7,9,15,17,18
39:15 58:24
**numbers** 26:7
39:19
**numerous** 49:8
57:12
**ny** 2:9

### o

**obtained** 11:20
**obviously** 41:2
**occurred** 9:14 20:7
45:10
**occurring** 35:9
**october** 36:3,20
76:15
**offense** 13:20 34:18
**offer** 19:8,9
**office** 8:13,22 9:9
9:21 15:20 16:18
20:24 21:24 22:20
24:19 25:3 26:13
27:12 28:2,11,21
29:3 32:18 33:5,13
40:8 46:5,19,23
63:15 64:14 65:22
66:19
**oh** 23:12 42:18 45:7
53:3 54:14 56:5
68:5
**okay** 12:25 16:7
19:22 25:6 27:15
38:18 45:1 63:17
73:14,16 74:16
**once** 14:15,20 68:5

**ongoing** 20:8
**open** 18:10 25:17
**opinion** 20:15
43:12
**opinions** 25:20
57:12
**optimistic** 33:11
**orally** 72:20
**orator** 66:9
**order** 26:17 45:15
52:25 73:18
**overall** 59:2
**overlap** 6:8 27:19
27:20 28:22 29:5
54:20 58:7 66:14
66:22
**overlapping** 7:9,11
**overwhelming** 18:8

### p

**p.a.** 2:4
**p.m.** 1:17,17 75:5
**page** 4:12
**paid** 50:15
**paper** 24:10
**papers** 4:20,25
9:18 11:17 13:9
14:1,5 24:11 44:22
60:12 61:18 68:8
68:12 70:23
**paragraph** 45:20
**paramount** 61:25
**part** 19:3
**partese** 3:5
**participate** 62:7
**participated** 62:5
**particularly** 16:1
46:1 60:16
**parties** 39:8 40:16
42:7 50:12 51:19
51:19 52:1,19 53:3
55:16 59:3 71:4

76:9,10
**parts** 33:11
**party** 10:8,9,13
15:8,8,12 38:5,7
48:1 54:11 57:1
58:10,14 61:7,14
**pause** 38:11
**pay** 52:23
**pendency** 32:22
**pending** 9:7 19:25
20:2 21:11 23:7
31:22 32:6
**people** 12:23 13:22
14:2 15:22,22,25
19:13 41:7
**perceives** 47:7
**percent** 15:16
21:19
**person** 24:15 67:12
**perspective** 31:9
**persuade** 56:9
**pervasive** 68:17
**peter** 3:2
**petruss** 1:3,11 2:2
**ph** 8:7 55:2
**phone** 24:3 47:20
66:11
**picked** 21:20
**piece** 45:18
**pieces** 16:8
**place** 41:7,12
**plaintiff** 60:15,17
**plaintiff's** 28:8
**play** 38:12
**plea** 18:19
**pleading** 11:11
12:2 53:18
**pleadings** 29:4
**pleasure** 42:9
**plentiful** 11:3

**pllc** 2:8
**ploy** 44:7
**podium** 17:12
**point** 5:15 9:12,13
25:14 30:18 40:3
43:25 51:1,5 52:9
57:11,18,25 62:6,8
**pointed** 42:14,17
42:21
**points** 42:14 51:13
72:16
**police** 20:25
**policy** 58:1
**popped** 30:16
**position** 37:10 40:9
48:16 50:3,6 53:25
65:24
**possibility** 6:6
45:16 47:1 51:15
**possibly** 30:22
39:10 61:8
**post** 58:25 60:2
**pot** 72:9
**potential** 9:8 15:1
64:18
**powerful** 18:7
**ppc** 59:13
**practical** 72:21
73:5 74:3
**pre** 18:17 43:10
58:20,22 63:4,6
70:22
**precipice** 9:15
**precisely** 28:20
**precluded** 53:21
70:15
**prejudice** 6:10 10:7
25:18 29:15 49:1,2
50:10 51:8 52:10
53:25 60:5 70:18
71:14,25

**prejudiced** 10:13
15:24 60:7
**prejudices** 13:16
**prejudicing** 61:7
**premature** 5:12,20
5:22 63:5
**prepare** 4:11
**present** 3:6 36:19
**presentation** 6:14
**presented** 31:4
36:6
**presenting** 31:8
**preserve** 27:8,9
51:20,22
**presumably** 20:1
34:1 48:8
**pretty** 57:18 73:2,4
**prevails** 71:3
**private** 43:19,24
**privilege** 10:10
13:6 26:18 27:9
47:2 48:7,11 64:23
**privileged** 7:2,4
**probably** 16:16
74:2,3
**problem** 36:1,2
68:6
**problems** 32:15
**proceed** 38:16
45:14 54:9
**proceeding** 7:24
25:16,22 29:13
49:20 74:25 75:4
**proceedings** 25:21
31:23 32:6,7 47:5
47:24 59:3 76:5,6
**process** 27:5 35:25
**produced** 44:20
**proffer** 19:10 22:8
28:13 30:5 31:5

**promise** 73:23
**promising** 52:21
**proper** 24:24
**prosecute** 34:17
**prosecution** 15:1
**prosecutor** 16:22
16:24 30:20
**prosecutorial**
64:23
**prosecutors** 17:3
23:6
**protect** 26:17
**protesting** 65:1,4
**public** 35:10 39:18
43:20,23,23 61:11
61:12,14,21
**purchase** 71:5
**purchased** 67:21
**pure** 56:2
**purpose** 4:17 6:2
**pursuant** 1:24
**put** 13:17,19,20
24:11 29:19 39:12
56:18 58:12 59:22
61:17 66:15 68:12
71:20 74:21
**putting** 57:1
**pvc** 53:12

## q

**quality** 11:14
**question** 6:25 7:1
10:12 16:19 17:7
19:4 23:18 32:1
55:19 57:6 66:13
**questions** 6:15 7:17
9:4 10:2 38:7 41:13
48:9,12 69:1
**quick** 31:20 32:4
**quickly** 56:13
**quite** 13:4,22 16:5
25:24 57:10

**quote** 72:2

## r

**radetich** 2:7 6:5,12
8:25 10:21 11:17
11:23 13:5,9,15,24
14:21 16:1,13 17:1
18:16 21:8,21
22:11 23:21,23
24:4 30:22 31:6,9
32:12 39:22 46:24
52:5,10 53:6 54:24
61:6 63:16 64:11
69:12,23 70:14
71:10 72:24 73:12
**radetich's** 45:5
**raise** 47:8
**ramifications**
39:25
**ramsey** 2:15,16
**ran** 67:22
**read** 4:25
**ready** 35:1 51:4
**reaffirmed** 56:22
**real** 6:3,6 11:12
29:12,19 39:20
**realize** 45:2,7 67:21
**realized** 14:21
46:11,12
**really** 7:14 8:5 13:3
21:19 26:4 33:8
41:19 52:14 54:3
60:22 61:19,19
**reason** 10:6 15:24
26:19 29:1 41:24
58:4
**reasons** 20:12
43:18 50:6
**recall** 18:4
**received** 21:9
**recipient** 46:3,17
46:21 47:17

recognize 51:11
recognized 56:21
record 26:4 27:8,14
  44:5 76:6
recorded 40:24
records 43:23
recover 50:19 61:9
redone 37:22
references 16:22
reflect 72:16
refresh 64:16
regard 11:14 17:6
relate 4:22 6:19
  7:18
related 23:17
relates 7:19 41:21
relative 76:8,10
relatively 41:25
relevant 4:16 5:6
relief 61:15 62:16
  62:17
remedy 60:11
remote 74:23
remotely 42:10,11
reopen 37:18
report 12:20,23
  23:2 30:1,2 39:12
  76:5
reported 20:23,23
  20:25 21:3,6
reporting 9:20
reports 12:8,10,18
  12:19,22 37:21
  51:4 59:17
represent 14:21
  15:2,8 28:9,14,19
representation
  14:17 24:23 72:23
representations
  11:24

request 42:12,22
  48:1 59:1
researched 26:3
resolution 18:17
  31:20,20 32:4,6
resources 37:25
respect 6:24,25
  17:14 32:4 34:8
  46:1 48:11,24
  72:24
respond 33:20
respondent 1:12
respondents 1:6,12
response 53:19
  72:10
responses 35:12
resting 18:2
result 40:22 41:20
return 56:16
revelation 41:22
revenues 68:5
reverse 19:10 22:8
  28:12 30:4 31:5
reward 49:17
rewind 64:15
rich 2:10 14:22
richard 2:2,3,4,4,7
  14:24,24
richardandrichar...
  2:5,6
rico 58:8
right 5:3,7,9,9 6:23
  30:4 34:19 35:3
  41:9 42:4 48:22
  53:24 59:6,9 62:18
  72:7 74:16
rights 17:18
rise 22:19
rjv 2:2
rmr 76:3,17

road 30:11 41:17
  48:14
rodney 3:3
roll 51:4
rolling 38:9,9,9
rooting 61:13
roth 2:7,8 4:3 5:7
  7:3,6 10:15 11:2
  12:16 13:1 14:9
  16:15 20:18,19
  24:7,9 25:23 26:20
  26:23 27:17 29:25
  31:25 32:8 34:10
  35:14,24 36:5
  37:17 38:10,19,23
  43:6 45:2 52:14
  62:21 65:5 73:9,16
  74:19 75:3
roth's 47:11
rrothlaw.com 2:10
rrothlw.com 2:10
rules 26:25 71:19
run 35:10 68:24
running 68:4 70:5
ryan 68:9

**s**

sales 1:5,8
san 2:13
sat 8:21 28:10
saying 18:18,24
  21:10 47:20 49:22
  54:13 65:12 69:17
  69:20
says 29:11 43:7
  45:2,21 52:14
  60:10 61:21 65:22
  67:8 70:10
schedule 31:2 36:5
  73:11 74:13
scheduled 37:12
  40:20 73:11,12

scheduling 45:15
schullman 43:6
  60:10 61:11,12
  66:8
schulman 8:7,8,8,8
  8:10 28:4 29:6 43:7
  43:7,7,8 47:25
  49:15 50:7 56:24
  56:24 57:13
science 17:24
scope 6:25
scott 2:8,10
screen 17:12
sea 47:13
seal 25:20 26:14
  27:3,4,14
sealed 26:17
sealing 26:4 27:8
second 10:4 27:19
  43:25 48:4
secret 27:5
section 61:17
security 26:7
see 5:11 39:12
  40:25 44:10
seek 61:15 62:12
seeking 56:17 59:3
seen 58:22 63:24
selection 60:3
selective 59:8 60:7
selectively 73:2
self 26:18 60:21
send 50:14 52:21
sending 53:5
sense 39:1 74:4
sensitivity 6:18
sent 53:1,11 59:12
september 36:1,2
  36:11,20 37:17
  44:12

**serious** 4:7 9:7 21:7
  22:7 29:10 39:24
  45:8,12 46:11
  49:18 64:2,4
**seriously** 36:9
**seriousness** 45:3,9
**served** 53:18
**set** 9:17 33:3
**seventh** 61:10
**severity** 67:6
**share** 16:11 17:15
  17:19
**shenanigans** 42:25
  63:21
**shield** 49:20 65:16
  65:17
**shielded** 66:2
**short** 29:13 35:10
  38:12 39:7
**show** 12:21 59:4
**showing** 60:3
**side** 36:18 64:7
  70:21 71:25
**sides** 35:1 36:7 38:2
  39:4 43:8
**signature** 76:17
**signed** 44:20 45:15
**significantly** 13:16
**similar** 28:1
**simple** 14:16
**simply** 41:12 49:16
**single** 43:4,9 58:21
  68:15
**situation** 22:13,16
  32:20 58:14 59:23
  60:14 67:7
**six** 19:19 24:20
  31:14 32:24 36:24
  42:19
**smllp.com** 2:13

**snowball** 38:10
**social** 26:7
**software** 59:16
**sold** 50:12 52:20
**solid** 10:1
**somebody** 30:13
  72:8
**soon** 18:16 73:18
**sorry** 5:22 12:14,16
  13:18 23:12 73:9
**sort** 14:18 29:18
  33:1 51:8 55:18
**source** 49:6
**speak** 7:12 17:12
  31:24
**speaking** 42:5,7
**speaks** 65:10
**speculation** 56:2
**spend** 4:8
**spent** 50:25
**spoken** 14:9 15:12
  15:13
**spoliation** 51:16,23
**spot** 52:9 56:19
**spring** 44:8
**square** 3:3
**standard** 27:1,11
**standpoint** 35:11
**stargatt** 3:2
**start** 7:16 35:24
**started** 6:13 54:25
  63:2
**starting** 25:14
**state** 58:5
**stated** 30:7
**statements** 41:1
  73:21
**status** 8:2 30:4
  42:24
**stay** 5:6 10:7 21:14
  25:4 29:22,24

  31:21 32:6 33:22
  34:1 37:2 41:25
  42:12,19,22 43:2
  43:11,13 45:13,17
  47:10,16,21 48:1
  49:13,15,25 50:3,8
  50:20 51:12,14
  56:17 57:23 58:17
  58:19,23 59:1,2,3
  62:11,12,16,17
  70:24 72:20
**stayed** 32:14,22
  73:7,8
**stenographically**
  76:4
**step** 47:2 59:21
**sterling** 43:1 57:13
**stole** 37:7
**stood** 64:22 66:1
**stop** 19:18 31:9
  47:4,24 54:15
  60:19
**street** 2:12 3:3
**strong** 69:9
**strub** 2:18 4:10
  42:6,6,11 48:23
  49:2 50:4 54:21
  57:11,21 62:24
  67:8,17 68:19
  70:10,20 74:9,15
  74:20
**strub's** 63:9 64:10
**subject** 8:14 14:25
  25:16
**submit** 7:15 66:14
  71:8
**submitted** 70:23
**subpoenas** 8:11
**substantially** 54:19
**substantive** 18:6
  31:3 41:16 48:12

**subterfuge** 14:19
**successful** 27:7
**successfully** 33:12
**sudden** 54:14
**suddenly** 45:7
  47:23
**sufficient** 18:11
  30:15 60:1
**suggest** 30:1
**suggestion** 41:6
**suite** 2:4,12,20
**sum** 54:3
**summary** 51:7
**supplemental**
  35:11
**supplemented**
  37:24
**supplied** 45:19
**support** 56:1 57:2
  59:2 62:3 69:10
**supported** 52:18
  62:4
**suppose** 33:25
**supposed** 37:13,15
**supreme** 56:21
  57:4,9
**sure** 24:23 33:21
  72:17 73:2,5
**surreptitiously**
  23:22 40:25
**suspect** 32:16 38:2
**swanson** 2:11,12
  40:18 63:22 69:14
  69:17
**swanson's** 40:4
**sweet** 26:12
**switch** 23:10 25:9
**sword** 65:16 66:3
**sworn** 46:2

| t | | | |
|---|---|---|---|
| **take** 1:3,11 2:2 4:2 5:14 11:1,10,12 13:13,18,19,21,25 14:11 15:7,18 16:2 16:7 24:16 30:25 36:10 38:11 40:10 40:13 41:7,8,11 46:2,14,21 49:8 50:5,12 51:19,19 52:1,19 53:3 54:9 54:25 55:6 56:4 57:25 59:15,21 64:11 67:6 69:15 71:11,13 74:4 | 46:25 49:5,5 56:20 58:2 60:22 69:18 69:24 70:15 71:13 | **thoughts** 19:23 25:19 | **transcripts** 4:13 |
| | **testifying** 10:11 37:20 57:2 | **thousands** 20:21 | **transparent** 62:15 |
| | **testimony** 25:25 26:11 41:16 46:2 49:10 67:5 | **threatened** 49:19 | **trap** 62:9 |
| | | **three** 12:6 19:19 21:23 36:23,25 37:12 | **traurig** 2:19 |
| | **thank** 4:3 62:18 72:3,12 74:17,19 75:1,3 | **throw** 72:9 | **tremendous** 71:24 |
| | | **throws** 37:20 | **tried** 5:8 |
| | **theories** 19:12 | **thunder** 37:7 | **true** 46:7 76:6 |
| | **theory** 36:15 | **thursday** 73:13 | **try** 26:14 27:2,14 30:25 31:12 35:2 41:14 47:4 |
| | **thing** 2:1 23:16 24:7,9,12,22 25:4 27:4 35:9 38:23 63:3 69:21 71:9 | **tie** 55:18 | |
| | | **tied** 35:4 40:13,14 | **trying** 5:3 35:8 |
| | | **time** 4:8 5:16,17 6:23 39:8 50:22 52:7 55:21 58:7 60:13 63:10,23 65:2 68:12 69:6 | **tuesday** 1:16 |
| | **things** 42:1 43:22 57:4 | | **turn** 33:18,25 36:21 38:20 43:25 |
| **taken** 54:1 | | | |
| **talk** 6:22 7:8 21:10 28:7 31:12 | **think** 4:16,22 5:15 7:6,6,7,13 10:1,15 10:15,16,17,18 13:12 14:14 16:7 16:15,18 18:7 19:14,24 20:17 22:17 24:14 26:20 26:23 27:10,10,12 30:14,15,19 31:11 34:10 35:10 36:8,8 36:11,23,24 38:25 39:2 41:6,18,24 45:12 57:9 58:3,21 61:4 62:22,23,24 64:9,23 68:18 70:2 71:24 72:7 74:25 | **times** 21:20 23:5 30:23 53:9 64:2 | **two** 6:4,7,7 7:9 14:1 14:7,11,14 15:22 21:21 22:5,13,24 23:2 27:18 28:12 35:21 37:12 40:9 40:12,22 42:14 43:3 44:2,3 51:13 55:22 57:3 |
| **talking** 17:4 19:19 28:22,23 32:17 49:12 58:16 69:24 69:25 70:1 71:2 | | **timing** 17:15 19:2 | |
| | | **tmercer** 3:4 | |
| | | **today** 20:13 22:14 23:8 36:10 65:4 | **type** 20:8 25:17 42:25 55:6 |
| **tammy** 3:1 | | | |
| **tanya** 14:2,22 | | **told** 14:11 15:15 16:13 48:6 | **types** 4:13 |
| **tape** 40:24 | | | u |
| **target** 17:1 | | **tomorrow** 40:21 41:10 50:2,5 69:20 72:25 73:7,12,20 74:4,8 | |
| **targets** 8:16 17:4,7 | | | **u.s.** 8:13,21 9:9,21 15:19 16:18 20:24 21:24 22:20 24:19 25:3,25 26:12 27:12 28:2,11,21 29:3 32:18 33:5,13 40:8 44:17,24 46:5 46:18,23 63:15 64:14 65:21 66:19 |
| **taylor** 3:2 | | | |
| **technology** 74:23 | | **top** 41:15 42:1 | |
| **tell** 7:22 8:19 13:13 14:12 16:11 22:1 27:25 28:14 48:15 53:7,9 65:17 | **thinking** 52:25 | **totally** 6:2 9:19 | |
| | **thinks** 18:9 | **tough** 4:4 27:3 | |
| | **third** 38:5,7 54:11 61:7 | **town** 2:19 | |
| **telling** 9:22 | | **tracked** 12:21 | |
| **tells** 9:9 | **thought** 4:15 25:24 73:15,17 | **tracking** 12:7,19 59:16 | **ultimate** 10:6,12,14 10:17,18 |
| **term** 38:12 | | | |
| **terminus** 51:2 | | **trademark** 27:5 | **unable** 24:2 |
| **testified** 68:11 69:4 | | **transcript** 26:1,11 76:6 | **unconstitutional** 56:25 |
| **testifies** 45:22 | | | |
| **testify** 13:10 35:23 36:1,11 38:14 | | | |

**uncovered** 70:11
**understand** 20:15
  22:12 29:16,17
  34:14 35:8 57:17
  65:7 67:14 68:3
**understanding**
  17:19 31:16
**undue** 48:2
**unfair** 49:3 50:9
  57:1,15,20,20
**unfairly** 48:25
**unfairness** 57:6
**unfortunate** 32:20
  41:19
**unfortunately** 33:7
  34:19 49:10
**uniformly** 49:14
**untrue** 70:22
**use** 49:19 66:2
**uses** 16:24 48:1
  65:15

**v**

**valid** 51:11
**vendors** 52:23,23
  53:5,12 59:13 70:3
**verbatim** 18:4
**versus** 22:14 29:12
  47:13
**view** 10:8 19:7,16
**virtually** 58:19
**voice** 19:22
**voluntarily** 46:8
  62:5,7 74:11
**vs** 1:10

**w**

**wait** 36:12 44:7
  54:14 62:9 72:2
**waited** 66:25 70:25
**waiting** 44:7

**waiver** 26:22
**want** 7:17 8:1 9:3,4
  21:10 25:8 27:2
  28:15 31:21 32:5
  42:19 43:25 45:13
  47:23 48:15 56:15
  60:22 62:25 65:7
  66:2 69:7 70:9
  72:15 73:24
**wanted** 35:5 37:4
  43:13 67:5 71:15
  71:16 72:6
**wants** 25:25 27:21
**ware** 18:1 44:17
  54:5,6
**ware's** 55:23
**warn** 47:2
**warrant** 18:12 25:4
  50:8
**way** 6:19 18:18
  20:3 31:3 34:16
  40:16 47:11 50:25
  52:8 65:4
**wayne** 2:18
**wayside** 21:6
**we've** 5:8 20:20
  25:5,24 58:22
**wear** 23:21,25 24:2
**website** 52:24
**week** 14:14 24:13
  24:17 31:1 33:2
  68:15
**weekly** 68:14 69:2
**weeks** 22:9 33:4,17
  34:5,12,13 37:12
  40:22 54:24
**wei** 24:13
**weighing** 57:6
**weighs** 61:22
**welch** 43:12

**weng** 76:17
**went** 6:1 39:18
  52:22,22 57:10
**william** 3:1
**willing** 74:6
**wilmington** 3:3
**wire** 23:22,25 24:2
**wishes** 18:16
**withdraw** 15:5
**withdrew** 15:6,7
**witness** 7:22 38:5,7
  46:17 47:18 51:9
  62:10
**witnesses** 43:21
  46:3,22 48:21
  54:10,11 61:8
  62:13 69:3 71:12
  71:16,17
**wjohnston** 3:4
**word** 14:19 16:24
  18:7 68:18
**words** 49:22 62:24
**work** 31:12 41:5
  72:15
**working** 41:14
  44:25
**world** 63:9 65:18
**wrap** 40:6 55:25
**wrgross** 2:21
**write** 39:19
**wrong** 34:9,10
**wrongdoing** 49:18

**y**

**ycst.com** 3:4,4,5
**yeah** 17:16 67:8
**year** 9:18 23:17
**years** 19:25 20:2
  22:5,13,25 23:3
  44:2,3 55:22
**yesterday** 20:14

**york** 2:9
**young** 3:2 70:6
**younger** 28:23

**z**

**zoom** 1:16 64:1