Case No. 1:22-cv-3278

# EXHIBIT F



Michael H. Strub Jr.
Direct Dial: (949) 383-2770
MStrub@GGTrialLaw.com

November 7, 2022

**VIA E-MAIL (lrichman@mwe.com; levans@mwe.com) AND OVERNIGHT DELIVERY**

Lisa M. Richman
Lauren H. Evans
McDermott Will & Emery LLP
The McDermott Building
500 North Capitol Street, NW,
Washington, DC 20001-1531

**Re: *Petruss Media Group, LLC, et al. v. Advantage Sales & Marketing LLC, et al.*, United States District Court for the District of Columbia Case No. 1:22-cv-3278**

Counsel:

I write pursuant to Rule 11 of the Federal Rules of Civil Procedure. The petition and motion of respondents Petruss Media Group LLC, f/k/a Take 5 Media Group, LLC, Alexander Radetich, Richard Gluck, and RJV Marketing Corp. ("RJV") (collectively, the "Take 5 Parties") (the "Motion to Vacate") in the above-captioned case is baseless and must be withdrawn immediately. The grounds for vacating an award under section 10 of the Federal Arbitration Act "address egregious departures from the parties' agreed-upon arbitration." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 586 (2008); *see also Century Indem. Co. v. Certain Underwriters at Lloyd's, London, subscribing to Retrocessional Agreement Nos. 950548, 950549, 950646*, 584 F.3d 513, 557 (3d Cir. 2009) ("The FAA allows district courts to vacate arbitration awards 'only under exceedingly narrow circumstances.'"); *Barbier v. Shearson Lehman Hutton Inc.*, 948 F.2d 117, 120 (2d Cir. 1991) ("It is well-settled that judicial review of an arbitration award is narrowly limited"). None of the arguments that the Take 5 Parties make in the Motion to Vacate approach the threshold of that standard.[1]

---

[1] Notably, most of the opinions cited in the Motion to Vacate reject petitions to vacate the awards at issue. *See, e.g.*, *Bellantuono v. ICAP Sec. USA, LLC*, 557 F. App'x 168, 174-176 (3d Cir. 2014) (rejecting argument that award was entered in manifest disregard of the law); *Regnery Pub., Inc. v. Miniter*, 368 F. App'x 148 (D.C. Cir. 2010) ("Appellant has not shown that the arbitrator's failure to rule on appellant's motion for recusal required vacatur of an arbitration award as set forth in the Federal Arbitration Act"); *Am. Life Ins. Co. v. Parra*, 269 F. Supp. 2d 519, 525–26 (D. Del. 2003), order clarified, No. CIV.A. 98-401 (KAJ), 2003 WL 22999543 (D.

This letter and the accompanying Notice of Motion meet the procedural requirements of the safe harbor provision of Rule 11(c)(2). *See Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 176 (2d Cir. 2012).

As you know, Rule 11 provides that:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

"If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm,

---

Del. Dec. 22, 2003) (party's "'manifest disregard of the law' argument is not persuasive"); *Lessin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 481 F.3d 813, 820 (D.C. Cir. 2007) (district court did not err in confirming award); *Century Indem.*, 584 F.3d at 557 (affirming decision to deny petition to vacate); *Alexander Julian, Inc. v. Mimco, Inc.*, 29 F. App'x 700, 703 (2d Cir. 2002) ("We cannot say it is fundamentally unfair for the arbitrators to have set the arbitration hearing dates for the exact dates Mimco's counsel was unavailable."); *Orner v. Country Grove Inv. Grp.*, LLC, No. CIV.A. 2245-VCS, 2007 WL 3051152, at *1 (Del. Ch. Oct. 12, 2007) ("The second argument that Orner makes is that the Award must be vacated because the Arbitrator abused his discretion by refusing to stay the Arbitration until this court ruled on Orner's request to enjoin the Arbitration. I also reject that argument.").





or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee." Fed. R. Civ. P. 11(c)(1); *Est. of Calloway v. Marvel Ent. Grp.*, 9 F.3d 237, 239 (2d Cir. 1993). Indeed, Rule 11 sanctions can be imposed on the client's attorneys alone. *See Harrison v. Dean Witter Reynolds, Inc.*, 132 F.R.D. 184, 193 (N.D. Ill. 1990) ("The court does not choose to sanction plaintiffs because there seems little value or deterrence in sanctioning a party for an attorney's failure to reasonably investigate the law.").

Numerous courts have imposed sanctions against parties for baselessly challenging an arbitration award. *See, e.g.*, *United States v. Travelers Cas. & Sur. Co. of. Am.*, No. 6:12–cv–1228–Orl–37DAB, 2014 WL 3594306, at *3 (M.D. Fla. July 18, 2014) (imposing sanctions on the plaintiff and its counsel for bringing a baseless motion to vacate an arbitration award), reconsideration denied, 2014 WL 5285964 (M.D. Fla. Oct.15, 2014); *Schaden v. Bank of Am.*, N.A., No. 08-MC-21534-CIV, 2008 WL 11469260, at *13 (S.D. Fla. Aug. 20, 2008) ("the imposition of sanctions reflecting the costs incurred by Petitioners as a result of having to defend against Bank of America's motion to vacate and protect the arbitration award is proper"); *Levy v. Citigroup Glob. Markets, Inc.*, No. 06-21802-CIV, 2006 WL 8432648, at *9 (S.D. Fla. Oct. 17, 2006) ("The Court finds that in the instant case, Petitioner's petition to vacate the arbitration award has no legal basis and the imposition of sanctions against Petitioner is appropriate"); *Corp. Printing Co. v. New York Typographical Union No. 6*, 886 F. Supp. 340, 345 (S.D.N.Y. 1995) ("Rule 11 sanctions are appropriate against Mr. Braid because it was not reasonable for him to believe that under existing law there was a chance of success for his arguments or that he had, on the facts of the dispute, a reasonable argument to extend, modify or reverse the Award under the law as it stood"); *C.T. Shipping, Ltd. v. DMI (U.S.A.), Ltd.*, 774 F. Supp. 146, 154-155 (S.D.N.Y. 1991) (sanctioning plaintiffs for seeking to set aside arbitrator's award); *Quick & Reilly, Inc. v. Jacobson*, 126 F.R.D. 24, 26-28 (S.D.N.Y. 1989) (sanctions against plaintiff who had sought to prevent enforcement of arbitration award); *Jardine Matheson & Co. v. Saita Shipping, Ltd.*, 712 F. Supp. 423, 428-29 (S.D.N.Y. 1989) (sanctions against defendant who had tried to prevent enforcement of arbitration award on frivolous ground of arbitrator bias); *Int'l Bhd. of Teamsters Local 330 v. Elgin Eby-Brown Co.*, 670 F. Supp. 1393, 1399-1400 (N.D. Ill. 1987) (granting plaintiff's motion for summary judgment and affirming arbitration award, as well as awarding sanctions to plaintiff).

Putting aside for the moment the gamesmanship in your delay in notifying us that your clients would not accept service of process, and then, after refusing to accept service of process, your clients' subsequent attempt to evade service of process in the Florida action so that you could initiate a petition to vacate in Washington, D.C. – that will be the subject of another motion – the Motion to Vacate is being brought solely to delay judgment in this case, and the arguments in it are frivolous.






**I. The stay motion**

**A. The stay motion is irrelevant because Mr. Radetich and Mr. Gluck would have had to take the Fifth even if the Arbitrator had granted the motion**

The Take 5 Parties' primary argument is that the Hon. James R. Eyler (the "Arbitrator") should have postponed the hearing because an ongoing criminal investigation of Mr. Radetich's and Mr. Gluck's conduct caused them to invoke the Fifth Amendment. Memorandum of Points and Authorities in Support of Motion to Vacate at 16–26. The Take 5 Parties sought "to stay the arbitration proceeding for ***six*** months or until the criminal investigation was concluded, whichever was ***earlier***." *Id.* at 16 (emphasis added). The Arbitrator denied the motion to stay on June 29, 2021, after a hearing. Motion to Vacate at 16. The first day of the arbitration was January 25, 2022, almost ***seven*** months after the Arbitrator denied the motion and did not conclude until July 2022, a year after the Arbitrator denied the motion. And, while the criminal investigation remains active, it has not concluded. Therefore, the Arbitrator's decision not to stay the proceedings is completely irrelevant. Mr. Radetich and Mr. Gluck still would have had to take the Fifth Amendment during the arbitration hearing. Putting aside the fact that the Arbitrator's decision was correct as a matter of law, *ipso facto*, the decision on the motion to stay did not prejudice your clients in any way.

**B. The evidence that Mr. Radetich and Mr. Gluck were aware of the fraud was overwhelming**

In conjunction with the argument that the Arbitrator should have granted the stay, the Take 5 Parties argue that there is no evidence that Mr. Radetich and Mr. Gluck knew that the company that they founded and owned was defrauding its clients. Eva Hodgens and Michael Boy, the Take 5 employees who fulfilled e-mail advertising campaigns, testified that Mr. Radetich and Mr. Gluck knew that Take 5 was fulfilling campaigns with PPC traffic and falsifying its reports. Testimony of Michael Boy, vol. 6, at 1617:3–1619:5 (explaining why Mr. Radetich and Mr. Gluck knew that e-mail campaigns were being fulfilled with PPC traffic), 1629:4–1630:15 (discussed poor quality of the data with Mr. Radetich), 1630:22–1633:4 (told Mr. Radetich and Mr. Gluck that Take 5 was making false representations about its data and needed to stop sending clients false tracking reports); Testimony of Eva Hodgens, vol. 8, at 2101:10–24 (Mr. Radetich and Mr. Gluck were aware of algorithmic reporting), 2103:18–2104:5 (Mr. Radetich and Mr. Gluck worked closely with Ms. Jenkins). Before Advantage acquired the assets of Take 5, Ms. Hodgens asked Mr. Radetich if Advantage "[was] aware of how we were fulfilling campaigns . . . just how things were run and operating in the back. He said they were fully aware." Testimony of Ms. Hodgens, vol. 8., at 2111:10–2112:5.

While you have challenged the weight that the Arbitrator gave to the testimony by Mr. Boy and Ms. Hodgens because the Advantage Parties paid Mr. Boy a salary and reimbursed





Ms. Hodgens for the fees charged by her criminal defense counsel, it is blackletter law that a court many not overturn an award based on witness credibility. *Garvey*, 532 U.S. at 510 (holding that a serious error in the arbitrator's factual findings concerning credibility is not enough to overturn an arbitrator's decision); *N. Am. Publ 'ns, Inc. Daily Racing Form Div. v. Newark Typographical Union, Local 103*, 918 F.2d 21, 24 (3d Cir.1990) ("[a]n arbitral award may not be overturned … because the court disagrees with the arbitrator's assessment of the credibility of witnesses, or the weight the arbitrator has given to testimony").

Moreover, even apart from the testimony of Mr. Boy and Ms. Hodgens, the evidence of scienter was overwhelming. An internal investigation of Take 5 by its own employees, called "Project Evolve," disclosed that the Take 5 Parties were committing fraud:

**Current Product State**

**Email Only**

- Email deployment that yields low engagement.
- Low cost 3rd party PPC traffic (pay per click) to provide email clicks.
- Vendor traffic is used to ensure clients desired CTR (click through rate).
- Algorithmic reporting which reflect email metrics.
- Clicks are the only empirical metric on reports.
- Take 5 Media has approx. 168MM email records of which approx. 25MM email records are actionable.

**Email Blend**

- Email deployment that yields low engagement.
- Low cost 3rd party PPC traffic (pay per click) to provide email clicks.
- Vendor traffic is used to ensure clients desired CTR (click through rate).
- Algorithmic reporting which reflect email metrics.
- Clicks are the only empirical metric on reports.
- Social & ad display used to ensure audience engagement.

- The current execution and reporting of our email product does not accurately reflect what is sold to our clients.
- The main driver of our email engagement comes from low cost 3rd party PPC traffic.
- The reporting of those campaigns reflect email metrics that are algorithmically generated, clicks reflecting the only accurate metric.
- Open rates are inferred.

3

[2]

Mr. Radetich attended the Project Evolve presentation that discussed the fraudulent nature of Take 5's activities and did not challenge any of the findings of the Take 5 team. Testimony of Mr. Boy, vol. 6, at 1646:8–13 (Mr. Radetich did not disagree or challenge any statement that was made about the state of the company or Take 5's products); Testimony of Ryan McGavran, vol. 7, at 1826:12–16 (same). Don Morris, a former Take 5 employee called by the Take 5 Parties, testified that he had many discussions with Mr. Radetich and Mr. Gluck "to make sure that what we were doing was legitimate," and Mr. Radetich and Mr. Gluck assured him that it was. Testimony of M. Morris, vol. 11, at 2874:4–2875:5; *see id*. at 2875:6–17 (Mr. Morris believed

---

[2] Trial Ex. A-340 [Project Evolve presentation].

that Mr. Radetich and Mr. Gluck "had done a sufficient investigation to make that conclusion," and they "gave [him] the ammunition" to combat those accusations).

Mr. Radetich and Mr. Gluck were involved in numerous communications both internally and externally with clients about suspicious traffic to clients' websites.[3] And, in June 2019, when Mr. Radetich and Mr. Gluck were confronted with the evidence that Take 5 was not sending e-mails, they did not deny it but instead lied and said that clients were aware of what they were doing.

In addition, the very "nature of the scheme provide[s] circumstantial evidence of fraudulent intent." *See United States v. Gravatt*, 280 F.3d 1189, 1192 (8th Cir. 2002). The sales department and the fulfillment department were kept separate so that the sales representatives would not know how campaigns were being fulfilled. The Take 5 Parties hired 12 Skies to develop business software to defraud clients.[4] It had anti-bot software to monitor the PPC traffic that its vendors were sending, which would have been completely unnecessary if it were sending e-mails. All this evidence is in the record.

---

[3] Trial Exs. A-191 [11/4/15 e-mail communication from A. Radetich to E. Cogen, D. Morris) (Dealers United complaints about automated/manufactured website traffic on e-mail campaign), A-192 [11/9/15 e-mail communication from A. Radetich to R. Gluck, D. Morris] (Mr. Radetich responds to client complaints about traffic spikes and no mobile device traffic internally by stating: "We have too much exposure, that is mounting now. We need to shore this up."), A-238 [4/18/12 e-mail communication from P. Carlson to R. Gluck, *et al.*] (PJ Next complaints about unrealistic opt out rates and non-e-mail traffic), A-242 [4/27/20 e-mail communication from P. Lee to R. Gluck, *et al.*] (PJ Next complaint about non-e-mail traffic), A-243 [5/4/12 e-mail communication from P. Carlson to R. Gluck, *et al.*] (PJ Next requesting a full refund of the contract for 8,300 e-mail clicks), A-246 [6/7/12 e-mail communication from P. Lee to R. Gluck, *et al.*] (PJ Next complaints about e-mail campaign being fulfilled with PPV traffic), A-269 [10/9/12 e-mail communication from A. Radetich to R. Gluck, B. Hannon, J. Silver] (LipiGesic complaints about e-mail campaign being fulfilled from "buy a visitor" websites), A-273 [3/19/15 e-mail communication from T. Finger to R. Gluck, A. Radetich] (Maserati complaints about e-mail campaign containing robot clicking mechanisms), A-274 [3/24/15 e-mail communication from R. Gluck to A. Radetich and B. Jenkins] (Crown College complaints about botnet, non-e-mail mail traffic), A-277 [5/28/15 e-mail communication from R. Gluck to M. Benjoseph, *et al.*] (Crown College and Saint Mary's University of Minnesota complaints about suspicious data and botnet activity), A-284 [5/24/16 e-mail communication from R. Gluck to E. Hodgens, *et al.*] (Central Garden & Pet complaints about disproportional amount of clicks on privacy policy link).

[4] *See* Testimony of Peter Ward, vol. 8, 2229:17–2230:11, 2252:11–2253:16 (explaining that Take 5 was paid develop these systems); *see also* Trial Ex. A-676 [12 Skies invoices].

The very fact that Mr. Radetich and Mr. Gluck founded and ran Take 5 renders their claims of ignorance "false, unreasonable or unbelievable." *See United States v. Donohue*, 726 F. App'x 333, 350 (6th Cir. 2018); *see also United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1121 (D.C. Cir. 2009) ("the district court [could] reasonably infer that the high level executives" knew about the practices of the company). Mr. Morris testified that he would expect that Mr. Radetich and Mr. Gluck were aware of Take 5's practices:

> Q. And if Take 5 were selling e-mail campaigns, and 90 percent of those e-mail campaigns were being fulfilled with pay-per-click traffic, you would expect Alex Radetich and Richard Gluck would know about that, right?
>
> A. If it was to that degree, I sure would, yeah.[5]

As the Arbitrator found:

> Messrs. Gluck and Radetich participated in the misrepresentations in part and had knowledge of other misrepresentations by representatives of Take 5 LLC. The knowledge is revealed in testimony and, *inter alia*, many email communications. The misrepresentations were substantial in number and were material to Advantage's reliance and decision to purchase.

IA at 36. The assertion that "no evidence was presented during the hearing concerning the knowledge, state of mind, or intentions of Gluck and Radetich" is a gross misrepresentation to the Court that cannot survive Rule 11.

## II. <u>Google Analytics</u>

The Take 5 Parties next argue that the Arbitrator is guilty of misconduct in refusing to sanction the Advantage Parties for "spoliating" Google Analytics data. Here, the Take 5 Parties are merely "attempt[ing] to relitigate their arbitration issues in this Court, [which] amount[s] to sanctionable bad faith." *Fowler v. Ritz-Carlton Hotel Co., LLC,* No. 3:10-CV-884-J-34JRK, 2015 WL 1001205, at *17 (M.D. Fla. Mar. 6, 2015). Of course, courts are not permitted to re-weigh the evidence to decide whether to vacate an award. *See Southco, Inc. v. Reell Precision Mfg. Corp.*, 556 F. Supp. 2d 505, 510 (E.D. Pa. 2008), *aff'd*, 331 F. App'x 925 (3d Cir. 2009). In this case, however, every witness testified that information from Take 5's Google Analytics account would be irrelevant to show whether Take 5 was sending emails. *See* Testimony of Mr. Boy, Trial Transcript, vol. 6, at 1606:14–1609:3 (explaining Google Analytics reporting

[5] Testimony of Mr. Morris, vol. 10, at 2803:20–2804:3.




differences between Take 5 and Take 5's clients); testimony of Ms. Hodgens, Trial Transcript, vol. 8, at 2182:17–2184:6 (Take 5's Google Analytics was different than the client's Google Analytics), 2213:12–23 (only the client's Google Analytics would show whether or not a click was from an e-mail or ad display and it would only show that if the client coded that in their URL links), 2214:4–18 (Take 5 could not see the urchin tracking module information in Google Analytics). Not a single witness testified to the contrary.

Moreover, Take 5's own expert witness, Jessie Stricchiola, admitted that even the ***client's*** Google Analytics information could be manipulated. She analogized the process that Google Analytics used to track campaigns to a license plate stating that if you are configuring a system to "count all the California vehicles, every vehicle you see that has a California license plate assume that's a vehicle from California, don't question it, right?" Testimony of Jessie Stricchiola, Trial Transcript, vol. 15, at 3890:7–3891:14. In response to the Arbitrator's question, Ms. Stricchiola confirmed that clients would not be able to detect whether the car actually was from California if the driver switched the plates, which, by analogy, is exactly what the Take 5 Parties did. *See id.* at 3941:13–19.

## III. <u>RJV has a contractual obligation to pay damages</u>

The Take 5 Parties next argue that the Arbitrator exceeded his powers in entering an award against RJV. Motion to Vacate at 29–30. However, the Take 5 Parties fail to inform the Court of the operative section of the Asset Purchase Agreement ("APA"). Section 8.2(a)(1) of the APA provides as follows:

> Subject to the limitations and exceptions provided in this Article VIII, from and after the Closing, ***the Company and the Beneficial Owners, shall indemnify, defend and hold harmless the Buyer and the other Buyer Indemnified Parties from and against all Damages incurred or suffered by any Buyer Indemnified Party*** as a result of, or arising out of any: (i) ***inaccuracy or breach of any representation and warranty made by the Company or the Beneficial Owners in Article II*** or Article III ***of this Agreement*** or in any certificate contemplated by this Agreement . . . .

(Emphasis added). RJV was a Beneficial Owner and had the obligation to indemnify the Advantage Parties for any damages awarded under the APA. *See* APA caption page (defining "Beneficial Owners"); *id.* at 1 ("Alexander Radetich ('Radetich'), Richard Gluck ('Gluck'), RJV Marketing Corp., a Florida corporation ('RJV', collectively with Radetich and Gluck the 'Beneficial Owners' and each a 'Beneficial Owner')"), A-2 (defining "Beneficial Owner"). Whether RJV participated directly in the fraud is irrelevant to its liability under the APA.

This omission is unlikely to be a mere oversight given the prominence of this section of the APA in the Advantage Parties' post-hearing brief and the Arbitrator's Award. *See Precision Specialty Metals, Inc. v. United States*, 315 F.3d 1346, 1355 (Fed. Cir. 2003) (affirming sanctions against Department of Justice attorney who "signed a brief before [the] court which omitted directly relevant language from what was represented as precedential authority, which effectively changed the meaning of at least one quotation, and which intentionally or negligently misled the court.").

In any event, Rule 11 "imposes on any party who signs a pleading, motion, or other paper—whether the party's signature is required by the Rule or is provided voluntarily—an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing, and that the applicable standard is one of reasonableness under the circumstances." *Bus. Guides, Inc. v. Chromatic Commc'ns Enterprises, Inc.*, 498 U.S. 533, 551(1991). RJV's liability under section 8.2(a)(1) of the APA is evident simply by reading the Interim Award or the first two pages of the Advantage Parties' post-hearing brief.

**IV. <u>Damages arguments</u>**

The Take 5 Parties further argue that the Arbitrator exceeded his powers in awarding certain damages because, in the view of the Take 5 Parties, the Advantage Parties did not submit sufficient evidence to support those damages. You cite no case that says a court can vacate an arbitration award on this basis – because a court cannot do so. *See Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) ("Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement"); *Silvers v. Verbata, Inc.*, No. 221CV05808VAPRAOX, 2021 WL 5911690, at *3 (C.D. Cal. Nov. 10, 2021) ("Although Respondents argue there was insufficient evidence to increase the damages, and they contend the Arbitrator's reasoning was contradictory, these are not grounds to vacate the Award."), *appeal dismissed*, No. 21-56341, 2022 WL 2073088 (9th Cir. Mar. 14, 2022); *Aspic Eng'g & Constr. Co. v. ECC Centcom Constructors LLC*, 913 F.3d 1162, 1166 (9th Cir. 2019) ("Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review' of an arbitral award under the FAA."). The Take 5 Parties rely solely on the Federal Rules of Evidence in making this argument, and the very authority on which they rely states that "it is clear that 'in making evidentiary determinations, an arbitrator need not follow all the niceties observed by the federal courts.'" *Century Indem.*, 584 F.3d at 557. The Take 5 Parties' argument therefore is not supported by the law. *See* Fed. R. Civ. Proc. 11(b)(2).

**V. <u>Reimbursement of attorney's fees</u>**

The Take 5 Parties boldly argue that the Advantage Parties procured the award by fraud by paying Mr. Boy's salary and by reimbursing certain witnesses for the attorney's fees charged

by their criminal lawyers. A party is fully entitled to pay the out-of-pocket expenses of witnesses. *See BAE Sys. Info. & Elec. Sys. Integration Inc. v. Lockheed Martin Corp.*, No. CIV.A. 3099-VCN, 2011 WL 3689007, at *3 n.17 (Del. Ch. Aug. 10, 2011) (a witness "may be reimbursed for his out of pocket expenses") (quoting Delaware State Bar Association's Committee on Professional Ethics (Del. Ethics Op. 2003–3)). You do not cite a single case in support of the proposition that the Advantage Parties were prohibited from reimbursing witnesses for the fees of their criminal defense attorneys, which were engendered by your clients' fraudulent activities. Nor do you cite a single case for the proposition that the Advantage Parties were prohibited from retaining Mr. Boy as an employee. The suggestion that reimbursing these fees constituted a bribe prohibited by 18 U.S.C. § 201(c)(2) is facially frivolous. The Take 5 Parties themselves also "offered to pay [Ms. Hodgens's] attorney fees as well, if [she] spoke to them," testimony of Ms. Hodgens, vol. 8, 2113:23–2114:11, and no doubt would have agreed to reimburse Peter Ward for his attorney's fees too.

## VI. Prejudgment interest

The Take 5 Parties argue that the Advantage Parties did not request prejudgment interest when you know, in fact, that they did. *See* Arbitration Answering Statement and Counterclaim or Joinder/Consolidation Request dated September 19, 2019, Strub Supp. Decl. Ex. C. Your failure to point this out in the Motion to Vacate is another gross misrepresentation of the facts to the Court.

## VII. Conclusion

Under the APA, the Advantage Parties are entitled to seek an award of attorney's fees from the Take 5 Parties in connection with the efforts of the Take 5 Parties in Washington, D.C., and in Florida to oppose confirmation of the award. If you do not withdraw the Motion to Vacate in Washington, D.C., we intend to seek sanctions from the Take 5 Parties' counsel as well. *See Consequences of Litigation Misconduct—Parties Sanctionable: Counsel; Law Firms; Clients; Unrepresented Parties*, 5A Fed. Prac. & Proc. Civ. (Wright & Miller) § 1336.2 (4th ed. 2022). Please let us know by no later than November 9, 2022 whether you intend to dismiss the above-captioned case in Washington, D.C. Otherwise, we will file a motion for sanctions on November 28, 2022. Be advised that we intend to seek similar relief in Florida under Fla. Stat. Ann. § 57.105.

The foregoing is not intended to be a complete statement of the Advantage Parties' rights, nor is it intended to be a complete summary of the facts or legal authority supporting their position. All such rights are expressly reserved.

Very truly yours,

Michael H. Strub Jr.

cc: Justin B. Elegant
Sarah Gragert



1 of 2

Service Impacted by Hurricane Ian ...More (/us/en/service-alerts.page?id=alert1)

# Proof of Delivery

Dear Customer,

This notice serves as proof of delivery for the shipment listed below.

**Tracking Number**

1Z06X2A80190596583

**Weight**

0.50 LBS

**Service**

UPS Next Day Air®

**Shipped / Billed On**

11/07/2022

**Delivered On**

11/08/2022 10:03 A.M.

**Delivered To**

WASHINGTON, DC, US

**Received By**

MCDERMOTT

**Left At**

Mail Room

Thank you for giving us this opportunity to serve you. Details are only available for shipments delivered within the last 120 days. Please print for your records if you require this information after 120 days.

Sincerely,

UPS

Tracking results provided by UPS: 11/08/2022 11:15 A.M. EST

Print this page

UPS Freight Less-than-Truckload ("LTL") transportation services are offered by TFI International Inc., its affiliates or divisions (including without limitation TForce Freight), which are not affiliated with United Parcel Service, Inc. or any of its affiliates, subsidiaries or related entities ("UPS"). UPS assumes no liability in connection with UPS Freight LTL transportation services or any other services offered or provided by TFI International Inc. or its affiliates, divisions, subsidiaries or related entities.

**This Site** +

**Other UPS Sites** +

**Connect With Us** +

**Legal** +

Feedback

Copyright ©1994- 2022 United Parcel Service of America, Inc. All rights reserved.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PETRUSS MEDIA GROUP, LLC, f/k/a TAKE 5 MEDIA GROUP, LLC,<br><br>Petitioners,<br><br>v.<br><br>ADVANTAGE SALES & MARKETING LLC,<br><br>Respondents. | Case No. 1:22-cv-3278 |

**NOTICE OF MOTION AND MOTION FOR SANCTIONS**
**UNDER RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD, PLEASE TAKE NOTICE THAT** Advantage Sales & Marketing LLC, Advantage Sales & Marketing Inc., Karman Intermediate Corp., Advantage Solutions Inc., and Karman Topco L.P. (the "Advantage Parties") will move and hereby move this Court for an order imposing sanctions jointly against Petitioners Petruss Media Group LLC, f/k/a Take 5 Media Group, LLC, Alexander Radetich, Richard Gluck, and RJV Marketing Corp. (the "Take 5 Parties") and their attorneys, Lisa Richman and Lauren H. Evans, and their law firm McDermott Will & Emery (the "Take 5 Parties' counsel"), pursuant to Rule 11 of the Federal Rules of Civil Procedure.

The motion is based on the Take 5 Parties' violation of Rule 11(b)(1), (b)(2), (b)(3), and (b)(4) of the Federal Rules of Civil Procedure, namely the presentation to the court of the petition, pursuant to the Federal Arbitration Act (9 U.S.C. §§ 6, 10, 12), for an Order vacating or setting aside the Interim Award entered against the Take 5 Parties on August 4, 2022, and the Final Award entered initially on October 4, 2022 and in a modified version on October 20, 2022, (collectively the "Awards") in the underlying arbitration between the Advantage Parties and the

Take 5 Parties (AAA No. 01-19-002-7532) (the "Petition to Vacate"). The Petition to Vacate violates the Take 5 Parties' Counsel's certification that, to the best of their knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

The basis for the foregoing violation is that, as detailed in the November 7, 2022 letter to the Take 5 Parties' counsel, the Petition to Vacate is entirely frivolous and completely without even arguable merit as against the Advantage Parties. Additionally, it is apparent that there is no legitimate purpose to pursuing this Petition to Vacate, the Petition to Vacate is not being pursued in a serious manner, and the only purpose in pursuing this frivolous action against the Advantage Parties is to harass them, cause unnecessary delay, and needlessly increase the cost to them of the litigation. In addition, the Take 5 Parties' Counsel refused to accept service of a petition by the Advantage Parties to confirm the Awards in Florida to buy time to file the Petition to Vacate, which they did six days later. The Take 5 Parties subsequently attempted, unsuccessfully, to evade service of the petition to confirm the award.

The sanctions requested by this motion include, as warranted for effective deterrence, an order directing payment to the Advantage Parties of all the reasonable attorneys' fees and other expenses directly resulting from the violation, as well as any other nonmonetary sanctions the Court deems appropriate. The Advantage Parties further request an award of their reasonable expenses, including attorney's fees, incurred for this motion.

Pursuant to Rule 11(c)(2) of the Federal Rules of Civil Procedure, this motion, together with a supporting memorandum and evidence, will be filed and presented to the Court if the Petition to Vacate is not withdrawn within 21 days after service of this notice of motion and motion. *See Urenia v. Pub. Storage*, No. CV 13-01934 DDP (AJWx), 2015 WL 3378247, at *2 (C.D. Cal. May 7, 2015); *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 176 (2d Cir. 2012) (motion "need not be accompanied by supporting papers such as a memorandum of law or affidavits"); *Ideal Instruments, Inc. v. Rivard Instruments, Inc.*, 243 F.R.D. 322, 339 (N.D. Iowa 2007).

| November 7, 2022 | Respectfully submitted,<br><br>________________________<br>Michael H. Strub, Jr. (CA Bar No. 153828)<br>(*PHV petition forthcoming*)<br>GREENBERG GROSS LLP<br>650 Town Center Drive, Suite 1700<br>Costa Mesa, CA 92626<br>Tel: 949-383-2800<br>mstrub@ggtriallaw.com<br><br>*Attorneys for Advantage Sales & Marketing Inc., Karman Intermediate Corp., Advantage Solutions Inc., and Karman Topco L.P.* |
|---|---|