Case No. 1:22-cv-3278

EXHIBIT G



**mwe.com**

Lisa M. Richman
Attorney at Law
lrichman@mwe.com
+1 202 756 8090

**November 28, 2022**

*By Email*

Michael H. Strub, Jr., Esq.
650 Town Center Drive,
Suite 1700
Costa Mesa, CA 92626
(949) 383-2770
mstrub@ggtriallaw.com

Re:   *Petruss Media Group, LLC, et al. v. Advantage Sales & Marketing LLC, et al.*,
      United States District Court for the District of Columbia Case No. 1:22-CV-3278

Dear Mr. Strub,

We write as promised in our November 9, 2022 preliminary, courtesy response to provide a more substantive response to your letter and notice dated November 7, 2022.[1]

Your letter raises four reasons why you contend that my clients' petition and Motion to Vacate the arbitral awards in the AAA arbitration between your clients, Advantage Sales & Marketing LLC, Advantage Sales & Marketing Inc., Karman Intermediate Corp., Advantage Solutions Inc., and Karman Topco L.P. (the "Advantage Parties") and my clients, Petruss Media Group LLC, f/k/a Take 5 Media Group, LLC, Alexander Radetich, Richard Gluck, and RJV Marketing Corp. (the "Take 5 Parties") "is baseless and must be withdrawn immediately".[2]

As explained in more detail below, your contentions are incorrect and, if anything, could and should have been filed as part of a motion to dismiss.[3] Instead of including these arguments in your motion to dismiss, you instead chose to seek dismissal based on the *Colorado River* factors. We trust that upon further reflection and after considering our responses to each of your points, your concerns will have been addressed such that a Rule 11 motion will not be necessary. Should you have further questions, we are prepared to

---

[1]   As mentioned, I was in a hearing for another arbitration until November 16, 2022 and given the various filings due in this case, deadlines in other cases, the fact that Ms. Evans unexpectedly had her baby early and is on parental leave (and was therefore unavailable to assist with the various filings and this letter), and the need to confer with our clients, I was unfortunately unable to complete this letter any sooner.

[2]   November 7, 2022 Letter from Advantage Parties, p. 1.

[3]   *See, e.g.*, *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 183 (S.D.N.Y. 2008).

   500 North Capitol Street, NW   Washington DC 20001-1531   Tel +1 202 756 8000   Fax +1 202 756 8087

*US practice conducted through McDermott Will & Emery LLP.*

Michael H. Strub, Jr., Esq.
November 28, 2022
Page 2

address them. Please be advised that if you file your misguided Rule 11 motion, we will seek all appropriate remedies from the Court against you and your clients, including an award of our attorney's fees and costs in responding to your motion and letter.

**I.     The Motion to Vacate Properly Challenges the Awards and Meets the Standard to Vacate**

You incorrectly contend that "the arguments that the Take 5 Parties make in the Motion to Vacate [do not] approach the threshold of [the] standard" to vacate arbitral awards and that the Motion to Vacate "baselessly" challenges the awards.[4] The mere fact that the threshold to vacate arbitral awards is a high one does not mean Your argument ignores the reality that this was a highly unusual arbitration with significant procedural irregularities.

As mentioned in our November 9, 2022 letter, many of the allegations set forth in your letter appear better suited for an opposition to the Motion to Vacate and represent disagreements on the meaning and weight of certain facts and application of law. But the Advantage Parties chose not to raise these arguments in their response to the Take 5 Parties' Motion to Vacate, instead submitting only superficial arguments, referring to the fact that the Advantage Parties intend to seek Rule 11 sanctions and asking the Court to permit the Advantage Parties to have another opportunity to oppose the Motion to Vacate at a later date.

The Advantage Parties' approach was procedurally improper. Importantly, the Advantage Parties' decision to raise the specter of Rule 11 in connection with their response to our Motion to Vacate, beyond being inappropriate, destroys the basis for the Advantage Parties' demand for Rule 11 sanctions in any event because the Advantage Parties violated the safe harbor provision in seeking to unfairly color the Judge's view of the case.

As explained in our November 21, 2022 Reply to the Advantage Parties' November 14, 2022 Response to our Motion to Vacate, Rule 11 motions "should not be employed … to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for these purposes. Nor should Rule 11 motions be prepared to emphasize the merits of a party's position, to exact an unjust settlement, to intimidate an adversary into withdrawing claims that are fairly debatable, [or] to increase the costs of litigation." Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment. The Advantage Parties' mention of the Rule 11 letter in their Response filing is a violation of the rule.

Rule 11(c) provides that a Rule 11 motion "must not be filed *or be presented to the court*" until at least "21 days after service." Fed. R. Civ. P. 11(c) (emphasis added); *see also Ahuruonye v. U.S. Dep't of the Interior*, 312 F. Supp. 3d 1, 26 (D.D.C. 2018). But the Advantage Parties waited only a week after sending their November 7, 2022 letter to Take

---

⁴       November 7, 2022 Letter from Advantage Parties, p. 1.



Michael H. Strub, Jr., Esq.
November 28, 2022
Page 3

5 before rushing to the Court to announce that they sent a Rule 11 letter, intend to pursue Rule 11 sanctions and to argue that, because they propose to do so, they do not have to respond to the Motion to Vacate on the merits.

The Advantage Parties violated Rule 11's safe-harbor provision and are therefore precluded from seeking Rule 11 sanctions because a safe-harbor violation is a defect "that cannot be corrected" when "that 'bell' has already been 'rung.'" *In re Jumper*, 909 A.2d 173, 175 (D.C. 2006).

The Advantage Parties' arguments in their November 7, 2022 letter are procedurally and substantively incorrect. The mere fact that generally it is difficult to vacate an arbitral award does not mean that every motion to vacate rises to the level of Rule 11 sanctions, as the Advantage Parties seem to suggest. Even if the Advantage Parties were correct that the Take 5 Parties' claims are baseless and fail to meet the threshold to vacate an arbitral award – which is in any event incorrect and disputed – this would not serve as sufficient grounds to seek Rule 11 sanctions against the Take 5 Parties or their counsel. *See, e.g., Charles v. United States*, No. CV 21-1983 (BAH), 2022 WL 951242, *5, 10 (D.D.C. Mar. 30, 2022) (even where a pleadings is "unpersuasive", "Rule 11 sanctions are an extreme punishment" and not appropriate); *Quick v. EduCap, Inc.*, No. 17-CV-01242 (APM), 2019 WL 95566, at *2 (D.D.C. Jan. 3, 2019) (refusing to impose sanctions under Rule 11 even where an action was dismissed and a plaintiff failed to meet the high threshold required to state a viable claim); *Perry v. Int'l Bhd. of Teamsters*, 247 F. Supp. 3d 1, 18 (D.D.C. 2017) (noting that even where a court dismisses "baseless" claims, this "does not alone make [those claims] sanctionable").[5]

Further, and as described in more detail in Section III below, if anything, the arguments contained in your letter demonstrate why the Take 5 Parties moved to vacate: because the parties fundamentally disagree concerning the facts of this case and the legal implications of the same. For avoidance of doubt, we filed the pleadings in the District of Columbia District Court in the utmost good faith.[6] In sum, Rule 11 sanctions are not warranted here.

## II. Service was Proper and there is no "Gamesmanship" at Play

Second, you falsely assert that the Take 5 Parties "attempt[ed] to evade service of process in the Florida action" and that the "Motion to Vacate is being brought solely to

---

[5] The cases to which the Advantage Parties cite at page 3 to support their contention that "[n]umerous courts have imposed sanctions against parties for baselessly challenging an arbitration award" all are distinguishable from the circumstances here quite apart from the fact that the Take 5 Parties' arguments are not "baseless" as explained herein and in our Motion to Vacate.

[6] The fact that we cited case law in which motions to vacate were not granted, which you seem to suggest proves your point that the motion was filed in bad faith, does the opposite. We acknowledged in our motion that there is case law going the other way. However, we believe that this case is distinguishable and unique for all of the reasons set forth in our motion.



Michael H. Strub, Jr., Esq.
November 28, 2022
Page 4

delay judgment in this case, and the arguments are frivolous".[7] Your contentions are without merit. Your letter appears to cast aspersions about alleged evasion of service of process by our clients, which you imply was at the direction of counsel. We caution you against making such serious and baseless allegations. The facts do not support your contentions. Neither we nor our clients acted improperly relating to service of process.

Notably, the AAA issued the Modified Final Award on the afternoon of Thursday, October 20, 2022. That same afternoon, within less than one hour after the Modified Final Award was circulated, you filed the Petition to Confirm in Florida courts and later that same afternoon inquired whether we were authorized to accept service. We immediately reached out to our clients and so advised you within an hour of your email communication. We further sent an update to you the next day (Friday, October 21) and also on Monday, October 24. We advised you of our clients' position (that we were not authorized to accept service) as soon as we received that guidance from our clients on Tuesday, October 25.

Further, as you know, Jack Gluck, an 79-year-old gentleman, is the registered agent for RJV Marketing Corp., the entity with respect to which we ultimately agreed to accept service on November 1, 2022. After Mr. Gluck learned about the lengths to which the Advantage Parties' process server went to serve the other individuals and entities involved, he changed his mind about counsel accepting service and asked us to accept service on his behalf. He did so to avoid having your process servers invade his home and embarrass him in front of his neighbors. Again, we immediately advised you of RJV's change of position saving you the time and expense of needing to serve him.

All of this of course was informed by the 90-day timeline to file and serve a motion to vacate under the FAA. Taking the most conservative approach, this meant filing any such action no later than November 2, 2022 (90 days after the Interim Award was issued).

The Advantage Parties did not seek to confirm the Interim Award in the Florida action (at least not until their Amended Petition to Confirm, which was filed only on November 21, 2022). Accordingly, under the FAA, the Take 5 Parties were obligated to file their Motion to Vacate at the seat of the arbitration, Washington, DC, in order to protect their rights. Indeed, D.DC, as the seat of the arbitration, was the only court where the Take 5 Parties could be assured that (1) the court had jurisdiction to hear the dispute and (2) they would not face a motion to dismiss on the basis of lacking or inconvenient jurisdiction.

However, in order to protect their rights, the Take 5 Parties also filed their Motion to Vacate in the Florida action as well. In order to comply with the 90-day deadline, it was necessary for RJV Marketing to have been served no later than November 2, 2022 so that we could appear on its behalf. Had you called us to discuss this matter, we could have explained all of this to you. Instead of trying to learn the facts, you sent your letter threatening Rule 11 sanctions.

---

[7] November 7, 2022 Letter from Advantage Parties, p. 3.



Michael H. Strub, Jr., Esq.
November 28, 2022
Page 5

In short, there is no gamesmanship at play. The Take 5 Parties took the actions they believed were necessary to protect their rights under the circumstances and in light of a very short statutory timeline to do so. Trying to marshal the facts and documents from an arbitral process of three years in length was a significant task, but it was something on which we had been working when we received the Modified Final Award. After receiving your petition to confirm and request to accept service, the Take 5 Parties considered your request. Ultimately, they made the determination that it was procedurally safer and more appropriate to file to vacate in D.DC (in accord with the FAA's own venue provision) by November 2, 2022.

**III. The Advantage Parties' Arguments Why the Motion to Vacate Should Fail in Substance Are Unavailing**

Third, you provide arguments concerning why the Advantage Parties believe the merits of the Take 5 Parties' arguments are incorrect on the six primary bases upon which the Take 5 Parties have sought to vacate the arbitral awards.[8] Although these arguments would have been more appropriate for your opposition to the Motion to Vacate (which you chose not to file with the Court by the requisite deadline), the Take 5 Parties explain below why your arguments are unavailing.

  1. *The Hearing Should Have Been Stayed*

Concerning your arguments why you believe it was correct for the Sole Arbitrator to refuse to postpone the hearing, the fact that the hearing occurred seven months after the motion to stay was filed is irrelevant.

First, you do not dispute that the depositions of Messrs. Radetich and Gluck occurred on July 1, 2022, and July 8, 2022, mere days after the Sole Arbitrator denied the stay on June 29, 2022. Further, you do not dispute that had a stay been granted, Messrs. Radetich and Gluck could have avoided invoking the Fifth Amendment at their depositions, that their depositions would have been deferred, and that the hearing likely would have been deferred altogether. A further stay (after the six months elapsed) could also have been granted. Nor do you dispute that because they failed to testify in substance at their depositions, Messrs. Radetich and Gluck were unable to testify in substance at the hearing. All of these remain facts that support the Take 5 Parties' argument that the Sole Arbitrator's failure and refusal to grant the stay prejudiced their rights and denied them their right to a fundamentally fair hearing.

With respect to your contention that "[t]he evidence that Mr. Radetich and Mr. Gluck were aware of the fraud was overwhelming",[9] this is again an argument that the Advantage Parties could and should have raised (if at all) in connection with their

---

[8] November 7, 2022 Letter from Advantage Parties, pp. 4-10.
[9] November 7, 2022 Letter from Advantage Parties, pp. 4-5.



Michael H. Strub, Jr., Esq.
November 28, 2022
Page 6

opposition to our Motion to Vacate and/or in connection with your Motion to Dismiss, neither of which you did.

Notwithstanding your election to avoid making these arguments to the Court, we disagree with them in substance. First, with respect to your arguments concerning Ms. Hodgens and Mr. Boy, we have already separately explained why their testimony is unreliable and why the Sole Arbitrator should not have relied on the testimony of witnesses whose testimony was induced by the payment of hundreds of thousands of dollars by your clients. This issue also is addressed briefly below, but we direct you to our arguments in that respect at pp. 34-39 of our Motion to Vacate. The Advantage Parties have themselves argued that Ms. Hodgens' and Mr. Boy's testimony was central to proving fraud. If their testimony falls away (because it was induced), there is no basis for a finding of fraud.

Further, the accuracy of the testimony to which you cite in your letter (all of which was on direct examination), was disputed during their cross-examinations. Among other things, during Mr. Boy's cross-examination, he was forced to admit that he contradicted at his deposition the testimony that you now claim demonstrates that Mr. Radetich and Gluck purportedly were "aware" of the fraud. *See, e.g.*, Testimony of Mr. Boy, vol. 6, 1669:1-1687:23 (confronting Mr. Boy with the fact that he testified at his deposition that he purportedly spoke about his concerns only with Mr. Hodgens and Ms. Jenkins and not Mr. Radetich or Mr. Gluck; Mr. Boy was forced to admit that he was unaware of what representations were made by Messrs' Radetich and Gluck as part of the acquisition and/or the quality and nature of the data at issue; and Mr. Boy also was confronted with the fact that he was unaware of what representations were made to clients); *see also* Exhibits B13, B15 and B17. As such, contrary to the contention in your letter, even within Mr. Boy's own testimony, he provided contradictory testimony concerning what Mr. Radetich and Mr. Gluck knew as well as whether there was in fact any "fraud" at all.

The same is true with respect to Ms. Hodgens' testimony. *See, e.g.*, Testimony of Ms. Hodgens, vol. 8, 2101:8 – 2104:5 (Ms. Hodgens admitting that all of her statements about what Mr. Radetich allegedly thought and said came from Beth Jenkins, who did not testify). Further, as you know, the Sole Arbitrator permitted some of Ms. Hodgens' testimony to which you refer in your letter but did not receive it "for the truth" because it was based on hearsay testimony of what a third party (Ms. Jenkins, who did not testify at the hearing) purportedly told Ms. Hodgens about what Mr. Radetich (but not Mr. Gluck) purportedly knew. *Id*. That is, in addition to multiple levels of hearsay testimony, the individual who purportedly spoke directly to Mr. Radetich did not corroborate Ms. Hodgens' induced testimony. In any event, none of the testimony to which you refer demonstrates what Messrs. Radetich and/or Gluck knew and/or that they committed fraud on the Advantage Parties.

The issue here is not limited to witness credibility. It concerns information that was withheld from the Sole Arbitrator regarding the nature and extent of the inducement offered to Ms. Hodgens and the fact that Ms. Hodgens', Mr. Ward's and Mr. Boy's testimony was



Michael H. Strub, Jr., Esq.
November 28, 2022
Page 7

procured through improper means. *See, e.g.*, Rule 3.4(b) of the Model Rules of Professional Conduct; DC Rules of Prof'l Conduct, Rule 3.4; Del. Rules of Prof'l Conduct Rule 3.4; Fla. Bar Reg. R. 4-3.4(b); *see also* Federal Antigratuity Statute, 18 U.S.C. § 201(c) (which prohibits giving or payment to a witness other than "payment or receipt of witness fees provided by law, or the payment, by the party upon whose behalf a witness is called and receipt by a witness, of the reasonable cost of travel and subsistence incurred and the reasonable value of time lost in attendance at any such trial, hearing, or proceeding, or in the case of expert witnesses, a reasonable fee for time spent in the preparation of such opinion, and in appearing and testifying", but does not include payment of legal fees); *see also* Del. State Bar Ass'n Comm. on Prof'l Ethics Op. 1994-1 (Feb. 14, 1994); Delaware Ethics Op. 2003-3 (2003) (finding acceptable reimbursement to the witness of out-of-pocket expenses and for lost income opportunities, but not a payment for time where the witness otherwise was retired); *Cent'l Mgmt. Servs., Inc. v. Axa Re Vie*, 193 F.R.D. 671, 679 (D. Kan. 2000) (where compensation for witness is unreasonably high or disproportionate, "an inference could be drawn that the payments, in reality were made for the substance or efficacy of…testimony."); *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n*, 865 F. Supp. 1516, 1526 (S.D. Fla. 1994), *aff'd in part*, 117 F.3d 1328 (11th Cir. 1997) ("Rule 4-3.4(b) of the Rules of Professional Conduct, *The Florida Bar v. Jackson, supra,* and the aforementioned cases clearly prohibit a lawyer from paying or offering to pay money or other rewards to witnesses in return for their testimony, **be it truthful or not**, because it violates the integrity of the justice system and undermines the proper administration of justice. Quite simply, a witness has the solemn and fundamental duty to tell the truth. He or she should not be paid a fee for doing so."); *The Florida Bar v. Jackson,* 490 So. 2d 935 (Fla. 1986) (improper for an attorney to request that his clients be paid $50,000 for their testimony in a pending insurance claim case in New York."); *In re Kien,* 372 N.E.2d 376, 379 (Ill. 1977) ("We will not tolerate payments of any sum of money by an attorney to witnesses for the opposition to secure or influence testimony, whether it be for the purpose of securing truthful testimony or otherwise."); *Wagner v. Lehman Bros. Kuhn Loeb Inc.,* 646 F. Supp. 643 (N.D. Ill.1986) (attorney disqualified for promising to remit a percentage of potential recovery in case to induce witness to tell the truth); *In re Robinson,* 136 N.Y.S. 548, 445 (1912), *affirmed,* 209 N.Y. 354 (1913) ("The payment of a sum of money to a witness to "tell the truth" is as clearly subversive of the proper administration of justice as to pay him to testify to what is not true.*"); Florida Bar v. Wohl*, 842 So. 2d 811 (Fla. 2003).

This case is extraordinary and differs from *Garvey* and *Newark Typographical* because this is not just an issue of credibility or the weight given to particular witnesses' testimony. The issue more fundamentally relates to the fact that the nature and extent of the payments the Advantage Parties made to Ms. Hodgens, Mr. Boy, and Mr. Ward were withheld from the Sole Arbitrator until after he reached his Interim Award and, in any event, because of the significant reliance the Sole Arbitrator placed on witnesses whose testimony was induced through the payment of hundreds of thousands of dollars, the Take 5 Parties were denied a fundamentally fair hearing and their rights were prejudiced.



Michael H. Strub, Jr., Esq.
November 28, 2022
Page 8

      Moreover, with respect to your citation to Trial Exhibit A-340 and to the testimony of Messrs. Boy, McGavran, and Morris,[10] none of these demonstrate that (1) the Take 5 Parties were committing fraud or (2) that Messrs. Radetich or Gluck knew about any allegedly fraudulent acts. None of these witnesses testified that Messrs. Radetich and Gluck stated that they were aware of any impropriety at any time prior to the April 2019 "Project Evolve" presentation nor does Mr. Radetich's silence at that presentation (even if true) prove that fraud occurred or that Mr. Radetich, let alone Mr. Gluck, was aware of the alleged fraud in advance of the presentation and/or agreed with the assertions.

      Further, with respect to the alleged "evidence" that Messrs. Radetich and Gluck participated in communications with clients about alleged "suspicious traffic to clients' websites",[11] your citation to a number of Exhibits is without moment. At best, what these documents demonstrate is that Mr. Gluck and/or Mr. Radetich and/or someone at Take 5 was aware of a handful of client concerns and sought to address them.[12] Further, because Messrs. Radetich and Gluck were denied the opportunity to testify, neither of them were able to address these documents and put them into context and/or explain their content. Notably, some of the other individuals who were copied on these email communications (and did testify at the hearing) were not asked about all of them.

      You do not cite to a single exhibit nor to any testimony on your contention that Messrs. Radetich and Gluck purportedly issued no denial to the false claims of your clients and that they purportedly "lied" in June 2019.[13] We understand that this issue was one that was particularly hotly contested in the arbitration and for which there is no credible evidence – indeed there is evidence to the contrary in the record.

---

[10]     November 7, 2022 Letter from Advantage Parties, pp. 5-6.
[11]     November 7, 2022 Letter from Advantage Parties, p. 6.
[12]     For example, Ex. A-191 demonstrates that in 2015 Messrs. Radetich and Gluck were trying to find out the source of the client's concern and were working with an outside vendor to address them – not that they committed fraud. *See also* Morris Testimony, vol. 11, pp. 2875-2883. Exhibit A-192 is no different. In it, Mr. Morris responds to a client concern (again in 2015) stating that "there is no basis or truth" to the client's concerns. As explained in the further internal emails, against advice of counsel, it was decided to reach a settlement with this client in order to resolve the issue. Mr. Morris, who did testify at the hearing, does not appear to have been asked about this email communication. Exhibit A-238 is from April 2012 and while it reflects a client concern, there is nothing that indicates that Mr. Gluck was made aware of "fraud". Exhibits A-242, 243 and 246 are follow-on emails to Ex. A-238 and reflect Take 5 employees interacting with employees from PJ Next to try to resolve their concerns. Exhibit A-269 is another concern from 2012 in which Mr. Radetich is asking the Take 5 team to address a client's concern. Exhibit A-273 (from March 2015) reflects a client encountering an issue with a campaign, the Take 5 team (including Mr. Gluck) trying to find the source of the issue and then re-running the campaign in order to address the client's concerns. Exhibit A-277 explains that with respect to Exhibit A-273, Take 5 remedied the issues to the client's satisfaction. As reflected in Exhibit A-277 there was a difference in opinion between Take 5 and the ultimate client concerning whether a job was performed to their specifications. Exhibit A-274 reflects that there were issues with some campaigns and that Take 5 was looking into how to remedy those issues. Exhibit A-284 reflects Mr. Gluck saying that Take 5 needed to find out what happened with respect to a campaign in May 2016 and whether it was related to something Take 5 did or to some other source.
[13]     November 7, 2022 Letter from Advantage Parties, p. 6.



Michael H. Strub, Jr., Esq.
November 28, 2022
Page 9

      With respect to your contention regarding fraudulent intent and the ways in which the business purportedly was operated, none of these prove fraud or knowledge of fraud as it relates to the Advantage Parties. Nor is your self-serving contention about how the business purportedly should have been run and/or what was "necessary". In short, none of this proves fraud by the Take 5 Parties on the Advantage Parties. As you well know, the Sole Arbitrator declined to make a finding concerning fraud as it related to Take 5's clients. *See, e.g.*, Interim Award, p. 37.

      Our contention concerning the personal knowledge, state of mind, and intentions of Messrs. Gluck and Radetich is based upon the indisputable fact that they were prevented from testifying. Hearsay testimony cannot demonstrate their knowledge, state of mind or intentions. Nor can email communications taken out of context and/or testimony about what they might have known. Perhaps more importantly, the support for this contention comes from the motion for a directed verdict that arbitration counsel for the Take 5 Parties requested at the end of the Advantage Parties' evidence at the hearing. *See* Hearing Testimony, vol. 10, at 2709 – 2711.

      In short, what is at issue is fraud as it relates to the Advantage Parties. The instances of alleged fraud to which you point in your letter pertain to alleged fraud on clients not on the Advantage Parties. Accordingly, even if your factual and evidentiary contentions are correct – which we dispute – this still serves as an insufficient basis to prove fraud as it pertains to the Advantage Parties and further is an insufficient basis to permit the Take 5 Parties' fair hearing rights to be trampled on.

      2.    *The Spoliated Google Analytics Data was Critical*

      It is beyond dispute that the Take 5 Parties were denied their right to a fair hearing and were prejudiced by virtue of the Advantage Parties' spoliation of key evidence and the Sole Arbitrator's decision in his Interim Award to ignore this fact. Accordingly, your complaints are ill-founded because we are not attempting to "re-litigate" the arbitration issues in Court, contrary to your suggestion.[14]

We disagree with your contention that "every witness testified that information from Take 5's Google Analytics account would be irrelevant to show whether Take 5 was sending emails".[15] Among others, the testimony of Ms. Stricchiola and even Ms. Hodgens support the Take 5 Parties' contentions that the Google Analytics data was critical to the central issues in dispute, including how the clicks were generated. *See, e.g.*, Stricchiola Testimony, vol. 15, pp. 3891 – 3898; Hodgens Testimony, vol. 8, pp. 2162 – 2170; *see also* Exhibit T-126, Stricchiola Expert Report, p. 20; Exhibit T-127, Stricchiola Declaration dated December 15, 2021. Even Mr. McGavran and Mr. Colen agreed that the Google Analytics data would reveal how the clicks were generated. *See, e.g.*, McGavran Testimony, vol. 7, pp. 1918 – 1919; Colen Testimony, vol. 3, p. 674. In this respect, we direct you to the

---

[14]    November 7, 2022 Letter from Advantage Parties, p. 7.
[15]    November 7, 2022 Letter from Advantage Parties, p. 7.



Michael H. Strub, Jr., Esq.
November 28, 2022
Page 10

lengthy recitation of the many reasons for this contained in the Take 5 Parties' post-hearing brief.

The Advantage Parties do not credibly dispute that they had access to the Google Analytics data and that they provided it to their expert, FTI, during the course of the arbitration. But the Advantage Parties withheld that same critical data from the Take 5 Parties. The Sole Arbitrator made his (incorrect) determination to ignore all of these facts in his Interim Award. His refusal to appropriately consider that this central data had been destroyed and/or withheld by the Advantage Parties prejudiced the Take 5 Parties and caused the hearing to be fundamentally unfair because they were denied access to documents to which the Advantage Parties had access and that would have disputed the Advantage Parties' contentions.

    3.    *The Advantage Parties Do Not Dispute That RJV Was Ignored Throughout the Arbitration*

Your contention that "the Take 5 Parties fail to inform the Court of the operative section of the Asset Purchase Agreement ('APA')" is incorrect. The Advantage Parties seem to have overlooked that the Take 5 Parties mention Section 8.2 at page 12 of their Motion to Vacate.

The fact remains that, like references to RJV, references to Section 8.2 of the APA are sparse in the Interim Award. Further, the Interim Award includes no explanation of how or why the Sole Arbitrator reached the conclusion with respect to RJV (alone) that it "breached Article II, §§ 2.5(a) and (b), §2.10(a), and 2.11(b) and Article VIII, §8.2". Interim Award, p. 37.

The Advantage Parties' post-hearing brief is not the operative document to consider; it is the awards that are at issue. However, even if the Advantage Parties' post-hearing brief were the seminal document, there are seven total references to RJV in the Advantage Parties' Post-Hearing Brief, including in the caption. The only document to which the Advantage Parties point in discussing RJV and its obligations are the APA (Ex. A-230) and the Closing Certificate (Ex. A-545). You do not and cannot dispute that there was no discussion of RJV at the hearing or throughout the arbitration, nor is a post-hearing brief "evidence". All of this is insufficient to hold RJV jointly and severally liable for damages of over $60 million, particularly given the many other deficiencies of the Awards.

    4.    *The Advantage Parties Failed to Prove Their Entitlement To Damages*

Our Motion to Vacate explains the ways in which the Take 5 Parties were prejudiced by the Advantage Parties' failure to properly provide a computation of each category of damages claimed. *See, e.g.*, Memorandum of Law in Support of Motion to Vacate, pp. 31-33. As explained in detail therein, this is not a simple "factual error" or "unsubstantiated factual finding" nor a failure to follow the "niceties" of the Federal Rules of Evidence. The Sole Arbitrator had absolutely no basis or foundation for awarding the



Michael H. Strub, Jr., Esq.
November 28, 2022
Page 11

damages to which the Motion to Vacate refers. And under the applicable rules, a computation was required. This operates as a failure to provide for a fundamentally fair hearing and/or prejudice to the Take 5 Parties. *See, e.g.*, *Lindsey v. Travelers Com. Ins. Co.*, 2022 WL 12071302, *1, 3-4 (E.D. Cal. Oct. 20, 2022) (holding that the arbitrator committed misconduct by refusing to compel documents that would prove or disprove the claims, rendering the proceedings "fundamentally unfair"); *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 17-20 (2d Cir. 1997) (holding that failure to consider crucial testimony constitutes "misconduct"); *Hoteles Condado Beach, La Concha & Convention Center v. Union de Tronquistas Local 901*, 763 F.2d 34, 36-37, 40 (1st Cir. 1985) (finding misconduct where arbitrator refused to afford weight to relevant testimony because "no other evidence was available to substantiate or refute" the claims); *see also Barbier v. Shearson Lehman Hutton Inc.*, 948 F.2d 117, 122 (2d Cir. 1991) (vacating award because arbitrator acted contrary to the parties' express arbitration agreement in awarding damages not permitted by applicable law).

      5.      *The Advantage Parties Improperly Induced Testimony*

The Advantage Parties are unable to point to a single case – because no case exists – that permits a party to pay a witness a yearly "salary" solely for the purposes of providing testimony. Nor is there a case that supports the Advantage Parties' contention that a party may pay the criminal defense attorney fees of a witness to convince them to testify. Neither of these are "out-of-pocket expenses".

Moreover, the Advantage Parties' self-serving contention that Ms. Hodgens requires criminal defense counsel because the Advantage Parties sought to incite a criminal investigation and are using her to feed information to the government and then blame those expenses on the Take 5 Parties is specious at best.

First and foremost, these are not "out-of-pocket expenses" relating to the arbitration. *See* Exhibit 14 to Advantage Parties' August 19, 2022 Costs Submission (invoices of Ms. Hodgens' criminal defense attorneys from October 2019 – February 2022).

As set forth in the case law and other authorities already summarized in Section III.1 above, what is prohibited is actually making payments to a witness to induce their testimony, not offering an inducement (assuming what you say is true regarding the Take 5 Parties having offered to pay Ms. Hodgens' and Mr. Ward's attorney's fees).[16] Further, given Mr. Boy's testimony that the only purpose of his employment (after the shutdown of the company, for which he was also paid $160,000 per year), the fact that he was paid as $40,000 per year as an "employee" for over two years for nothing more than occasional assistance with the arbitration "maybe a couple of times over the prior year" (Boy Testimony, vol. 6, pp. 1650-1653, 1752) is exactly the sort of inducement prohibited by,

---

[16] Please note that we are advised that your contentions are in any event inaccurate and that no such offer was made to Mr. Ward by the Take 5 Parties.



Michael H. Strub, Jr., Esq.
November 28, 2022
Page 12

among other things, 18 U.S.C. §201(c)(2). *See, e.g.*, *Cent'l Mgmt. Servs., Inc. v. Axa Re Vie*, 193 F.R.D. 671, 679 (D. Kan. 2000) (where compensation for witness is unreasonably high or disproportionate, "an inference could be drawn that the payments, in reality were made for the substance or efficacy of…testimony."); *see also Weirton Med. Ctr., Inc. v. QHR Intensive Res., LLC*, 2016 WL 2766650, at *8 (N.D.W. Va. May 12, 2016), *aff'd*, 682 F. App'x 227 (4th Cir. 2017) (while "exceeding the statutory witness fees does not provide clear and convincing evidence of witness tampering", this was insufficient to vacate the award because the arbitrator did not primarily rely on the testimony of the witnesses who were paid for their testimony to decide the case, unlike here); *Rocheux Int'l of New Jersey v. U.S. Merchants Fin. Grp., Inc.*, 2009 WL 3246837, *4 (D.N.J. Oct. 5, 2009) (excluding testimony of a witness who was paid $4,000 for "consulting services" because "the fee paid to Mr. Gutierrez most certainly did not compensate for his costs of attending trial or time lost during trial" because payment of witnesses for their testimony, "leans toward the procurement of perjury; toward the raising up of a class of witnesses who, for a sufficient consideration, will give testimony that shall win or lose the lawsuit, toward the perversion of justice; and toward corruption in our courts."); *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n*, 865 F. Supp. 1516, 1525 (S.D. Fla. 1994), *aff'd in part*, 117 F.3d 1328 (11th Cir. 1997) ("The very heart of the judicial system lies in the integrity of the participants . . . Justice must not be bought or sold. Attorneys have a solemn responsibility to assure that not even the taint of impropriety exists as to the procurement of testimony before courts of justice.").

It is beyond dispute that the Advantage Parties improperly induced the testimony of the two witnesses upon whom the Sole Arbitrator relied heavily in reaching his Interim Award as well as the testimony of Mr. Ward. Moreover, it also is beyond dispute that the extent of the payments to Ms. Hodgens' criminal defense counsel – of over $150,000 – was not and could not have been known by the Take 5 Parties prior to the costs submissions in the arbitration, which occurred after the Interim Award was issued. In sum, the awards must be vacated because they are founded on witness testimony that was induced, the extent of which was not disclosed to the Sole Arbitrator (or revealed to the Take 5 Parties) until after the Interim Award was issued.

    6.  *The Advantage Parties Failed to Properly Request Prejudgment Interest*

It remains a fact that the Advantage Parties failed properly to request prejudgment interest at any time in the arbitration and did not mention it in substance until far too late in the proceedings. It is incorrect that the Take 5 Parties failed to point this out. Importantly, the operative document concerning the relief the Advantage Parties requested is the November 16, 2019 Second Amended Counter-Demand – not the September 19, 2019 Answering Statement which was superseded by the same. The fact that the Advantage Parties may have ticked a box on a cover form that accompanied the superseded Answering Statement (filed two months earlier) remains insufficient to properly request this relief. *See generally* Memorandum of Law, pp. 43-45 and cases cited therein. The Advantage Parties' complain about a "gross misrepresentation" where none exists.



Michael H. Strub, Jr., Esq.
November 28, 2022
Page 13

### IV.     The Advantage Parties Are Not Entitled to Attorney's Fees

Finally, you explain why the Advantage Parties purportedly are entitled to attorney's fees in connection with the D.DC and Florida actions, threaten to seek sanctions from the Take 5 Parties' counsel, and indicate your intention to seek similar relief in Florida.[17]

We do not appreciate the Advantage Parties' threats. As you well know, McDermott Will & Emery was rehired during the costs submission phase of the arbitration and had not participated in the arbitration for three years at that point. Moreover, as you also know, the lawyers that currently are working with the Take 5 Parties are not the same McDermott lawyers who worked on this case at an early stage and thereafter have not been involved in it. At every turn, the Advantage Parties have sought to make it more difficult for the McDermott team to get up to speed and to resolve this matter amicably. We have repeatedly reached out to you to try to work collaboratively with you to resolve this matter without the need for further litigation. Unfortunately, the enmity among you, your client, and our clients appears to have infected your approach to this matter.

Contrary to your contention, the APA does not contain an "entitle[ment] to seek an award of attorney's fees from the Take 5 Parties" in connection with the confirmation and/or vacatur proceedings. Instead, the ability to seek attorney's fees is limited to a ***determination by the Arbitrator***. *See* APA, §10(b). The Arbitrator is now *functus officio* and, as he already told the Advantage Parties when they sought to have him award attorney's fees prospectively, he had no jurisdiction to do so with respect to any actions to confirm or vacate. Accordingly, the successful party in the actions to confirm or vacate will be constrained to the discretion of the relevant court (or courts).

### V.      Conclusion

It is unfortunate that instead of working collaboratively with us to try to resolve this matter, the Advantage Parties have sought to strongarm the Take 5 Parties into waiving rights to which they are entitled. In my over twenty years as counsel in arbitration matters, I have participated in well over 100 arbitrations. This particular case is unusual in many different ways – not least of which because there were certain issues that came to light only after the Interim Award was issued. While your clients may have believed that the process to confirm the Awards and to seek to convert them to a money judgment would be a simple matter, given the various serious deficiencies and irregularities, there is a proper legal

---

[17]     Please note that as the Advantage Parties have not provided formal notice of your intention to seek sanctions in Florida under Rule 11 and/or Florida Stat. Ann. § 57.105, and we will not address any such arguments as they pertain to the Florida action at this time. We expressly reserve our rights to do so and to object to the filing of any similar request for sanctions in Florida on the basis that the Advantage Parties have failed to follow the proper procedure.



Michael H. Strub, Jr., Esq.
November 28, 2022
Page 14

process that must be followed. The fact that the Advantage Parties are frustrated by that process does not make anything the Take 5 Parties have filed sanctionable under Rule 11.

By failing to follow the proper safe harbor process, the Advantage Parties have destroyed the basis for any Rule 11 motion, even if such basis existed (which it does not).

Both Ms. Evans and I personally reviewed the extensive record here as thoroughly as we could in the available time. We each reviewed the thousands of pages of hearing transcripts, exhibits, deposition transcripts, submissions, etc. There were any number of other arguments that we considered making in our Motion to Vacate but that we ultimately excluded because we did not think they were sufficiently strong or supportable. The Motion to Vacate that resulted from the significant time and effort we invested was based on our good faith understanding and belief of what appears to have transpired in the arbitration. Given the arbitration lasted for three years, there are no doubt aspects that are more difficult for us to appreciate because we did not live through them in real time.  And we cannot exclude that there are certain good faith errors that may be contained in our papers that result from the fact that we were not the Take 5 Parties' counsel in the arbitration. However, I can assure you that we sought to educate ourselves as best as possible and to have our clients and also the counsel that acted in the arbitration review all of the papers before they were filed to minimize such potential errors. It was and remains true that every argument contained in our Motion to Vacate was made in the utmost good faith belief that it was true and accurate to the best of our knowledge at the time it was filed.

If you or your clients have additional concerns about alleged inaccuracies in our papers, we would invite you to raise them with us – not as a threat to file a motion for sanctions, but as colleagues and officers of the court can and should.  To the extent you do have such concerns, we will address them with the seriousness and thoughtfulness we have given all of your inquiries and requests over the past months, including the number of past requests you have made in which you have sought to impose unfair and unrealistic deadlines. However, we will not countenance bullying or attempts at intimidation and should you choose to file your misguided Rule 11 motion, please submit this and our November 9, 2022 response letters with it and be advised that we will seek any and all appropriate remedies from the Court.

Sincerely,

Lisa M. Richman

cc: Lauren H. Evans
Justin B. Elegant
Sarah Gragert

