Case No. 1:22-cv-3278

EXHIBIT H



Michael H. Strub Jr.
Direct Dial: (949) 383-2770
MStrub@GGTrialLaw.com

January 10, 2022

**VIA E-MAIL: eyler21@gmail.com**

Hon. James Eyler (Ret.)
2339 Boston Street, Unit 4
Baltimore, Maryland 21224

    Re:    **AAA Case No. 01-19-0002 7532**

Dear Judge Eyler:

    We write to respond briefly to the three evidentiary motions that the Take 5 Parties filed in connection with the recent summary judgment motions: (1) their "Motion for an Adverse Inference and Sanctions for Spoliation of Evidence Against the Advantage Parties" (the "Spoliation Motion"); (2) their "Motion to Remedy Advantage's Obstreperous Refusal to Comply with Orders" (the "Motion to Compel Work-Product"); and (3) their "Daubert Motion to Preclude Expert Testimony of Advantage's FTI Consulting, Inc. Expert Witnesses Michael Wei and David Lasater" (the "*Daubert* Motion"). The Advantage Parties addressed the arguments that the Take 5 Parties raise in these motions in the opposition and reply briefs that they filed in connection with summary judgment. None warrant serious consideration.

    **Spoliation Motion**

    The Take 5 Parties' Spoliation Motion is based on the proposition that the Advantage Parties failed "to preserve access" to Google Analytics data beyond July 2019. Spoliation Motion at 3. The Advantage Parties fully rebutted this argument at pages 28 through 32, including footnote 12, of their Opposition to the Take 5 Parties' motion for summary judgment and at page 19 of their reply in support of their own motion for summary judgment. As the Advantage Parties demonstrated, the Google Analytics clicks are not in dispute, because they were the basis for the fraudulent tracking reports. There is no evidence at all that Google Analytics would prove that Take 5 was sending emails or that its customers expected Take 5 to send something other than emails. *See* Exhibit 4 to 12/17/2021 Motion to Strike declarations of Erik Findeisen, Jessie Stricchiola, and Jonathan Hochman, Deposition of Jessie Stricchiola ("Stricchiola Dep.") at 53:18–54:12 ("there's nothing in the interface that's going to necessarily say this was a fraudulent click to your e-mail" and someone can "fake a click to that e-mail that wasn't initiated by the person who owns that e-mail account").

    The Take 5 Parties have been aware from the outset of this litigation that Take 5 accessed Google Analytics using login credentials, as that is how they accessed it when they ran the

GREENBERG GROSS LLP

Hon. James Eyler (Ret.)
January 10, 2022
Page 2


company, but in over two years, they never tried to log into that account. They never asked for access to that account during discovery. They never subpoenaed Google Analytics for that information. They apparently never asked Take 5's former CFO, Beth Jenkins, who previously was represented by their counsel, to assist in obtaining credentials. They never tried to renew access to the account after the Advantage Parties informed them that the login credentials no longer work. They do not suggest that the information no longer exists; they just never tried to access it beyond one request three months ago for credentials, which no longer grant access. If Google Analytics data were relevant, their delay in attempting to obtain this information until the eve of trial constitutes a sufficient basis to deny relief. *See Valdez v. Motyka*, No. 15-CV-0109-WJM-STV, 2021 WL 3931227, at *2 n.3 (D. Colo. Sept. 2, 2021) (denying motion for evidentiary sanctions based on allegation that 30(b)(6) witness was not prepared, where party waited until the eve of trial to bring the motion) (citing *Health Grades, Inc. v. MDx Med., Inc.*, 2013 WL 1777575, at *5 (D. Colo. Apr. 25, 2013) (recognizing that party's "delay in seeking relief, combined with its decision to seek evidentiary sanctions at trial rather than an order compelling discovery" evidences an "overreaching by the party seeking discovery") and *Buttler v. Benson*, 193 F.R.D. 664, 666 (D. Colo. 2000) (denying motion to compel and request for sanctions where plaintiff ignored discovery remedies for months and only sought relief on the eve of trial)); *Dixon v. Greyhound Lines, Inc.*, No. CIV.A. 13-179-JWD, 2014 WL 6474355, at *4 (M.D. La. Nov. 19, 2014) (motion to compel documents from designated expert denied where party waited four months after the designation to serve a subpoena) (citing additional authority). But "the alleged importance of the documents [is] inconsistent with the delay in seeking the documents." *See Days Inn Worldwide, Inc. v. Sonia Invs.*, 237 F.R.D. 395, 399 (N.D. Tex. 2006).

### **Motion to Compel Work-Product**

On October 1, 2021, Take 5 filed a motion for an order requiring the production of notes of witness interviews, which were conducted by FTI and Latham & Watkins. As the Advantage Parties informed Your Honor in opposing the motion, the Advantage Parties were not concerned about the contents of the interview notes themselves. Their exclusive concern was that, if they produced the notes, the Take 5 Parties would use the notes to seek further confidential work-product of Latham & Watkins. That is precisely what has now happened.

We believe that Your Honor recognized the Advantage Parties' concern. Your October 8, 2021 Order required the Advantage Parties to produce the "factual content of notes of interviews conducted by … Latham & Watkins." The Advantage Parties did this. As an example, the notes memorializing Latham & Watkins' interview of Alexander Radetich are attached at Volume 6, Exhibit 154 of the Appendix that the Advantage Parties filed in connection with their motion for summary judgment ("App."), and the notes memorializing Latham & Watkins' interview of Don Morris are attached at Volume 6, Exhibit 188 of that Appendix. The Advantage Parties redacted virtually none of the contents of these notes, and the Take 5 Parties do not complain about the redactions. Instead, they seek the underlying work-product of Latham



Hon. James Eyler (Ret.)
January 10, 2022
Page 3

& Watkins' attorneys that were memorialized in the final notes, claim that Your Honor already ordered that they produce this work-product, and accuse the Advantage Parties of failing to obey Your Honor's Orders.

"Notes and memoranda of an attorney, or an attorney's agent, from a witness interview are opinion work product entitled to almost absolute immunity." *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000); *see also O'Connor v. Boeing N. Am., Inc.*, 216 F.R.D. 640, 643 (C.D. Cal. 2003) ("Notes and memoranda of an attorney, or an attorney's agent, from a witness interview are opinion work product entitled to almost absolute immunity"). The United States Supreme Court in *Upjohn Co. v. United States*, 449 U.S. 383, 399-400 (1981), held that "[f]orcing an attorney to disclose notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorney's mental processes." The Advantage Parties interpreted Your Honor's Order as requiring the Advantage Parties to produce the memoranda reflecting the witness interviews, which they did. We do not believe that Your Honor intended to invade the work-product protection more intrusively.

Moreover, the Supreme Court held in *Upjohn* that, at a minimum, a party seeking an attorney's notes must make a very "strong[] showing of necessity and unavailability by other means." *Id.* at 402. The Take 5 Parties make no showing at all that they need any additional information. There is no exculpatory information in any of the interview memoranda that the Advantage Parties produced, and there is no evidence that the final interview memoranda do not reflect an accurate translation of whatever information was conveyed by the witnesses during the interviews.

**<u>Daubert Motion</u>**

The opinions of Mike Wei and David Lasater in this case are straightforward. Take 5 had four internal systems that it could use to send emails: Volo, SendGrid, MailWizz, and Digital Media Solutions or DMS. *See* App. Vol. 6, Ex. 153 (Wei Rep.) at ¶¶ 32–40; App. Vol. 5, Ex. 146 (Jenkins email). These "server application[s] will … track what emails were sent, what e-mails bounced – things like that." Stricchiola Dep. at 145:6–:18; *see also* App. Vol. 6, Ex. 153 (Wei Rep.) at ¶ 52 (report from Mr. Wei that systems would keep track of emails deployed). Mr. Wei performed a forensic analysis of Take 5's internal systems for the period from October 1, 2017, through June 30, 2019, and concluded that Take 5 sent very few of the emails that its customers paid it to send. *See* App. Vol. 6, Ex. 153 (Wei Rep.) at ¶ 3. Dr. Lasater then performed a statistical analysis based on Mr. Wei's forensic analysis and concluded that Take 5 deployed about two percent of the emails that customers paid it to send. *See* App. Vol. 3, Ex. 110 (A-312) at ¶ 31. Neither Mr. Wei's analysis nor Dr. Lasater's conclusions are in dispute: Take 5 sent approximately two percent of the invoiced emails through its Volo, SendGrid, MailWizz, and DMS systems.



Hon. James Eyler (Ret.)
January 10, 2022
Page 4

The Take 5 Parties make four attacks on Mr. Wei's and Dr. Lasater's opinions. First, they say that the experts assumed that Take 5's services were "limited to email marketing." *Daubert* Motion at 2. They did not, but the scope of their expert engagement was limited to determining how many emails Take 5 deployed through its internal systems.

Second, the Take 5 Parties argue that Mr. Wei ignored the fact that "Take 5 utilized third-party vendors or subcontractors," *Daubert* Motion at 3, and that he should have contacted those third-parties to determine whether they were sending emails, *see id*. at 4, 18. This was not part of FTI's mandate. FTI's only mandate was to determine whether Take 5 sent emails using its internal systems. The evidence presented at summary judgment and that will be presented at the evidentiary hearing demonstrates conclusively that Take 5 was not using PPC vendors to send email, but that evidence comes from sources other than the testimony of Mr. Wei and Dr. Lasater—primarily the two individuals responsible for deploying email campaigns, Eva Hodgens and Michael Boy.

Third, the Take 5 Parties argue that Mr. Wei and Dr. Lasater "have no digital media or digital marketing expertise, education, or experience." *Daubert* Motion at 4. This is irrelevant. Mr. Wei's analysis was based on a forensic investigation of Take 5's email servicers. He clearly has the experience and training to do this. Among other things, he "worked for over 27 years in the areas of technology management and data analytics." App. Vol. 6, Ex. 153 (Wei Rep.) at ¶ 4. He "specialize[s] in the identification, collection, management, and analysis of electronically stored information from financial, operational, and transactional systems." *Id*. at ¶ 5. He has "extensive experience in product management, software engineering, network operations, and technology implementation and integration projects." *Id.* Mr. Wei based his knowledge of the use of the term "Digital Media" at Take 5 on conversations with its former CFO, Beth Jenkins, and with Paul Brewer, who worked in the accounting department. *Id*. at ¶ 21 & n.11. He based his conclusions about other terminology in the invoices on conversations with the Advantage Parties' expert, Peter Kent, who is a "digital media" expert. *Id.* at ¶ 21 & n.12.

Dr. Lasater has "a Ph.D. in 'Accounting Research Methodologies, Capital Markets, and Quantitative Methods,'" (Lasater Rep.) at ¶ 11, and has "been qualified as an expert in financial economics and statistics in state, federal, and administrative proceedings in the United States, and in international arbitrations," *id*. at ¶ 9. Knowledge of "digital media" terminology was irrelevant to his opinion, which was based simply on a statistical analysis of Mr. Wei's forensic investigation.

In any event, the "main purpose of Daubert exclusion is to protect *juries* from being swayed by dubious scientific testimony." *In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011) (emphasis in original). "*Daubert* standards are relaxed in bench trials, where there is no jury and the trial court is the fact finder." *Orden v. Schafer*, No. 4:09CV00971 AGF, 2015 WL 1286369, at *3 (E.D. Mo. Mar. 20, 2015). "And courts have taken this point into consideration when denying Daubert motions filed before bench trials." *Gusman v. Archer*

GREENBERG GROSS LLP

Hon. James Eyler (Ret.)
January 10, 2022
Page 5

*Shipping, Ltd.*, No. CV 20-984, 2021 WL 3486750, at *1 (E.D. La. Aug. 9, 2021) (citing authority).  As Your Honor noted in your December 29, 2021 Order Ruling on Summary Judgment Motions, this is not a jury trial, and you can make your own determination after hearing the evidence about whether Mr. Wei's and Dr. Lasater's opinions are reasonable and reliable.  We are confident that you will conclude they are.

For the foregoing reasons, the Advantage Parties respectfully request that Your Honor deny the Spoliation Motion, the Motion to Compel Work-Product, and the Daubert Motion.

Respectfully,

Michael H. Strub Jr.

cc:    All counsel of record