Case No. 1:22-cv-3278

EXHIBIT I

# The Roth Law Firm, PLLC

295 Madison Avenue, 22nd Floor
New York, NY 10017
Tel.: (212) 542 8882    Fax: (212) 542 8883
www.rrothlaw.com

January 14, 2022

**By Email (eyler21@gmail.com; congerm@adr.org)**
The Honorable James R. Eyler
c/o Mr. Matthew Conger
Director of ADR Services
American Arbitration Association
1120 Connecticut Ave NW, Suite 490
Washington, D.C.  20036

> Re: *Petruss Media Group, LLC v. Advantage Sales & Marketing, LLC, et al.*
> <u>AAA Case No.: 01-19-0002-7532</u>

Dear Judge Eyler:

We write on behalf of the Take 5 Parties in further support of Take 5's: (1) Motion to Exclude the two FTI expert witnesses; and (2) Motion to Draw Adverse Inferences based on Advantage's utter failure to preserve the most vital information in this matter.

Before delving into the substantive reply, it is important for Your Honor to fully understand that gravity of these issues.  For its fraud allegation, Advantage is relying ***exclusively*** on the testimony and opinions of Wei and Lasater.  As we discussed at oral argument, Advantage has no evidence from a vendor as to what any individual vendors did to fulfill a campaign.  Advantage, similarly, has no evidence from a customer as to what it ordered for the campaigns.[1]  Nor can Advantage substantiate, in the form of one witness or one document, the argument that Advantage was an email marketing agency.  What FTI did in June 2019 – looking at invoices and the internal dashboard to try to match them – is simply insufficient evidence to draw the conclusions it draws because FTI excluded from its consideration 90% of the campaigns.  That is, it is logically incorrect to conclude that the customers wanted email campaigns by looking at the invoices from the accounting departments.  Indeed, of the 105 sample campaigns that Advantage looked at to conclude that they were email campaigns, only 15 (or 14%) even stated on their face that the campaigns included emails.

Instead of reviewing the single most important source of information that would help a trier of fact determine what actually was sent, Google Analytics, Advantage doubled down on their woefully deficient theory in 2021, when Wei and Lasater did the same thing in their expert reports.  That is, neither Wei nor Lasater (both of whom have zero experience in analyzing digital media campaigns), looked to the information that would confirm the source of the campaign.  Instead,

---

[1] Of the three customers who have submitted evidence, two (Ava Berry and Michael Weintraub) stated under oath that they desired omni-channel campaigns.  Only one customer, who has yet to be cross-examined, believed his company, AdTaxi, ordered email-only campaigns.

Hon. James R. Eyler
January 14, 2022
Page 2 of 5

they engaged in the identical analysis that FTI did in 2019; randomly selecting 105 invoices[2] and concluding, from those invoices that the customers wanted email only campaigns (again, only 14% of those invoices even mention emails).

Thus, with the factual testimony of Eva Hodgens – that 90% of the campaigns were fulfilled by vendors, all campaigns were fulfilled, and 50% of the campaigns were "over-delivered" – Wei and Lasater analysis could only apply to the 10% of the campaigns that were not fulfilled by vendors. To make matters worse, each individual testified that Take 5 was an omni-channel marketing agency yet Wei and Lasater admittedly ignored all of those channels. And what is more astonishing is that, in so doing, they failed to not only analyze but even preserve the information that would have allowed each side to answer the most important question – how the clicks appeared.

### **Adverse Inference – Spoliation**

By Advantage's opposition, it relies on the testimony of Stricchiola and concludes that the information is not obtainable. But that conclusion is simply erroneous. Even Kent – Advantage's own expert – stated that he was unable to discern how clicks were generated with the information he was provided by Advantage counsel. In his report, Kent speculated by stating that there are many possibilities. Kent Report, ¶43. Stricchiola answered the question posed to her about click fraud *coming from e-mails.* That is, she was asked about fraudulent clicks to emails. She responded that web analytics cannot determine whether there is fraud *coming from an e-mail.* Thus, Advantage is simply wrong in its conclusions.

Next, Advantage attempts to set the blame on Take 5 for its failure to preserve pivotal information. Advantage argues that Take 5 had access and waited "until the eve of trial" is equally erroneous. First, by its opposition, Advantage states that Take 5 "never tried to log into that account … never asked for access during discovery … or subpoenaed Google Analytics." Take 5 did not have access to that information. Take 5 could not renew that account. As is true with each of the accounts, aps, software and other information, not only was it all turned over to Advantage on April 1, 2018, but Take 5 never had access to it thereafter. Advantage acknowledges

---

[2] The "randomness" of the invoices is also in question. The purpose of Wei and Lasater's analysis was first to conclude that emails did not go out and next to conclude that the tracking was wrong. However, not only are they unable to draw those conclusions without looking at what actually happened, but – remarkably – in selecting 105 "sample campaigns," Lasater threw out 191 campaigns because they did not meet the criteria Wei required. Wei explained in his report that to be included in the "sample," each invoice must be for a related job and have a tracking report. Wei Report, ¶45-46. And, reviewing Wei Report Exhibit 5, leads to the conclusion that of the 191 "sample" campaigns, Wei threw out 124 because there was no accompanying Tracking Report. Thus, while Wei concludes from his analysis that customers were getting false Tracking Reports in the 105 campaigns, what is clear is that customers did not even receive Tracking Reports for 124 of the "sample" campaign that he rejected, which calls into question the *bona fides* of his other conclusion, that **all** Take 5 customers relied on those tracking reports to their detriment.

Hon. James R. Eyler
January 14, 2022
Page 3 of 5

that it had to – and did – deliver to Take 5 access to Asana, Hygenics, Campaign Manager and Netsuites. Yet, somehow it concludes that Take 5 at all times had access to Google Analytics, another proprietary software?

Second, Take 5 never waited until trial to obtain that information. Take 5 had logically assumed that Advantage would never destroy material information thus it awaited until the expert reports to dive into the analytics to learn how the clicks were generated. Take 5 had no basis to seek the data until after it learned which particular campaigns were in issue. And Take 5 knew that, as late as September 2019, Advantage had that information as Exhibit 1 to the Claim Letter, which was created by FTI, expressly relies on that Google Analytics information. Finally – and perhaps most importantly – Advantage is a 40 billion multi-media marketing company. Advantage knows the importance of preserving information. The fact that Advantage allowed it all to disappear – when it is *the* most important information in this case –must lead Your Honor to draw adverse inferences. Indeed, even Exhibit 1, which is annexed hereto, makes clear that the customer obtained the clicks reported by Take 5. Since it is also undisputed that Take 5 had anti-bot software, if "nothing went out," which is what Advantage has been stating since the inception of this case, then how could there be clicks at all?

Most importantly, by its opposition, Advantage wholly ignores the well-established standards set forth in Delaware for failure to preserve essential information. It does not dispute the fact that a party may be sanctioned for spoliation where it knew litigation was pending and it failed to preserve documents that cannot be replaced. *Magnetar Technologies Corp. v. Six Flags Theme Park Inc*., 866 F. Supp. 2d 466, 480 (D. Del. 2012). It is equally clear, under Delaware law, that Advantage is at fault and that its conduct has severely prejudiced Take 5.

The bottom line is that without this pivotal information, Advantage will never be able to prove precisely "how the clicks were generated." To make matters worse, even though it is not Take 5's burden to do so, Take 5 is now unable to refute any conclusions that Advantage draws because this Google Analytics information – that *was* in Advantage's possession, *was* destroyed and *is* pivotal to the hearing – is now gone. The prejudice to Take 5 is clear and strong.

**<u>Wei and Lasater Should Be Excluded</u>**

While Advantage claims that the testimony of Wei and Lasater is very straight forward, what Advantage fails to acknowledge – and literally omits from its opposition papers – is that they were analyzing 10% of the campaigns, at best. That is, if the undisputed testimony is that 90% of the campaigns were fulfilled by vendors, then, at the final evidentiary hearing, there is literally no probative value to an expert who ignores all the evidence. That rudimentary lapse in logic is ignored by Advantage.

What Advantage does address are the four arguments Take 5 made in its motion. But in addressing those issues, it concedes that Wei and Lasater's analysis is flawed. For the first argument, Advantage states that "the scope of their expert engagement was limited to determining how many emails Take 5 deployed through its internal systems." That is the point! That "limited"

Hon. James R. Eyler
January 14, 2022
Page 4 of 5

information is meaningless. It is equivalent to having an expert testify at the scene of a car accident that he simply looked at one patch of pavement – and ignored everything else.

With regard to the second response, Advantage similarly concedes that "FTI's only mandate was to determine whether Take 5 sent emails using its internal systems." But it is undisputed that Take 5 used far greater than its internal systems to fulfill campaigns. Further, each and every witness – including the customers – testified that Take 5 sold omni-channel campaigns. All of the documents explain that the campaigns are omni-channel. Thus, without testimony that Take 5 was solely an email marketing company, that testimony is not only prejudicial, but meaningless.

Similarly, the fact that Wei has no digital media experience is vitally relevant. It is unlikely that an expert with digital media experience, who knows how the advertising business works, would have accepted an assignment which expressly directed that he or she not review the evidence to determine what was done to fulfill the campaigns if emails were not deployed from internal systems. Wei's "limited" analysis of the internal systems, again, provides the finder of fact no insight, particularly when the undisputed evidence is that every campaign was fulfilled, predominantly by outside vendors.

While Your Honor can certainly make its own determination should it decide to hear that evidence, Advantage also ignores the laws of Delaware which the parties expressly agreed in the APA would govern. Specifically, Advantage does not – because it cannot – refute Delaware Rule of Evidence (D.R.E.) 702 that addresses the admissibility of expert testimony. As the statute provides, an expert witness's opinion ***must***: (i) include the expert's scientific, technical, or other specialized knowledge; (ii) provide testimony based on sufficient facts or data that are in the record; (iii) provide testimony based on reliable principles and methods; and (iv) reliably apply the principles and methods to the facts of the case. And the court's "gatekeeping" responsibility under *Daubert* is serious. *See Kumho Tire* (526 U.S. at 152). Here, Wei has no experience in analyzing digital media and, more importantly, intends to provide testimony that ***ignores*** the evidence in the record. Wei ignores the testimony. Wei ignores the training manuals. Wei ignores the sales literature. Wei never looked at ASANA and doesn't know how the business utilized this platform. Wei never obtained evidence from any vendor. Wei never obtained any evidence from any customer. Wei ignored the testimony of Advantage individuals. *See* Motion, pgs. 15 – 18. Wei even ignores the definition of "digital media," agreed to by all experts with digital media experience.

Hon. James R. Eyler
January 14, 2022
Page 5 of 5

  In short, Wei's testimony, which admittedly was limited to the internal email dashboard, ignores the business of Take 5. As a result, he should be precluded from testifying at the final evidentiary hearing of this matter.

              Respectfully submitted,

THE ROTH LAW FIRM, PLLC    RICHARD AND RICHARD, P.A.

Richard A. Roth          Dennis Richard
                  Melissa L. Mackiewicz

295 Madison Avenue       825 Brickell Bay Drive
22nd Floor            Tower III, Suite 1748
New York, NY 10017       Miami, FL 33131
(212) 542-8882          (305) 374-6688
rich@rothlaw.com         dennis@richardandrichard.com
                  melissa@richardandrichard.com

*Counsel for Claimant / Counter-*   *Counsel for Claimants/Counter-Respondents*
 *Respondent Alex Radetich*     *Petruss Media Group LLC f/k/a Take 5*
                  *Media Group LLC and Richard Gluck*
                  *and Cross-Respondent RJV Marketing Corp.*

cc: Michael H. Strub, Jr., Esq. (mstrub@ggtriallaw.com)
   Wayne R. Gross, Esq. (wgross@ggtriallaw.com)
   William Johnston, Esq. (wjohnston@ycst.com)
   Tammy Mercer, Esq. (tmercer@ycst.com)