IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PETRUSS MEDIA GROUP, LLC f/k/a TAKE 5 MEDIA GROUP, LLC, *et al.* | ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) ) | Case No. 1:22-cv-03278-RC (ZF) |
| ADVANTAGE SALES & MARKETING, LLC, *et al.* | ) ) ) | |
| Respondents. | ) ) | |

**OPPOSITION TO JUDGMENT CREDITORS' MOTION TO COMPEL COMPLIANCE
WITH SUBPOENA DIRECTED TO NONPARTY JOJO LIMITED PARTNERSHIP**

Maurice B. VerStandig, Esq.
D.C. Bar No. 1034066
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Telephone/Facsimile: (301) 444-4600
Electronic Mail: mac@mbvesq.com
*Counsel for JoJo Limited Partnership*

## TABLE OF CONTENTS

I.      Introduction ................................................................................................................. 1

II.     Standard ...................................................................................................................... 2

III.    Factual Allegations .................................................................................................... 3

IV.     Procedural Posture ..................................................................................................... 4

V.      Argument .................................................................................................................... 6

        a.    A Revocable Trust's Limited Partner Status Does Not Render the Assets of
            JoJo LP Available to the Petitioners  ................................................................. 6

        b.    This is an Inappropriate Forum in Which to Litigate Alter Ego Liability ............. 8

        c.    The Petitioners Do Not Show a 'Close Relationship' and Reasonable
            Doubts as to the Good Faith Nature of Transfers ................................................ 10

        d.    Request #1 Seeks Information in the Possession, Custody or Control of
            Parties ................................................................................................................. 13

VI.     Conclusion ................................................................................................................. 15

TABLE OF AUTHORITIES

**Cases**

*Abhe & Svoboda, Inc. v. Hedley*,
2016 WL 11509914 (D. Minn. Mar. 15, 2016) ........................................................................... 14

*Alkanani v. Aegis Def. Services, LLC*,
976 F. Supp. 2d 1 (D.D.C. 2013) ................................................................................................. 9

*Alpern v. Frishman*,
465 A.2d 828 (D.C. 1983) ...................................................................................................... 3, 11

*Ameritox, Ltd. v. Millennium Labs, Inc.*,
2012 WL 6568226 (N.D. Ill. 2012) ........................................................................................... 14

*Asal v. Mina*,
247 A.3d 260 (D.C. 2021) ........................................................................................................... 7

*AVT-New York, L.P. v. Olivet Univ.*,
2022 WL 17082178 (D. Utah Nov. 18, 2022) ............................................................................ 12

*Becklund v. Fleming*,
869 So. 2d 1 (Fla. 2d DCA 2003) ................................................................................................ 6

*Burak v. Scott*,
29 F.Supp. 775 (D.D.C. 1939) ................................................................................................... 11

*Consumers United Ins. Co. v. Smith*,
644 A.2d 1328 (D.C. 1994) .......................................................................................................... 7

*Demoratic Republic of Congo v. Air Capital Group, LLC*,
2018 WL 324976 (S.D. Fla. Jan. 8, 2018) ............................................................................. 2, 10

*\*Falicia v. Advanced Tenant Services, Inc.*,
235 F.R.D. 5 (D.D.C. 2006)............................................................................................. 3, 11, 12

*Flocco v. State Farm Mut. Auto. Ins. Co.*,
752 A.2d 147 (D.C. 2000) ........................................................................................................... 9

*In re Blue Cross Blue Shield Antitrust Litig.*,
2016 WL 11689073 (N.D. Ala. June 20, 2016)........................................................................... 14

*In re Heartland Inst.*,
2011 WL 1839482 (N.D. Ill. 2011) ........................................................................................... 14

*Jackson v. Loews Wash. Cinemas, Inc.*,
944 A.2d 1088 (D.C. 2008) .......................................................................................................... 9

*Mazza v. Verizon Wash. DC, Inc.*,
852 F.Supp.2d 28 (D.D.C. 2012) ........................................................................................... 9

*Med. Mut. Liab. Ins. Soc. of Md. v. Davis*,
883 A.2d 158 (Md. 2005) ....................................................................................................... 7

*Motores de Mexicali, S.A. v. Superior Court in and for the County of Los Angeles*,
331 P.2d 1 (Cal.2d 1958) ........................................................................................................ 8

*Mountain Dudes, LLC v. Split Rock, Inc.*,
2013 WL 5435707 (D. Utah Sept. 29, 2013) ....................................................................... 12

*National Union Fire Ins. Co. of Pittsburgh, Pa. v. Van Waeyenberghe*,
148 F.R.D. 256 (N.D. Ind. 1993) ........................................................................................... 2

*Parker v. Four Seasons Hotels, Ltd.*,
291 F.R.D. 181 (N.D. Ill. 2013) ........................................................................................... 14

*Robertson v. Cartinhour*,
2011 WL 13273219 (D.D.C. Sept. 16, 2011) ........................................................................ 3

*Rossman v. EN Eng'g, LLC*,
467 F. Supp. 3d 586 (N.D. Ill. 2020) ................................................................................... 14

*Simon v. Circle Associates, Inc.*,
753 A.2d 1006 (D.C. 2000) .................................................................................................... 8

*Tresona Multimedia, LLC v. Legg*,
2015 WL 4911093 (N.D. Ill. 2015) ...................................................................................... 14

*Vuitch v. Furr*,
482 A.2d 811 (D.C. 1984) ...................................................................................................... 9

*ZooBuh, Inc. v. Better Broad., LLC*,
2017 WL 1476135 (D. Utah Apr. 24, 2017) ......................................................................... 12

**Statutes**
District of Columbia Code § 19-1305.05 ................................................................................ 6

Delaware Code tit. 6, § 17-101 ............................................................................................... 7

Florida Statutes § 736.0505 .................................................................................................... 6

iv

**Rules**

Federal Rule of Civil Procedure 11 ............................................................................................. 10

Federal Rule of Civil Procedure 26 ........................................................................................ 14, 15

**Treatises**

38 C.J.S. Garnishment (2020)..................................................................................................... 7

Restatement (Second) of Trusts (1959) ......................................................................................... 6

Comes now JoJo Limited Partnership ("JoJo LP"), by and through undersigned counsel, pursuant to LCvR 7(b), and in opposition to the Judgment Creditors' Motion to Compel Compliance with Subpoena Directed to Nonparty JoJo Limited Partnership (the "Motion," as found at DE #70, with the proponents thereof being known as the "Petitioners") states as follows:

## I.      Introduction

JoJo LP is a non-party to these proceedings that is being asked to produce a hefty tranche of documents concerning the entity's own assets and dealings. Such requests are misplaced, as the Petitioners (i) rely on a fundamentally errant assertion of controlling law vis a vis assets that may be seized in connection with collection proceedings; (ii) assert the existence of alter ego liability without addressing the relevant factors, much less having obtained any sort of correlative declaratory judgment; (iii) misstate—and resultantly misapply—the "close relationship" test that otherwise governs non-party post-judgment discovery; and (iv) seek documents available from the parties themselves.

Core to the Petitioners' theory of non-party discovery is a notion that since one of the limited members of JoJo LP is a revocable trust settled by Richard Gluck ("Mr. Gluck"), and since Mr. Gluck is a judgment debtor, the assets of JoJo LP are thusly available to creditors of Mr. Gluck. Yet this is plainly not so under governing law. While creditors may—or may not—be able to take certain actions in connection with the assets of a revocable trust, creditors are not entitled to take such actions in connection with the assets of a limited partnership that is partially owned by that revocable trust. The Motion conflates two critical layers of separation into one, glossing over a substantive and legally-meaningful distinction.

Similarly, the Petitioners assert, broadly and with *de minimis* factual support, the existence of alter ego liability. Yet the Motion comes well short of actually making allegations that would

1

give rise to a finding of JoJo LP being the alter ego of Mr. Gluck. And, perhaps more importantly, any such theory would be dispositively tested through appropriate litigation, replete with the crucial trappings of due process, and not through motions practice in furtherance of a non-party subpoena.

Equally, while the Motion seems to rest—largely, if not entirely—on the existence of a so-called "close relationship" between JoJo LP and Mr. Gluck, the relevant test is misstated and the factual allegations of the Petitioners do not genuinely invite any such conclusion. Not only do the assertions come short of the applicable standard but, too, the absence of myriad contextual allegations is critical. The Petitioners do not holistically show how two parties enjoy a "close relationship" so much as the Petitioners observe the periodic occasions in which two parties sometimes enter a common orbit. Such is too thin a foundation upon which to premise a finding that, in turn, would run contra to well-settled precedent limiting the degree to which non-parties may be burdened by post-judgment subpoenas seeking information about the non-parties' own business dealings and financial affairs.

For these reasons, and as extrapolated upon *infra*, it is respectfully urged the Motion be denied.

## II.    Standard

Familiarly, "[w]hile the scope of discovery directed at judgment debtors is broad, third parties are generally only examined 'as to the judgment debtor's assets and are not required to disclose their own assets.'" *Demoratic Republic of Congo v. Air Capital Group, LLC*, 2018 WL 324976, at *2 (S.D. Fla. Jan. 8, 2018) (citing *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Van Waeyenberghe*, 148 F.R.D. 256, 257 (N.D. Ind. 1993)).

The exception to the foregoing rule turns on a requisite showing of both (i) the existence of a close relationship between a non-party and a judgment debtor; *and* (ii) the existence of "'reasonable doubts' . . . concerning 'the good faith of the transfer' of assets between the two." *Falicia v. Advanced Tenant Services, Inc.*, 235 F.R.D. 5, 7–8 (D.D.C. 2006) (quoting *Alpern v. Frishman*, 465 A.2d 828, 829 (D.C. 1983)).

The conjunctive nature of this two-prong test has been highlighted by this Honorable Court, in finding that even where non-parties are the biological parents of a judgment debtor, such does not give rise to the imposition of discovery in the absence of the accompanying existence of "reasonable doubts" concerning "the good faith transfer of assets between the two." *Robertson v. Cartinhour*, 2011 WL 13273219, at \*2 (D.D.C. Sept. 16, 2011) (quoting *Falicia*, 235 F.R.D. at 7).

### III.    Factual Allegations

The Motion sets forth myriad factual allegations and procedural observations, many of which are largely immaterial to application of the governing standard for taking non-party discovery. The facts and allegations most pertinent to the instant issue, however, are the following:

1.    In October 2022—following a protracted arbitration two months prior—an arbitrator awarded the Petitioners more than $70 million in damages and costs. Motion, DE #70-1, at § 2(B).

2.    The arbitration award was subsequently confirmed by this Honorable Court. *Id.*

3.    The ensuing judgment has not yet been satisfied. *Id.*

4.    JoJo LP was not a respondent in the arbitration, was not a named party in the arbitration, and is not a named party in this case. *See* Memorandum, Opinion, DE #43, at p. 1 (listing the parties hereto).

3

5. The Petitioners purport to have had a difficult time taking discovery against the judgment debtors. Motion, DE #70-1, at § 2(C).

6. JoJo LP was formed in 2011, some seven years *before* the transaction giving rise to liability in this case. *Id*. at §§ 2(A); 2(D).

7. The general partner of JoJo LP is Mister Music, LLC ("MML"), an entity that is also not a party to these proceedings. *Id* at § 2(D); Memorandum, Opinion, DE #43, at p. 1 (listing the parties hereto).

8. Mr. Gluck is the manager of MML and, individually, a limited member of JoJo LP. Motion, DE #70-1, at § 2(D).

9. Within weeks of the formation of JoJo LP—years before the occurrences at issue herein—Mr. Gluck transferred part, but not the whole, of his personal interest therein to a revocable trust. *Id*. at § 2(D); Assignment of Limited Partnership Interest, DE #70-10.

10. The aforementioned revocable trust may have, in turn, conveyed part of its limited partnership interest in JoJo LP to JOJOC Holdings ("JOJOC"). Motion, DE #70-1, at § 2(D)

11. JoJo LP paid part—but not all—of certain legal fees in connection with this matter. *Id.*

12. Mr. Gluck transferred money to JoJo LP—and received money from JoJo LP— between 2018 and 2023. *Id*.

## IV. Procedural Posture

The following procedural items are meritorious of observation in the prism of the Motion and the opposition of JoJo LP thereto:

a. The Petitioners issued a subpoena (the "Subpoena," as found at DE #70-4) to JoJo LP, seeking six categories of documents.

b.        The Subpoena contains definitions providing, *inter alia*, "[t]he terms 'and' as well as 'or' shall be construed both disjunctively and conjunctively, as necessary, to bring within the scope of the request all responses that might otherwise be construed to be outside its scope." Subpoena, DE #70-4, at p. 2.

c.        The Subpoena seeks all "documents and communications relating to assets and/or property owned (in whole or in part) by any of the Debtors. . ." *Id*. at p. 7.

d.        The Subpoena also seeks the following items:

> 2. All documents and communications (including, but not limited to, emails) relating to assets and/or property owned by You and any of the Debtors.
>
> 3. All documents relating to any payments, payment history, checks, debits, direct deposits, or any form of transfer of funds or assets made between You and any of the Debtors.
>
> 4. All agreements relating to You and any of the Debtors.
>
> 5. All contracts relating to You and any of the Debtors.
>
> 6. All documents which have not otherwise been produced in response to the earlier requests herein, which relate to You and any of the Debtors' assets and/or property.

*Id.*

e.        In light of the definition instructing that the word "and" be construed disjunctively as well as conjunctively, it is unclear if the Petitioners are seeking only items related to both the various judgment obligors (the "Respondents") *and* JoJo LP, or, too, items related to JoJo LP even if wholly unrelated to the Respondents.

## V.     Argument

### a.  A Revocable Trust's Limited Partner Status Does Not Render the Assets of JoJo LP Available to the Petitioners

Amongst the most concerning elements of the Motion is an assertion that because Mr. Gluck transferred part of his limited partnership interest in JoJo LP to a revocable trust, the assets of JoJo LP can accordingly be made available to satisfy a judgment against Mr. Gluck. This is, quite plainly, a misstatement of applicable law, seemingly founded upon the conflation of a limited partnership and the limited partners thereof. The Petitioners are not merely errant in promoting this theory but, more importantly, the logical inferences that follow from this theory are tainted by the misconception.

The Petitioners argue, *inter alia*, "[f]irst, Gluck holds his interest in JoJo through a revocable trust, so the assets of JoJo are available to the Judgment Creditors." Motion, DE #70-1, at § III(B) (citing Fla. Stat. § 736.0505(1)(a); *Becklund v. Fleming*, 869 So. 2d 1, 5 (Fla. 2d DCA 2003); D.C. Code § 19-1305.05(a)(3); Restatement (Second) of Trusts § 156(2) (1959)).

The cited provision of the Florida Statutes provides that "[t]he **property of a revocable trust is subject to the claims of the settlor's creditors** during the settlor's lifetime to the extent the property would not otherwise be exempt by law if owned directly by the settlor." Fla. Stat. § 736.0505(1)(a) (emphasis added). Similarly, the invoked provision of District of Columbia law allows, *inter alia*, "[a]fter the death of a settlor, and subject to the settlor's right to direct the source from which liabilities will be paid, **the property of a trust that was revocable at the settlor's death is subject to claims of the settlor's creditors**. . ." D.C. Code § 19-1305.05(a)(3) (emphasis added).[1]

---

[1] Insofar as there is no contention that Mr. Gluck has passed, it is unclear why the Petitioners rely on a portion of the District of Columbia Code that is focused on the disposition of revocable trust assets upon the death of a settlor.

6

Both statutory citations—as with the case and treatise invoked by the Petitioners—stand for the benign proposition that the assets of a revocable trust may, in certain circumstances, be reached by a settlor's creditors. Yet such is far different than surmising that the assets *of a company in which a revocable trust holds an interest* may be reached by creditors of the settlor of a revocable trust.

Traditionally, a "judgment creditor can recover only by the same right and to the same extent as the judgment debtor because the creditor merely steps into the shoes of the debtor." *Asal v. Mina*, 247 A.3d 260, 279 (D.C. 2021) (citing *Consumers United Ins. Co. v. Smith*, 644 A.2d 1328, 1356 & n.34 (D.C. 1994); 38 C.J.S. Garnishment § 120 (2020); *Med. Mut. Liab. Ins. Soc. of Md. v. Davis*, 883 A.2d 158, 161-62 (Md. 2005)).

Thus, while the Petitioners *might* be able to step into the shoes of a revocable trust settled by Mr. Gluck (and, to be sure, such is well beyond the purview of JoJo LP and very much not at issue instantly), even then the Petitioners would only have the rights and benefits of a limited partner of JoJo LP.

The Motion acknowledges JoJo LP to be a Delaware limited partnership. Motion, DE #70-1, at II(D). Under Delaware law, the rights of a limited partner are markedly curtailed and, not coincidentally, "limited" in nature. *See* Del. Code tit. 6, § 17-101, *et seq.* Nowhere does the applicable statutory scheme permit a limited partner to seize an entity's assets to satisfy his, her or its own debts. *Id*. And nowhere does the applicable statutory scheme suggest a limited partner is to be regarded any differently merely on account of the limited partner being a revocable trust. *Id*.

At bottom, this misapprehension of controlling law pollutes the logic underlying the Motion: the Petitioners assume, errantly, that because one of the limited partners of JoJo LP is a revocable trust settled by Mr. Gluck, the Petitioners are thusly entitled to reach the assets of JoJo

7

LP in satisfaction of a judgment upon which Mr. Gluck is liable. Yet such is not the applicable legal standard, any more than a judgment creditor could reach the assets of the Walt Disney Company merely because a judgment debtor happens to hold common stock therein. And insofar as the Motion is premised upon the notion that the assets of JoJo LP are properly discoverable, as they may be ripe for seizure, the Motion merits denial.

### b. This is an Inappropriate Forum in Which to Litigate Alter Ego Liability

Having obtained a judgment against Mr. Gluck and others, the Petitioners now suggest the theoretical potential for the existence of alter ego liability on the part of JoJo LP. Yet JoJo LP was not a party to the arbitration proceedings giving rise to this case, is not a party to these proceedings, and would certainly have the right to defend any such theory of vicarious liability—especially in connection with a claim already reduced to judgment in the absence of JoJo LP. Suggesting discovery of JoJo LP's affairs is proper because the entity *might* be an alter ego of Mr. Gluck, and thusly *might* have some shared liability, amounts to little more than an impermissible fishing expedition into the assets of a non-party.

As a starting point, under District of Columbia law, "[d]ue process considerations would ordinarily require that the alleged alter ego be joined in the action." *Simon v. Circle Associates, Inc.*, 753 A.2d 1006, 1010 n. 4 (D.C. 2000) (citing *Motores de Mexicali, S.A. v. Superior Court in and for the County of Los Angeles*, 331 P.2d 1, 3–4 (Cal.2d 1958)).

More so, though, any showing of alter ego liability would require well more than the *de minimis* allegations cast forth in the Motion. The Petitioners allege that JoJo LP received money from Mr. Gluck, transferred money to Mr. Gluck, has partners other than Mr. Gluck and his revocable trust, and was created seven years before the issues complained of in the underlying arbitration. The Petitioners do not ever allege the line(s) of business in which JoJo LP is engaged,

the purposes for which JoJo LP exists, or even the extent of the interplay between JoJo LP and its other limited and general partners.

This matters a great deal because in order to establish alter ego liability, a claimant "must show 'by affirmative evidence that there is not only unity of ownership and interest between the two corporations, but also use of the corporate form to perpetrate fraud or wrong.'" *Alkanani v. Aegis Def. Services, LLC*, 976 F. Supp. 2d 1, 8 (D.D.C. 2013) (citing *Jackson v. Loews Wash. Cinemas, Inc.*, 944 A.2d 1088, 1095 (D.C. 2008) (quoting *Vuitch v. Furr*, 482 A.2d 811, 815 (D.C. 1984))).

Assessing "unity of ownership," in turn, requires undertaking a six-pronged analysis that considers:

> (1) the nature of the corporate ownership and control; (2) failure to maintain corporate minutes or records; (3) failure to maintain corporate formalities; (4) commingling of funds and assets; (5) diversion of one corporation's funds to the other's uses; and (6) use of the same office or business location.

*Alkanani*, 976 F. Supp. 2d at 8 (quoting *Mazza v. Verizon Wash. DC, Inc.*, 852 F.Supp.2d 28, 41 (D.D.C. 2012)).

Notably, "[d]ominant stock ownership alone does not create an identity of interest as an alter ego." *Alkanani*, 976 F. Supp. 2d at 9 (quoting *Flocco v. State Farm Mut. Auto. Ins. Co.*, 752 A.2d 147, 154 (D.C. 2000)). And, perhaps most relevantly in the prism of the instant case, there must be relevant temporal synchronicity to establish alter ego liability. *Alkanani*, 976 F. Supp. 2d at 10.

The Petitioners do not allege that JoJo LP has failed to maintain corporate minutes or records. They do not allege JoJo LP has failed to adhere to corporate formalities. They do not allege a comingling of funds or assets (which, to be sure, is distinct from the mere transfer of money from an equity holder to a company and/or the transfer of money from a company to an

9

equity holder). They do not allege the use of a common office or business location. And they do not allege temporal synchronicity, actually going so far as to acknowledge that Mr. Gluck's interest in JoJo LP predates the issues relevant *sub judice* by seven years.

To be sure, alter ego liability is palpably more nuanced than what is set forth *supra*. But such is also precisely the point exemplified by the *Simon* Court: due process commands that such allegations be accompanied by joining an alleged alter ego in subject proceedings, through a proper pleading moored to the exacting rigors of Federal Rule of Civil Procedure 11.

Case law does instruct that allegations of alter ego relationships may be explored in post-judgment, non-party discovery, *if* the criteria for such discovery are otherwise satisfied. *Demoratic Republic of Congo*, 2018 WL 324976, at *2. But, as noted *infra*, such criteria are not satisfied in this case. And to otherwise permit such discovery would be to only countenance an open-ended, unbounded search for information from third parties, based on little more than the relatively innocuous allegation that a limited partnership has received monies from its equity interests and, in turn, disbursed monies to its equity interests—something that is altogether common of entities large and small.

### c. The Petitioners Do Not Show a 'Close Relationship' *and* Reasonable Doubts as to the Good Faith Nature of Transfers

The final theory espoused by the Petitioners, in favor of taking broad post-judgment discovery from JoJo LP, is that the record herein suffices in showing the existence of a "close relationship" between Mr. Gluck and JoJo LP and, as such, discovery ought to be permitted. Yet the Motion both simplifies and misstates the applicable standard, suggesting that the mere showing of a "close relationship" opens any non-party to post-judgment discovery. And, as a necessary byproduct of misconstruing the governing rigors of this narrow exception, the Petitioners come short of making a showing sufficient to permit the discovery to be had.

10

The Petitioners suggest that in *Falicia*, this Honorable Court "overruled nonparties' objections to discovery based **solely** on the close relationship between the nonparties and the judgment debtors." Motion, DE #70-1, at § III(B) (emphasis added).

This assertion evinces an objective misreading of *Falicia*. There, Judge Walton considered motions by two non-parties, seeking to quash subpoenas for their bank records. *Falicia*, 235 F.R.D. at 6–7. In observing the relevant standard, Judge Walton noted, *inter alia*, "[w]hile judgment creditors cannot typically compel disclosure of assets of non-parties, discovery is permissible when the parties are closely related **and** 'reasonable doubts' have been raised concerning 'the good faith of the transfer' of assets between the two." *Id.* at 7–8 (citing *Burak v. Scott*, 29 F.Supp. 775, 776 (D.D.C. 1939); *Alpern*, 465 A.2d at 829) (emphasis added).

The *Falcia* Court was presented with ample reason to believe there to be a connection between the two non-parties seeking to quash subpoenas and the judgment debtor, as well as reason to believe financial transactions to have been rooted in bad faith, focusing on clear and well-supported allegations of the non-parties being mere successors to a party in interest:

> . . . First, contrary to the defendants' position, the plaintiffs have submitted evidence which suggests that Single Point and Dixie Dale are mere extensions of Advanced Tenant, thereby raising colorable suspicion regarding the relationship between Single Point's and Dixie Dale's assets and Advanced Tenant. Second, the plaintiffs are not seeking the records of personal assets of non-parties, but rather the business records of possible successor entities of a judgment debtor. . . There is evidence in the record which suggests that Dixie Dale and Single Point were not business pursuits created totally independent from Advanced Tenant. In fact, their creations appear to be thinly veiled attempts to transfer assets from Advanced Tenant to Dixie Dale and Single Point in order to render Advanced Tenant judgment proof. In this regard, the plaintiffs provide several examples that suggest that Dixie Dale and Single Point have essentially stepped into the shoes of Advanced Tenant. First, both Dixie Dale and Single Point came into existence on the day the verdict in this case was returned against Advanced Tenant. . .

*Falicia*, 235 F.R.D. at 9 (internal citations omitted).

11

Judge Walton actually proceeded to quash the two at-issue subpoenas, *Id.* at 11, albeit for chiefly-unrelated reasons of a jurisdictional nature (though such does, arguably, render dicta the residue of his analysis). But, more pertinently for purposes of this case, his analysis was not "based **solely** on the close relationship between the nonparties and the judgment debtors." Motion, DE #70-1, at § III(B) (emphasis added). Rather, he used the same two-prong standard invoked by the *Robertson* Court and others. *See also AVT-New York, L.P. v. Olivet Univ*., 2022 WL 17082178, at \*2 (D. Utah Nov. 18, 2022) ("In the post-judgment context, the discovery sought must be 'relevant to the existence or transfer of the judgment debtor's assets.' Although post-judgment discovery extends to nonparties, it is limited to the financial affairs and assets of the judgment debtor. Post-judgment discovery of a nonparty's assets may also be permitted 'upon a somewhat heightened showing of necessity and relevance.' This heightened showing requires the moving party to present evidence of concealed or fraudulent transfers or an alter ego relationship between the nonparty and the judgment debtor.") (quoting *ZooBuh, Inc. v. Better Broad., LLC*, 2017 WL 1476135, at \*2 (D. Utah Apr. 24, 2017); *Mountain Dudes, LLC v. Split Rock, Inc*., 2013 WL 5435707, at \*2 (D. Utah Sept. 29, 2013)).

The question, thusly, is not merely if there is a "close relationship" between Mr. Gluck and JoJo LP but, too, whether or not "'reasonable doubts' have been raised concerning 'the good faith of the transfer' of assets between the two." *Falicia*, 235 F.R.D. . at 7–8. And in that regard, the Motion comes notably shy of making the requisite showing.

As a starting point, it is not altogether clear that Mr. Gluck's status as a limited partner of JoJo LP satisfies the "close relationship" prong. But, even assuming, *arguendo*, that the first criterion is properly addressed, the Petitioners still do not raise "reasonable doubts" about the "good faith of the transfers" between Mr. Gluck and JoJo LP.

12

Rather, the Motion merely asserts that Mr. Gluck—a limited partner of JoJo LP—has transferred money to JoJo LP and, in turn, received money from JoJo LP. The notion of a limited partner helping to capitalize a company is thoroughly unremarkable, as is the notion of a company distributing monies to its limited partners. Any number of small businesses take capital contributions from their equity interests and, in turn, issue dividends to their equity interests when corporate finances so allow; capital accounts are increased and decreased with the ebbs and flows of corporate America. This cannot, unto itself, be the fodder of "reasonable doubts" about the good faith nature of transfers. And, pointedly, this assertion is a far cry from what is shown in *Falicia*, where an apparent duo of successor companies miraculously came into existence on the very day an adverse verdict was returned against a judgment debtor.

The Petitioners acknowledge JoJo LP well precedes the issues in this case. The Petitioners do not allege that Mr. Gluck transferred monies at a time when JoJo LP did not have a need—or even use—for the funds. Nor do the Petitioners allege that JoJo LP sent Mr. Gluck monies at a time when the making of distributions would have been inappropriate. And, perhaps most notably, the allegation that JoJo LP has sent Mr. Gluck more than $7.6 million, since 2019, tends—quite persuasively—to dispel any inference of impropriety; if Mr. Gluck was looking to sequester monies in JoJo LP, it would not be much sensible for JoJo LP, in turn, to send such funds to Mr. Gluck.

### d.  Request #1 Seeks Information in the Possession, Custody or Control of Parties

Finally, it bears notation that the first itemized request directed to JoJo LP—for documents and communications relating to the Respondents' assets—is inappropriate since such documents and communications are, by definition, discoverable from the Respondents themselves. Burdening

a non-party with discovery that can be achieved through parties to litigation is improper, serving only to shift an onus from litigants to those outside the contours of a given case.

As observed by the United States District Court for the Northern District of Alabama, in consideration of a subpoena directed to a non-party:

> Parties simply do not have the unfettered right to seek discovery from non-parties. Implied throughout Rule 45 is the concern that non-parties not be unduly burdened with discovery. Of course, third parties are not exempt from producing evidence in their possession, but the requesting party must demonstrate need and must limit the discovery to reduce the burden it imposes.

*In re Blue Cross Blue Shield Antitrust Litig*., 2016 WL 11689073, at *1 (N.D. Ala. June 20, 2016). *See also Abhe & Svoboda, Inc. v. Hedley*, 2016 WL 11509914, at *4 (D. Minn. Mar. 15, 2016) ("Defendants have not established why the additional information sought through the third-party subpoena is not unreasonably cumulative or duplicative. Indeed, Defendants' argument at the hearing that the discovery of third-party NWSB would be a 'cross-check' to other discovery confirms that duplicative discovery is sought.").

Stated otherwise, "[a] non-party subpoena seeking information that is readily available from a party through discovery may be quashed as duplicative or cumulative." *Rossman v. EN Eng'g, LLC*, 467 F. Supp. 3d 586, 590–91 (N.D. Ill. 2020) (citing Fed. R. Civ. P. 26(b)(2); *Tresona Multimedia, LLC v. Legg*, 2015 WL 4911093, at *3 (N.D. Ill. 2015); *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 188 (N.D. Ill. 2013); *Ameritox, Ltd. v. Millennium Labs, Inc.*, 2012 WL 6568226, at *2–3 (N.D. Ill. 2012); *In re Heartland Inst.*, 2011 WL 1839482, at *4 (N.D. Ill. 2011)).

Indeed, the Federal Rules of Civil Procedure require, *inter alia*, ". . . the court must limit the frequency or extent of discovery otherwise allowed by these rules . . . if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some

other source that is more convenient, less burdensome, or less expensive. . ." Fed. R. Civ. P. 26(b)(2).

Here, documents and communications relating to the Respondents' assets can, assuredly, be obtained from the Respondents, who are parties to this proceeding and, thusly, more appropriately burdened by the instant request. There is simply no basis to impose this obligation on JoJo LP when the request can—and, seemingly, already has been—imposed on the Respondents themselves.

## VI.   Conclusion

At core, the Petitioners have misstated the law governing the ability of a judgment creditor to reach assets of a limited partnership, have misstated the law governing the taking of non-party post-judgment discovery, and have come well short of making a colorable alter ego contention. They point to the thoroughly unremarkable fact that small businesses and their partners tend to financially transact with one another, but neither demonstrate nor reasonably infer any impropriety in such. And they accordingly come, too, well short of the showing requisite to entitle them to burden JoJo LP—a non-party herein—with the remarkable onus of post-judgment discovery.

For these reasons, the Motion should be denied.

WHEREFORE, the JoJo Limited Partnership respectfully prays this Honorable Court (i) deny the Motion; and (ii) afford such other and further relief as may be just and proper.

*[Signature and Certificate of Service on Following Page]*

15

THE VERSTANDIG LAW FIRM, LLC


/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
DC Bar #1034066
9812 Falls Road, #114-160
Potomac, Maryland 20854
Telephone: (301) 444-4600
Facsimile: (301) 444-4600
Electronic Mail: mac@mbvesq.com
*Counsel for JoJo Limited Partnership*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of July, 2024, a copy of the foregoing was served

via this Honorable Court's CM/ECF system, upon all parties registered to receive notice.


/s/ Maurice B. VerStandig
Maurice B. VerStandig

16