## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PETRUSS MEDIA GROUP, LLC f/k/a TAKE 5 MEDIA GROUP, LLC, et al.,**<br><br>**Petitioners,**<br><br>v.<br><br>**ADVANTAGE SALES & MARKETING LLC, et al.,**<br><br>**Respondents.** | **No. 22-cv-3278-RC-ZMF** |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before this Court is the Respondents-Judgment Creditors'[1] Motion to Compel Compliance with Subpoena Directed to Non-party JoJo Limited Partnership ("JoJo") and Memorandum in Support. *See* Resp'ts' Mot. Compel Compliance with Subpoena Directed to Nonparty JoJo Limited Partnership ("Resp'ts' Mot.") 3, ECF No. 70; *see also* Resp'ts' Memo Supp. Mot. Compel Directed to Nonparty JoJo ("Resp'ts' Memo") 2, ECF No. 70-1. For the reasons set forth herein, the undersigned orders that Respondents' motion be **GRANTED**.[2]

## I.    BACKGROUND

The instant Motion to Compel stems from opposing petitions to vacate and confirm an arbitral award. *See* Pet'rs' Pet. Vacate Arb. Award, ECF No. 40; *see also* Resp'ts' Pet. Confirm

---

[1] The Judgment Creditors are Advantage Sales & Marketing LLC ("Advantage"), Advantage Sales & Marketing Inc., Karman Intermediate Corp., Advantage Solutions Inc., and Karman Topco L.P.

[2] This is a final order issued pursuant to Local Rule 72.2. The parties are hereby advised that, under the provisions of Local Rule 72.2(b), any party who objects to this Order must file a written objection thereto with the Clerk of this Court within fourteen days of the party's receipt of this

Arb. Award, ECF No. 30. On November 8, 2023, Judge Contreras entered judgment in favor of Respondents Advantage Sales & Marketing LLC, Advantage Sales & Marketing Inc., Karman Intermediate Corp., Advantage Solutions Inc., and Karman Topco L.P. (together, "Advantage Parties," "Respondents," or "Judgment Creditors"), ordering recovery of $74,816,853.37 plus post-judgment interest from Petitioners Petruss Media Group, LLC f/k/a Take 5 Media Group LLC ("Take 5"), RJV Marketing Corp., Richard Gluck ("Gluck"), and Alexander Radetich ("Radetich") (together, "Petitioners" or "Judgment Debtors"). *See* Judgment, ECF No. 52.

"Almost immediately after the Court issued its Judgment on November 8, 2023, the Judgment Creditors served discovery on the Judgment Debtors in Florida, where they reside." Resp'ts' Memo, Decl. Michael Strub ("Strub Decl.") ¶ 3, ECF No. 70-2. Respondents allege that Petitioners "have not produced most of the information" sought, and instead, "have put their assets in bank accounts in which their spouses, who are not judgment debtors, also have an interest" to avail themselves of Florida's tenancy by the entirety law.[3] Resp'ts' Memo at 11. Further, Judgment Debtors have shown "unwillingness to pay the Judgment or disclose their assets." *Id.* at 11.

A.    The Underlying Arbitration

In 2003, Gluck and Radetich founded Take 5, an email advertising company. *Id.* at 8. Between 2012 and 2013, clients began to lodge complaints and threaten lawsuits after discovering that Take 5 misrepresented its email advertising activity. *See id.* at 8–9. In 2013, contemporaneous to customer complaints, Gluck established an irrevocable trust in Belize ("RJJ Irrevocable Trust

---

Order. When considering an objection, the District Judge will determine whether this Order is clearly erroneous or contrary to law. *See* LCvR 72.2(c).

[3] Accounts that are tenancies by the entireties are not subject to creditors' claims unless both spouses are debtors. *See Beal Bank, SSB v. Almand & Assocs.*, 780 So. 2d 45, 58 (Fla. 2001).

JoJo Limited Partnership"). *See id.* at 9, 13. On March 15, 2018, Gluck and Radetich sold Take 5 to Advantage for $77 million. *See id.* at 9. In 2019, Advantage conducted an internal investigation into Take 5's reporting, which revealed that Take 5 used pay-per-click vendors to artificially inflate customer traffic and email advertisement statistics. *See id.* at 10.

In July 2019, Advantage shut down Take 5. *See id.* In response, Judgment Debtors filed an arbitration demand. *See id.* The arbitrator found Judgment Debtors liable for fraud and awarded $74 million to the Judgment Creditors. *See id.* at 10. The Judgment Debtors have refused to pay. *See id.* at 11. This led the Judgment Creditors to engage in post-judgment discovery. *See id.*

B.    Non-party, JoJo

JoJo is a Delaware limited partnership that was formed on October 27, 2011. *See* Resp'ts' Mot., Ex. 7, JoJo Agreement RG-000860, RG-000862[4], ECF No. 70-9. Gluck is the manager of JoJo's general partner, Mister Music, LLC ("Mister Music"). *See id.* at RG-000862. Gluck owns a 96% interest in JoJo. *See id.* at RG-000862. Mister Music, Gluck's brother, and Gluck's sister own the remaining 4%. *See id.* at RG-000861. On December 13, 2011, Gluck assigned his interest in JoJo to "Trustee of the Revocable Trust Agreement of Richard Gluck, dated November 16, 2011" ("Revocable Trust"). *Id.* at RG-000862. On January 26, 2019, Gluck assigned 65% of his interest in JoJo to JOJOC Holdings, LLC ("JOJOC"). *See* Resp'ts' Mot., Ex. 8, Assignment of Limited Partnership Interest 2, ECF No. 70-10. Gluck manages JOJOC. *See* Resp'ts' Mot., Ex. 9, 2023 Florida LLC Annual Report 2, ECF No. 70-11.

---

[4] Citations are to the RG- numbers at the bottom of each page of Exhibit 7.

JoJo paid for Gluck's legal representation during the arbitration. *See* Resp'ts' Memo at 12. JoJo also paid Gluck's legal fees related to the petition to vacate the arbitral award and the opposition to Judgment Creditors' petition to confirm the arbitral award. *See id.*

Further, Judgment Creditors allege that "[b]ank statements demonstrate that Gluck has used JoJo as a vehicle to protect, and, now, to conceal his money." *See id.* To support their contention, Judgment Creditors point to several financial transactions between Gluck and JoJo. On April 5, 2018, shortly after the Take 5 sale closed, Gluck wrote a check to "JoJo Limited Partnership" for $7,500,000. *See* Resp'ts' Mot., Ex. 1, Transactions Between Richard Gluck and JoJo Ltd. P'ship 2 ("Gluck-JoJo Transactions"), ECF No. 70-3. The month before arbitration began, "Gluck began to engage in significant financial transactions with JoJo." Resp'ts' Memo at 13. Between August 27, 2019 through the end of 2023, "Gluck sent at least $9,301,289.25 to JoJo and received at least $7,698,430.33 from JoJo." *See id.*; *see also* Gluck-JoJo Transactions. Further, "beginning in December 2019, Gluck used JoJo to transfer almost $10.4 million to offshore bank accounts." *See* Resp'ts' Reply ("Reply") 6, ECF No. 73. In December 2019 and again in March 2020, JoJo transferred $2.5 million to Kaiser Partner Privatbank AG ("Kaiser") in Liechtenstein. *See* Reply at 12. "[I]n October 2021, Gluck, through JoJo, began transferring money to [] a law firm in Budapest, Hungary." *See id.* By December 2023, JoJo had transferred $10.38 million to accounts in Hungary. *See id.*

C.    The Subpoena

On March 14, 2024, the Judgment Creditors served their subpoena on JoJo. *See* Strub Decl. ¶ 7; *see also* Resp'ts' Mot., Ex. 2, Subpoena (the "Subpoena"), ECF No. 70-4. Judgment Creditors made six document requests:

> (1) All documents and communications relating to assets and/or property owned (in whole or in part) by any of the Debtors (Petruss

Media Group, LLC f/k/a Take 5 Media Group, LLC, Alexander Radetich, Richard Gluck, and/or RJV Marketing Corp.);

(2) All documents and communications (including, but not limited to, emails) relating to assets and/or property owned by You and any of the Debtors;

(3) All documents relating to any payments, payment history, checks, debits, direct deposits, or any form of transfer of funds or assets made between You and any of the Debtors;

(4) All agreements relating to You and any of the Debtors;

(5) All contracts relating to You and any of the Debtors; and

(6) All documents which have not otherwise been produced in response to the earlier requests herein, which relate to You and any of the Debtors' assets and/or property.

Subpoena at 11. On March 27, 2024, JoJo served its objections and responses to the Subpoena on the Judgment Creditors. *See* Resp'ts' Mot., Ex. 3, Objection and Response to Subpoena ("Obj. & Resp."), ECF No. 70-5.

## II.    LEGAL STANDARD

A judgment creditor may seek post-judgment discovery "from any person[,] including the judgment debtor." Fed. R. Civ. P. 69(a)(2). The rules governing post-judgment discovery are "quite permissive." *Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134, 138 (2014). "[F]ederal courts have afforded judgment creditors broad opportunities to discover concealed assets of judgment debtors including acquiring such information from non-parties." *Falicia v. Advanced Tenant Servs., Inc.*, 235 F.R.D. 5, 7 (D.D.C. 2006). "It is not uncommon to seek asset discovery from third parties, including banks, that possess information pertaining to the judgment debtor's assets." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012), *aff'd Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134 (2014). "The discovery scope pursuant to Rule 69(a)(2) is constrained principally only insofar as it 'must be calculated to assist in collecting on a

judgment.'" *Tatneft v. Ukraine*, No. 17-cv-582, 2021 WL 5353024, at *3 (D.D.C. Oct. 18, 2021) (quoting Fed. R. Civ. P. 69(a)(2)).

"A subpoena to a non-party . . . is a vehicle by which post-judgment discovery may be accomplished." *Stati v. Republic of Kazakhstan*, No. 14-cv-1638, 2020 WL 3259244, at *4 (D.D.C June 5, 2020). Upon a Rule 45 motion to compel, the court assesses whether the subpoena seeks relevant information, then turns to objections to the subpoena. *See Buzzfeed, Inc. v. U.S. Dep't of Just.*, 318 F. Supp. 3d 347, 356 (D.D.C. 2018). Courts must quash subpoenas that call for privileged information or would cause an undue burden. *See* Fed. R. Civ. P. 45(d)(3)(A). "The burden lies on the party resisting discovery to show that the documents requested are either unduly burdensome or privileged." *BuzzFeed*, 318 F. Supp. 3d at 356 (internal citation omitted). The party resisting discovery must show "the manner and extent of the burden and the injurious consequences of insisting upon compliance with the subpoena" and not merely that compliance "would be burdensome and onerous." *Stati*, 2020 WL 3259244, at *4 (internal citation omitted).

## III.    DISCUSSION

### A.    Post-judgment discovery is proper.

Judgment Creditors seek to compel JoJo to comply with their subpoena to produce documents. *See* Resp'ts' Mot. at 2. At a high level, Judgment Creditors argue that the relationship between Gluck and JoJo entitles Judgment Creditors to discovery. *See* Resp'ts' Memo at 16. Judgment Creditors points to three features of Gluck's relationship to JoJo in support of their Motion to Compel: (1) Gluck's interest in JoJo via a revocable trust; (2) the possibility that JoJo is an alter ego of Gluck; and (3) the "close relationship" between Gluck and JoJo. *See* Resp'ts' Memo at 16–19.

JoJo counters that its assets are not available to Judgment Creditors "because Mr. Gluck transferred part of his limited partnership interest in JoJo LP to a revocable trust." *See* Non-Party JoJo's Opp'n to J. Creditors' Mot. Compel ("Opp'n") 11, ECF No. 72. JoJo cites to *Asal v. Mina*, wherein the court found a "judgment creditor can recover only by the same right and to the same extent as the judgment debtor because the creditor merely steps into the shoes of the debtor." *See* Opp'n at 12 (citing *Asal v. Mina*, 247 A.3d 260, 279 (D.C. 2021)).

But *Asal* is inapposite. It dealt with writs of attachment and requests for condemnation as means of enforcing judgments and collecting assets from debtors. *See Asal*, 247 A.3d at 279. Here, Judgment Creditors are not attempting to seize any of JoJo's assets. *See* Resp'ts' Mot. at 2. Instead, Judgment Creditors merely seek subpoena compliance. *See id.* And document requests to nonparties that "may [] hold attachable assets or may possess information about [such] assets" are "well within the range of reasonable discovery under the Federal Rules of Civil Procedure." *Tatneft*, 2021 WL 5353024, at *7. Whether the assets are ultimately attachable is irrelevant. "[Judgment Creditors] can seek discovery wider than the scope of what is ultimately attachable, since they 'do[] not yet know what property [JoJo] has and where it is." *Amduso v. Republic of Sudan*, 288 F. Supp. 3d 90, 96 n. 4 (D.D.C. 2017).

But the court need not limit itself to considering discoverability of unattachable assets when there is a real possibility of discovering attachable assets here.[5] Gluck owns 96% of JoJo. *See supra* at Pt. I.B. Because Gluck "owns or controls [JoJo], any documents in [JoJo's] possession

---

[5] At this juncture, the Court need not decide whether Judgment Creditors can possess any of JoJo's assets. *See* Opp'n at 11–12. As such, the Court does not consider whether D.C. or Delaware law applies.

are likely also within [Gluck's] control and therefore subject to discovery." *See Amduso*, 288 F. Supp. 3d at 96. Thus, JoJo's argument as to attachability of JoJo's assets fails.

JoJo further argues that Judgment Creditors' alter ego contentions are too speculative, and that "any showing of alter ego liability would require well more than the *de minimis* allegations cast forth" by Judgment Creditors. Opp'n at 13. This argument fails for two reasons. First, Judgment Creditors do not invoke the alter ego theory for the purpose of imputing liability to JoJo. Instead, Judgment Creditors merely seek discovery of JoJo's assets. *See* Resp'ts' Mot. at 2. As this Court has previously explained in this case, "[d]iscovery attempting to ascertain whether a judgment debtor has an alter ego concerning its assets, and whether it transferred its assets to that alter ego to defeat execution of the judgment, is perfectly proper." *Petruss Media Grp., LLC v. Advantage Sales & Mktg. LLC* ("*Petruss II*"), No. 22-cv-3278, 2024 WL 3715916, at *1 (D.D.C. Aug. 8, 2024) (citing *Fudali v. Pivotal Corp.*, No. 03-cv-1460, 2010 WL 4910263, at *4 (D.D.C. Dec. 2, 2010)). Second, JoJo cannot credibly argue that Judgment Creditors lack evidence to support their alter ego theory while refusing to produce documents that would substantiate (or undermine) the theory. JoJo "misapprehends that a fundamental purpose of discovery is to secure information" to support legal theories. *Jones v. Hawley*, 255 F.R.D. 51, 52 (D.D.C. 2009).

JoJo also alleges that due process "require[s] that the alleged alter ego be joined in the action." Opp'n at 13 (citing *Simon v. Circle Assocs., Inc.*, 753 A.2d 1006, 1010, n. 4 (D.C. 2000)). In *Simon*, the trial court entered monetary judgments against an individual based on an alter ego theory without having ever held an evidentiary hearing on the alter ego issue. *See Simon*, 753 A.2d at 1011. Because that individual "never had an opportunity to be heard," the *Simon* court found due process was violated. *Simon*, 753 A.2d at 1010. If anything, *Simon* underscores the importance of access to evidence in alter ego cases prior to entry of a monetary judgment based on such a

theory. *See Simon*, 753 A.2d at 1011. And discovery is the primary route to obtaining such evidence. *See Jones*, 255 F.R.D. at 52. If discovery yields information about attachable assets in the hands of an alter ego, Judgment Creditors would presumably seek to attach those assets in a subsequent hearing. *Simon* dictates that an alter ego would need to be present at such subsequent hearing. But until then, there is no due process requirement to join JoJo in the action.

Finally, in *Petruss II*, this Court explained that "discovery is permissible when the parties are closely related and 'reasonable doubts' have been raised concerning 'the good faith of the transfer' of assets between the two." *Petruss II*, 2024 WL 3715916, at *3 (citing *Falicia*, 235 F.R.D. at 7–8). JoJo argues that Judgment Creditors have not demonstrated either prong. *See* Opp'n at 15–16 (citing *Falicia*, 235 F.R.D. at 7–8). JoJo is wrong. Judgment Creditors have shown closeness between Gluck and JoJo by virtue of Gluck's ownership interest, and the numerous, significant financial transactions between Gluck and JoJo. *See supra* at Pts. I.A, B; *see also Falicia*, 235 F.R.D. (finding sufficient closeness to permit discovery of third-parties' assets where third parties "came into existence" soon after judgment was entered against the judgment debtor and the third parties were "controlled by immediate members of the same family" of the judgment debtor); *see also Petruss II*, 2024 WL 3715916, at *4 (finding financial transactions to be "relevant in assessing [alter ego liability]").

There is also reasonable doubt as to good faith. Around the time of Take 5 customer complaints, Gluck set up the conspicuously-named RJJ Irrevocable Trust JoJo Limited Partnership in Belize. *See supra* at Pt. I.A. And "Belize trusts are well-known as asset protection trusts to protect a debtors' assets from creditors' claims." *See* Resp'ts' Mot. at 9 (citing Eamon Courtenay, S.C. & Christopher Coye, *Asset protection and choice of law provisions*, 2 Asset Protection: Dom. & Int'l L. & Tactics § 30:62 (2022)). Moreover, the transfers between Gluck and JoJo raise further

concerns. *See Petruss II,* 2024 WL 3715916, at *3–4. Shortly after the Take 5 sale closed, Gluck transferred $7.5 million to JoJo. *See supra* at Pt. I.B. And shortly before arbitration began, Gluck started to engage in significant financial transactions with JoJo: in total, Gluck used JoJo to transfer $10.38 million to offshore bank accounts. *See id.* Such transfers—particularly given the timing—raise a "colorable suspicion regarding the relationship" between the third party and the judgment debtor. *See Falicia*, 235 F.R.D. at 8.

    In sum, the Judgment Creditors' subpoena, which is directed at documents that could elucidate the nature of JoJo's financial relationship to Gluck, is appropriate since Judgment Creditors do "not yet know what property [JoJo] has and where it is, let alone whether it is executable under the relevant jurisdiction's law." *See NML Capital*, 573 U.S. at 144.

        B.    <u>The requested discovery seeks relevant information and is proportional to the needs of the case.</u>

    JoJo separately claims that Judgment Debtors already produced the requested documents, making the requests "not proportional to the needs of the case." *See* Obj. & Resp. at 2–3. JoJo made no arguments in its Opposition as to proportionality. *See generally*, Opp'n. And "[s]imply stating that the discovery is not proportional to the needs of the case, without any specific arguments or representations, does not suffice to satisfy [JoJo's] burden to avoid producing documents." *See Lamaute v. Power*, 339 F.R.D. 29, 40 (D.D.C. 2021). Thus, JoJo failed to meet its burden.

    Out of an abundance of caution, the Court still analyzes the proportionality of the subpoena. Six factors bear on proportionality: "(1) the importance of the issues at stake in this action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit." *Oxbow Carbon & Mins. LLC*

*v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 6 (D.D.C. 2017). "No single factor is designed to outweigh the other factors in determining whether the discovery sought is proportional." *Id.*

JoJo makes no specific showing as to the first, second, fourth, fifth, or sixth proportionality factors. *See generally* Opp'n. JoJo focuses on the third factor. JoJo argues that requesting certain documents from it "is inappropriate since such documents and communications are, by definition, discoverable from [Judgment Debtors] themselves." *See* Opp'n at 13. JoJo further contends that "[a] non-party subpoena seeking information that is readily available from a party through discovery may be quashed as duplicative or cumulative." *See* Opp'n at 19 (citing *Rossman v. EN Eng'g, LLC*, 467 F. Supp. 3d 586, 590–91 (N.D. Ill. 2020)). But JoJo provides no evidence that the documents requested are "readily available" from Judgment Debtors. Judgment Creditors counter with examples that illustrate the requested documents may not be readily available from Judgment Debtors. *See, e.g.*, Resp'ts' Memo at 20 ("Gluck has not produced the requested financial information about the relationship between Gluck and the RJJ Irrevocable Trust or the relationship between this trust and JoJo, which is responsive to Request Nos. 2-4 of the Subpoena."). Moreover, "that [Judgment Creditors] may obtain the same documents through party discovery is not a basis to quash" the subpoena. *See Powell v. Allied Universal Sec. Servs.*, No. 17-cv-6133, 2018 WL 4378168, at *1 n.2 (E.D.N.Y. Aug. 9, 2018).

JoJo has not objected to the "burden or expense of the proposed discovery." *See generally* Obj. & Resp.; *see also* Opp'n. Because establishing undue burden falls on the party resisting discovery, and JoJo has not made any showing, JoJo loses on the sixth factor. *See BuzzFeed*, 318 F. Supp. 3d at 356. Accordingly, the subpoena is "proportional to the needs of the case," in line with Fed. R. Civ. P. 26(b)(1) and this Court's prior ruling. *See Petruss II*, 2024 WL 3715916, at *4.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Judgment Creditors' Motion to Compel. It is further **ORDERED** that JoJo shall comply with the Subpoena within 21 days from the date of this Order.

Date: March 26, 2025

_____
ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE