**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **PETRUSS MEDIA GROUP, LLC f/k/a** | ) | |
| **TAKE 5 MEDIA GROUP, LLC,** | ) | |
| **ALEXANDER RADETICH, RICHARD** | ) | |
| **GLUCK AND RJV MARKETING CORP.,** | ) | |
| | ) | **Civil Case No. 1:22-cv-03278-RC (ZF)** |
| **Petitioners,** | ) | |
| **v.** | ) | |
| | ) | |
| **ADVANTAGE SALES & MARKETING, LLC,** | ) | |
| **ADVANTAGE SALES & MARKETING, INC.,** | ) | |
| **KARMAN INTERMEDIATE CORP.,** | ) | |
| **ADVANTAGE SOLUTIONS, INC., AND** | ) | |
| **KARMAN TOPCO, L.P.,** | ) | |
| | ) | |
| **Respondents.** | ) | |
| | ) | |

**PETITIONERS ALEXANDER RADETICH AND RICHARD GLUCK'S REPLY TO**
**RESPONDENTS' OMNIBUS RESPONSE IN OPPOSITION TO MOTIONS BY**
**JUDGMENT DEBTORS AND CERTAIN NON-PARTIES FOR PROTECTIVE**
**ORDERS OR TO QUASH SUBPOENAS**

Petitioners/Judgment Debtors, Alexander Radetich ("Radetich") and Richard Gluck

("Gluck")("Petitioners" or "Judgment Debtors"), joined by non-parties, Richard Gluck, as Trustee

("Gluck Trustee") of the 2018 Gluck Family Trust ("2018 Gluck Trust") and Alexander Radetich,

as Trustee ("Radetich Trustee") of the Alexander Radetich Revocable Trust dated August 20, 2009

("2009 Radetich Trust")(together, the "Movants"), by and through counsel, and pursuant to Fed.

R. Civ. P. Rules 26(b)(2)(C)(i), 26(c)(1), & 45(d)(3)(A), files this Reply to Respondents' Omnibus

Response in Opposition to Motions by Judgment Debtors and Certain Non-Parties for Protective

Orders or to Quash Subpoenas (the "Reply") and in support thereof state, as follows:

**I.      INTRODUCTION AND PROCEDURAL BACKGROUND**

1.      On April 30, 2025, the Movants filed Petitioners, Alexander Radetich and Richard

Gluck's Motion (I) For Issuance of Protective Order, and/or Alternatively, (II) to Quash Third-Party Subpoenas to Produce Documents (the "Motion")[1] [ECF No. 85] seeking the entry of protective orders and/or an order quashing the DC Subpoenas upon accounting and advisory firms: (i) Cooper/Haims; (ii) Kaufman; (iii) Cherry Bekaert LLP; and (iv) Cherry Bekaert Advisory LLC (collectively, the "Accounting Firms"). The relief requested in the Motion was based, in substantial part, on the assertion of Florida's *accountant-client privilege*, § 90.5055, Florida Statutes.

2.      Further, on April 30, 2025, other non-parties to this action, namely, Carolyn Gluck, individually, and as trustee of the 2021 Gluck Family Trust Dated October 21, 2021, and JoJo Limited Partnership [ECF No. 81]; and Mala Rokada, LP and PGR Fairway, LLC [ECF No. 83]; filed their respective motions for protective order and to quash the DC Subpoenas ("Non-Parties").

3.      On May 14, 2025, the Respondents/Judgment Creditors, Advantage Sales & Marketing LLC, Advantage Sales & Marketing Inc., Karman Intermediate Corp., Advantage Solutions Inc., and Karman Topco L.P. (collectively, "Advantage" or "Judgment Creditors") filed their Omnibus Response in Opposition to Motions by Judgment Debtors and Certain Non-Parties for Protective Orders or to Quash Subpoenas (the "Omnibus Response") [ECF No. 87], opposing all three motions filed by the Movants and Non-Parties. The Omnibus Response focused mainly on the accountant-client privilege and raising the crime-fraud exception without proof of fraud relating to the Accounting Firms.

4.      Thereafter, on May 15, 2025, Cooper/Haims served upon the Judgment Creditors, its Non-Party Cooper/Haims' Objection to Non-Party Subpoena for Production of Documents and Information ("Cooper/Haims Objections"). In the Cooper/Haims Objection, Cooper/Haims raised several objections to the DC Subpoena given the pending motions for protective orders filed by

---

[1] Unless defined herein, all capitalized terms shall have the same meaning as used in the Motion.

the Movants and Non-Parties, including, among other reasons, that the Subpoena is: "unreasonably cumulative and duplicative of substantially identical subpoenas issued by the Defendants/Judgment Creditors in connections with litigation pending in Florida state court"; "duplicative of overlapping subpoenas previously issued by the Defendants/Judgment Creditors in this litigation"; and "unduly burdensome and would cause unreasonable expense to Cooper/Haims in that the Subpoena lacks reasonable temporal and substantive limits and purports to seek the production of documents that are outside the scope of proper discovery," in violation of Fed. R. Civ. P. 26(b)(2)(C)(i) and 45(d)(1).

5.      By way of their Motion, the Movants seek the entry of a protective order, and/or alternatively, an order quashing post-judgment non-party subpoenas served under Fed. R. Civ. P. Rule 45 on several accounting firms as referenced below by Respondents/Judgment Creditors, Advantage Sales & Marketing LLC, Advantage Sales & Marketing Inc., Karman Intermediate Corp., Advantage Solutions Inc., and Karman Topco L.P. (collectively, the "Judgment Creditors"). The Movants respectfully request that the Court grant this Motion since, among other things, the subject subpoenas are duplicative of substantially identical subpoenas issued by the Judgment Creditors in connection with fraudulent transfer litigation pending in Florida state court and, therefore, are unreasonably duplicative under Fed. R. Civ. P., Rule 26(b)(2)(C)(1).

6.      Moreover, the subpoenas implicate Florida's *accountant-client privilege*, Fla. Stat. § 90.5055(2). For the reasons argued below, the Movants respectfully request that the Court issue a protective order and quash the Rule 45 subpoenas as necessary to protect the disclosure of privileged and confidential information from the accounting firms pursuant to Federal Rules of Civil Procedure 26(c)(1) and 45(d)(3)(A).

7.      To date, the Objections to Florida Subpoenas and Co-Defendant Objections filed

3

in the Fraudulent Transfer Action remain pending for adjudication by the Florida state court having jurisdiction over the Florida Subpoenas.

## II.      LEGAL ARGUMENT

8.       Initially, the Judgment Creditors contention that the Judgment Debtors are seeking "yet again" to prevent the Judgment Creditors from obtaining discovery in aid of execution of the Judgment lacks merits. To be clear, this is first time the Judgment Debtors have filed any motion relating to post-judgment discovery in aid of execution before this Court.[2]

9.       In fact, in response to Requests for Production served by the Judgment Creditors in connection with the DC Action and Florida Proceedings, the Judgment Debtors have already produced thousands of pages of documents without objection, including, among other things, personal tax returns, and banking and financial statements going back as far as 2017. Likewise, both Mala Rokada and JoJo have voluntarily produced tens of thousands of pages of documents consisting of banking and other financial records.

10.      Moreover, as noted in the Response "[T]he parties negotiated an extension of time through May 27, 2025, for the responses, but as part of that negotiation, Gluck and Radetich just produced earlier this week certain documents, including some recent brokerage statements of Mala Rokada and JoJo LP, as well as some recent bank statements of the Velika Rokada Offshore Trust. Greenberg Decl., ¶ 11." [ECF No. 87, pg. 7]. The Judgment Creditors offhanded remarks that this production 'makes plain' that the motions for protective order filed by Mala Rokada and JoJo 'using different law firms is a charade' lacks merit and should be stricken from the Response.

11.      Furthermore, the Judgment Creditors attempts to differentiate between the DC Subpoenas and Florida Subpoenas as serving different discovery purposes rings hollow. Although

---

[2] References to ECF Nos. 67, 76 and 77, pertain to Mala Rokada LP and JoJo LP.

the Judgment Creditors state that the DC Subpoenas are 'designed to broadly uncover information' to find other ways to collect on the Judgment such as asserting potential alter ego claims concerning non-party entities purportedly controlled by the Judgment Debtors, the Judgment Creditors abandoned those efforts in the Florida Proceedings and Proceedings Supplementary.

12.     Indeed, the Judgment Creditors conducted four (4) days of Examinations of the Judgment Debtors in the Proceedings Supplementary pursuant to § 56.30, Fla. Stat., and obtained voluminous swaths of documents from the Movants, Non-Parties and other non-parties pursuant to third party subpoenas served in the Florida Proceedings. Later, Advantage voluntarily filed their Notice of Withdrawal of the Impleader Motion in the Proceedings Supplementary and dismissed their "*Alter-Ego and Reverse Veil Piercing Liability*" claims against Mala Rokada and JoJo in the Amended Complaint filed in the Fraudulent Transfer Action. (Mot., pgs. 3-6, ¶5-15).

13.     The Judgment Debtors argue that the Florida accountant-client privilege only applies to Florida licensed CPAs, but there is no dispute that Kaufman are licensed Florida CPAs that fit within this statutory framework. Florida Statutes §§ 473.316 and 90.5055. Also, Kaufman filed personal tax returns for Gluck, which were previously produced to Advantage. In addition, Radetich produced personal tax returns filed by Cooper/Haims in the Florida Proceeding.

14.     The Judgment Debtors reject the Judgment Creditors argument that the crime-fraud exception applies in this action to preclude the application of Florida's accountant-client privilege. Fla. Stat. § 90.5055 (4)(a). The Judgment Creditors are conflating the American Arbitration Association Interim Arbitration Award dated August 4, 2022 (the "AAA Award") relating to the prior arbitration proceeding between parties confirmed by this Court in the Memorandum Opinion [ECF No. 43] with post-judgment discovery in aid of execution of the Judgment [ECF No. 52] under Fed. R. Civ. P. Rule 69.

15.     Significantly, the fraudulent conduct referred in the AAA Award and Memorandum Opinion, was predicated solely on the alleged fraudulent business practices of *Take 5 Media Group, LLC* ("Take 5") and damages claimed by Advantage resulting from the closing on the sale of its assets. Notably, the AAA Award stated, in part, that:

> "The sale closed on April 1, 2018. Some of the employees of Take 5 LLC, including Messrs. Radetich and Gluck, went with the business. Thereafter, the business was operated as the Take 5 business unit within Advantage.
>
> In early 2019, as a result of complaints that it received and presentations by employees of the Take 5 business unit, Advantage's management conducted an investigation of Take 5's business practices. Advantage retained FTI Consulting, Inc. (FTI) and, later, the law firm of Latham & Watkins (L&W) to conduct the investigation. In early July 2019, Advantage management concluded the business practices were fraudulent. On July 11, 2019, Advantage shut down the Take 5 business unit." *Id,* pg. 2.; Memorandum Opinion [ECF No. 43, pg. 3]."

16.     Simply put, there are no findings of fact or evidence contained within the AAA Award nor the Memorandum Opinion that the Judgment Debtors utilized any services of the Accounting Firms to promote an intended or actual fraud related to Take 5's business operations nor that the post-judgment discovery in aid of execution Advantage seeks is in any way related thereto. To overcome the accountant-client privilege, the party seeking to invade the privilege must make a prima facie evidentiary showing "that the communication partook of fraud." *Am. Tobacco Co. v. State*, 697 So. 2d 1249, 1254 (Fla. Dist. Ct. App. 1997); *Deloitte, Haskins & Sells v. S. Fin. Holding Corp.*, 566 So. 2d 906, 906 (Fla. Dist. Ct. App. 1990)(granting certiorari and quashing discovery order for failure to satisfy the initial prima facie burden); *Shell Oil Co. v. Par Four P'ship*, 638 So. 2d 1050, 1051 (Fla. Dist. Ct. App. 1994)(same).

17.     Further, "Prima facie evidence is necessary" to satisfy the party's initial burden and must show that the party claiming the privilege "affirmatively sought the advice . . . to procure a fraud." *Id*.; *Fla. Min. & Materials Corp. v. Cont'l Cas. Co.*, 556 So. 2d 518, 519 (Fla. Dist. Ct. App. 1990); *Deloitte*, 566 So. 2d, at 906 (party seeking to invade accountant-client privilege must

6

make prima facie showing that the party claiming the privilege "used the accountant-client privilege to promote intended or actual fraud."). If, and only if, the prima facie showing is sufficiently made, then the party claiming the privilege may rebut the prima facie case. *Id*.

18.     This explains why the Response is devoid of any record citations to the AAA Award and Memorandum Opinion in support of the crime-fraud exception. Yet, in the Response, the Judgment Creditors recklessly state in conclusory fashion (without any evidentiary support) that "[A]ll of their accounting was in aid of that fraud scheme and in aid of concealing and protecting the fruits of the fraud scheme." [ECF No. 87, pg. 17]. Courts are cautious when it comes to addressing a prospective crime-fraud invasion of privilege, and mere allegations of fraud generally are insufficient to meet the prima facie burden as a matter of law. *See Fla. Min. & Materials*, 556 So. 2d, at 519 (rejecting challenge to privilege on crime-fraud basis supported by blanket allegations of fraud and holding that to do otherwise "would literally eliminate the attorney-client privilege in any suit where there was any allegation of fraud or misrepresentation."). And importantly, even where a prima facie case is made and is subsequently unrebutted as to a particular communication, that "does not make the privilege cease to exist as to other communications." *Am. Tobacco Co. v. State*, 697 So. 2d, at 1254.

19.     Here, the Judgment Creditors fail to put forth any evidence to support a prima facie showing of the purported crime-fraud exception to the Florida accountant-client privilege and fail to identify those communication(s) for which the challenge is directed. Instead, Judgment Creditors broadly, and without support, claim knowledge of a purported crime or fraud, but fail to identify and connect the unidentified crime or fraud to specific communications sought from the Accounting Firms in the DC Subpoenas. Additionally, the materials sought in the DC Subpoenas are entirely divorced from the underlying Judgment from which this post-judgment discovery

stems – there is no allegation nor has Advantage put forth evidence to satisfy the prima facie showing of any use by Judgment Debtors of the accountant-client relationship to promote intended or actual fraud. *Deloitte*, 566 So. 2d, at 906.

20.    Finally, turning to the fraudulent transfer claims alleged in the Amended Complaint filed in the Fraudulent Transfer Action, the Judgment Creditors make no effort to allege facts that the Accounting Firms were in anyway involved in a fraudulent scheme with the Judgment Debtors with respect to their personal assets or those of Take 5. In *In re Rollaguard Security, LLC*, 591 B.R. 895, 918 (Bankr.S.D.Fla. 2018), the Court held that:

> In prosecuting a fraudulent transfer claim based on actual intent, it is typically not sufficient to show that the debtor intended to defraud someone and the debtor also made a transfer. Just because a debtor is involved in a fraudulent scheme does not mean that every transfer made by that debtor is made with fraudulent intent. In order to prosecute a claim based on actual intent to hinder, delay, or defraud a creditor, the plaintiff must show that the alleged fraudulent intent is related to the transfers sought to be avoided.

*Id*. at 918; *see also Able Body Temp. Svcs*., *Inc.*, 626 B.R. 643, 665 (M.D. Fla. 2020) ("The court in *In re Rollaguard Security, LLC,* explained that it is incumbent upon the plaintiff to demonstrate that the alleged fraudulent intent 'is related' to the transfers sought to be avoided . . . "In other words, it is not enough for the Plaintiff to show that the Loan Payment Debtors were involved in a check kiting scheme; Plaintiff must show the Loan Payment Debtors' fraudulent intent with respect to the Loan Payment Transfers themselves"); *Cuthill v. Greenmark, LLC (In re World Vision Entm't, Inc.)*, 275 B.R. 641, 658 (Bankr. M.D. Fla. 2002) ("Simply because a debtor conducts its business fraudulently does not make every single payment by the debtor subject to avoidance.").

21.    For the reasons argued in the Motion and this Reply, good cause has been shown for the Court to enter an order quashing the DC Subpoenas and issuing a protective order under Rule 26, to preserve such protected matters as provided by Florida's accountant-client privilege.

**WHEREFORE**, Movants, Alexander Radetich, Richard Gluck, Richard Gluck, as Trustee of the 2018 Gluck Family Trust, and Alexander Radetich, as Trustee of the Alexander Radetich Revocable Trust dated August 20, 2009, respectfully requests that the Court enter an order (i) granting the Motion; (ii) issuing a protective order in favor of Movants or limiting the scope of discovery requested in the DC Subpoenas; and/or, alternatively, (iii) quashing the DC Subpoenas in their entirety; and (iv) together with such further relief as the Court may deem just and proper.

Date:  May 21, 2025

Respectfully submitted,

*Ana L. Lara*
Ana L. Jara (D.C. Bar No. 1023086)
Joseph B. Isenberg (D.C. Bar No. 90010205)
Venable LLP
600 Massachusetts Avenue, NW
Washington, DC 20001
Tel: (202) 344- 4796
Fax: (202) 344-8300
Email: aljara@venable.com;
jbisenberg@venable.com
*Counsel for Movants*

9

## CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2025, I caused a copy of the foregoing Reply to be sent via the Court's CM/ECF system to all counsel of record.

/s/ *Ana L. Jara*
Ana L. Jara, Esq.